

RECEIVED

SEP 2 8 2022

DEBORAH S. HUNT, Clerk

No. 22-5591

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

### SONYA P. WILLIAMS
Plaintiff-Appellant

v.

### SHELBY COUNTY, TN BOARD OF EDUCATION
Defendant-Appellee

On Appeal from the United States District Court
For the Western District of Tennessee, Western Division
Honorable Thomas L. Parker
Case No. 2:17-cv-02050-TLP-jay

### BRIEF OF PLAINTIFF-APPELLANT

Sonya P. Williams
*Pro Se* Litigant
3995 Point Church Rd.
Memphis, TN 38127

September 26, 2022

# TABLE OF CONTENTS

Page

I. STATEMENT OF JURISDICTION………..…….…………………………….1

II. STATEMENT OF ISSUES………………………….…..……………………...1

III. STATEMENT OF THE CASE…………………………………………….4

   A. Factual Background……………………………………………………….4

   B. Procedural History…………………………………………………….8

IV. SUMMARY OF THE ARGUMENT……………………………………12

V. ARGUMENT…………………….…………………………………16

   Standard of Review………………………..…………………………16

   A. The Board Tas Responsible for Protecting Williams' Rights…………......17

      1. Hopson Fired Williams without Bringing Charges for Cause…....20

      2. Hopson Did Not Fire Williams Because of a RIF……………….21

      3. The Board Excluded Williams from its RIF Process…………..…22

      4. Williams' Position as AEP Advisor Was Not Funded by the AEP Grant……………………………………………………...26

   B. Williams' Due Process Rights Were Violated When She Was Fired…..27

      1. Williams Was Deprived of a Pre-Deprivation Process……...……29

      2. Williams is Entitled to Damages for Being Deprived of Her Right To Due Process ………………………………..………………...33

   C. The District Court Erred in Granting Summary Judgment to the Board……...………………………………………………….35

   Standard of Review…………………………………………………...35

Case: 22-5591    Document: 12    Filed: 09/28/2022    Page: 2

1. Williams' Termination Violated the Retaliation Provision of Title VII……………………………………………………...…………....36

    a. Hopson Fired Williams Via Unlawful Delegation of Authority Therefore Her Termination Was Not Legitimate …………………………………………………....36

    b. An Invalid Termination Along with A False Reason for Williams' Termination Should Have Prevented Summary Judgment in Favor of the Board…....…………......37

    c. Williams was Fired Because of Her Protected Activity.......38

2. The Board Failed to Rehire Williams……………………………....39

    a. Williams' Title VII Claim of Retaliation Encompassed the Failure to Rehire; and Was Properly Exhausted…………….39

    b. The Board Had Numerous Opportunities to Rehire Williams But Chose to Deny Her Reemployment……………………...41

3. Retaliation Under the First Amendment……………...…………43

4. Tennessee Public Protection Act. (TPPA)………………….…45

D. The District Court Abused Its Discretion In Making Significant Rulings That Caused Prejudice to Williams…………………………...…………..48

Standard of Review……………………………………….…...…….…48

    1. The Board's 2018 Resolution………………………………....48

    2. The Board's Second MSJ ………………………………….....49

    3. The Board's Exhibit 10 Email Exchange…………………….....50

    4. Judicial Admission & Notice…………………………………51

    5. Tenure Act Damages…………………………….…………52

6. Eddie Jones as a Credible Witness……………………………..…53

VI.  CONCLUSION……………………………………………....………………54

CERTIFICATE OF COMPLIANCE……………………………………...56

CERTIFICATE OF SERVICE…………………………………………57

DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS…………..58

ADDENDUM 1 Tenn. Code Ann.  §49-5-409 (2014)…………………...…….63

ADDENDUM 2 Tenn. Code. Ann. §49-5-511 (2014)……………………….65

iv

# TABLE OF AUTHORITIES

## Cases

Page(s)

*Abbott v. Crown Motor Co.*
    348 F.3d 537 (6th Cir. 2003) …………………..………………………..……37

*Albright v. Oliver*,
    510 U.S. 266 (1994)…………………………………….…...…………….34

*Alexander v. Fulton County GA*
    207 F. 3d 1303 (11th Cir. 2000)……………………….……………...41

*Anderson v. City of Bessemer City*
    470 U.S. 564 (1985)………………………………………………………54

*Ang v. Proctor & Gamble Co.*
    932 F. 2d 540 (6th Cir. 1991)………………………………..…41, 50

*Barner v. Pilkington North Am. Inc.*,
    399 F.3d 745 (6th Cir. 2005)…………………………………………48

*Beck v. Haik*
    377 F.3d 624 (6th Cir. 2004)…………………………………………48

*Carey v. Piphus*
    435 U.S. 247 (1978)…………………………………………………..35

*City of Canton, Ohio v. Harris*,
    489 U.S. 378 (1989)………………………….………...........................30

*Collins v. City of Harker Heights*,
    503 U.S. 115 (1992)……………………………………………..…29

*Dallas v. Shelby Cty. Bd. Educ.*,
    No. W2018-01661-COA-R3-CV (Tenn. Ct. App., August 19, 2019).........18

*Doe v. Salvation Army in U.S.*
    531 F. 3d 355 (6th Cir. 2008).………………………………………………36

*Duggins v. Steak 'N Shake, Inc.*
    195 F. 3d 828 (6th Cir. 1999).………………………………………………50

*Dunlap v. TN Valley Authority*
    519 F. 3d 626 (6th Cir. 2008).………………………………………………37

*EEOC v. Ford Motor Co.*
    782 F.3d 753 (6th Cir. 2015).………………………………………………..39

*EEOC v. Harris Funeral Homes, Inc.*
    884 F.3d 560 (6th Cir. 2018).…………………………………...……...…36

*EJS Properties, LLC v. City of Toledo*,
    698 F. 3d 845 (6th Cir. 2012).……………………………….……………..........29

*Garcetti, et al v. Ceballos*
    547 U.S. 410 (2006).……………………………………………………..44

*Givhan v. Western Line Consol. Sch. Dist.*
    439 U.S. 410 (1979).…………………………………………….……..…44

*Griffin et al v. Finkbeiner*
    689 F. 3d 584 (6th Cir. 2012).………………………………………………48

*Gupta v. East Texas State University*
    654 F.2d 411 (5th Cir. 1981).………………………………………………..41

*Handy-Clay v. City of Memphis, Tenn.*
    695 F. 3d 531 (6th Cir. 2012).………………………………………………45

*Jones-Tate v. Shelby Cty. Bd. Educ.*,
    No. 2:17-cv-02307-SHL-dkv (W.D. Tenn. 2018)…………..…23, 26, 27,28,30,42

*Kelley v. Shelby Cty Bd. of Educ.*
    No. 2:14-cv-02632-SHL-cgc (W.D.Tenn. 2016)…...………...13,.15,23,29,30

*Kelley v. Shelby Cty. Bd. of Educ.*,
    198 F. Supp. 3d 842 (W.D. Tenn. 2016)……………………..…………..26,28

*Kelley v. Shelby Cty. Bd. of Educ.*,
    751 F. App'x. 650 (6th Cir. 2018)……………………………………22,24,31

*King v. Betts*
    354 S.W. 3d 691 (Tenn. 2011)…………………………………………….34

*Kline v. Portage Cty Bd. Comm'rs.*
    5 F Supp. 3d 902 (N. D. Ohio 2014)……………………………………….45

*Lee v. Franklin Special Sch. Dist. Bd. of Ed.*,
    237 S.W. 3d 322 (Tenn. Ct. App. 2007)……………...........19,20,25,28,31,52

*Maine v. Thiboutot*,
    448 S. U.S. 1 (1980)…………………………….…………………….…...35

*Memphis Community School District v. Stachura*,
    477 U.S. 299 (1986) …………………………….…………………….…...35

*Metz v. Unizan Bank*
    649 F. 3d 485 (6th Cir. 2011)………………………………………………17

*Miller v. Genovese*
    No. 19-6214 (6th Cir. 2021)……………………………………………...17

*Moore v. Bd.of Educ. Johnson City Schs.*
    134 F. 3d 781 (6th Cir. 1998)………………………………….. …...34

*Mumford v. Bd. Of Educ. of Memphis*,
    173 S.W. 3d 452 (Tenn. Ct. App. 2004)………...…………………….....35

*Nguyen v. City of Cleveland*
    229 F. 3d 559 (6th Cir. 2000)……………………………………………....37

*Parker v. Lowery*
    No. E2012-00547-COA-RC-CV, 2013 WL 1798958
    (Tenn. Ct. App. April 26, 2013)………………………………………...…18

vii

*Randall v. Hankins,*
    675 S. W. 2d 712 (Tenn. 1984)……………………..…………………...19

*Randall v. Hankins,*
    733 S.W. 2d 871 (Tenn. 1987) ……………..…….............24,25,26, 28,31,52

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000)……………………………………………………...37

*Reiner v. Woods,*
    955 F. 3d 549 (6th Cir. 2020)………………………………………….17

*Scott v. Eastman Chem. Co.*, 275 F. App'x. 466 (6th Cir. 2008)…………………40

*Smith v. Perkins Bd. of Educ.,*
    708 F.3d 821 (6th Cir. 2013 )…………………………………………17

*Snell v. Brothers,*
    527 S.W. 2d 114 (Tenn. 1975)…………………………………………18

*Thompson v. Memphis City Sch. Bd. of Educ.,*
    395 S.W. 3d 616 (Tenn. 2012) ……...……………………….....26,32,34,35

*Thurman v. Yellow Freight Sys. Inc.,*
    90 F. 3d 1160 (6th Cir. 1996)…………………………………………37

*T. Marzetti Co., v. Roskam Baking Co.*
    680 F.3d 629 (6th Cir. 2012)………………………………………..…17

*United States v. United States Gypsum Co.,*
    333 U.S. 364 (1948)……………………………………………………54

*University of Texas SW Med. Ctr. v. Nassar*
    570 US 388  (2013)……………………………………………...…39

*Washington Cty. Educ. Ass'n. et al.  v. Washington Cty. Bd. Educ.*, et al.
    No. E2018-01037-COA-R3-CV (Tenn. Ct. Appeals June 20, 2019)……...18

*Weisbarth v. Geauga Park Dist.*
    499 F. 3d 538 (6th Cir. 2007)…………………………………………45

*Williams v. City of Burns*
    465 S.W. 3d 96 (Tenn. 2015) …………………………………….......…47

### Federal Statutes

Title VII Civil Rights Act of 1964………………….....1,3,9,10,12,36,37,39,41,55

28 U.S. C. §1291……………………………………………………………...1

28 U.S.C. §1331………………………………………………………………1

42 U.S.C. §1367(a)……………………………………………………………1

42.U.S.C. §1988……………………………………………………….…..…1,35

### Tennessee Statutes

Tenn. Code Ann. §47-14-121 ……………………………......……...,,,,,,,,,,,.53

Tenn. Code Ann. §47-14-122 ……………………………………....………..53

Tenn. Code Ann. §49-5-409 (2014)……………….....…………………….13,18

Tenn. Code Ann. §49-5-501 *et. seq* (2014)………...1,2,10,11,12,13,15,16,17,18,19

…………………………………………….,20,22,23,24,25,26,27,28,30,31,32,34,35

………………………………………….....37,40 42,43,46,47,49,51,52,53,54

Tenn. Code Ann. §50-1-304……………………...……………..1,3,36,45,46,47,48,55

Tenn. Code. Ann. §49-2-301(b)(1)(A) ………………………………..………….13

### Constitutional Provisions

First Amendment 42 USC §1983 & §1988……...........…………1,3,36,43,44,45,55

Fourteenth Amendment 42 USC §1983…….1,2, 10,11,17,22,29,30,32,33,34,35,41

# I. STATEMENT OF JURISDICTION

The appellant/plaintiff- Dr. Sonya P. Williams ("Williams")-raised claims under federal and state statutes: Retaliation under Title VII Civil Rights Act of 1964, violation of Due Process Clause under the Fourteenth Amendment: 42 U.S.C. §1983, Retaliation under the First Amendment to the United States Constitution (brought pursuant to 42 U.S.C. §§ 1983 and 1988); Tennessee Teacher Tenure Act ("Tenure Act"); and the Tennessee Public Protection Act ("TPPA")[Comp., R. 1, PageID# 1-10]. District court had jurisdiction pursuant to 28 U.S.C. §1331(federal questions) and supplemental jurisdiction over state claims pursuant to 42 U.S.C. §1367 (a). The order and final judgment were entered on June 14, 2022 [R. 309, PageID# 8109-8134; R. 310, PageID# 8135]. Notice of appeal was timely filed July 13, 2022 [R. 311, Page ID# 8136-37]. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

# II. STATEMENT OF ISSUES

The Tennessee legislature maintains a safety net for tenured teachers who accept their responsibility and accountability by meeting performance requirements. Undergirding this case is the concepts of responsibility and accountability when it comes to the rights of tenured teachers and local education agencies ("LEA"). When a school district does not uphold its responsibility; how

are they held accountable? This case involves a challenge to the decision to terminate Williams' employment prior to the end of the 2015-2016 school year without following the dismissal provisions of the Tenure Act, consequently violating other federal and state statutes. Williams brings this appeal, Case No. 22-5591 to raise the following issues.

1. The Tenure Act (2014) specifically provides for dismissal of a tenured teacher under only two circumstances: for cause and when there is a need to reduce the number of teaching positions within a LEA ("RIF"). Did the district court err in concluding that Williams' termination was the result of a RIF; the Shelby County Board of Education's ("the Board") post hoc resolution in 2018 brought Williams' termination into compliance with the Tenure Act; and limiting her damages under the Tenure Act?

2. The Due Process clause of the Fourteenth Amendment ensures that no tenured teacher be deprived of their state right to continued employment without the benefit of a deprivation process. The question presented is did the district court err in limiting Williams' due process claim to placement on the Board's reemployment list; and determining that Williams' right to due process was not violated when the superintendent fired her without following the Board's protocol and the dismissal provision of the Tenure Act?

3. Dorsey E. Hopson, II, Esq. ("Hopson") firing Williams violated the Tenure Act and rendered her termination invalid. Did the district court err in granting summary judgment to the Board on Williams' retaliation claims under Title VII Civil Rights Act of 1964, retaliation under the First Amendment to the U.S. Constitution and section 1983, and retaliation under the TPPA, in conflict with summary judgment standards, federal rules of civil procedure, and other statutory provisions?

4. Whether a Plaintiff who files an EEOC charge for retaliation prior to termination and initiates a claim to include the failure to rehire satisfies exhaustion requirements; and whether the charge is sufficient to cover acts of retaliation by an employer post termination to include retaliation stemming from litigation?

5. Whether the district court abused its discretion in a) allowing the Board to introduce its 2018 Resolution; b) allowing the Board to file a second motion for summary judgment("MSJ") to accommodate a belated affirmative defense, without demonstrating good cause; and ruling Williams' MSJ as moot; c) not granting Williams' motion for judicial admission and judicial notice in regards to the preferred list for employment pursuant to the Tenure Act and limiting the introduction of evidence Williams obtained via an open records request of the Board's hiring activity; d) by not including applicable raises in Williams damages, allowing pre-judgment interest to cease on Tenure Act award and not granting

3

Williams' request for post-judgment interest; and e) in determining that Eddie Jones ("Jones") was a credible witness in light of the Board's admissions, Jones' deposition and trial testimony?

### III. STATEMENT OF THE CASE

A.  Factual Background

Williams gained tenure in 2006-2007 [SUMF, R. 46-1, PageID# 299 ¶ 2; SUMF, R. 189-1, PageID#, ¶2]. Spring 2013 Williams interviewed for an Instructional Facilitator position at Raleigh Egypt High School ("REHS"); and she was not selected for the position [SUMF, R. 189-1, PageID# 5218, ¶3]. Summer 2013 Williams applied for the PLC Coach position at REHS, she was not granted an interview, however a younger female was selected for the position [SUMF, R. 189-1, PageID# 5218, ¶4]. Summer 2013 Williams interviewed for the Family and Consumer Sciences/Health Sciences Advisor position, she was not selected, the position was reposted, and Williams expressed her continued interest in the position. [SUMF, R. 46-1, PageID# 300, ¶3; SUMF, R. 189-1, PageID# 5218, ¶5]. Patsy Todd, white female external candidate, was given the position; but she did not meet the minimum requirements for the job [SUMF, R. 189-1, PageID# 5219, ¶6].

Fall 2013 Williams filed both an internal complaint with the Board and an EEOC complaint alleging age and race discrimination [SUMF, R. 46-1, PageID#

4

300, ¶4; SUMF, R. 189-1, PageID# 5219, ¶7]. Chantay Branch ("Branch")-
Director of Labor Relations- was knowledgeable about Williams' EEOC charges,
her reports to the state, and internal whistleblower complaint [SUMF, R. 70-1,
PageID# 2360 ¶¶14, 15, 17, 19; 19]. Branch, was Hopson's designee for
dismissals, discipline, and terminations [SUMF, R. 70-1, PageID# 2358 ¶4].

Williams worked as a classroom teacher until August 2015. Williams and
Hopson signed an EEOC negotiated settlement that included placement in the
Adult Education Program ("AEP") Advisor position at Messick to resolve her 2013
EEOC charge; and prohibited retaliation [SUMF, R. 46-1, PageID# 300, ¶¶5,6;
SUMF, R. 70-1, PageID# 2360 ¶16; SUMF, R, 64, PageID# 2190-2191, ¶8].
Williams' first day at Messick was August 17, 2015 [SUMF, R. 46-1, PageID#
302, ¶13]. That same day Carol Miller("Miller") indirectly referenced Williams'
EEOC charge in Rochelle Griffin's ("Griffin") presence [SUMF, R. 46-1, PageID#
303, ¶¶17, 19-22; SUMF, R. 70-1, PageID# 2360 ¶517; SUMF, R. 189-1, PageID#
5221, ¶16].

When Williams accepted the AEP Advisor position she did not know it was
"grant-funded" and renewable based on performance; but was told that it was on
her first day at Messick [SUMF, R. 46-1, PageID# 303, ¶¶14, 15]. In addition to
communicating concerns regarding not being able to perform her job
responsibilities to Griffin, Ramone Lloyd ("Lloyd")-Labor Relations Advisor,

5

Cecelia Barnes("Barnes")-Associate General Counsel, and Branch; Williams communicated concerns of financial improprieties regarding the AEP as early as September 2015 [SUMF, R. 189-1, PageID# 5221-22,¶¶15,19]. Griffin placed Williams under increased scrutiny [SUMF, R. 46-1, PageID# 306, ¶29; SUMF, R. 70-1, PageID# 2361 ¶21; SUMF, R. 189-1, PageID# 5222, ¶17]. Griffin and individuals in labor relations began building a file on Williams prior to her termination [SUMF, R. 70-1, PageID# 2361 ¶22].

On October 22, 2015 a team from the Tennessee Department of Labor and Workforce Development ("TDLWD", "State") overseeing the AEP grant visited the Messick campus; and Williams shared information regarding program issues to include some misappropriation of grant funds [SUMF, R. 46-1, PageID# 309-10, ¶¶44, 45; SUMF, R. 70-1, PageID# 2361 ¶24]. On November 2, 2015 Williams submitted an internal whistleblower complaint regarding the AEP grant [SUMF, R. 46-1, PageID# 311, ¶51]. On December 17-18, 2015 a team from the State visited the Messick campus again [SUMF, R. 70-1, PageID# 2361 ¶26]. On January 26, 2016, Wanda Cameron from the State requested revisions and addendums to reports previously submitted incorrectly by Griffin with a deadline of February 2, 2016, however Griffin did not provide the information as requested by the deadline [SUMF, R. 189-1, PageID## 5229, ¶44]. On February 4, 2016 , the state terminated the AEP grant [SUMF, R. 46-1, PageID# 313, ¶59]. Dr. Joris Ray

6

("Ray") with Branch's knowledge approved certain individuals whose salaries were funded by the AEP grant to continue working at Messick [Ex. H. MSJ Failure to Rehire, R. 186-10, PageID# 5096-99]. February 8, 2016 Hopson fired Williams [SUMF, R. 70-1, PageID# 2358 ¶5]. Williams was not terminated for cause [SUMF, R. 70-1, PageID# 2362 ¶30]. Williams' last day as an employee with the Board was March 4, 2016 [SUMF, R. 189-1, PageID# 5231, ¶51]. The Board took no action regarding Williams' termination and a RIF; and voted to close Messick campus on May 16, 2016, with operations continuing until the fiscal year end: June 2016 [SUMF, R. 46-1, PageID# 314-315, ¶64; SUMF, R. 70-1, PageID# 2358-59, ¶¶ 5,6; SUMF, R. 189-1, PageID# 5234, ¶59]. Williams gave her contact information to Tiffany Smith ("Smith")- HR Business Partner- to be contacted for job opportunities [SUMF, R. 189-1, PageID# 5233, ¶58]. Williams applied for three vacancies for which she was qualified before her last day of employment to no avail [Ex. M to Resp. to MSJ, R. 59-2, PageID# 1698-1706]. At the time Williams was terminated she had a doctoral degree in Education, was an Education Specialist, a National Board Certified teacher, and held an Instructional Leadership Administrator license with the State [Trial Ex. 1 Williams' Tenn. License; Transcript, R. 314, PageID# 8158-59; Williams' State Certification, R. 118-2, PageID# 3262-63; Williams Personnel File, R. 47, PageID# 358; Williams' Affidavit, R. 155-1, PageID# 4289-4290; Willams Depo. R. 48, PageID# 478-480].

Williams' evaluation scores for two consecutive school years prior to placement as the AEP Advisor indicated she was a level 5 educator-Significantly Above Expectations [Trial Ex. 2 Evaluations; R. 314, PageID# 8164; Resp. MSJ Ex. A Pers. File, R. 47, PageID# 325-330].

**B.    Procedural History**

The complaint was filed January 2017 [R. 1, PageID# 1-10]. The Board offered as one of its defenses that Williams was an at-will employee that could be "…terminated at any time, for any reason, with or without cause" [Answer, R. 11, PageID# 31]. The Board admitted that it did not place Williams on any type of list that would make her available for future employment; and had not offered her any future job opportunities [R. 1, PageID# , ¶¶ 31, 32; R. 11, PageID# 29, ¶¶ 31-32]. The scheduling order established the deadline for motions to amend pleadings of August 14, 2017; and dispositive motions for February 14, 2018 [R. 20, PageID# #60-62]. District court granted motions to amend scheduling order deadline for dispositive motions, ultimately until May 7, 2018 [R. 27, PageID# 76, R. 32, PageID# 86].

In lieu of filing its dispositive motion by the deadline the Board filed an emergency motion to stay all deadlines pending determination of a settlement (Williams was not aware of a pending settlement ) even though both parties had

knowledge of the dispositive motion deadline.[1] Without the Board requesting and the district court requiring the Board to demonstrate good cause according to Fed. R. Civ. P. 16 (b)(4), the district court extended the deadline for the Board to file a dispositive motion [Minute Entry, R. 39].

In response to the Board's MSJ, one of the adverse actions under Title VII Retaliation presented to the district court was: "(7) From February 2016 to present, SCS refuses to hire Williams for the over 100+ positions in the school system for which she applied and was qualified" [Resp, MSJ, R. 46, PageID# 288; SMF R. 46-2, ¶10, PageID# 318-319]. The Board did not address Williams' claims of retaliation as it relates to harassment, referrals to labor relations, the written reprimand, the negative job evaluation, and the failure to rehire aspects of the claim [Reply R. 70, PageID# 2345-2357; R. 70-1, PageID# 2359]. The district court determined that Williams had established a *prima facie* case of retaliation, however it divided the claim into five parts: dismissing the termination aspect of the claim, and denying the motion related to harassment, referrals to Labor Relations, the written reprimand, and the negative job evaluation. The district court's ruling in December 2018 failed to address Williams' adverse action of

---

[1] Sealed Entry R. 35, page 1.

retaliation related to the Board's failure to rehire her [R. 88, PageID# 2549-2581]. The Tenure Act claim survived the MSJ.

January 15, 2019 Williams' prior counsel objected to the introduction of the Board's 2018 Resolution [R. 164-5, PageID# *7-19]. In March 2019 Williams decided to terminate her prior counsel [Minute Entry, R. 174]. Shortly thereafter, on behalf of the Board over Williams' objection, the district court certified questions to the Supreme Court of Tennessee [R. 184, PageID# 4936-4956; R. 193, PageID# 5431-35]. The High Court declined to certify the questions and issued a mandate remanding the case back to the district court "to attain the ends of justice" [R. 198, PageID# 5444; R. 200, PageID# 5447]. In March 2019 the district court granted the Board another opportunity to file a MSJ on Williams' retaliation claim relating to failure to rehire. The Board filed its MSJ for Title VII "Failure to Hire" and asserted an affirmative defense of failure to exhaust administrative remedies; and failure to properly plead related to "failure to hire." July 2019, the Board admitted: "The Board has not placed Plaintiff on a "preferred list of reemployment" as it was not legally required to do so" [SAUMF R. 189-1, PageID# 5235]. In July 2020 the district court granted Williams' motion for revision of the interlocutory order as to her claim under 42 U.S. C. §1983 and denied revision for the remainder of the claims [R. 220, PageID# 6308-6830].

In July 2020 Williams filed a Motion for Sanctions against the Board and its counsel [R. 218-2, PageID#,6269-89]. The district court referred the matter to the magistrate; and the motion was denied [R. 234, PageID# 6421-6424]. In August 2020 Williams filed a Writ of Mandamus with this Court, which was denied [R. 236; R. 243, PageID#6995-6998,]. In August 2020 the district court ruled on the Tenure Act claim [R. 237, PageID# 6935-6948; R. 246, PageID# 6999-7007; R. 254, PageID# 7054-7063]. In May 2021, the Board filed a motion to deposit funds into the court [R. 258, PageID# 7075-7078]. Williams objected but the district court granted the motion [R. 260, PageID# 7085-7091; R. 261, PageID#7092-7093].

In October 2021, Williams filed a motion for judicial admission and judicial notice regarding the Board's admission that it did not place Williams on any type of list for future employment and hiring information she obtained from her open records request; and the Board untimely responded [R. 272-1, PageID# 7146-7156; R. 281, PageID# 7812-16]. At the pre-trial conference the district court denied the motion for judicial admission; but did not rule on the request for judicial notice [*Id*.]. The Board also motioned the court for reconsideration of its ruling on the revision of the interlocutory order on 42 U.S.C. §1983; Williams objected [R. 280, PageID# 7787-7795, R. 290, PageID# 7865-7883]. The court orally denied the Board's motion [Minute Entry, R. 291]. In November 2021, Williams filed a

11

motion for entry of final judgment under Rule 54 (b) so that post judgement interest could begin to accrue on the Tenure Act damages; and the Board opposed [R. 293, PageID# 7887-7894; R. 294, PageID# 7899-7906]. In December 2021, the Board motioned the district court for leave to file its first amended answer [R. 295, PageID# 7913-7917]. The district court denied both the motion for entry of judgment under Rule 54(b); and the motion for leave to file an amended answer [R. 303, PageID# 8052-8061]. In January 2022 after the district court communicated the directive it was given to continue jury trials again, Dr. Williams decided to give up her right to a jury trial [Minute Entry, R. 302]. Williams also decided later to drop her remaining claims for trial related to Title VII Retaliation: harassment, referrals to Labor Relations, write up, and negative evaluation [*Id.*]. The bench trial was held over a two-day period on February 14-15, 2022.

The factual background and procedural history for this case is complex, lengthy, and would consume too many pages, therefore Williams would also like to reference the factual background and procedural history reflected in both her Writ of Mandamus [*In re: Sonya Williams*, Case# 20-5919, August 2020, **3-8] and MSJ for Failure to Rehire [R. 186-1, PageID# 4994-5001].

## IV. SUMMARY OF THE ARGUMENT

Williams, a tenured teacher, was fired by Hopson before the end of the 2015-2016 school year because of a program/position abolishment. Williams was

not even afforded the basic rights of a non-tenured teacher who is entitled to the "position that the person is qualified to hold and that opens within the school system during the remainder of the school year" [Continuing Contract Law ("CCL"), Tenn. Code Ann. § 49-5-509, Add. 1]. This case presents a unique aspect in that Hopson was the statutory agent for the Board, as authority is given to him by the Board to act on its behalf in seeing that the laws related to the schools, rules of the state and the local board are "faithfully executed…" [ Tenn. Code Ann. §49-2-301(b)(1)(A)]. Moreover, Hopson-the decision maker (also one of the policy makers for the Board responsible for implementing, recommending, and disseminating policy per SCS Board Policy # 0012)- served as the Board's general legal counsel prior to being appointed to superintendent [Transcript, R. 314, PageID#8158]. Hopson's experience representing school boards and involvement in prior litigation regarding the Tenure Act placed him in a position of heightened awareness of federal and state laws regarding employment to include rights afforded to tenured teachers, his role as the superintendent, and the role of the Board [Hopson Depo. *Kelley*, R. 150-2, PageID# 3662; Hopson Depo. Williams, R. 60, PageID# 1731]. Further, Hopson was the signatory on critical documents: 1) EEOC Negotiated Settlement Agreement [R. 64, PageID# 2190-91]; 2) the AEP grant contract[ R. 50 PageID# 863(848-868); 3) the Board meeting minutes [R. 61, PageID# 1819, 1831, 1849, 1852, 1854, 1856, 1866, 1871]; and 4) the Board's

general fund budget for the 2015-2016 school year [R. 272-6, PageID# 7642: Budget pg. #431(7194-7662)].

To resolve Williams' 2013 EEOC complaint the Board offered Williams only the position of AEP Advisor, even though she had applied for at least fifteen vacancies in summer 2015 [Trial Ex. 4; Williams' 1st Affidavit R. 76-1, PageID# 2381-2382; See also SCS List of Williams Jobs Applied, R. 186-14, PageID# 5114-5125]. The AEP program was a federal and state funded grant program with the Board being required to provide a ten percent match [Grant Contract R. 50, PageID# 850]. Soon after Williams started the position at Messick, she began experiencing what she believed was retaliation.

Williams communicated her concerns to her immediate supervisor-Griffin- on September 10, 2015, who unbeknownst to her at the time communicated Williams' concerns to her immediate supervisor- Valarie Matthews ("Matthews")- Branch, and Lloyd in labor relations. Later in September 2015 Williams sent Lloyd and Barnes a memo alleging retaliation and improprieties to include financial with the AEP grant. Williams is unaware of any remedial action by the Board to prevent further retaliation, and to ensure that the grant was being implemented according to the contract.

After Griffin's failure to comply with requests by a representative from the State by close of business day on February 2, 2016, the state terminated the grant

two days later [Email Exchange R. 186-5, PageID#5053-55; Grant Term. Ltr, R. 42-8, PageID# 232] citing for the record no cause; but allegedly providing reasons privately to Ray; and publicly to the local news [Ray Ltr. to Hopson R. 60, PageID# 1803-06; News Article R. 60 PageID# 1787-89]. This failure to comply with the State's requests was a part of a long list of non-compliance issues with the grant that preceded Williams' placement as the AEP Advisor [Email Exchanges R. 186-5, PageID# 5037- 5055; Grant Program Assurances, R. 50, PageID# 849,868]. Williams was placed in a position in a program that had historically been failing and non-compliant with the grant. In fact, Hopson revealed in an interview that problems with the AEP dated back before the merger of Memphis City Schools with Shelby County Schools in 2013 but were allegedly not "run up the flag pole" [Hopson Depo. R. 60, PageID# 1787-89]. The aforementioned is not necessarily true in that Williams communicated concerns about the program in September 2015, shortly after being placed in the position; and the grant required an annual audit that should have revealed the problems [Grant Contract, R. 50, PageID# 857].

Four days after the state terminated the grant and less than three months after Williams filed her retaliation charge Hopson fired Williams without the benefit of a pre-deprivation process knowing that he did not have the authority to terminate a tenured teacher; only the Board had that authority [Hopson Depo. *Kelley*, R. 150-2,

PageID# 3666]. The Board had numerous opportunities to at least try to rectify Hopson's decision to fire Williams. One instance is when Hopson was asked in his deposition in March 2018 about why Williams was not on a preferred list pursuant to state law; and if he would be willing to look into the matter; but placing Williams on a preferred list did not come into fruition [R. 60, PageID# 1744-46;1756-57]. The Board's post hoc resolutions could not validate Williams' invalid termination as the Board ratified an action by Hopson that violated Williams' rights under the Tenure Act, her right to due process; and rights under other state and federal statutes; not just unlawful delegation of authority. The district court's order on Williams' Tenure Act claim is inconsistent with Williams' claim. The Board refused to follow the mandates of the Tenure Act, yet the district court partially ruled in its favor. Failing to try to rectify the termination; and making the choice to continue to be in violation of federal and state statutes is a key indicator that the decision to fire Williams was retaliatory and intentional.

V. ARGUMENT

Standard of Review

The district court interpreted the AEP abolishment as a RIF according to the Tenure Act. Statutory interpretation presents a question of law over which this Court exercises *de novo* review; and if the law is unambiguous the Court will apply the law as written. In reviewing Williams' claims under Tennessee law, this Court

16

will apply state law in accordance with the currently controlling decisions of the state [*Smith v. Perkins Bd. of Educ.*, et al 708 F. 3d 821 (6th Cir. 2013) (reviewing plaintiff's state claims under Ohio law (citing *Metz v. Unizan Bank*, 649 F. 3d 485, 496 (6th Cir. 2011)]. Under a *de novo* standard of review, this Court owes no deference to the district court's statutory analysis, interpretation, and application.

The district court's judgment as it relates to the Tenure Act and 42 U.S.C. §1983 addresses both the court's findings of fact and legal conclusions. The Sixth Circuit reviews a district court's judgment as it relates to findings of fact for "clear error" and its "conclusions of law *de novo*" [*Miller v. Genovese*, No. 19-6214 (6th Cir. 2021) *7 (citing *Reiner v. Woods*, 955 F. 3d 549, 554(6th Cir. 2020)]. Mixed questions of law and fact are also subject to de novo review [*T. Marzetti Co., v. Roskam Baking Co.*, 680 F. 3d 629, 633 (6th Cir. 2012)]. Even though fact determinations are viewed through deferential lenses, if the district court applied the wrong legal rule or excluded consequential evidence, the appellate court has the authority to not afford those findings any weight and review the record *de novo*[].

A. The Board Was Responsible for Protecting Williams' Rights.

The Tenure Act's dismissal provision is unambiguous. Any tenured teacher as defined by the statute is entitled to certain statutory benefits prior to and after dismissal for cause or when it becomes necessary to reduce the number of

17

Case: 22-5591    Document: 12    Filed: 09/28/2022    Page: 27

positions in the LEA [Tenn. Code. Ann. §49-5-511, Add. 2]. Since its inception until now the Tenure Act does not apply to non-tenured teachers. The 2014 version of the act did not give non- tenured teachers the exact same rights as tenured teachers, nor was the CCL repealed [Add. 1]. Non-tenured teachers do not have status to claim remedy through the act [*Dallas v. Shelby Cty Bd. of Educ.*, No. W2018-01661-COA-R3-CV, 2019 WL 3918735 at *11(Tenn. Ct. App. Aug. 19, 2019) citing *Snell v. Brothers,* 527 S.W.2d 114,116 (Tenn. 1975) (holding that a non-tenured teacher was "only entitled to relief under the Continuing Contract Law"). Non-tenured teachers also do not have "standing" to file claims related to the procedure and review of a director's nonrenewal decision" [*Washington Cty. Educ. Ass'n v. Washington Cty. Bd. of Educ.*, No. E2018-01037-COA-R3-CV, 2019 WL 2537864, at *1 (Tenn. Ct. App. June 20, 2019)]; See also *Dallas, Id*. a non-tenured teacher is not entitled to a judicial review regarding the director of schools' decision not to renew her employment [citing *Parker v. Lowery,* No. E2012-00547-COA-R3-CV, 2013 WL 1798958, at *5 (Tenn. Ct. App. Apr. 26, 2013)]. The only significant change to the 2014 version of the statute is the requirement for tenured teachers to meet certain performance expectations to maintain their tenure status.

Tenure in Tennessee is in the LEA and not in a particular position [ Tenn. Code Ann. §49-5-501 (11)(A)]. To support this fact are four guiding principles: 1) the

definition of a teacher includes all certificated personnel employed in the LEA (both instructional and non-instructional) [Tenn. Code Ann. §49-5-501 (10) (2014)]; 2) the director of schools has the authority to transfer tenured teachers from one type of position to another type of position according to board policy [Tenn. Code Ann. §49-5-510]; 3) a RIF is predicated on a system-wide necessity and analysis that entails balancing the number of terminations, resignations, and retirements at the end of a school term in the system to ascertain the need for a reduction in positions; and 4) in the event of dismissals of a tenured teacher under a RIF the statute mandates that at the time of the dismissal the tenured teacher be given statutory priority in reemployment over non-tenured teachers by being placed on a preferred list for employment to be considered for comparable positions (not necessarily the same type of position) [Tenn. Code Ann. §49-5-511 (b) (1-4)(A)(B); *Lee v. Franklin Special Sch. Dist. Bd. of Ed.*, 237 S.W. 3d 322, 337 (Tenn. Ct. App.2007) (stating, "the term "shall" in the statute as it relates to the preferred list for employment, "is mandatory."]. In the instance that a tenured teacher is dismissed because of a RIF the statute also requires the Board or the director of schools to evaluate the impacted teacher's competence, capability, and suitability for vacancies. If the Board makes the decision to not reemploy the tenured teacher it must give reasons on record because the Board "…speaks only through its minutes,.." [*Randall v. Hankins*, 675 S.W. 2d 712, 713(Tenn. 1984)].

19

In *Lee* the court determined that the board did not evaluate the teacher; and it did not provide reasons on record why it did not respect the priority that the tenured teacher was due pursuant to the Tenure Act (*Id.* 337). Additionally, in *Lee* the board did not make any bona fide offers of employment to the teacher nor did the teacher reject any bona fide offers. Consequently, the *Lee* court ruled the board's actions amounted to a failure to rehire as she was denied reemployment, and the teacher was entitled to reinstatement. Similar to *Lee* the Board failed to consider Williams for comparable positions and honor her rights and statutory priority as required by the Tenure Act, has not made her any bona fide offers of employment, nor has Williams rejected any bona fide offers [Transcript, R. 314, PageID# 8183-84: 17-25; 1-3].

1.  Hopson Fired Williams Without Bringing Charges for Cause.

The only part of the dismissal provision of the Tenure Act that allows a tenured teacher to be terminated before the end of a school year is when said teacher is dismissed for cause [ Tenn. Code Ann. §49-5-511(a) (1-5)]. Williams' contention since the beginning of litigation is that the Board violated her rights under the entire dismissal provision of the Tenure Act [R. 1, PageID# 7-9]. Williams never claimed in her complaint or throughout litigation that she was not "excessed" properly as she was not an employee with the Board during their "excessing" process for the 2015-2016 school year.

20

### 2. Hopson Did Not Fire Williams Because of a RIF.

In the district court's ruling on the Board's initial MSJ it concluded that Williams was terminated as the result of a RIF, the AEP Advisor position was grant-funded and that everyone whose positions depended on the AEP grant was terminated; and the argument that a RIF must be system-wide was not convincing [R. 88, PageID# 2563-64, 2575]. Williams' prior counsel incorrectly referenced the AEP grant contract termination as a RIF at Messick, instead of what it was, simply a program abolishment, as RIFs for a LEA do not occur during the middle of the school year [SAMF R. 70-1, ¶¶1-3, PageID# 2358]. Williams was not consulted for reference regarding plaintiff's SUMFs prior to submission to the district court. Even though prior counsel referenced the program abolishment as a RIF at Messick she still argued in response to the Board's MSJ that the 'alleged' RIF was a scam, the Board took no action in regards to a RIF at the time Williams was fired; and Williams' name was not listed as one of the individuals impacted by a RIF for the 2015-2016 school year [R. 46, PageID# 272-298; 2016 Resolution, R. 59-3, PageID# 1712-1720].

Williams was an ex-employee in May 2016 when the Board initially considered the proposed budget for the 2016-2017 school year [Bd. Min. Resp. MSJ RE. 61, PageID# 1850-1852]; and near four months post termination when the Board approved its 2016-2017 budget as reflected in the Board's June 30, 2016 minutes

21

[R. 61, PageID# 1867- 1871], therefore she was not fired because of a RIF. Further

Williams' termination letter did not indicate that she was being fired because of a

RIF [(Trial Ex. 3, R. 60, PageID# 1780]. The Board's response to Williams EEOC

complaint [R. 186-13,PageID# 5105-5113] and the Board's evasive responses to

discovery requests did not communicate that Williams was terminated because of a

RIF [R. 164, PageID# 4783-4785]. Yet in its MSJ over two years after Williams'

termination the Board contended that Williams was fired because of a RIF. The

Board cited no testimony from its officials or documentary evidence to

demonstrate that a RIF occurred at the time Williams was fired [ MSJ, R. 42,

PageID# 120-143].  The documentary evidence and testimony support the fact that

there was a program abolishment and subsequently the AEP Advisor position

abolishment. The Board's argument regarding Williams' Tenure Act claim at the

summary judgment stage (one paragraph), was that Williams was not entitled to

relief under the Tenure Act [R. 42-1, PageID# 141]; and under the 42 U.S.C.

§1983 claim discussed a RIF in general, not how Williams was fired in relation to

its RIF protocol or the Tenure Act.

>   **3.**  The Board Excluded Williams from its RIF process.

The Board established an "excessing" protocol to effectuate the RIF provision

of the Tenure Act [*Kelley* Appeal Docs, R. 76-3, PageID# 2472-2474]. Central to a

tenured teacher being dismissed because of a RIF with the Board's "excessing"

protocol is that the tenured teacher is given an opportunity to interview for positions for which she is qualified; and placed on a preferred list for employment. Per Hopson, consideration is demonstrated by granting the tenured teacher an interview [R. 150-2, PageID# 3674, Tr. P 50:6-25; 51:1-25]. Further, Sheila Redick- Director of Human capital at the time Williams was fired-communicated principals were required to interview teachers on their reemployment list [Tenure Brief, R. 150, PageID# 3640]. As previously communicated Williams was terminated before the Board's excessing process for the 2015-2016 school year and not given an opportunity to interview for vacancies. Moreover, Branch summarily determined as testified in her 30(b)(6) deposition that the Board's "excessing" protocol did not apply to Williams; and her termination was coded as 151 for lack of funding and not 152 which is the Board's code for reduction in personnel [Branch 30(b)(6) Depo., R. 151, PageID# 3831-32: 23-24,1-7; #3835-36: 16-24,1-4; #3840:18-24; #3854 ¶4-24].

Further, when a tenured teacher with the Board is dismissed due to a RIF the letter from Hopson indicates that she will be placed on a "reemployment list" if unable to find employment by fiscal year end, however, Williams' letter did not communicate placement on their list [Trial Exhibit 3; Hopson's Ltrs. to *Kelley* Plaintiffs, R. 155-2, PageID# 4291-4294; Hopson's Ltr. To Jones-Tate, R. 155-3, PageID# 4295]. The RIF provision of the dismissal provision of the Tenure Act

23

also requires more than a perfunctory placement of a tenured teacher's name on a piece of paper. Controlling precedent in Tennessee affirms a tenured teacher's right to statutory priority for reemployment over non-tenured teachers [*Randall v. Hankins*, 733 S.W.2d 871 (1987) (summarizing that the case involves a tenured teacher's right to preferential consideration for reappointment following abolition of their positions pursuant to T.C.A. §49-5-511 (b)(3)]. In *Randall*, the teachers lost their positions because of a position abolishment at the end of the school term and sought assistance from the courts to validate their right to preferential treatment for reemployment. The *Randall* court affirmed the judgment of the Court of Appeals on its second opinion, which held that the teachers had not been accorded priority in consideration for reemployment as required by statute; and awarded back pay up until the school board corrected its non-compliance with the Tenure Act [*Randall, Id.*].

The Board also understands tenured teachers' statutory priority for reemployment; as their RIF policy references the "preferred list for employment" [Trial Exhibit 7; R. 60, Page ID 1781-86]; and its argument to this Court in *Kelley* regarding its "excessing process" references the preferential nature of the list the Board is required to maintain [*Kelley* Appeal Docs., R. 76-3, PageID# 2473-2474, March 15, 2018]. Further, prior Defense counsel in this case also had awareness of the "preferential" nature of the list and affirmed the Defendants "excessing"

24

protocol used to effectuate RIFs. When the district court questioned defense counsel regarding the Board's 2018 Resolution, he communicated that the Board's reemployment list essentially operates as a preference list so that when positions come open, people on that list have some sort of preferential consideration when it comes to filling positions within the district [Transcript, January 15, 2019 Pre-Trial Conference, R. 164-5 Exhibit D PageID# 4830 (*11), 4842 (*23)]. A preferred list of employment is one that gives tenured teachers preferential consideration for vacancies for which the teacher is qualified.

Per controlling precedent in Tennessee, a tenured teacher is also entitled to preferential treatment when she establishes qualification via certification, training, or experience [*Lee, Id.* 337 (citing *Randall v. Hankins*, 733 S.W. 2d 871, 874. *10].)]. Moreover, the Tenure Act requires that a tenured teacher who is qualified by established credentials be given preference for reemployment regardless of whether another applicant may be more qualified, if that more qualified individual is not tenured [*Lee, Id.* 335 (citing *Randall, Id.* at 875, reasoning that once a tenured teacher establishes her credentials and training she is entitled to preferential consideration]. The no guarantee or mandate of reemployment discussed in *Lee* as referenced by the district court only speaks to whether there are vacancies available for which tenured teachers are qualified to be considered; and

25

does not serve as a factor to deny tenured teachers reemployment [Order R. 88, PageID# 2564].

Williams was not fired for cause, because of, or according to a RIF. Due to its non-compliance with the dismissal provision of the Tenure Act the Board is liable for Williams' injuries that include reinstatement and back pay for the salary she would have earned absent the denial of reemployment up until resolution of this matter [*Jones-Tate v. Shelby Cty. Bd. Of Educ.*, No. 2:17-cv-02307-SHL-dkv (W.D. Tenn. 2018) (tenured teacher was entitled to compensation for the "full salary" during the time she was "wrongfully denied employment", as prescribed by Tenn. Code. Ann. §49-5-511 (a)(3) (citing *Kelley v. Shelby Cty. Bd. Educ.*, 198 F. Supp. 3d 842 and *Thompson v. Memphis City. Sch. Bd. Educ.*, 395 S. W.3d 616, 628 (Tenn. Dec. 2, 2012)]. Although Williams is entitled to reinstatement, that perhaps is not feasible as the Board has denied Williams reemployment; demonstrating no desire for her to ever work for the Board again. Front pay should be a consideration.

### 4. Williams' Position as the AEP Advisor Was Not Funded by the AEP Grant.

The AEP Advisor position was a certificated position. Both the job posting and position description for the AEP Advisor position did not indicate that it was funded by a grant [Resp. MSJ Ex. A Pers. File, R. 47, PageID# 351-352; Ex. J, R.

58, PageID# 1599-1601]. Williams was told, however, on her first day of employment at Messick that the position was "grant funded." Williams alleged that she was not able to perform most all the job responsibilities of the AEP Advisor position [SAMF, R. 70-1, PageID# 2361, ¶21], therefore she did not have access to the budget for the AEP program. Williams did not learn that the position was *not* funded by the grant; but by the Board via its general fund budget for the entire 2015-2016 school year until well over two years into litigation; and brought it to the district court's attention [ Mot. Sanctions, R. 218-2, PageID# 6272-75]. The Board's 2015-2016 approved school budget was submitted as evidence to support the Board's RIF for the 2014-2015 school year in *Jones-Tate, Id.* Consequently, funding existed the entire 2015-2016 school year for the AEP Advisor Position, even after the AEP grant was terminated [Exhibit E Motion Judicial Admission & Notice, R. 272-6, PageID# 7195-7662;7476 (Budget p. 265)].   For the foregoing reasons the district court's decision on Williams' Tenure Act claim should not be upheld [R. 237 ].

   B.  Williams' Due Process Rights Were Violated When She Was Fired.

        The district court was petitioned for reconsideration on this claim twice after the district court issued its initial ruling [R. 88, PageID# 2561-2566]. Despite Williams claiming that she had not been terminated for cause or placed on any list for future employment, and the Board affirming the fact in its answer [R. 1,

27

PageID# ¶31; R. 11, PageID# 29, ¶31-3], the district court reasoned that Williams' did not offer any evidence to prove that she was not on a reemployment list [R. 88, PageID# 2565]; and that even though the statute contains the language "in the system" Williams did not cite law that supports her "system-wide argument"[R. 88, PageID# 2563], however the district court's reasoning is not supported as the Tenure Act itself, along with controlling precedent in Tennessee was referenced in response to the Board's MSJ. Caselaw cited by both counsels and the district court communicates that a RIF within a LEA is the need to reduce the number of teacher positions in the system as a whole and not at a particular school within the system, at the end of the school year to be effective for the ensuing school year [See *Kelley v. Shelby Cty. Bd. Of Edu.*, 198 F. Supp. 3d 842, 846 (W.D. Tenn. 2016)(stating "at the end of the 2013-2014 school year, the projected enrollment shortfall required further system-wide reductions of teaching positions before the 2014-2015 school year" ); *Jones-Tate, Id.,* stating, " Under the Tenure Act, a tenured teacher may only be dismissed for cause or due to a system-wide reduction in force…" *6, Fn 5); *Lee, Id. at* 326-327 ( determining tenured teacher's position was abolished due to a system-wide RIF…teacher was released from current position at the end of the school year due to RIF throughout the school system); *Randall, Id., at* 872 (teacher positions were eliminated at the end of the school year)]. The *Randall* court also

28

noted that their decision was based on the fact that there was not a challenge to the validity of the RIF or the Board's actions as it relates to a RIF.

Key personnel for the Board involved with Williams' termination communicated the understanding that a RIF is system-wide. Branch's testimony regarding the Board's excessing process reveals as such [Branch 30(b)(6) Depo., R. 151, Page ID 3794-3798]. Hopson testified in his *Kelley* deposition that the language in §49-5-511 (b)(1) in regards to the necessity to reduce the number of positions in the system speaks to the system and not in terms of reducing positions in a particular school [R. 150-2 PageID# 3666-67: Tr. Pgs. 20:17-25; pg. 21:1-3]. Hopson also submitted a declaration in the *Kelley* case to support that a RIF occurred at the time the plaintiffs were dismissed; and used the terminology: "overall system-wide reduction in force…The Board…expressly approved the overall, system-wide reduction in teaching positions." [*Kelley v. Shelby Cty. Bd. Educ.*, No. 2:14-cv-02632-SHL-cgc, (W.D. Tenn. 2016); R. 40-8, PageID# 610-618].

1.  Williams Was Deprived of a Pre-Deprivation Process.

Procedural due process requires that an individual be given a fair process before being deprived of "life liberty, or property…" [*EJS Properties, LLC v. City of Toledo*, 698 F. 3d 845, 855 (6th Cir. 2012) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)]. Establishing a viable claim under §1983

requires a plaintiff to demonstrate that she was entitled to a right under the federal constitution that was violated by someone acting under color of state law; and that person's action(s) was specifically the cause of the violation. Municipal liability under §1983 occurs when the unconstitutional action is the result of a municipal policy, practice, or custom that actually caused the injury [*City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)].

It can be inferred from the record that Branch, as the superintendent's designee recommended that Williams be fired; and Hopson took ownership for firing Williams [SMF, R. 70-1, PageID# 2358-59 ¶¶5, 8, 9]. Additionally, according to the Board's RIF protocol, Hopson is the individual responsible for ensuring that the policy is followed [Trial Ex. 7; Hopson Depo. R. 60, PageID# 1781-1784]. Prior to terminating Williams Hopson understood that he did not have the authority to terminate tenured teachers, and that that authority remained solely with the Board [Hopson Depo, *Kelley* Case, R. 150-2, PageID#3666: Tr.pg. 18:1-15]. Hopson also understood that a tenured teacher who has been dismissed because of a RIF was entitled to be placed on the list pursuant to the Tenure Act [Hopson Depo., R. 60, PageID#1745-46]. Hopson was also the individual that communicated in writing placement on the list to tenured teachers dismissed because of a RIF [ See Term. Ltrs. *Kelley*, *Jones-Tate*]. The facts in this case are similar to the plaintiffs in *Kelley* only in terms of unlawful delegation of authority,

30

yet very different in that Williams claimed that she was dismissed in violation of the dismissal provision of the Tenure Act, neither protocol was followed prior to or after she was fired, whereas the *Kelley* plaintiffs did not challenge that they were dismissed because of a RIF. Unfortunately, the district court relied heavily on this Court's decision in *Kelley* regarding the tenured teachers' due process rights; using the case as a "backdrop" [Order, R. 309, PageID# 8116].

Further, Hopson nor the board evaluated Williams' competence, suitability, or compatibility as outlined in the dismissal provision in the event of a RIF [SAMF, R. 70-1, PageID# 2359, ¶9]. In the *Lee* Court, even though the teacher interviewed for several positions she was not reemployed. The Court stated that it was not the duty of the principals to evaluate the tenured teacher's competence, suitability or compatibility; and by not doing so at the time of the teacher's dismissal the board waived its right to do so [*Lee, Id*. at 336]. If Willaims was dismissed because of a RIF, evaluating her prior to dismissal was not an option, it is essential to honoring a tenured teacher's statutory priority [*Lee, Id.* at 335 quoting *Randall, Id.* at 875 (holding that "the board must consider the competence, compatibility, and suitability of the teacher for the vacant position")]. Dr. Williams has consistently contended that her termination from the school system was not for cause or a RIF. Her argument has ***never*** been as phrased by the

31

district court that the AE Advisor position was eliminated to avoid dismissal for cause [Order, R. 88, PageID# 2564].

This case is analogous to *Thompson, Id.* The plaintiff in *Thompson* was not dismissed for cause or under a RIF. The Board did not comply with either instance under which a tenured teacher could be dismissed from the LEA; and the head of labor relations terminated her employment. Likewise, Williams was terminated by someone other than the Board and not granted any of the protections outlined in the dismissal provision of the Tenure Act that are essential prior to termination and post dismissal in the event of a RIF.

Hopson fired Williams prior to the end of the year and she was not given the opportunity to participate in the Board's "excessing" process [Transcript, R. 314, PageID# 8167-8168]. She never claimed that she was "improperly" excessed" [Complaint, R. 1, PageID# 1-10 ; R. 206-4, PageID# 5560-64]. The Defendant acknowledged that Williams did not specifically allege in her complaint that the Board failed to properly excess her in violation of the Tenure Act [Def. Memo. Tenure Act, R. 122, PageID# 3292-93]. Williams offered testimony and documentary evidence to support each element to her claim under §1983: 1) she had a property interest in continued employment, 2) Hopson acted under the color of state law when he fired her, 3) resulting in an injury to Williams which stemmed from a common practice or custom of the Board to allow others beside

32

the Board to terminate tenured teachers, as evidenced by prior lawsuits; the Board's failure to take remedial action to prevent the common practice in the future; and failure to allow Williams to participate in its "excessing" process along with placement on a preferred list for employment [R. 305, PageID# 8062-8091].

The district court limited Williams' claim under 42 U.S.C. §1983 to a reemployment list, however Williams' termination without cause violated her due process rights also. The Board failed to ensure that Williams' dismissal followed one of the two protocols for which a tenured teacher may be dismissed from a LEA. The Board's acquiesce in the custom/policy of Hopson and or others terminating tenured teachers without the legal authority to do so; the exclusion of Williams from the excessing protocol which also led to the failure to place Williams on the preferred list for employment was also a random and unauthorized act. Even if the Board's 2018 Resolution was applicable to Williams, it could not undue the violation of Williams' due process rights.

    2.   Williams is Entitled to Damages for Being Deprived of her Right to Due Process.

The Board insists that Williams' property interest did not require them to "interview, hire, or place…" her "…into an actual employment position nor was the timeframe in which Defendant took to add Williams' name to [ their reemployment] list unreasonable" [Post Trial Brief, R. 306, PageID# 8102]. The

33

Case: 22-5591    Document: 12    Filed: 09/28/2022    Page: 43

district court echoed the Board's sentiment in its ruling when it communicated, Williams was not guaranteed employment, the Board was not obligated to place her on a reemployment list until her termination was brought into compliance with the Tenure Act, and she failed to show any harm connected to the Board's delay in placing her on their reemployment list [Order, R. 309, PageID# 8120, 8128, 8133]. The Board's position and the district court's adaptation of the Board's position has no legal support and is in direct opposition to the letter and spirit of both the Tenure Act and the Fourteenth Amendment to the U.S. Constitution.

The district court's order on the §1983 claim should be reversed because Williams demonstrated that she was deprived of her property interest [R. 305, PageID# 8062-8091]. Section 1983 provides a remedy when rights protected by the United States Constitution or other federal statutes are violated [*Thompson, Id.*; *King v. Betts* 354 S.W. 3d 691, 702 (Tenn. 2011) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994). A plaintiff may prevail on a §1983 claim by either (1) demonstrating that she is deprived of a property interest as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived her of property interest pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss [*Moore v. Bd. of Educ. of the Johnson City Schs.*, 134 F. 3d 781, 785 (6th Cir. Tenn. 1998)]. Williams has proven both elements. The

34

Tenure Act provides a remedy only for base pay if a teacher is terminated in violation of the Act, therefore remedy under the Tenure Act is not adequate.

In *Thompson, Id.* the teacher was entitled to recover compensatory damages (mental anguish, accumulated sick leave, retirement, salary benefits) in addition to back pay under the Tenure Act. The trial court premised a portion of the tenured teacher's award on §1983 to "circumvent the argument—-a vindicated teacher …is not entitled to recover …career ladder benefits, vacation days, sick days, retirement contribution, or social security contribution" [*Thompson, Id*. citing *Mumford v. Bd. Educ. of Memphis,* 173 S.W. 3D 452, 457 (Tenn. Ct. App. 2004)]. Additionally, as a prevailing plaintiff in §1983 action, Ms. Thompson was entitled to recover reasonable attorney fees pursuant to §1988 [*Thompson, Id*.; *Maine v. Thiboutot,* 448 U.S. 1(1980)]. Just as in *Thompson* Williams is entitled to damages for her injury to include: attorney fees and expenses, front pay, out-of-pocket expenses, impairment of reputation, lost earnings, financial and psychological injuries, and other applicable damages caused by the Board's wrongful conduct (*Memphis Community School District v. Stachura,* 477 U.S. 299, 307 (1986) (citing *Carey v. Piphus,* 435 U.S. 247 (1978); See also Comp. R. 1, PageID# 9].

C. The District Court Erred in Granting Summary Judgment to the Board.

   Standard of Review

35

The district court entered summary judgment on Williams' Title VII claim for retaliatory termination, Retaliation under the First Amendment to the Constitution and §1983; and Retaliation under the Tennessee Public Protection Act Tenn. Code Ann. §50-1-304. When reviewing a district court's decision to grant summary judgment, this Court applies the *de novo* standard of review for legal conclusions supporting the summary judgment [*EEOC v. Harris Funeral Homes, Inc.*, 884 F. 3d 560 (6th Cir. 2018) (citing *Doe v. Salvation Army in U.S.*, 531 F. 3d 355, 357 (6th Cir. 2008)].

1. Williams' Termination Violated the Retaliation Provision of Title VII.

    a. Hopson Fired Williams via Unlawful Delegation of Authority, Therefore Her Termination Was Not Legitimate.

During the MSJ stage, the only adverse action that the Board addressed was the termination aspect of Williams' claim [R. 88, PageID# 2571, 2573, 2574]. As consistently argued throughout this litigation, the Board's reasoning for Williams' termination is false and Hopson did not have the authority to fire Williams. Even without documentary evidence and testimony to support a RIF the district court believed the Board's reason for Williams' termination thus this aspect of the retaliation claim did not survive summary judgment [R. 88, PageID# 2574-2578]. Williams ultimately decided to forfeit her claim as it relates to harassment, write ups, referrals to labor relations, and negative job evaluation.

b. An Invalid Termination Along with a False Reason for the
Termination Should Have Prevented Summary Judgment in
Favor of the Board.

Fundamental to any defense involving a Title VII retaliation claim to avoid

liability once a plaintiff has established a *prima facie* case of retaliation the

Defendant has to offer a legitimate non-discriminatory reason to rebut the *prima*

*facie* case [*Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (citing

*Nguyen v. City of Cleveland*, 229 F.3d 559, 562(6th Cir. 2000)]. But before that, it

is understood that the termination should be legitimate. Williams' termination was

not legitimate. Although years after the MSJ stage, the district court determined

that Hopson terminated Williams via unlawful delegation of authority thus

violating the Tenure Act [Order, R. 237, PageID# 6940]. The Board 's reason for

terminating Dr. Williams shifted from lack of funding: state terminating the AEP

grant contract [Williams Term. Ltr. R. 60, PageID# 1780; Answer to EEOC

Complaint, R. 186-13, PageID# 5112-13]; to about two years later an alleged RIF

[R. 42, PageID# 120-143]. Proof of discriminatory motive may be inferred from

the falsity of the employer's explanation for the treatment…", in this instance

termination [*Dunlap v. TN Valley Authority*, 519 F. 3d 626, 630 (6th Cir.

2008)(citing *Reeves v. Sanderson Plumbing Products, Inc..*, 530 U.S. 133, 147

(2000); See also *Thurman v. Yellow Freight Sys.*, Inc. 90 F. 3d 1160, 1167 (6th Cir.

1996) (stating "An employer's changing rationale for making an adverse

employment decision can be evidence of pretext")]. Absent a valid termination and proof of a RIF at the time Williams was fired; the inquiry should have ended and judgment should have been entered against the Board.

Prior counsel advanced vicarious liability via the Cat's Paw theory to assign responsibility for Williams' termination to Branch, as she recommended Williams be fired and had knowledge of her protected activities. It was not necessary as Hopson was the decision-maker aware of her protected activity, as he along with Williams signed the EEOC Negotiated Settlement [SUMF, R. 70-1 PageID# 2360, ¶16]. Further, Ray sent a memo to Hopson and Dr. Heidi Ramirez-Chief Academic Officer- regarding the termination of the AEP grant contract. Having not met Dr. Williams and without communicating with her regarding the grant termination, Ray assigned some culpability to Dr. Williams for the loss of the grant [Ray Depo., R. 53, PageID# 1065; Hopson Depo. R. 60, PageID# 1773-75; 1787-89; R. 42-6, PageID# 215-220]. Hopson acknowledged a conversation with Ray about the grant termination; but was unable to recall specifics [Hopson Depo. R. 60 PageID# 1774: 15-20].

c. Williams Was Fired Because of Her Protected Activity.

Equally important is that the Board cannot justifiably argue that Hopson would have still fired Williams because he did not have the authority to do so.

38

Further, funding for the AEP Advisor position did not go away when the AEP grant was terminated. Absent a RIF, termination for cause, the lack of funding for the AEP position, the only other reason for Williams' termination was her protected activity [SUMF, R. 70-1, PageID# 2362, ¶30]. "To prevail on a retaliation claim a plaintiff must "establish that his or her protected activity was a but for cause of the alleged adverse action by the employer" [*University of Texas SW. Med. Ctr. v. Nassar*, 570 U.S. 388 (2013); See *EEOC v. Ford Motor Co.,* 782 F.3d 753, 770 (6th Cir. 2015)]. A failure to address the other adverse actions along with a false reason for an illegitimate termination means that an issue of fact did not exist.

2. The Board Failed to Rehire Williams.

In Williams' Motion for Reconsideration [R. 215-2, PageID# 6141-6159] of the district court's order [R. 207, PageID# 5958-5970] on the failure to rehire she argued that she could maintain her claim of failure to rehire because it was reasonably expected to grow out of her claim of retaliation; the failure to rehire was reflected in her complaint [R. 1] and response to the Board's MSJ [R. 46, PageID# 287-288]; and she was not required to file additional EEOC charges in response to the Board's continued retaliation after filing her charges and claim.

a. Williams' Title VII Claim of Retaliation Encompassed the Failure to Rehire; and Was Properly Exhausted.

39

To support its ruling the district court decided Williams' contention of failure to rehire, could not be expected to grow out of the EEOC charge of discrimination, Williams waited to a late stage of litigation to assert the claim, her affidavit was self-serving, she did not satisfy exhaustion requirements; and ruled Williams' motion moot [Order, R. 207, PageID# 5969-70]. The district court's reasoning is not supported by the record. First, Dr. Williams' claim was a claim of retaliation [R. 59-1, PageID# 1695-97; R. 185-3, PageID#4987-88; R. 185-4, PageID# 4989-4990] stemming from a charge based on age and race discrimination [R. 50-1, PageID# 869); R. 207, PageID# 5966]. Any retaliation that stems from an EEOC charge of retaliation logically flows from that charge; and any charge of retaliation that stems from the EEOC charge itself is considered exhausted [*Scott v. Eastman Chem. Co.*, 275 F. App'x. 466, 474 (6th Cir. 2008)].

The failure to rehire in this case is interconnected with the denial of reemployment under the Tenure Act claim, as the Board was required to consider Williams for comparable positions; and has not [Tenn. Code Ann. §49-5-511 (b)(1-4 (A)(B) ]. The refusal to place Williams on a preferred list for employment, to contact or grant Williams interviews for vacancies for which she was qualified amounts to retaliation [Transcript, R. 314, PageID# 8183-84]. Continued retaliation against Williams because of the EEOC charges and subsequent litigation also should not have permitted the district court to grant summary

40

judgment to the Board. The denial of reemployment and the failure to rehire are

not mutually exclusive in this context and under these circumstances. The extent

that Williams complied with Title VII's preconditions to suit, the Board may

properly be held liable under Title VII for Williams' claims under §1983 as well

[*Alexander v. Fulton County GA*, 207 F. 3d 1303 (Ct. Appeals 11th Cir. 2000)].

More specifically, based on this Court's precedent: exhausting administrative

remedies is not necessary when putting forth a retaliation claim that stems from an

earlier charge for three reasons: 1) the district court has jurisdiction when the claim

stems from a charge that is already "properly" before the court; 2) retaliation

claims have a tendency to occur after the filing of a EEOC charge; and 3) not

requiring a plaintiff to file additional charges promotes efficiency [*Ang v. Procter*

*& Gamble Co.*, 932 F.2d 540, 546-47 (6th Cir. 1991) quoting *Gupta v. E. Texas*

*State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981)].

   b. The Board Had Numerous Opportunities to Rehire Williams; but Chose
      to Deny Her Reemployment.

   The Board failed to reemploy Williams when there were opportunities

available for which she was qualified to include 100+ vacancies for which she

demonstrated her credentials; and at least twenty-six instructional vacancies in

Williams' endorsement area of Family and Consumer Sciences (for which the

Board hired non-tenured and/or non-certificated individuals without notifying

Williams of the vacancies and giving her an opportunity to interview) [Trial

Exhibit 9 Interr. *Jones-Tate* List of New Hires: R. 314, PageID# 8263-8278;

Exhibit A to Mot. for Judicial Adm. & Notice., R. 272-2, PageID# 7157-7162; See

also R. 41-10 PageID# 432-445 & R. 38-1, PageID# 218-256]. Most of the

positions for which Williams applied were teaching positions as they required

teacher certification [Williams' Fifth Affidavit, R. 155-1, PageID# 4289-4290].

Tennessee legislature considers all certificated personnel employed by a LEA a

"teacher" [Tenn. Code Ann. §49-5-501 (10)].

Failure of the Board to allow Williams to participate in the Board's

"excessing" protocol and place her on a preferred list for employment pursuant to

the Tenure Act at the time of her dismissal prevented her from being considered

for vacancies for which she was qualified. The Board also highlighted that it made

the "decision to deny her [Williams] subsequent employment" [MSJ, R. 185-1,

PageID# 4973-4982,4980; Response, R. 189, PageID# 5206-5216; Reply R. 190,

PageID# 5243-5249]. In its Reply the Board's counsel (not the Board or any of its

officials) stated, "she was not selected for one of the 100+ positions because she

was not "the most qualified candidate []available" according to the Board

Application and Employment Policy [R. 190, PageID# 5246-47]. The Board's

hiring activity obtained via an open records request contradicts this assertion. What

is more, the letter Williams received on the evening of January 15, 2019 dated

January 11, 2019 notifying her of the Board's resolutions, still did not indicate that Williams was placed on the list pursuant to the Tenure Act [Trial Exhibit 5, R. 314, PageID# 8180-82; Transcript, R. 314, PageID# 8178-79; Tenure Brief, R. 150, PageID# 3643]. In fact, Branch testified that the content of the letter was different due to litigation [ *Id*, PageID# 3643]. In other words, Williams was still not placed on a list to be interviewed and considered for vacancies for which she was qualified pursuant to the Tenure Act because of her lawsuit against the Board. These actions equate to retaliation, therefore the district court erred in its decision.

### 3.   Retaliation Under the First Amendment

The district court dismissed Williams' claim for retaliation under the First Amendment to the U.S. Constitution, without a complete analysis under the standards. The district court emphasized that the First Amendment did not protect Williams' speech by concluding that Williams had 1) a "ad-hoc" or "de facto" duty to report concerns regarding testing fraud and misappropriation of grant funds to state officials, 2) her communications with state officials overseeing the AEP grant did not constitute protected speech, 3) her reporting to state officials  was her speech that arose from her job and was "not about matters outside of her official job duties, and 4) her reporting fraud was "to advance the ordinary responsibilities of her employment"[R. 88, PageID# 2559-2561]. The district court overlooked key factors.

43

The district court did not address whether Williams' speech was a matter of public concern and only elaborates on whether she was speaking as a private citizen. To arrive at its conclusion that Williams was not speaking as a private citizen the district court relied on the AEP Advisor position description as emphasized by the Board, however this reliance is misplaced. *Garcetti, et al v. Ceballos*, 547 U.S. 410, 421 (2006) citing *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410 (1979) reasoned that the First Amendment protects some expressions related to the job; and is instructive regarding formal job descriptions by communicating that they often do not resemble the actual duties that the employee is required to perform [*Id.* at 425]. Further, duties listed on a job description are not necessary or sufficient to demonstrate that completing the duties is encompassed in the employee's professional duties for purposes of the First Amendment [*Id.* 425]. The impetus is on the employee's actual responsibilities.

Central to Dr. Williams' claims was that she was not allowed to perform her job responsibilities as the AEP Advisor in retaliation for her protected activities [SUMF, R. 70-1, PageID# 2361 ¶21]. Further, Griffin when questioned about Dr. Williams' job duties as listed on the job description testified that she was not allowing Williams to carry out her job responsibilities; if she had allowed her she would not be able to; and she did not ever allow Williams to perform the job

44

responsibilities of the position to determine if she would fail [SUMF, R. 70-1, PageID# 2361, ¶21; See also Griffin Depo., R. 54-1, PageID# 1295: 11-20]. Williams' testimony, emails to Barnes and Lloyd regarding retaliation, [R. 54, PageID# 1100-1102; Disp. File, R. 58, PageID# 1673-1674] along with Griffin's deposition testimony supports Williams' contention. Further, Williams could not have had a de facto responsibility of reporting alleged fraud and financial improprieties as she also received disciplinary actions for reporting to the State, prior to her termination [SUMF, R. 46-1, PageID# 312, ¶¶ 53-55; SUMF, R. 70-1, PageID# 2361, ¶27].

The district court also misconstrues the nature of the relationship of the Board and the State in this case. The state is a governmental agency in which the Board had accountability to regarding public funding (state and federal), therefore there was not a "ad-hoc" or "de facto" duty to report as referenced in *Weisbarth v. Geauga Park Dist.* 499 F. 3d 538, 544 (6th Cir. 2007)]. A third- party consultant hired to work on behalf of an employer is not equivalent to a LEA owing accountability to a state agency regarding public funding. In fact, the First Amendment provides strong protections for public employees who expose possible corruption with public funds [*Kline v. Portage Cty Bd. Comm'r s*, 5 F. Supp. 3d 902 (N.D. Ohio 2014) citing *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 543 (6th Cir. 2012)].

4. Tennessee Public Protection Act (TPPA)

45

Without providing thorough analysis in relation to Williams establishing a *prima facie* case under TPPA [Tenn. Code Ann. 50-1-304] the district court granted summary judgment to the Board. The district court did not analyze Williams' TPPA claim as it communicated it only needed to focus on whether Williams' termination was solely the result of her allegations regarding illegal activities associated with the grant [Order, R. 88, PageID# 2567]. Consequently, the district court ruled on the premise that everyone whose positions depended on the AEP grant was terminated, and the AE Advisor position was grant funded, therefore a jury could not conclude that Williams was terminated solely for her protected activity [*Id.*, PageID# 2567]. The district court's position was based on both unsupported and false facts.

Further the district court communicated, "Plaintiff cites no law requiring the SCS to transfer her to a new position, rather than terminate her employment altogether" [Order, R. 88, PageID# 2567]. The district court is mistaken, because the Tenure Act was cited and does not authorize a LEA to terminate a tenured teacher before the end of a school term without cause; neither allows dismissal of a tenured teacher outside of a RIF. The Tenure Act and Tennessee caselaw is unambiguous as to the rights of tenured teachers in the event of a dismissal. The Board had a responsibility to consider Williams for all comparable positions for which she could demonstrate credentials [Tenn. Code Ann. §49-5-511 (b)(4)(1-2)]. The record reflects that she demonstrated credentials for positions for which she knew about

46

and applied pre and post her last day of employment [Trial Exhibit 4 List of Applied Jobs, R. 186-14, PageID# 5114-5125; R 185-15, PageID# 5126-5137; R. 191-2, PageID# 5263-5277]. The Tenure Act does not dictate specific types of positions for which a tenured teacher may be considered. Additionally, the record in its entirety also reveals that the Board hired individuals (some of whom did not have the proper teaching credentials and most all with the exception of one, were not tenured) for positions for which Williams was qualified, not informed of, or considered via direct placement or granting an interview [Trial Ex. 6 New Hires' State Licensure Reports: R. 272-3, PageID# 7163-7188]. Funding for the AEP Advisor position for the entire year, the availability of other positions within the system for which Williams was qualified and not considered along with the applicable Tenure Act debunks the Board's argument and the district court's opinion, that Williams had to be terminated altogether from the system.

Williams contends that the Defendant is still liable under TPPA as the Board is required to present a legitimate non-discriminatory reason for Williams' termination to avoid liability. "[T]he employer must proffer evidence that, even if retaliation was a motivation for the discharge, there was at least one non-retaliatory reason as well" [*Williams v. City of Burns*, 465 S.W. 3d 96, 115 (Tenn. 2015)]. The Board cannot provide a rebuttal because Williams' termination was not legitimate as it violated Tennessee state laws; and the reason provided to the district court for

Williams' termination was false. Williams' prior counsel offered testimony and evidence to support a *prima facie* case under TPPA, therefore her claim should have been evaluated on the merits.

### D. The District Court Abused Its Discretion In Making Significant Rulings that Caused Prejudice to Williams.

Standard of Review

An analysis of abuse of discretion is necessary. This Court reviews a district court's evidentiary rulings for an abuse of discretion, which occurs when the court "relies on clearly erroneous findings of fact, improperly applies the law, or employs an erroneous legal standard."[*Griffin, et al v. Finkbeiner* 689 F. 3d 584 (6th Cir. 2012)(citing *Barner v. Pilkington North Am., Inc.*, 399 F. 3d 745, 748 (6th Cir. 2005)(quoting *Beck v. Haik*, 377 F. 3d 624, 636 (6th Cir. 2004]. All three of the standards for abuse of discretion are present in this case and provides justification for usurping the deferential standard.

1. Williams Objected to the District Court's Decision to Allow Introduction of the Board's 2018 Resolution.

In the Tenure Brief, prior counsel provided reasons why the 2016 and 2018 Resolutions were not applicable to Williams [R.150, PageID# 3639-3660]. The post hoc resolutions could not cure Williams' termination. Further, according to Ervin the email sent to the board members discussing the 2018 Resolution prior to

48

the board meeting did not mention Williams [R. 156, PageID# 4340, 4344-45; 4350]; and the Board never discussed Williams and the circumstances surrounding her termination at its meeting in which it approved its 2018 Resolution [Ervin Depo., R. 156, PageID# 4306-4313]. The resolution in October 2018 did not and could not bring Williams' termination into compliance with the Tenure Act because Williams was not terminated for either reason described in the dismissal provision of the Tenure Act.

2. The district court abused its discretion allowing the Board to file a second MSJ and plead an affirmative defense of failure to exhaust administrative remedies after its summary judgment ruling without requiring the Board to demonstrate good cause under Federal Rule Civil Procedure 16 (b). To justify its decision, the district court averred that Williams raised a claim of failure to rehire late in the litigation process [R. 207, PageID# 5962]. The record contradicts the district court. The complaint [R. 1, PageID#1-10], and questions presented through discovery address the failure to rehire [R. 164-3, PageID# 4785, 4798, 4811]. Williams' prior counsel pointed out to the district court that the failure to rehire was not a new claim, it was always considered and listed [Transcript R. 213, PageID# 6130-6132]. Additionally, prior counsel argued in response to the Defendants Motion in *Limine* [R. 109, PageID# 3046-3052] that the Defendant waived its right to defend based on exhaustion of administrative remedies as it failed to assert this affirmative

defense in its answer or otherwise plead it [R. 118, PageID# 3136-3142]. The Court did not rule on the Response to Defendants Motion in *Limine* and Motion for Reconsideration of Order on Motion in *Limine* [R. 132, PageID# 3451-56].

In deciding to allow the Board to file a second MSJ the district court also communicated that it was "…maybe an oversight on everybody's part"[R. 213, PageID# 6130-32, 6140] despite plaintiff's previous counsel emphasizing, that the failure to rehire was addressed in the complaint and the response to the Defendant's MSJ. The failure to address a critical aspect of Williams' claim on the part of the Board and the district court should not have served as justification to allow a second MSJ. The district court also placed emphasis on what is not included on the face of the EEOC charges as an indication that Dr. Williams did not allege a failure to rehire [R. 207, PageID# 5968]. Even in considering the scope of the EEOC investigation test, this Court has acknowledged that a judicial complaint does not have to be "…tied to the four corners of the one-page form document under all circumstances" [*Duggins v. Steak 'N Shake, Inc.,* 195 F. 3d 828, 832 (6th Cir. 1999) citing *Ang. Id. at* 545].

3. The district court allowed the Board's introduction of an email exchange "reemployment list communications" after deposition testimony from Jones revealed that the Board did not have a reemployment list [Trial Ex. 10 (Proposed Pre-Trial Order Exhibit A, R. 273-1); Tenure Brief, R. 150, PageID# 3641, Fn 4;

50

Resp. Reply Brief, R. 206-6, PageID# 5906-5907]. Williams objected to the list at its initial introduction and during trial on the grounds that Jones was aware of the email prior to his deposition testimony as he was a party to the email, yet still testified that the Board did not have a reemployment list, and the list contained in the email is just an older version of Jones' spreadsheet [Trial Ex. 8; R. 305, PageID#8079; 8081-82], which he testified was not a reemployment list [Transcript, R. 314, PageID# 8328-8334].

4. Williams petitioned the district court for judicial admission and notice [R. 272-1, PageID#7146-7156]. The district court's ruling resulted in prejudice to Williams. First, the district court orally denied Williams' motion for judicial admission related to the list pursuant to the dismissal provision of the Tenure Act. Second, the district court limited evidence regarding the Board's hiring decisions obtained via an open records request. The district court partially sustained the Board's objection to Williams' exhibit containing a summary chart of the list of new hires in Family and Consumer Sciences ("FACS") along with their applicable state licensure information, hire date, and assigned school location [Trial Exhibit 6, Transcript R. 314, PageID# 8184-8193]. This information, requested during discovery, yet not provided by the Board was critical to Williams' claims [Discovery Req., R.164-3, PageID#  4787-88;4794, 4796, 4798, 4801-02, 4813-14]. Williams satisfied the requirements of F.R.E. 1006 for the summary chart to

be admissible: 1) the information summarized was too voluminous for in court examination; 2) the documents underlying the summarized charts are admissible, 3) the original materials were made available to the Board for examination in advance of trial; and 4) the summary chart of FACS new hires accurately reflected the contents of the original materials [Mot. Judicial Admission & Notice., R. 272-2 Ex. A Instructional New Hires]. Williams inquired of the district court well in advance of trial as to how the information should be uploaded if necessary and the district court ignored her requests [*Id*. R. 272-1, PageID# 7153, Fn 4; Post Trial Brief R. 305, PageID# 8087].

5. Despite established precedent dealing with the Tenure Act and the preferred list for employment that has been imbedded in the statute since enacted, the district court communicated that whether the Board placed Williams on their reemployment list does not apply to the Tenure act [See *Randall, Id*, and *Lee, Id.*; Order, R. 237, PageID# 6942-43]. In its ruling the district court also erred in limiting Williams' damages, and not granting post-judgment interest. The district court awarded Williams back pay up until the Board's 2018 Resolution, plus pre-judgment interest; and excluded applicable raises Williams would have received had she not been terminated [R. 237, PageID# 6942-43; R. 246, PageID# 7004; R. 254, PageID# 7062-7063]. The court also entered judgment on the Tenure Act claim to finalize the prejudgment interest award [ R. 254, PageID# 7063 fn. 5].

Williams' pre-judgment interest was cut off at the time the Board's motion to deposit funds to the court was granted [Order, R. 261, PageID# 7092-93] and she was not granted post-judgment interest as required under Tennessee law [Tenn. Code. Ann. §47-14-121; §47-14-122]. Per Tennessee Rules Civ. P. 67.04 advisory committee comments: "The losing defendant cannot avoid post-judgment interest due under T.C.A. §47-14-121 by depositing the verdict amount into the trial court clerk's office." Williams' termination was not, has not been, and cannot be brought into compliance with the Tenure Act.

6. The district court determined that Jones- (who retired from the Board in August 2019, about five months after his deposition testimony) was credible. In referencing Jones' trial testimony, the district court did not provide citation to the record. The district court described Jones' testimony as "…somewhat murky… unclear, confusing at times…" [Order, R. 309, PageID#8121, 8123, 8125]. Between January 2019 and Jones' retirement, there were at least three non-tenured new hires in FACS, and he did not notify Williams of the vacancies so that she could interview. Further, the Board still did not provide its actual reemployment list [Order, R. 309, PageID# 8124]; and the district court acknowledged that the Board's Trial Exhibit 10 was not the Board's "official reemployment list" [Order R. 309, PageID# 8123]. Jones' testimony at trial was internally inconsistent; both confirmed and contradicted his deposition testimony that the Board did not have a

53

Case: 22-5591    Document: 12    Filed: 09/28/2022    Page: 63

reemployment list [Resp. Reply Brief, R. 206-6, PageID# 5906-5907]. Even more significant, Jones' testimony revealed that the Board's reemployment list differed from the preferred list for employment pursuant to the Tenure Act and the Board did not have a preferred list for employment [Transcript, R. 314, PageID# 8231:13-25; 8232:1-25; 8233:1-15; 8255:13-22; 8343: 5-25; 8344; 8345:1-2].   A court of appeals may find clear error in findings based on credibility determinations where documents or objective evidence contradicts the witness [*Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) (citing *United States v. United States Gypsum Co*., 333 U.S. 364 (1948))].

## VI. CONCLUSION

Williams a tenured teacher was fired by Hopson without a pre-deprivation process: she was not terminated for cause or a RIF; and she was excluded from the Board's "excessing" process and not placed on a preferred list for employment that is mandated by the Tenure Act. These actions failed not only statutory requirements of the Tenure Act but due process requirements. Consequently, Williams respectfully requests relief as follows:

Williams requests that this Court reverse the district court's decision to cut off Williams' damages under the Tenure Act up until October 2018 , make a ruling based on the evidence and testimony on record, and grant judgment in favor of Williams on her Tenure Act claim and Due Process claim.

Additionally, because Williams' termination was not legitimate or the result of a RIF she also requests this Court reverse the district court ruling on her Title VII Retaliation claim for termination, to include analysis of the Board's failure to rehire her on the merits to grant judgment in her favor; and remand back to the district court to recalculate Williams' damages in regard to back pay, front, pay, attorney fees, pre and post judgment interest, and other applicable damages.

Williams requests that this Court remand the case back to the district court, if deemed necessary, to analyze Williams' claims for Retaliation under the First Amendment to the U.S. Constitution and Retaliation Under TPPA.

Respectfully Submitted,

SONYA P. WILLIAMS
3995 Point Church Rd.
Memphis, TN 38127

## CERTIFICATE OF COMPLIANCE

### IT IS HEREBY CERTIFIED

That the foregoing brief complies with the typeface requirements in Fed. R.

App. P. 32(a)(5); and the type volume limitation provided in Fed. R. App. P. 28.1

(e)(2). It has been prepared in a proportional type-Times New Roman- (14 point)

font using Microsoft Word v. 2010, containing 12,999 words. It excludes the parts

of the petition exempted by Rule 32(f).

SONYA P. WILLIAMS
3995 Point Church Rd.
Memphis, TN 38127
williamspw5269@yahoo.com
*Pro Se* Litigant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via the United

States Postal Service, on the following counsel of record for the Board, this 26th

day of September 2022.

> Rodney G. Moore (TN Bar No. 31929)
> DENTONS US LLP
> 303 Peachtree St., NE, Suite 5300
> Atlanta, GA 30308
> Telephone: 404.527.4000
> rodney.moore@dentons.com

SONYA P. WILLIAMS
*Pro Se Litigant*

57

DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b), Plaintiff/Appellant/ designates the

following filings in the record below as relevant to this appeal:

| Description | District Court Record Entry | Identifier |
|---|---|---|
| Complaint | 1 | PageID# 1-10 |
| Answer | 11 | PageID# 25-34 |
| Emergency Motion to Stay Any and All Remaining Deadlines pending Det. Of Settlement | 35 | Sealed Emergency Motion |
| Court Order on Emergency Motion to Stay | 37 | PageID# 114 |
| Proceeding Held Before the court | 39 | Minute Entry |
| Def. MSJ | 42, 42-1-42-4 | PageID# 120-159 |
|  | 42-5 | PageID# 160-208 |
|  | 42-6-42-12 | PageID# 209-263 |
| Pl. Resp. MSJ | 46-1 | PageID# 272-298 |
|  | 46-2 | PageID# 299-322 |
|  | 46-3 | PageID# 323-324 |
| SCS Board Minutes Ex. R Part I | 61 | PageID# 1806-1954 |
| SCS Board Minutes Ex. R Part II | 62 | PageID# 1955-2119 |
| Def. Reply in Support of MSJ | 70 | PageID# 2345-2357 |
| Pl. Sur-Reply to Def. MSJ | 76 | PageID# 2373-2379 |
|  | 76-1 | PageID# 2380-2398 |
|  | 76-2 | PageID# 2399-2459 |

| | | |
|---|---|---|
| | 76-3 | PageID# 2460-2518 |
| Court Order on Def. MSJ | 88 | PageID# 2549-2581 |
| Pl.'s Reply to Def. Motion in *Limine* (Williams' 2nd Affidavit) | 101 | Sealed |
| Def. Memo. Teacher Tenure Act Claim | 122 | PageID# 3292-3301 |
| Pl. Deposition Duces Tecum | 125 | PageID# 3340-3347 |
| Pl. Resp. to Def. Memo Teacher Tenure Act Claim | 150 | PageID# 3639-3660 |
| 30(B)(6) Depo. Of Jennifer V Ervin-Video Transcript of the Board 2018 Resolution | 156 | PageID# 4306-4313 |
| Transcript Pre-Trial Conference January 15, 2019 Exhibit D to Pl.'s Mot. Reconsideration | 164-5 | PageID# 4820-4887 |
| Def. MSJ Title VII Failure to Rehire | 185-1 | PageID# 4973-4982 |
| | 185-2 | PageID# 4983-4986 |
| | 185-3 | PageID# 4987-4988 |
| | 185-4 | PageID# 4989-4990 |
| | 185-5 | PageID# 4991 |
| Pl. MSJ Title VII Failure to Rehire | 186 | PageID# 4992-4993 |
| | 186-1 | PageID# 4994-5013 |
| | 186-2 | PageID# 5014-5024 |
| | 186-3 (Ex. A) to 186-17 (Ex. O) | PageID# 5025-5147 |
| Pl.'s Resp to Def. MSJ | 188 | PageID# 5148-5166 |
| | 188-1 | PageID# 5167-5173 |

| | 188-2 (Ex. A) to 188-7 (Ex. F) | PageID# 5174-5205 |
|---|---|---|
| Def. Resp. in Opp to MSJ | 189 | PageID# 5206-5217 |
| | 189-1 to 189-2 | PageID# 5217-5242 |
| Def. Reply to Response to MSJ | 190 | PageID# 5243-5250 |
| Pl.'s Reply to Response in Opposition to MSJ | 191 | PageID# 5250-5256 |
| | 191-1 | PageID# 5257-5262 |
| | 191-2 to 191-6 | PageID# 5263-5419 |
| Order on Motion to Certify Questions | 192 | PageID# 5420-5430 |
| Order Certifying Questions to Supreme Court of Tennessee | 193 | PageID# 5431-5435 |
| Notice of Mandate from Supreme Court of Tennessee | 200 | PageID# 5447 |
| Order Granting Def. Partial MSJ & Denying as Moot Pl.'s Partial MSJ | 207 | PageID# 5958-5971 |
| Transcript Status Conference June 1, 2018 | 216 | PageID# 6167-6177 |
| Pl.'s Motion for Sanctions | 218 | PageID# 6262-6265 |
| | 218-1 | PageID# 6266-6268 |
| | *218-2 | PageID# 6269-6289 |
| | 218-3 | PageID# 6290-6307 |
| Order Granting Mot. for Rev. Interlocutory Order & Denying Pl.'s Mot for Rev. of Interlocutory Order on Remainder of Claims; Denying Def. Motion for Attorney Fees | 220 | PageID# 6308-6330 |

60

| | | |
|---|---|---|
| Order Denying Pl.'s Mot. Rev. of Interlocutory Oder Title VII Failure to Rehire Claim | 221 | PageID# 6331-6340 |
| Order Denying Motion for Sanctions: Magistrate Judge Jon. A. York | 234 | PageID# 6421-6424 |
| Order on Pl.'s Teacher Tenure Act Claim | 237 | PageID# 6935-6948 |
| Order on Damages Pl.'s Teacher Tenure Act Claim | 246 | PageID# 6999-7007 |
| Order Granting in Part Pl.'s Motion to Reconsider and Calculating Pre-judgment interest | 254 | PageID# 7054-7063 |
| Pl.'s Mot. Judicial Admission and Judicial Notice | 272 | PageID# 7143-7145 |
| | 272-1 | PageID# 7146-7156 |
| | 272-2 to 272-6 | PageID# 7157-7662 |
| Def. Mot. for Reconsideration re 220 Order on Motion for Reconsideration | 280 | PageID# 7787-7795 |
| | 280-1 to 280-2 | PageID# 7796-7811 |
| Pl.'s Motion for Entry of Judgment under Rule 54(b) | 293 | PageID# 7884-7886 |
| | 293-1 | PageID# 7887-7894 |
| | 293-2 to 293-3 | PageID# 7895-7898 |
| Def. Resp. in Opposition to Motion for Entry of Judgment | 294 | PageID# 7899-7906 |
| | 294-1 to 294-2 | PageID# 7907-7912 |
| Def. Motion for Leave to File First Amended Answer | 296 | PageID# 7929-7932 |
| Pl.'s Response to Def. Motion for Leave to File First Amended Answer | 298 | PageID# 8019-8036 |

| Order Denying Motion for Entry of Judgment under Rule 54 (b); Denying Motion for Leave to File amended Answer | 303 | PageID# 8052-8061 |
| Order 42 U.S.C. §1983 | 309 | PageID#8109-8134 |
| Judgment | 310 | PageID#8135 |

Addendum 1

---

West's Tennessee Code Annotated
   Title 49. Education
      Chapter 5. Personnel
         Part 4. Employment and Assignment of Personnel

---

This section has been updated. Click here for the updated version.

T. C. A. § 49-5-409

§ 49-5-409. Schoolteachers; continuation and termination

Effective: July 1, 2015 to May 10, 2021

(a) Teachers in service and under control of the public elementary and high schools of this state shall continue in such service until they have received written notice from their board of education or director of schools, as appropriate, of their dismissal or failure of reelection.

(b) The notice must be received within five (5) business days following the last instructional day for the school year to be applicable to the next succeeding school year; provided, that the director of schools may transfer any teacher from one (1) position to another at the director's option. Nothing contained in this section shall affect any rights that may have accrued, or may hereafter accrue, on behalf of any teachers or principals in any local school system under any law providing a tenure of office for the teachers and principals.

(c) Nothing in this section shall prohibit a board from abolishing a position after June 15, for sufficient, just and nondiscriminatory reasons; provided, that the person holding the position is notified immediately in writing stating the reasons for abolishing the position and the person is entitled to the next position that the person is qualified to hold and that opens within the school system during the remainder of the school year. The determination of whether a teacher is qualified for an open position shall be made by the director of schools, and the teacher's most recent evaluations may be a factor in such determination.

Credits

1943 Pub.Acts, c. 147, § 1; 1971 Pub.Acts, c. 49, §§ 1, 2; 1974 Pub.Acts, c. 654, §§ 64, 65; 1977 Pub.Acts, c. 455, § 1; 1981 Pub.Acts, c. 186, § 1; 1992 Pub.Acts, c. 535, § 25; 2000 Pub.Acts, c. 569, § 1, eff. March 2, 2000; 2002 Pub.Acts, c. 586, § 1, eff. April 9, 2002; 2010 Pub.Acts, c. 798, §§ 1, 2, eff. April 19, 2010; 2011 Pub.Acts, c. 70, §§ 2, 3, eff. July 1, 2011; 2011 Pub.Acts, c. 255, § 1, eff. May 23, 2011; 2015 Pub.Acts, c. 232, § 1, eff. July 1, 2015.

Formerly 1950 Code Supp., § 2340.1; § 49-1306.

T. C. A. § 49-5-409, TN ST § 49-5-409
Current with laws from the 2022 Second Regular Sess. of the 112th Tennessee General Assembly, eff. through April 7, 2022. Pursuant to §§ 1-1-110, 1-1-111, and 1-2-114, the Tennessee Code Commission certifies the final, official version of the Tennessee Code and, until then, may make editorial changes to the statutes. References to the updates made by the most recent legislative session should be to the Public Chapter and not to the T.C.A. until final revisions have been made to the text, numbering, and hierarchical headings on Westlaw to conform to the official text. Unless legislatively provided, section name lines are prepared by the publisher.

WESTLAW

Case: 22-5591   Document: 12   Filed: 09/28/2022   Page: 72

End of Document © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case: 22-5591    Document: 12    Filed: 09/28/2022    Page: 73

WESTLAW

Addendum 2

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Tennessee Code Annotated
Title 49. Education
Chapter 5. Personnel
Part 5. Teachers' Tenure

T. C. A. § 49-5-511

§ 49-5-511. Dismissal or suspension

Effective: July 1, 2014
Currentness

(a)(1) No teacher shall be dismissed or suspended except as provided in this part.

(2) The causes for which a teacher may be dismissed or suspended are: incompetence, inefficiency, neglect of duty, unprofessional conduct, and insubordination, as defined in § 49-5-501.

(3) A director of schools may suspend a teacher at any time that may seem necessary, pending investigation or final disposition of a case before the board or an appeal. If the matter under investigation is not the subject of an ongoing criminal investigation or a department of children's services investigation, and if no charges have been made pursuant to subdivision (a)(4), a suspension pending investigation shall not exceed ninety (90) days in duration. If vindicated or reinstated, the teacher shall be paid the full salary for the period during which the teacher was suspended.

(4) When charges are made to the board of education against a teacher, charging the teacher with offenses that would justify dismissal of the teacher under the terms of this part, the charges shall be made in writing, specifically stating the offenses that are charged, and shall be signed by the party or parties making the charges.

(5) If, in the opinion of the board, charges are of such a nature as to warrant the dismissal of the teacher, the director of schools shall give the teacher a written notice of this decision, together with a copy of the charges and a copy of a form, which shall be provided by the commissioner of education, advising the teacher as to the teacher's legal duties, rights, and recourse under the terms of this part.

(b)(1) When it becomes necessary to reduce the number of teaching positions or nonlicensed positions in the system because of a decrease in enrollment or for other good reasons, the board shall be empowered to dismiss such teachers or nonlicensed employees based on their level of effectiveness determined by the evaluation pursuant to § 49-1-302 for licensed employees and an evaluation of work performance for nonlicensed employees.

(2) The board shall give the teacher or nonlicensed employee written notice of dismissal explaining fully the circumstances or conditions making the dismissal necessary.

Case: 22-5591    Document: 12    Filed: 09/28/2022    Page: 75

(3) A teacher rated in the three (3) highest categories based on evaluations pursuant to § 49-1-302 who has been dismissed because of abolition of a position shall be placed on a list for reemployment. Nothing in this subsection (b) shall be construed to deprive the director of schools of the power to determine the filling of such vacancy on the basis of the director of schools' evaluation of the teacher's competence, compatibility, and suitability to properly discharge the duties required for the vacant position considered in the light of the best interest of the students in the school where the vacancy exists. A principal may refuse to accept the placement or transfer of a teacher by the director of schools to the principal's school. The teacher's most recent evaluations shall be a factor in such determination.

(4) The right to remain on the preferred list for employment shall remain in effect until:

(A) The teacher accepts a bona fide offer of reemployment for a comparable position within the LEA; or

(B) The teacher rejects four (4) bona fide offers of reemployment for comparable positions within the LEA.

(c)(1) Notwithstanding subsection (a), but subject to the appeal and review provisions of §§ 49-5-512 and 49-5-513, any teacher convicted of a felony listed in § 40-35-501(i)(2) or convicted of an offense listed in § 39-17-417 shall be immediately suspended, and dismissed subject to subdivision (c)(2).

(2) If the dismissal of the teacher is upheld in the board and court reviews provided for in §§ 49-5-512 and 49-5-513, the director shall notify in writing the commissioner of education who shall begin licensure revocation proceedings under applicable rules of the state board of education.

**Credits**
1951 Pub.Acts, c. 76, §§ 2, 6, 7, 15; 1955 Pub.Acts, c. 343, § 2; 1989 Pub.Acts, c. 197, § 1; 1990 Pub.Acts. c. 948. § 23; 1999 Pub.Acts. c. 43. § 1, eff. March 31, 1999; 2001 Pub.Acts, c. 197. § 1, eff. July 1, 2001; 2002 Pub.Acts, c. 535, § 1, eff. July 1, 2002; 2008 Pub.Acts. c. 612, §§ 1 to 3, eff. March 11, 2008; 2011 Pub.Acts. c. 70, § 9, eff. July 1, 2011; 2011 Pub.Acts, c. 378, § 3, eff. June 1, 2011; 2012 Pub.Acts, c. 801, § 1. eff. April 23, 2012; 2012 Pub.Acts, c. 1012, § 1. eff. May 15, 2012; 2013 Pub.Acts, c. 369. § 1, eff. July 1, 2014; 2014 Pub.Acts. c. 684, § 1, eff. July 1, 2014.

**Formerly** Williams' Code, §§ 2345.2, 2345.6, 2345.7, 2345.15; §§ 49-1410, 49-1412 to 49-1415.

Notes of Decisions (82)

T. C. A. § 49-5-511, TN ST § 49-5-511
Current with laws from the 2022 Second Regular Sess. of the 112th Tennessee General Assembly, eff. through April 7, 2022. Pursuant to §§ 1-1-110, 1-1-111, and 1-2-114, the Tennessee Code Commission certifies the final, official version of the Tennessee Code and, until then, may make editorial changes to the statutes. References to the updates made by the most recent legislative session should be to the Public Chapter and not to the T.C.A. until final revisions have been made to the text, numbering, and hierarchical headings on Westlaw to conform to the official text. Unless legislatively provided, section name lines are prepared by the publisher.



PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

UNITED STATES
POSTAL SERVICE

PRIORITY MAIL®

US POSTAGE PAID
$8.95

Origin: 38134
09/26/22
4790010964-47

Retail

EXPECTED DELIVERY DAY: 09/28/22

C023

0 Lb 13.60 Oz

1004

SHIP TO:
100 E 5TH ST
RM 540
CINCINNATI OH 45202-3945

USPS TRACKING® #

9505 5158 0979 2289 8630 70

RECEIVED
SEP 2 8 2022
DEBORAH S. HUNT, Clerk

FROM: Sonia Williams
3945 Point Church Dr.
Memphis, TN 38127

TO: United States
Court of Appeals
for the Sixth Circuit
100 East 5th Street
Room #540
Cincinnati, Ohio
45202-3788

FLAT RATE
ONE RATE

TRACK

PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.