No. 22-5591

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

SONYA P. WILLIAMS

*Plaintiff-Appellant*

v.

SHELBY COUNTY BOARD OF EDUCATION,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Tennessee Western Division
Civil No. 2:17-cv-02050-TLP-jay, Honorable Thomas L. Parker

## BRIEF OF DEFENDANT-APPELLEE

DENTONS US LLP
Rodney G. Moore

303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
Telephone:  404.527.4903
Email: rodney.moore@dentons.com

*Attorney for Defendant-Appellee*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Defendant-Appellee certifies that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

i

# TABLE OF CONTENTS

I.  INTRODUCTION ..............................................................................1

II.  STATEMENT REGARDING ORAL ARGUMENT ...................................4

III.  STATEMENT OF JURISDICTION ..................................................4

IV.  STATEMENT OF ISSUES ..............................................................4

V.  COUNTER-CONCISE STATEMENT OF THE CASE...........................8

    A.  Stipulated and Established Facts ..........................................8

    B.  Relevant Procedural Background...........................................9

        1.  Tenure Act Claim ...............................................10

        2.  § 1983 Claim ......................................................11

VI.  SUMMARY OF THE ARGUMENT ..................................................13

VII.  ARGUMENT........................................................................14

    A.  Standard of Review ..............................................................14

        1.  Grant of Summary Judgment ...............................14

        2.  Statutory Compliance.........................................16

        3.  Adverse Judgment Following a Bench Trial ...........16

        4.  Evidentiary Rulings ...........................................16

        5.  Judicial Notice and Admission .............................17

        6.  Damages............................................................17

        7.  Credibility Findings ............................................18

    B.  Issue 1:  Williams' termination was the result of a legitimate reduction in force because the School Board eliminated the

entire AEP Program, including Williams' position, due to
a loss of state funding...........................................................................18

    1.     Williams' system-wide argument fails. ....................................19

    2.     The School Board's failure to place Williams in
another position does not establish an illegitimate
reduction in force. ....................................................................22

C.    Issue 2:  The district court did not abuse its discretion in
allowing the School Board to introduce its 2018 Resolution.............22

D.    Issue 3:  The 2018 Resolution brought Williams'
termination into compliance with the Tenure Act. ...........................23

    1.     Williams' continuing violation argument is inapposite...........23

    2.     Williams still confuses the Tenure Act and § 1983
claims. ......................................................................................24

    3.     Under *Kelley v. Shelby Cnty. Bd. of Educ.*, the 2018
Resolution brought Williams' termination into
compliance with the Tenure Act..............................................24

    4.     Williams' arguments are not properly before
this Court...................................................................................25

    5.     Williams' substantial reconsideration argument
falls flat. ...................................................................................26

E.    Issue 4:  The district court correctly limited the Tenure Act
damages to the period between Williams' termination and
2018 Resolution's passage, and the district court properly
excluded annual salary increases.........................................................28

F.    Issue 5:  The district court did not abuse its discretion by
allowing prejudgment interest to cease on Williams' damages
calculation under the Tenure Act. .......................................................30

    1.     Williams finds fault with the prejudgment interest
calculations but fails to explain how the district court
abused its discretion.................................................................30

ii

G.     Issue 6:  The district court did not abuse its discretion by not granting Williams' request for post-judgment interest. .....................32

H.     Issue 7:  The district court correctly limited Williams' due process claim to placement on the School Board's reemployment list, determined that Williams' due process right was not violated when the superintendent terminated her, and held that Williams did not prove the elements necessary to succeed on a § 1983 claim................................................33

    1.     The School Board's delegation in authority to the superintendent did not violate due process. ..............................33

    2.     The district court correctly analyzed whether and if so the School Board placed Williams' name on a reemployment list and whether Williams suffered any damages attributable to the School Board as a result. ..............34

    3.     Williams failed to establish the second element of a § 1983 claim, that the deprivation was caused by a person acting under color of law. ........................................................35

    4.     Williams is not entitled to the types of damages awarded to the plaintiff in *Thompson v. Memphis City Sch. Bd. of Educ*..........................................................................................37

I.     Issue 8:  The district court did not err by not addressing the School Board's alleged failure to rehire Williams in its First MSJ Order, and the district court did not abuse its discretion in allowing the School Board to move for summary judgment on Williams' late-asserted Title VII failure to rehire claim.....................38

    1.     Williams' argument that the district court erred by not addressing the School Board's alleged failure to rehire Williams in its First MSJ Order is moot. ..................................39

J.     Issue 9:  Williams failed to satisfy the administrative exhaustion requirement with respect to her failure to rehire claim, and the district court properly denied as moot Williams' Partial Motion for Summary Judgment on her failure to rehire claim.......................39

iii

1.      Williams' contention that checking the "retaliation" box on her EEOC Charge constitutes notice does not state a basis for finding the district court erred....................................40

2.      Williams again confuses the issues of her case. .......................42

K.      Issue 10:  The district court properly granted summary judgment to the School Board on Williams' Title VII retaliatory termination claim.................................................................42

1.      Williams failed to show evidence that would allow a reasonable juror to find that illegal retaliation was the but-for cause of her termination.................................................43

L.      Issue 11:  The School Board was entitled to summary judgment on Williams' First Amendment Retaliation claim. ............................44

M.      Issue 12:  The district court's granting of summary judgment to the School Board on Williams' TPPA retaliation claim is sounded in strong support from the record and Sixth Circuit precedent. ..........................................................................48

N.      Issue 13:  The district court did not abuse its discretion by not granting Williams' Motion for Judicial Admission and Judicial Notice. ............................................................................50

O.      Issue 14:  The district court did not abuse its discretion in determining that Jones credibly testified as to key facts related to the § 1983 claim. .............................................................51

1.      Jones testified credibly regarding key facts related to the § 1983 claim. ............................................................52

2.      The issue of Jones' testimony is moot. ....................................53

VIII.  CONCLUSION...............................................................................54

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ackerman v. Washington*,
    16 F.4th 170 (6th Cir. 2021) .................................................................16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................15

*Ang v. Procter & Gamble Co.*,
    932 F.2d 540 (6th Cir. 1991) ...............................................................42

*Boulton v. Swanson*,
    795 F.3d 526 (6th Cir. 2015) ..........................................................46, 48

*Burgess v. Fischer*,
    735 F.3d 462 (6th Cir. 2013) ...............................................................35

*Century Bus. Servs., Inc. v. Utica Mut. Ins. Co.*,
    122 Fed. App'x 196 (6th Cir. 2005) .....................................................17

*Chattman v. Toho Tenax Am., Inc.*,
    686 F.3d 339 (6th Cir. 2012) ...............................................................44

*Deal v. Hamilton Cnty. Bd. of Educ.*,
    392 F.3d 840 (6th Cir. 2004) ...............................................................17

*Doe v. Salvation Army in U.S.*,
    531 F.3d 355 (6th Cir. 2008) ...............................................................14

*Ford Motor Co. v. Mustangs Unlimited, Inc.*,
    420 Fed. App'x 522 (6th Cir. 2011) .....................................................18

*Fort Bend Cnty., Texas v. Davis*,
    139 S. Ct. 1843 (2019)........................................................................42

*Fox v. Traverse City Area Public Schs. Bd. of Educ.*,
    605 F.3d 345 (6th Cir. 2010) ...............................................................46

v

*Grand Traverse Band of Ottawa and Chippewa Indians v. Director,*
*Mich. Dep't of Natural Res.*,
141 F.3d 635 (6th Cir. 1998) ...............................................................14

*Griffin et al. v. Finkbeiner*,
689 F.3d 584 (6th Cir. 2012) ...............................................................17

*Handy-Clay v. City of Memphis*,
695 F.3d 531 (6th Cir. 2012) ...............................................................46

*Housey v. Macomb Cnty.*,
534 F. App'x 316 (6th Cir. 2013)..................................................45, 46

*Howard v. City of Beavercreek*,
276 F.3d 802 (6th Cir. 2002) ...............................................................14

*Jones-Tate v. Shelby Cnty. Bd. of Ed.*,
No. 2:17-cv-02407-SHL-dkv, 2018 WL 11348053 (W.D. Tenn.
Aug. 21, 2018) ....................................................................................21

*Keck v. Graham Hotel Sys.*,
566 F.3d 634 (6th Cir. 2009) ...............................................................14

*Kelley v. Shelby Cnty. Bd. of Educ.*,
198 F. Supp. 3d 842 (W.D. Tenn. 2016) ..........................19, 21, 24, 28

*Kelley v. Shelby Cnty. Bd. of Educ.*,
751 Fed. App'x 650, 656 (6th Cir. 2018) ...........................................27

*Kelley v. Shelby Cnty. Bd. of Educ.*,
No. 2:14-cv-2632-SHL-cgc & 14-cv-2633-SHL-cgc, 2017 WL
11139931 (W.D. Tenn. Aug. 24, 2017)................................................28

*Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of*
*Memphis*,
361 F.3d 898 (6th Cir. 2004) ...............................................................35

*Moldowan v. City of Warren*,
578 F.3d 351 (6th Cir.2009) .................................................................15

*Moore v. Bd. of Educ. of Johnson City Sch.*,
134 F.3d 781 (6th Cir. 1998) ...............................................................36

vi

*Nagarajan v. Williams*,
    172 F.3d 49 (6th Cir. 1998) ................................................................................51

*Parratt v. Taylor*,
    451 U.S. 527 (1981)................................................................................36

*Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*,
    906 F.3d 403 (6th Cir. 2018) ................................................................17

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*,
    477 F.3d 383 (6th Cir. 2007) ................................................................17

*Russell v. Lundergan-Grimes*,
    784 F.3d 1037 (6th Cir. 2015) ................................................................16

*Scott v. Eastman Chem. Co.*,
    275 Fed. App'x 466 (6th Cir. 2008) ................................................................41

*Stramaglia v. United States*,
    377 Fed. App'x 472 (6th Cir. 2010) ........................................................14, 15

*Truform, Inc. v. Gen. Motors Corp.*,
    80 Fed. App'x 968 (6th Cir. 2003) ................................................................17

*United States v. $68,812.00 in U.S. Currency*,
    831 Fed. App'x 205 (6th Cir. 2020) ................................................................15

*United States v. Cassidy*,
    899 F.2d 543 (6th Cir. 1990) ................................................................16

*United States v. Lewis*,
    521 Fed. App'x 530 (6th Cir. 2013) ................................................................18

*United States v. Martin*,
    367 Fed. App'x 584 (6th Cir. 2010) ........................................................20, 25

*Webb v. United States*,
    789 F.3d 647 (6th Cir. 2015) ................................................................35

*Weisbarth v. Geauga Park Dist.*,
    499 F.3d 538 (6th Cir. 2007) ................................................................47

US_ACTIVE\122558399\V-8

*White v. Baxter Healthcare Corp.*,
　533 F.3d 381 (6th Cir.2008) ................................................................14

*Williams v. Mehra*,
　186 F.3d 685 (6th Cir. 1999) ........................................................1, 16

*Yellowbook Inc. v. Brandeberry*,
　708 F.3d 837 (6th Cir. 2013) ...........................................................37

## STATE CASES

*Lee v. Franklin Special Sch. Dist. Bd. of Educ.*,
　237 S.W.3d 322 (Tenn. Ct. App. 2007).......................................21, 28

*Neese v. Paris Special Sch. Dist.*,
　813 S.W.2d 432 (Tenn. Ct. App. 1990).......................................26, 27

*Randall v. Hankins*,
　675 S.W.2d 712 (Tenn. Ct. App. 1984)...........................................28

*Randall v. Hankins*,
　733 S.W.2d 871 (Tenn. 1987) ........................................................21

*Smith Cnty. Educ. Ass'n v. Anderson*,
　676 S.W.2d 328 (Tenn. 1984)..........................................................27

*Thompson v. Memphis City Sch. Bd. of Educ.*,
　395 S.W.3d 616 (Tenn. 2012) ........................................................37

## FEDERAL STATUTES AND RULES

Fed. R. App. P. 28(a)(6)........................................................................4

Fed. R. App. P. 28(a)(8)(B) ..................................................................4

Fed. R. Civ. P. 56(c)...........................................................................14

Fed. R. Evid. 201(b).............................................................................50

Fed. R. Evid. Rules 401, 402, 403 ........................................................23

## STATE STATUTES AND RULES

Tenn. Code. Ann.§ 47-14-103 ..............................................................30

viii

Tenn. Code. Ann. § 47-14-121 ...................................................................32

Tenn. Code. Ann. § 47-14-121 ...................................................................32

Tenn. Code. Ann. § 47-14-123 ...................................................................30

Tenn. Code. Ann. § 49-5-511 ...................................................................19, 23, 33

Tenn. R. Civ. P. 67.04...................................................................32

## OTHER AUTHORITIES

TN CONST Article 11, § 12 ...................................................................1

US_ACTIVE\122558399\V-8

# I.    <u>INTRODUCTION</u>

This case involves a protracted employment dispute reverting back ten years[1] between *pro se* Plaintiff-Appellant Dr. Sonya Williams ("Williams" or Appellant") and Defendant-Appellee Shelby County Board of Education ("School Board" or "Appellee").  The School Board is a Local Education Agency ("LEA") established by the Tennessee legislature (pursuant to TN CONST Art. 11, § 12) to provide a free education to Tennessee residents and is annually funded by the State of Tennessee through public tax dollars.  Funds Deposit Memorandum, **R. 258-1**, PageID# 7080.  Williams worked as a teacher and tenured teacher for Memphis City Schools and then as an Adult Education Advisor in the Adult Education Program ("AEP") in the later-merged school system, Shelby County Board of Education, commonly referred to as Shelby County Schools ("SCS").  Pre-Trial Order, **R. 277**, PageID# 7727.

The primary nucleus of facts in this case relates to the 2016 elimination of the entire AEP, including Williams' position, due to a loss of state funding after *Williams* initiated a complaint with the state about the program.  Even after litigating her claims for over five years including filing a multitude of motions for

---

[1]  In 2017, Williams filed her Complaint in the underlying action after having filed her first Equal Employment Opportunity Commission ("EEOC") Charge against the School Board in 2013.  Compl., **R. 1**, PageID# 1; Pre-Trial Order, **R. 277**, PageID# 7727.

reconsideration and benefiting from the kind and patient legal instruction by the Honorable Thomas L. Parker, Williams still believes her termination violates the Due Process Clause (42 U.S.C. § 1983), the First Amendment, Title VII, the Tennessee Teacher Tenure Act ("Tenure Act")[2], and the Tennessee Public Protection Act ("TPPA")[3].

In this appeal, Williams takes issue with every major, and some minor, decisions by Judge Parker relating to **all of her claims**.[4]  Appellant's Opening Brief  ("OB") is repetitive, at the same time puzzling, appears to be written in the stream of consciousness, and dredges up Williams' laundry list of her contorted perception of errors from the long-spanning litigation.  In many instances, Williams simply concludes that the district court erred without providing any factual or legal basis for her contention.  In addition, Williams does not consistently cite to the record, leaving the reader with no choice but to hunt through much of the 316 records in the district court docket—an unnecessary strain

---

[2]  Tenn. Code Ann. § 49-5-511(b).  *See* Addendum 6.
[3]  Tenn. Code. Ann. § 50-1-304.  *See* Addendum 7.
[4]  This comes as no surprise, as "throughout [the] litigation, [Williams] has repeatedly—and with some success—sought to rehash issues the [district c]ourt ha[d] already resolved and to revisit legal questions the [district c]ourt ha[d] already answered."  § 1983 Final Order, **R. 309**, PageID# 8114 n.5.  In addition, Williams informed Judge Parker on more than one occasion that she planned to appeal his decisions.

2

on taxpayer dollars, considering that the School Board already made Williams whole.

The district court issued well-reasoned Orders and rulings with factual findings clearly supported by the record and sound legal conclusions based on Sixth Circuit precedent.  **These Orders and rulings should be affirmed.**  The only claim Williams was able to establish is a violation of the Tenure Act, and the district court already granted her backpay and prejudgment interest as damages for that claim for a time period that was determined by correctly applying Sixth Circuit precedent.  Williams seems quasi-obsessed with this case, apparently having made it her life since at least the firing of her attorney in March 2019.  Williams has obviously worked very hard to educate herself on the law, how to examine a witness, and draft briefs.  Still, she seems not to understand the difference between *thinking* that she was wronged and *proving* that the wrong violates a law under which she would be entitled to relief.  Williams is not entitled to any additional damages despite her attempt to bootstrap such a request.

For the reasons stated above and those explained below, this Court should affirm all the district court's Orders and rulings on appeal.

3

## II.   STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 34(a), Appellee believes that the issues presented in this appeal are straightforward, and that oral argument therefore is not necessary.

## III.   STATEMENT OF JURISDICTION

Appellee is in agreement with Appellant regarding her Statement of Jurisdiction.

## IV.   STATEMENT OF ISSUES

Appellant's Opening Brief purports to set forth five issues, each with many sub-parts in an order which, at times, fails to make sense.  OB at 11-13.  For clarity, Appellee has divided Appellant's stated issues' sub-parts into distinct issues[5] and identified to which Orders or Minute Entries they correspond as well as their relevant standards of review[6].

| Issue | Order or Minute Entry Presented for Review[7] | Standard of Review[8] |
|---|---|---|
| 1.  Whether the district court | First Motion for | Clear Error (finding |

---

[5]  Throughout the Opening Brief, Appellant appears to criticize the district court regarding other rulings but does not state that she is appealing those rulings.  As such, Appellee does not address those issues here.

[6]  The standards of review are discussed *infra* in Section VII.A.

[7]  Appellant's Opening Brief does not identify the rulings presented for review with appropriate references to the record as required under Fed. R. App. P. 28(a)(6).

[8]  Appellant's Opening Brief does not clearly identify the applicable standard of review for each issue as required by Fed. R. App. P. 28(a)(8)(B).

4

| Issue | Order or Minute Entry Presented for Review[7] | Standard of Review[8] |
|---|---|---|
| erred in concluding Williams' termination was the result of a reduction in force ("RIF"). | Summary Judgment ("MSJ") Order, **R. 88**, PageID# 2628-2629. | of fact in context of summary judgment ("SJ")) |
| 2.  Whether the district court abused its discretion in allowing the School Board to introduce its 2018 Resolution. | 2018 Resolution Minute Entry, **R. 117**; Tenure Act Order, **R. 237**, PageID# 6937-6938. | Abuse of Discretion (evidentiary ruling) |
| 3.  Whether the district court erred in concluding the School Board's 2018 Resolution brought Williams' termination into compliance with the Tenure Act. | Tenure Act Order, **R. 237**, PageID# 6940. | *De Novo* (statutory compliance) |
| 4.  Whether the district court erred in limiting Williams' damages under the Tenure Act to the period between Williams' original termination date and the date the School Board passed the 2018 Resolution[9], and whether the district court erred by excluding annual salary increases. | *Id*. at 6935; Tenure Act Damages Order, **R. 246**, PageID# 7004. | Clear Error (computation of damages) |
| 5.  Whether the district court abused its discretion by allowing prejudgment interest to cease on Williams' damages calculation under the Tenure Act. | Prejudgment Interest Order, **R. 254**, Page ID#7072. | Abuse of Discretion (prejudgment interest calculation) |

---

[9]  Appellant did not include the first part of this issue in her Civil Appeal Statement filed August 1, 2022.  United States Court of Appeals for the Sixth Circuit Civil Appeal Statement of Parties and Issues, Case 22-5591, Appellate Docket Number 1, Page 1.

5

| Issue | Order or Minute Entry Presented for Review[7] | Standard of Review[8] |
|---|---|---|
| 6.  Whether the district court abused its discretion by not granting Williams' request for post-judgment interest in her damages calculation under the Tenure Act. | Partial Judgment Entry Order, **R. 303**, PageID# 8056. | Abuse of Discretion (post-judgment interest determination) |
| 7.  Whether the district court erred in limiting Williams' due process claim to placement on the School Board's reemployment list, determining Williams' right to due process was not violated when the superintendent terminated her, and holding that Williams did not prove the elements necessary to succeed on a § 1983 claim. | First MSJ Order, **R. 88**, PageID# 2629-2631; § 1983 Revision Order, **R. 220**, Page ID # 6318-6319; § 1983 Final Order, **R. 309**, PageID# 8131. | *De Novo* (legal conclusion in context of SJ and after bench trial) |
| 8.  Whether the district court abused its discretion by not addressing the Board's alleged failure to rehire Williams in its First MSJ Order, and in allowing the School Board to move for SJ on Williams' late-asserted Title VII failure to rehire claim. | First MSJ Order, **R. 88**, PageID# 2644; Rehire SJ Minute Entry, **R. 174**; Failure to Rehire Order, **R. 207**, PageID# 5962. | Abuse of Discretion (evidentiary rulings) |
| 9.  Whether the district court erred by granting SJ to the School Board on Williams' Title VII failure to rehire claim based on Williams' failure to exhaust administrative remedies, and whether the district court erred in denying as moot Williams' Partial MSJ on her failure to | Failure to Rehire Order, **R. 207**, PageID# 5970; Rehire Reconsideration Order, **R. 221**, PageID# 6331. | Clear Error (on reconsideration) |

6

| Issue | Order or Minute Entry Presented for Review[7] | Standard of Review[8] |
|---|---|---|
| rehire claim. | | |
| 10.  Whether the district court erred in granting SJ to the School Board on Williams' Title VII retaliatory termination claim. | First MSJ Order, **R. 88**, PageID# 2644. | *De Novo* (grant of SJ) |
| 11.  Whether the district court erred in granting SJ to the School Board on Williams' First Amendment retaliation claim. | First MSJ Order, **R. 88**, PageID# 2627. | *De Novo* (grant of SJ) |
| 12.  Whether the district court erred in granting SJ to the School Board on Williams' TPPA retaliation claim. | *Id.* at 2633. | *De Novo* (grant of SJ) |
| 13.  Whether the district court abused its discretion by not granting Williams' Motion for Judicial Admission and Judicial Notice in regards to the preferred list for employment pursuant to the Tenure Act and evidence Williams obtained via an open records request regarding the School Board's hiring activity. | Judicial Admission/Notice Minute Entry, **R. 291**. | Abuse of Discretion (judicial notice/admission) |
| 14.  Whether the district court abused its discretion in determining that Eddie Jones ("Jones"), the School Board's former Manager of Recruitment and Staffing, credibly testified as to key facts related to the § 1983 claim. | § 1983 Final Order, **R. 309**, Page ID # 8125. | Abuse of Discretion (credibility determination) |

7

## V.    <u>COUNTER-CONCISE STATEMENT OF THE CASE</u>

**A.    Stipulated and Established Facts**

Williams began working for Memphis City Schools as a family and consumer sciences teacher in 2002.  Pre-Trial Order, **R. 277**, PageID# 7727.  She became a tenured teacher in 2006.  *Id*.  In 2013, Memphis City Schools and another school system merged to create SCS.  *Id*.  Williams applied for—and did not receive—two positions with the School Board that year.  *Id*.

Williams then filed an EEOC charge against the School Board.  *Id*.  As part of a settlement of that claim, the School Board placed Williams in its Adult Education Program ("AEP") as an Adult Education Advisor at the Messick Adult Center in August 2015. [10]  *Id*.

One month after starting her new position, Williams complained of harassment and retaliation to the School Board and the Messick Principal, Rochelle Griffin ("Griffin").  *Id*. at 7727-7728.  Unsatisfied, Williams then filed another EEOC charge against the School Board in December 2015, alleging retaliation for filing her earlier EEOC Charge.  *Id*. at 7728.  One of the School Board's employees issued Williams a written reprimand in December 2015 and referred her to the Labor Relations department in January 2016.  *Id*.

---

[10]  In 2013, Williams had applied for the same position and was not selected. Letter to EEOC, **R. 186-3**, PageID# 5025.

In February 2016, as a result of the State of Tennessee withdrawing the grant funding the AEP, the School Board sent Plaintiff a letter terminating her employment with SCS because the grant-funded program would no longer exist. *Id*. The School Board then excessed Williams, terminating her employment, and later closed the Messick Adult Center. First MSJ Order, **R. 88**, PageID# 2618; Tenure Act Order, **R. 237**, PageID# 6936.

## B.    Relevant Procedural Background

On January 24, 2017, Williams initiated this lawsuit, asserting claims under 42 U.S.C. § 1983, the First Amendment, Title VII, the Tennessee Tenure Act, and the TPPA. Compl., **R. 1**, PageID# 1-10. The district court granted the School Board SJ on all but two of these claims—the Tenure Act claim and the "Title VII retaliation claims related to harassment, referrals to Labor Relations, the written reprimand, and the negative job evaluation." First MSJ Order, **R. 88**, PageID# 2647. Williams later moved the court for SJ on her Title VII retaliation claims related to harassment, referrals to Labor Relations, the written reprimand, and the

US_ACTIVE\122558399\V-8

negative job evaluation, which the district court denied.  § 1983 Revision Order, **R. 220**, PageID# 6328.

The district court later revived the § 1983 claim for an alleged deprivation of her Fourteenth Amendment right to due process.  § 1983 Revision Order, **R. 220**, PageID# 6323.

The district court also permitted Williams to proceed on a Title VII failure to rehire claim that she asserted in response to a motion *in limine*.  Williams' Motion *In Limine* Response, **R. 118**, PageID# 3137.  The court granted SJ in favor of the School Board on the Title VII failure to rehire claim.  Failure to Rehire Order, **R. 207**, PageID# 5958-5959.  At a January 2022 pretrial conference, Williams waived her remaining Title VII retaliation claims, informing the district court that she would not pursue those claims at trial.  Partial Judgment Entry Order, **R. 303**, PageID# 8053 n. 1 (citing Title VII Claims Waiver Minute Entry, **R. 302**).

### 1.    Tenure Act Claim

In August 2020, the district court entered an order in Williams' favor on the Tenure Act claim.  Tenure Act Order, **R. 237**, PageID# 6935.  The court found that the School Board violated the Tenure Act and that Plaintiff was entitled to damages.  *Id*. at 6948.  The court explained that Williams' Tenure Act claim relates to the School Board's decision to excess Williams' position as part of a reduction

in force, but her § 1983 claim relates to whether the School Board placed Williams on a reemployment list after terminating her employment. *Id*. at 6943.

The district court determined that "the Board violated the Teacher Tenure Act when it excessed Plaintiff without the Board making the final determination." *Id*. at 6940. The court found that "[t]he Board violated the Act's non-delegation principle because the superintendent made the final determination and not the Board." *Id*. The court also found that "Plaintiff has a right to back pay for the time between her termination and the ratification of her exc[ess]ion." *Id*. at 6942. The court determined that the School Board's October 2018 Resolution Ratifying the Excessing of Certain Additional Employees and Approving the Excessing of Certain Additional Employees ("2018 Resolution"), which contained Plaintiff's name, brought her termination into compliance with the Tenure Act. *Id*. at 6940, 6943; 2018 Resolution, **R. 122-3**, PageID# 3325-3328[11]. Thus, the Court concluded that "Plaintiff has a right to back pay damages from her termination (March 7, 2016) through the October 2018 Resolution date (October 30, 2018)." Tenure Act Order, **R. 237**, PageID# 6946.

### 2.    § 1983 Claim

In December 2018, the district court granted the School Board SJ on the § 1983 claim. First MSJ Order, **R. 88**, PageID# 2632. Williams alleged the

---

[11] Williams' name is listed on PageID# 3328.

School Board deprived her of her property interest in continued employment in violation of the Due Process Clause of the Fourteenth Amendment. Compl., **R. 1**, PageID# 2.

The court addressed this claim in its First MSJ Order and granted SJ to the School Board.  First MSJ Order, **R. 88**, PageID# 2631, 2629.

### a. Motion to Reconsider

One month later, the parties informed the court about the Board's October 2018 Resolution ratifying Plaintiff's termination.  Tenure Act Order, **R. 237**, PageID# 6937.  The court then permitted limited discovery related to whether the School Board complied with the Tenure Act.  As part of this discovery, Plaintiff deposed Jones.  § 1983 Revision Order, **R. 220**,  PageID# 6322.  Plaintiff next moved the court to reconsider its decision to dismiss her § 1983 claim.  Williams' § 1983 Reconsideration Motion, **R. 164**, PageID# 4757-4758.  The court granted that motion and revived Williams' § 1983 claim.  § 1983 Revision Order, **R. 220**, PageID# 6329.

The court first found that the Tenure Act, as amended in 2014, gave Williams a constitutionally protected property interest.  *Id*. at 6314.  The Court then concluded that "Plaintiff had a reasonable expectation that Defendant would place her name on a reemployment list after termination of the [AEP]." *Id*.  But

the court emphasized that "Plaintiff must also show that Defendant deprived her of due process." *Id*. at 6320.

On February 14 and 15, 2022, the district court conducted a bench trial on the § 1983 claim to determine (1) whether—and if so, when—the School Board placed Williams' name on a reemployment list under the Tenure Act, and (2) whether Williams suffered any damages attributable to the School Board as a result. Bench Trial Minute Entry, **R. 304**; § 1983 Final Order, **R. 309**, PageID# 8124. After the bench trial, the court found Williams failed to establish a § 1983 claim and entered judgment for the School Board on that claim. § 1983 Final Order, **R. 309**, PageID# 8134; Final Judgment, **R. 310**, PageID# 8135.

## VI.     SUMMARY OF THE ARGUMENT

1.     The district court properly dismissed Appellant's § 1983, First Amendment Retaliation, Title VII retaliation, Title VII failure to rehire, and TPPA retaliation claims based on well-settled Sixth Circuit precedent and correct factual findings.

2.     The district court correctly limited Williams' damages under the Tenure Act to the period between Williams' original termination date and the date the School Board passed the 2018 Resolution.

3.     The district court correctly limited Williams' damages under the Tenure Act to backpay and prejudgment interest.

4.    The district court did not abuse its discretion in making evidentiary

rulings or in its credibility determination of Jones.

## VII.  ARGUMENT

**A.    Standard of Review**

### 1.    Grant of Summary Judgment[12]

This Court reviews a district court's order granting SJ *de novo* and its

findings of fact for clear error.  *Stramaglia v. United States*, 377 Fed. App'x 472,

474 (6th Cir. 2010); *Keck v. Graham Hotel Sys.*, 566 F.3d 634, 636 (6th Cir. 2009);

*Howard v. City of Beavercreek*, 276 F.3d 802, 805 (6th Cir. 2002); *Grand Traverse*

*Band of Ottawa and Chippewa Indians v. Director, Mich. Dep't of Natural Res.*,

141 F.3d 635, 638 (6th Cir. 1998).  This Court reviews a district court's legal

conclusions supporting its grant of SJ *de novo*.  *Doe v. Salvation Army in U.S.*, 531

F.3d 355, 357 (6th Cir. 2008).

The Sixth Circuit has elucidated the SJ standard as follows:

> Summary judgment is appropriate where "the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is no genuine
> issue as to any material fact and that the movant is entitled to judgment as a
> matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary
> judgment "bears the initial burden of identifying those parts of the record
> which demonstrate the absence of any genuine issue of material fact." *White
> v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir.2008) (citing
> *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d
> 265 (1986)).  Once the moving party has satisfied its burden, the nonmoving
> party "may not rest upon its mere allegations or denials of the adverse

---

[12]  This standard corresponds to Issues 1, 7, 10, 11, and 12.

party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009). The "mere existence of a scintilla of evidence" will not prevent summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986), and if the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S. Ct. 2505 (citations omitted).

*Stramaglia*, 377 Fed. App'x at 474.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### a. Denial of a Motion to Reconsider of Order Granting Summary Judgment[13]

This Court reviews the district court's denial of a motion to reconsider its order granting SJ de novo, using "'the same standard of review that the district court was required to apply.'" *United States v. $68,812.00 in U.S. Currency*, 831 Fed. App'x 205, 206 (6th Cir. 2020) (quoting *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006)). Here, that means asking whether the district court's original grant of SJ rested on a clear error of law." *$68,812.00 in U.S. Currency*, 831 Fed. App'x at 206.

---

[13] This standard corresponds to Issue 9.

### 2.    Statutory Compliance[14]

"Statutory interpretation is a question of law . . . ."  *United States v. Cassidy*, 899 F.2d 543, 545 (6th Cir. 1990) (quoting *In re Vause*, 886 F.2d 794, 798 (6th Cir. 1989)).  Statutory compliance, on the other hand, is a mixed question of law and fact.  *See Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (holding that determining whether the defendants were deliberately indifferent was a mixed question of law and fact).  Courts consider issues over the acts performed by the parties "subsidiary or basic fact[s]."  *Id*.  Whether these alleged facts show a violation of a statute is then a question of law.  *See id*., 186 F.3d at 690.

### 3.    Adverse Judgment Following a Bench Trial[15]

After a bench trial, this Court reviews the district court's factual findings for clear error and its conclusions of law *de novo*.  *Ackerman v. Washington*, 16 F.4th 170, 180 (6th Cir. 2021); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015).

### 4.    Evidentiary Rulings[16]

This Court reviews a district court's evidentiary rulings for abuse of discretion, which occurs when the court "relies on clearly erroneous findings of

---

[14]  This standard corresponds to Issue 3.
[15]  This standard corresponds to Issue 7.
[16]  This standard corresponds to Issues 2 and 8.

16

fact, improperly applies the law, or employs an erroneous legal standard." *Griffin et al. v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012).

### 5. Judicial Notice and Admission[17]

This Court reviews a district court's refusal to take judicial notice for abuse of discretion. *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 850 (6th Cir. 2004). Likewise, this Court reviews a district court's determination as to whether a particular statement constitutes a judicial admission under the abuse of discretion standard. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 394 (6th Cir. 2007).

### 6. Damages[18]

"The district court's computation of damages is a finding of fact reviewed for clear error." *Truform, Inc. v. Gen. Motors Corp.*, 80 Fed. App'x 968, 973 (6th Cir. 2003).

This Court reviews "a district court's award of prejudgment interest under an abuse of discretion standard." *Century Bus. Servs., Inc. v. Utica Mut. Ins. Co.*, 122 Fed. App'x 196, 204 (6th Cir. 2005). A district court's determination regarding post-judgment interest is also reviewed for abuse of discretion. *Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 406 (6th Cir. 2018).

---

[17] This standard corresponds to Issue 13.
[18] This standard corresponds to Issues 4, 5, and 6.

US_ACTIVE\122558399\V-8

### 7.    Credibility Findings[19]

Special deference is paid to a trial court's credibility findings, and this Court reviews those determinations for an abuse of discretion.  *United States v. Lewis*, 521 Fed. App'x 530, 531 (6th Cir. 2013) ("We do not second-guess the district court's credibility determinations, but review only for a clear and manifest abuse of discretion.) (quotations and citation omitted); *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 420 Fed. App'x 522, 528 (6th Cir. 2011).

**B.    <u>Issue 1</u>:  Williams' termination was the result of a legitimate reduction in force because the School Board eliminated the entire AEP Program, including Williams' position, due to a loss of state funding.**

Williams alleged the School Board deprived her of her property interest in continued employment in violation of the Due Process Clause of the Fourteenth Amendment.  Compl., **R. 1**, Page ID# 2.  The district court addressed this claim in its First MSJ Order.  Although tenured teachers in Tennessee have a constitutionally protected property interest in continued employment, where state law allows the position to be eliminated **because of a legitimate reduction in force**, the Due Process Clause does not prevent an RIF.  First MSJ Order, **R. 88**, Page ID # 2627-2628 (citing *Kelley v. Shelby Cnty. Bd. of Educ.*, 198 F. Supp. 3d 842, 854 (W.D. Tenn. 2016) (citing *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616, 627 (Tenn. 2012)), aff'd, 2018 WL 4628625 (6th Cir. Sept. 26,

---

[19]  This standard corresponds to Issue 14.

2018)).  If the RIF is illegitimate, then there may exist a due process violation.  *Id*.
The district court relied on the following definition of a "legitimate [RIF]" from
*Kelley* **to which Williams also cited in her Reply**: "one conducted pursuant to an
actual reorganization, as opposed to one that is a mere sham to circumvent due
process protections."  *Id*. at 2628; First MSJ Reply, **R. 46**, PageID# 280.

Relying on *Williams'* account of the facts, the district court correctly found
that the School Board eliminated the <u>entire</u> AEP Program, including Williams'
position, because of a loss of state funding.  First MSJ Order, **R. 88**, PageID#
2629.  The district court held this constituted "other good reasons" for a legitimate
RIF under the Tenure Act's RIF provision[20].  First MSJ Order, **R. 88**, PageID#
2618, 2628-2630.  **Thus, Tennessee law allowed Williams' position to be**
**eliminated because of a legitimate RIF which accordingly did not implicate**
**the Due Process Clause.**  *See Kelley*, 198 F. Supp. 3d at 854.

### 1. Williams' system-wide argument fails.

Focusing on the phrase "in the system" from Tenn. Code. Ann. § 49-5-
511(b)(1), Williams argued, as she does now, that the RIF was illegitimate because
there were open positions <u>within the school system</u> for which Williams applied and
was allegedly qualified.  First MSJ Reply, **R. 46**, Page ID # 281; OB at 37.  The
district court aptly pointed out that Williams cited to no law to support this

---

[20]  Tenn. Code. Ann. § 49-5-511(b)(1).  Addendum 6.

argument, and the loss of the state funding would seem to require reducing the number of positions "in the system" anyway.  First MSJ Order, **R. 88**, PageID# 2629.

Williams quibbles that her prior counsel incorrectly referenced the AEP Program as an RIF instead of "simply a program abolishment," now argues for the first time that "RIFs for a LEA do not occur during the middle of the school year," and rehashes her over-used and correctly rejected argument that a legitimate RIF must be "in the system as a whole and not at a particular school within the system." OB at 30, 37-38.

As Williams notes, the argument that an RIF does not occur during the middle of the school year was not raised by her prior counsel and therefore was not before the district court.  OB at 30.  This argument is not properly before this Court.  *United States v. Martin*, 367 Fed. App'x 584, 585 (6th Cir. 2010) ("'[I]n general, 'issues not presented to the district court but raised for the first time on appeal are not properly before the court.'") (quoting *McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002)).

Even if this argument were properly before this Court, Williams does not cite to any brief or Order in support of her argument that "[c]aselaw cited by both

counsels [sic] and the district court communicate[s] these concepts" (OB at 37)[21],

and none of the cases Williams now cites state what she claims: (1) the sentence in

*Kelley*, 198 F. Supp. 3d at 846, quoted by Williams is one sentence in the findings

of fact never referred to again in the opinion; (2) *Jones-Tate v. Shelby Cnty. Bd. of*

*Ed.*, No. 2:17-cv-02407-SHL-dkv, 2018 WL 11348053, at *3 n.5 (W.D. Tenn.

Aug. 21, 2018) does state "[u]nder the Tenure Act, a tenured teacher may only be

dismissed for cause or due to a system-wide reduction in force," but it does not

refer to the middle or end of the school year or provide the definition of "system-

wide" and leaves open the possibility that a program such as the AEP may be

considered a "system"; (3) in *Lee v. Franklin Special Sch. Dist. Bd. of Educ.*, 237

S.W.3d 322, 331 (Tenn. Ct. App. 2007), "system-wide" is mentioned once in the

opinion regarding evidence presented by the defendant and is not part of any of the

court's analysis, and there is no discussion of whether an RIF may take place in the

middle of the school year; and (4) the decision in *Randall v. Hankins*, 733 S.W.2d

871, 872-73 (Tenn. 1987) did not turn on whether the positions were eliminated at

the end but simply rather noted that they were.[22]  OB at 37-38.

---

[21]  Significantly, none of the cases Williams now cites were issued after the district court's December 18, 2018 First MSJ Order, **R. 88**, PageID#2615.

[22]  As a practical matter, when the AEP was abolished due to the removal of the state grant, it was in fact the permanent end of the school year for the AEP.

**2.    The School Board's failure to place Williams in another position does not establish an illegitimate reduction in force.**

The district court also correctly addressed Williams' argument that the

School Board's failure to place her in another position showed an illegitimate RIF:

> Under § 49-5-511(b), the only steps that must be taken in affording an exc[es]sed teacher a new position is the administration of an evaluation and placement on the reemployment list. *See* Tenn. Code Ann. § 49-5-511(b)(1)–(4). But a teacher's inclusion on the reemployment list does not guarantee placement because "[a] principal may refuse to accept the placement or transfer of a teacher . . . [based on] [t]he teacher's most recent evaluations . . . ." Tenn. Code Ann. § 49-5-511(b)(3)….

First MSJ Order, **R. 88**, PageID# 2630.

**C.    <u>Issue 2</u>:  The district court did not abuse its discretion in allowing the School Board to introduce its 2018 Resolution.**

Williams contends she objected to the district court's decision to allow

introduction of the 2018 Resolution. OB at 57. However, she does not cite to any

record and does not explain why she believes the court abused its discretion in

allowing the introduction of this evidence. Instead, she explains why she thinks

the 2018 Resolution did not bring her termination into compliance. *Id.*

During a pretrial conference on January 15, 2019, the School Board

"informed the Court that the Shelby County School Board Commission met on

10/30/2018 and passed a Resolution on 10/30/2018 putting Dr. Williams and

around 50 other individuals on the Excess List." 2018 Resolution Minute Entry,

**R. 117**. The district court later explained that the 2018 Resolution was "important

because the Board listed Plaintiff's name" and the School Board argued that it definitively limited Williams' backpay on her Tenure Act claim. Tenure Act Order, **R. 237**, Page ID# 6937-6938. The district court allowed the parties to engage in supplemental discovery and to submit briefs on the issue, which they did. *Id*. at 6938. The district court did not improperly apply the rules of evidence when permitting introduction of the 2018 Resolution because it correctly determined that it is relevant for the reasons stated above, and none of the exclusions apply. Fed. R. Evid. Rules 401, 402, 403.

**D.    Issue 3:  The 2018 Resolution brought Williams' termination into compliance with the Tenure Act.**

**1.    Williams' continuing violation argument is inapposite.**

In Williams' briefing on the 2018 Resolution, she argued it did not bring her termination into compliance because the School Board was still not following the Tenure Act. Williams' Response to School Board's Tenure Act Memorandum, **R. 150**, PageID# 3651-3652. Williams alleged a continued violation of Section 49-5-511(b)(1) by failing to transfer her to a comparable position because she had the highest level of effectiveness on her most recent evaluation. *Id*. at 3651. **The district court correctly indicated that Section 49-5-511(b)(3) does not require that the School Board transfer her to a similar position but rather place her on the reemployment list.** Tenure Act Order, **R. 237**, PageID# 6942 (quoting Tenn. Code. Ann. § 49-5-511(b)(3) ("[a] teacher rated in the three (3) highest

23

categories based on evaluations . . . who has been dismissed because of abolition of a position shall be placed on a list for reemployment.")).  Thus, the School Board was not continuing to violate the Tenure Act.

### 2. Williams still confuses the Tenure Act and § 1983 claims.

Williams also argued that the 2018 Resolution did not bring her termination into compliance because the School Board allegedly did not place her on the reemployment list.  Williams' Response to School Board's Tenure Act Memorandum, **R. 150**, PageID# 3652.  The district court explained that there was a dispute of material fact on that issue, but that dispute applied to the Due Process claim and did not affect the calculation of her damages under the Tenure Act under *Kelley*, 198 F. Supp. 3d at 842, in which the Western District of Tennessee capped damages at the date of the Board Resolution in that case, rather than the date of placement on the reemployment list.  Tenure Act Order, **R. 237**, PageID# 6943.

### 3. Under *Kelley v. Shelby Cnty. Bd. of Educ.*, the 2018 Resolution brought Williams' termination into compliance with the Tenure Act.

The district court correctly applied *Kelley* to find that the 2018 Resolution brought Williams' termination into compliance.  "[T]he fact that the School Board once violated the statute['s non-delegation principle] does not forever preclude it from complying with the Act by making the final determination on Williams' termination."  *Id*. at 6940.  Under *Kelley*, "[b]y ratifying the illegal excision, 'the

24

Board was in effect taking ultimate responsibility for the excessing decisions, bringing the previously unlawful terminations into compliance with Tennessee law.'"  Tenure Act Order, **R. 237**, PageID# 6940 (quoting *Kelley*, 751 Fed. App'x at 656).

### 4.    Williams' arguments are not properly before this Court.

Williams now argues for the first time the 2018 Resolution did not bring her termination into compliance because she was not terminated "for either reason described in the dismissal provision of the Tenure Act."  OB at 58.  It appears Williams is contending that the 2018 Resolution did not bring her termination into compliance with the Tenure Act because there was no "decrease in enrollment or for other good reasons."  This argument is not properly before this Court because Williams did not argue it before the district court.  *See Martin*, 367 Fed. App'x at 585.  Nevertheless, as explained *supra* in Section VII.B, the district court correctly found that the reduction in force was "for other good reasons."

Williams also argues for the first time, and thus not properly before this Court, that the statement by Rule 30(b)(6) deponent School Board General Counsel Jennifer Ervin ("Ervin") that "the *email* sent to the Board members discussing the Resolution" did not mention Williams and thus establishes that the 2018 Resolution did not bring Williams' termination into compliance.  OB at 57-58 (emphasis added).  However, Williams does not explain why this statement about

25

an email sent to the Board indicates the 2018 Resolution failed to bring her termination into compliance.  Ervin Deposition Transcript, **R. 156**, PageID# 4342-4344 ("Q.… So there was an e-mail that you sent that you've described as being kind of a summary and discussion of the case to them and I assume a copy of that resolution?  A.  Yes." …  "Q.… [w]as there anything said about Dr. Williams' case or situation in that e-mail? A. No.").

### 5.    Williams' substantial reconsideration argument falls flat.

Finally, Williams argues that "the Board never discussed Williams and the circumstances surrounding her termination at its meeting in which it approved the 2018 Resolution."  OB at 58.  Presumably, Williams attempts to make the same argument as she did before the lower court:  that there was no "substantial reconsideration" of the 2018 Resolution because the Board allegedly did not deliberate the issue during the ratification process. Williams' Response to School Board's Tenure Act Memorandum, **R. 150**, PageID# 3648.  **However, Williams admits that the 2018 Resolution was "discussed" in the above-referenced email from Ervin.**  *Id*. at 57-58.  In addition, *Neese v. Paris Special Sch. Dist.*, 813 S.W.2d 432 (Tenn. Ct. App. 1990), the case Williams relied on at the district court is not on point.  Williams' Response to School Board's Tenure Act Memorandum, **R. 150**, PageID# 3648.  The Tennessee Appeals Court in *Neese* addressed the ratification of a prior *School Board* decision that had previously been

made by the *Board* in a manner which violated the Public Meetings Act. 813

S.W.2d at 436. Here, Williams did not and could not allege a violation of the

Public Meetings Act, and this case is about the passing of a Board Resolution

which ratified a prior act by the Superintendent since Williams' name was

inadvertently not listed on the excessed employees list on the 2016 Resolution.[23]

Tenure Act Order, **R. 237**, PageID# 6944.

It is also significant to note that the 2018 Resolution was passed shortly after

this Court's ruling in *Kelley v. Shelby Cnty. Bd. of Educ.*, where this Court held:

> The Board's post hoc resolution, two years after the fact, cannot cure the harm
> caused by the improper layoffs and loss of jobs for the individual teachers.
> However, once the district court held that the Board had violated its
> nondelegable duties, the Board took immediate action to correct its violation,
> creating a resolution to ratify the excessing decisions…. The Board was no
> longer in violation of the Act, and the resolution limited the scope of damages
> available to the Teachers….

751 Fed. App'x 650, 656 (6th Cir. 2018).

The 2018 Resolution ratifying additional names was made necessary by the

---

[23] Indeed, the Tennessee Supreme Court has acknowledged that school board
members' discussions with their legal counsel that may inform how the Board acts
during a later public meeting do not violate the Public Meetings Act:

> In summary, we hold that discussions between a public body and its attorney
> concerning pending litigation are not subject to the Open Meetings Act. We
> emphasize that this is a narrow exception and applies only to those situations
> in which the public body is a named party in the lawsuit. Any such meetings
> should be conducted in a manner consistent with … this opinion.

*Smith Cnty. Educ. Ass'n v. Anderson*, 676 S.W.2d 328, 335 (Tenn. 1984).

inadvertent omission of Williams' (and a few others') name on the 2016
Resolution.

**E.**    <u>Issue 4</u>**:  The district court correctly limited the Tenure Act damages to the period between Williams' termination and 2018 Resolution's passage, and the district court properly excluded annual salary increases.**

Williams contends the district court erred in limiting her damages to
backpay "up until the Board's 2018 Resolution" and excluding "applicable raises
Williams would have received had she not been terminated," but like many of the
other arguments in her OB, she does not explain the basis for this gripe.  OB at 52.

After finding the School Board violated the Tenure Act when it excessed
Williams without the Board making the final determination, the district court
concluded William is entitled to backpay for the time between her March 7, 2016
termination and the ratification of her excision on October 30, 2018 because the
School Board's excision now complies with the Tenure Act.  Tenure Act Order, **R.
237**, PageID# 6935, 6940, 6942, 6948.  The district court explained the RIF
provision of the Tenure Act, Section 49-5-511(b), does not itself provide a remedy;
however, courts have applied the remedy provided in Section 49-5-511(a)(3)—
back pay and reinstatement—to violations of the RIF provision.  Tenure Act Order,
**R. 237**, PageID# 6941 (citing to *Kelley*, 198 F. Supp. 3d 842, 855 (W.D. Tenn.
2016); *Lee*, 237 S.W.3d at 337; and *Randall v. Hankins*, 675 S.W.2d 712, 714
(Tenn. Ct. App. 1984).  Applying *Kelley v. Shelby Cnty. Bd. of Educ.*, No. 2:14-cv-

28

2632-SHL-cgc & 14-cv-2633-SHL-cgc, 2017 WL 11139931, at *6 (W.D. Tenn. Aug. 24, 2017), the district court held Williams has "no right to reinstatement because, by ratifying her excessing and bringing it into compliance with the Teacher Tenure Act, 'the Board effectively foreclosed this avenue of relief.'" Tenure Act Order, **R. 237**, PageID# 6941-42. In addition, the district court held that Williams' argument that her damages continued past the 2018 Resolution adoption is unpersuasive for the reasons explained *supra* in Section VII.C. *Id*. at 6944.

The district court calculated backpay based on Williams' salary at the time of her termination. The district court correctly rejected Williams' request that it consider speculative annual salary increases in its calculation. Williams "guess[ed]" that she would have received a 3% salary increase every school year during the relevant time frame. Tenure Act Damages Order, **R. 246**, PageID# 7004 (citing Williams' Damages Brief, **R. 239**, PageID# 6952; and Williams' Backpay Calculations, **R. 239-3**, PageID# 6962). Williams also submitted a SCS Finance Office memo which says "the budget includes strategic investments such as 3% salary raises" for certain teachers (Finance Department Letter, **R. 239-2**, PageID# 6960). However, there is no evidence the School Board actually implemented that salary increase or that it would have applied to Williams. Tenure Act Damages Order, **R. 246**, PageID# 7004.

US_ACTIVE\122558399\V-8

**F.**   <u>**Issue 5**</u>**:  The district court did not abuse its discretion by allowing prejudgment interest to cease on Williams' damages calculation under the Tenure Act.**

The district court ordered the School Board to pay Williams $24,515.68 in prejudgment interest based on a 5% rate.  Tenure Act Damages Order, **R. 246**, PageID# 7006; Prejudgment Interest Order, **R. 254**, PageID# 7073.  Neither party argued that the prejudgment interest rate fell within Tenn. Code. Ann. § 47-14-103 and explained that Tennessee's prejudgment interest rate under Tenn. Code. Ann. § 47-14-123 is a maximum of 10% per annum, and the Tennessee Supreme Court has found that prejudgment interest cannot be compounded under Section 47-14-123.  Tenure Act Damages Order, **R. 246**, PageID# 7005, 7005 n.5; *see* Addendum 2.  In determining the prejudgment interest rate, the court considered what rate "'is fair, given the particular circumstances of the case.'"  *Id*. at 7006 (quoting *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).  The court aptly explained its reasoning for the 5% interest rate based on relevant precedent.  Tenure Act Damages Order, **R. 246**, PageID# 7006.

**1.**    **Williams finds fault with the prejudgment interest calculations but fails to explain how the district court abused its discretion.**

Williams now complains that "pre-judgment interest was cut off at the time the Board's motion to deposit funds to the court was granted," but she provides no basis as to how the court abused its discretion.  OB at 62.  On May 20, 2021, the

School Board moved for leave to deposit with the Clerk the sum of $238,733.33, the amount the district court ordered it to pay Williams, plus prejudgment interest through June 15, 2021.  Funds Deposit Memorandum, **R. 258-1**, PageID# 7079. The court had held that the School Board owed $28.91 in prejudgment interest per day between October 30, 2018 and February 23, 2021, the date of the Order Granting in Part Plaintiff's Motion for Reconsideration.  Prejudgment Interest Order, **R. 254**, PageID# 7072.  The court also indicated that the daily rate of prejudgment interest would accrue until the earlier of the court entering its judgment or the School Board paying the amount owed.  *Id*.

The School Board presented sound arguments as to why it was just and proper for the court to grant its motion: (1) the School Board, an LEA funded by public tax dollars had the ability to cure the alleged violation of the Tenure Act claim within the then-current 2020-2021 fiscal year which could not be assured in future years; (2) Williams would have assurance that she would be able to collect the judgment, which would have to be deposited in an interest-bearing account; and (3) Williams' former attorneys filed a lien in the action asserting an unliquidated claim to proceeds recovered by Williams.  Funds Deposit Memorandum, **R. 258-1**, PageID# 7079-7081.  As such, the district court found good cause to grant the motion, ending prejudgment interest on June 15, 2021. Funds Deposit Order, **R. 261**, PageID# 7092.

31

**G.     Issue 6:  The district court did not abuse its discretion by not granting Williams' request for post-judgment interest.**

Williams grumbles that she was not granted post-judgment interest "as required under Tennessee law [Tenn. Code. Ann. § 47-14-121; § 47-14-122]" and Tenn. R. Civ. P. Rule 67.04 advisory committee comments.  OB at 62.  This argument is not properly before this Court because it is the first time Williams has relied on those Sections or Rule/advisory committee comments.[24]  In November 2021, Williams motioned the court to enter final judgment on her Tenure Act claim, contending that "[a] final judgment decree will trigger post-judgment interest of which [she] is statutorily entitled as set in Tennessee Public Chapter 1043."  Williams' Tenure Act Judgment Memorandum, **R. 293-1**, PageID# 7888-89.  In its February 2022 Order Denying Plaintiff's Motion for Entry of Partial Judgment, the district court noted that Williams included a list of "Tennessee Judgment Interest Rates" but cited no statutory basis for post-judgment interest, and the Clerk placed the funds in an interest-bearing account in July 2021.  Partial Judgment Entry Order, **R. 303**, PageID# 8056.

---

[24] Nevertheless, neither Tenn. Code. Ann. § 47-14-121 nor § 47-14-122 mention post-judgment interest.  *See* Addenda 3, 4.  In addition, the Tenn. R. Civ. P. 67.04 states in full: "This rule is inapplicable to post-judgment interest."

H.  **Issue 7:  The district court correctly limited Williams' due process claim to placement on the School Board's reemployment list, determined that Williams' due process right was not violated when the superintendent terminated her, and held that Williams did not prove the elements necessary to succeed on a § 1983 claim.**

Williams avows that because the School Board violated the Tenure Act in the way it terminated her, it also violated her Fourteenth Amendment due process rights.  OB at 42.  As explained *supra* in Section VII.B., the district court correctly held Williams' termination was due to a legitimate reduction in force for "other good reasons" (after the School board lost state funding for the AEP), and that due process did not prevent the termination because the statute that creates the property interest specifically provides for such a reduction.

Williams also argues that her "termination without cause" violated her due process rights, presumably linking back to her other argument that there was not a legitimate reduction in force and thus triggering Section 49-5-511(a)(2)'s termination for cause language.  OB at 42.  This argument is disposed of for the same reason as explained above with respect to the legitimate reduction in force.

1.  **The School Board's delegation in authority to the superintendent did not violate due process.**

The district court properly held that the delegation in authority to the superintendent to terminate Williams, which the court later found violated Section

49-5-511(b)(1)[25], did not violate due process because under U.S. Supreme Court precedent "an individual does not have an independent substantive right in procedure designed to protect a substantive interest."  First MSJ Order, **R. 88**, PageID# 2630-2631 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983)).

> **2.    The district court correctly analyzed whether and if so the School Board placed Williams' name on a reemployment list and whether Williams suffered any damages attributable to the School Board as a result.**

Teachers rated in the three highest categories have a reasonable expectation that the School Board will place their name on the reemployment list under Section 49-5-511(b)(3) of the 2014 Tenure Act.  § 1983 Revision Order, **R. 220**, PageID# 6319-6320.  Because Williams qualified in one of the three highest categories, she had a reasonable expectation that the School Board would place her name on a reemployment list after termination of the AEP.  *Id*. at 6320.  In its § 1983 Order, analyzed whether and if so the School Board placed Williams' name on a reemployment list and whether Williams suffered any damages attributable to the School Board as a result.  § 1983 Final Order, **R. 309**, PageID# 8118-8119.

The district court correctly explained the standard for a § 1983 claim:

The Sixth Circuit has set forth these elements a plaintiff must prove to succeed on a § 1983 claim: (1) "that he was deprived of a right secured by the Constitution or laws of the United States;" and (2) "that the deprivation

---

[25] The School Board has the sole authority to dismiss teachers when it became necessary to reduce the number of teaching positions.  First MSJ Order, **R. 88**, PageID# 2630.

was caused by a person acting under color of law." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 595 (6th Cir. 2012)....

…

"[A]cting under color of state law requires that a defendant in a § 1983 action have exercised the power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed by the authority of state law.'" *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988))....

…

A plaintiff can establish liability for a local government entity by proving that "an official with final decision-making authority ratified illegal actions." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)....

§ 1983 Final Order, **R. 309**, PageID# 8126, 8139-8130.

> ### 3.    Williams failed to establish the second element of a § 1983 claim, that the deprivation was caused by a person acting under color of law.

The district court skillfully applied this test and found Williams failed to establish the second element because she provided no evidence showing the superintendent qualified as a final decisionmaker when placing an excessed tenured teacher on the reemployment list and Williams identified no evidence even connecting the superintendent to the reemployment list. *Id.* at 8131.  Thus, Williams failed to show that the deprivation was caused by a person acting under color of law.  The district court also held that Williams failed to establish damages for lost wages because she provided no evidence linking the failure to rehire her (the harm she alleges) to the School Board's delay in placing her name on the

35

reemployment list because placement on the list does not guarantee rehire[26].  *Id*. at

8133.

Relying on *Moore v. Bd. of Educ. of Johnson City Sch.*, 134 F.3d 781, 785

(6th Cir. 1998), Williams now argues that she established a § 1983 claim because

she "demonstrated that she was deprived of her property interest" and "the Tenure

Act provides a remedy only for base pay if a teacher is terminated in violation of

the Act, therefore remedy under the Tenure Act is not adequate."  OB at 43-44.  As

compared to the elements described above, those are not the elements of a § 1983

claim.  Williams incorrectly reads *Moore*.  In *Moore*, the court held that the lower

court <u>erred</u> in applying *Parratt v. Taylor*, 451 U.S. 527, (1981), which the lower

court *incorrectly* interpreted as holding "'that a plaintiff claiming a deprivation of

property without due process of law does not state a claim of constitutional

magnitude unless he or she can show that there is no adequate remedy at state

law.'"  *Moore*, 134 F.3 at 784.

---

[26] Judge Parker already explained that "a teacher's inclusion on the reemployment list does not guarantee placement because '[a] principal may refuse to accept the placement or transfer of a teacher . . . [based on] [t]he teacher's most recent evaluations . . . .'" (First MSJ Order, **R. 88**, PageID# 2630 (quoting Tenn. Code Ann. § 49-5-511(b)(3); citing *Lee*, 237 S.W.3d at 334).)  And the court reiterated that while the Tenure Act requires placement on a reemployment list, "[t]his does not mean that Defendant has to hire Plaintiff—or any other excessed teacher—in any position she applies for after her position is terminated." (§ 1983 Revision Order, **R. 220**, PageID# 6319.)

### 4. Williams is not entitled to the types of damages awarded to the plaintiff in *Thompson v. Memphis City Sch. Bd. of Educ.*

Williams relies on *Thompson v. Memphis City Sch. Bd. of Educ.*,[27] to argue that she is entitled to "attorney fees and expenses, front pay, out of pocket expenses, impairment of reputation, lost earnings, financial and psychological injuries, and other applicable damages caused by the Board's wrongful conduct." OB at 44.[28]  The district court identified in its § 1983 Order that "[a] § 1983 plaintiff 'is entitled to all damages that compensate for injuries caused by the deprivation of constitutional rights,' but not damages 'too remote' from the constitutional violation alleged."  § 1983 Final Order, **R. 309**, PageID# 8132 (quoting *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10 C 00400, 2016 WL 9116026, at *2 (M.D. Tenn. Apr. 8, 2016)).  As explained above, the district court correctly held that Williams was not entitled to damages for her § 1983 claim.  Thus, she is not entitled to the types of damages awarded to Thompson, to whom the trial court granted SJ on her § 1983 claim.  *Thompson*, 395 S.W.3d at 632.

---

[27] Williams also relied on this case in her Post-Trial Brief.  Williams' Post-Trial Brief, **R. 305**, PageID# 8088-8089.

[28] Williams does not include this issue in her Statement of Issues.  OB at 10-13. The court's decision on whether to award attorneys' fees is reviewed for an abuse of discretion.  *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013).

I.    **Issue 8**:  The district court did not err by not addressing the School
Board's alleged failure to rehire Williams in its First MSJ Order, and
the district court did not abuse its discretion in allowing the School
Board to move for summary judgment on Williams' late-asserted Title
VII failure to rehire claim.

Williams complains that the district court erred by not addressing the

adverse action of retaliation related to the Board's failure to rehire her in the

court's Order on the First MSJ.  OB at 18-19.  Williams points out that she

included the following alleged fact in her First MSJ Reply (**R. 46**, PageID# 288):

"(7) From February 2016 to present, SCS refuses to hire Williams for the over

100+ positions in the school system for which she applied and was qualified."  OB

at 18.  However, the first time Williams actually asserted a Title VII failure to

rehire claim was on January 17, 2019, after the court issued its Order on the First

MSJ, in response to the School Board's motion *in limine* to exclude evidence of

her job applications.  Williams' Motion *In Limine* Response, **R. 118**, PageID#

3137.[29]  In response to Williams' argument that the district court showed

favoritism to the School Board in allowing it to file an MSJ on the failure to rehire

claim, the district court aptly noted that it could have disallowed Williams from

making the claim at all because she failed to assert it earlier in the process; yet

---

[29] Williams claimed that her Complaint included such a claim, but the district court
correctly found that it did not because she alleged that the School Board did not
offer her "future job opportunities," not that the School Board retaliated against her
failing to rehire her for Title VII protected activity.  *Id*. at 3137; Failure to Rehire
Order, **R. 207**, PageID# 5962.

instead, the court allowed her to make the claim and also gave the School Board a

chance to move for SJ.  Rehire Reconsideration Order, **R. 221**, PageID# 6339.

> **1.**   **Williams' argument that the district court erred by not addressing the School Board's alleged failure to rehire Williams in its First MSJ Order is moot.**

Williams' argument here is moot because the district court did later consider

the Title VII failure to rehire claim after allowing briefing on it.  Failure to Rehire

Order, **R. 207**, PageID# 5958.

**J.**   <u>Issue 9</u>:  **Williams failed to satisfy the administrative exhaustion requirement with respect to her failure to rehire claim, and the district court properly denied as moot Williams' Partial Motion for Summary Judgment on her failure to rehire claim.**

The School Board moved for SJ on Williams' failure to rehire claim based

on Williams' failure to exhaust administrative remedies.  Failure to Rehire Order,

**R. 207**, PageID# 5964.  Williams also moved for SJ on the failure to rehire claim.

*Id*. at 5958.  The district court correctly granted SJ in favor of the School Board

because Williams failed to exhaust administrative remedies based on: (1) the

undisputed material fact that nowhere in her original EEOC Charge or two

amendments, both of which were filed after Williams' March 7, 2016 termination,

did Williams allege the School Board failed to rehire her; (2) well-established

Sixth Circuit precedent that states an uncharged claim is reasonably expected to

grow out of an EEOC charge if the facts alleged in the charge would prompt the

EEOC to investigate it; and (3) the accurate finding that Williams' failure to rehire

claim was not reasonably expected to grow out of her allegations to the EEOC by generally alleging retaliation on the EEOC Charge.  *Id*. at 5966-5969.  The district court also properly denied as moot Williams' MPSJ because the court granted the School Board's MSJ.  *Id*. at 5959.  The district court addressed the merits of Williams' MSJ when it entered the order granting the School Board's MSJ on the same claim.  Rehire Reconsideration Order, **R. 221**, PageID# 6337.  Williams moved for reconsideration, which the court also properly denied.  Williams' Rehire Reconsideration Memorandum, **R. 215-2**, PageID# 6141-6159; Rehire Reconsideration Order, **R. 221**, PageID# 6331.

> 1.   **Williams' contention that checking the "retaliation" box on her EEOC Charge constitutes notice does not state a basis for finding the district court erred.**

Williams now argues for a *third time* that *any* act of retaliation logically flows from her Charge simply because she generally alleged retaliation.  OB at 49. The district court correctly held this argument is unavailing in both its Failure to Rehire Order and Order on Reconsideration.  To hold that merely checking the box or generally alleging retaliation puts the defendant on notice would significantly expand the scope of all EEOC charges to make the notice requirement ineffective and would permit prospective claimants to circumvent the notice requirement by checking all the boxes.  Failure to Rehire Order, **R. 207**, PageID# 5968-5969; Rehire Reconsideration Order, **R. 221**, PageID# 6337-6338.  Further, the case

Williams now relies upon for this argument is one in which the Sixth Circuit *affirmed* the district court's dismissal of the retaliation claim for failure to exhaust because it was not reasonable to conclude the EEOC would have investigated the retaliation claim stemming from a much later incident not referenced in the Charge.  OB at 49; *Scott v. Eastman Chem. Co.*, 275 Fed. App'x 466, 474 (6th Cir. 2008).

Here, Williams had at least from February 2016 (when she alleged the School Board began refusing to rehire her for open positions) until the end of October 2016 (when the EEOC issued its right to sue letter) to amend her Charge to include allegations specific to failure to rehire, **but she failed to do so despite obviously being well-versed in the charge filing and amendment process**. Williams' Rehire Response to School Board's Facts, **R. 188-1**, PageID# 5171-5172.  Williams' only support for her allegation that she tried to include the allegation that she had applied for open positions in her EEOC Charge is her own affidavit swearing the EEOC agent improperly left those allegations off the Charge.  Failure to Rehire Order, **R. 207**, PageID# 5969.  The district court correctly explained "self-serving affidavits, standing alone and without support in the record, will not defeat a motion for summary judgment." *Id*. (citing *Freeman v. Trombley*, 483 Fed. App'x 51, 58 (6th Cir. 2012) and *Capital Telecom Holdings II, LLC v. Grove City, Ohio*, 403 F. Supp. 3d 643, 649 (S.D. Ohio 2019)).

41

Finally, Williams' argument under *Ang v. Procter & Gamble Co.*, 932 F.2d 540 (6th Cir. 1991) that she exhausted administrative remedies is unavailing. OB at 50. *Ang* is a decision from over twenty years ago which relied on Fifth, Seventh, and Eleventh Circuit decisions. 932 F.2d at 546-547. In addition, the language from the *Ang* opinion to which Williams clings relates to an "ancillary jurisdiction" analysis, now inapplicable under *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019). *See Ang*, 932 F.2d at 546.

### 2.     Williams again confuses the issues of her case.

Without citing to any caselaw, Williams argues the School Board should be held liable under Title VII for a failure to rehire based on Williams' Tenure Act and § 1983 claims. OB at 49-50. Judge Parker already reminded Williams that her Tenure Act claim remained and the court revived her § 1983 claim surrounding her placement on the reemployment list. Rehire Reconsideration Order, **R. 221**, PageID# 6340.

### K.     <u>Issue 10</u>:  The district court properly granted summary judgment to the School Board on Williams' Title VII retaliatory termination claim.

Williams claims she was terminated in retaliation for filing her 2015 EEOC Charge. First MSJ Order, **R. 88**, PageID# 2640. Williams argued before the district court, as she does now, that the School Board did not have a legitimate, non-discriminatory reason for her termination and the School Board is liable under the cat's paw theory. OB at 45-48.

The district court correctly found the School Board articulated a legitimate non-discriminatory reason for Williams' termination:  a reduction in force of more than forty employees due to lost state funding.  First MSJ Order, R. 88, PageID# 2641 (citing *Chavez v. URS Fed. Tech. Servs, Inc.*, 504 Fed. App'x 819, 821 (11th Cir. 2013) (finding that a reduction in force because of budget cuts was a legitimate, nondiscriminatory reason for an employee's termination.).

The district court also properly found that Williams did not establish pretext. First MSJ Order, **R. 88**, PageID# 2641.  Williams argued then and now that Director of Employee Relations Chantay Branch ("Branch") harbored retaliatory animus and that animus was imputed to Superintendent Dorsey Hopson ("Hopson") under the cat's paw theory.  *Id*. at 2644.  The court correctly held that Williams was not able to show she was "more likely than not" fired for her engagement in protected activities rather than financial constraints because she was unable to link the alleged illegal motive to Hopson who ultimately made the decision to terminate her.  *Id*.

### 1.  Williams failed to show evidence that would allow a reasonable juror to find that illegal retaliation was the but-for cause of her termination.

Williams failed to establish the requisite causal nexus between Hopson's decision to terminate her and Branch's alleged retaliatory motive.  *Id*.  (citing

43

*Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 350 (6th Cir. 2012)).  The

district court definitively explained:

> An adequate causal nexus exists if Plaintiff shows: (1) non-decisionmakers acted with intent to result in Plaintiff's termination in retaliation for her protected conduct; and (2) those retaliatory actions were the but-for cause of Plaintiff's termination.  *See Seoane-Vazquez [v.Ohio State Univ.]*, 577 F. App'x [418,] 428 [6th Cir. 2014].  Under this standard, the retaliatory actions must be more than a motivating factor. *Id*.  Liability cannot be established where Plaintiff's termination was "prompted by both legitimate and illegitimate factors." *Id*….

> Plaintiff has proffered no evidence that Branch retaliated against her or harbored any animus towards her.  She merely alleges that Branch knew about Plaintiff's protected activities (see ECF No. 46-2 at PageID 319) and participated in Plaintiff's disciplinary sessions. (See ECF No. 46-1 at PageID 310.)  Plaintiff … **has failed to show that the desire to retaliate against Plaintiff was the but-for cause of the adverse employment decision…**.

First MSJ Order, **R. 88**, PageID#2643-2644 (emphasis added).

**L.**   **Issue 11**:  **The School Board was entitled to summary judgment on Williams' First Amendment Retaliation claim.**

Williams argued that she was terminated from her employment with the

School Board in retaliation for exercising her First Amendment right to speak on

matters of public concern, namely her report of alleged testing fraud and grant

money misappropriation to state and local officials regarding the AEP.  Compl., **R.**

**1**, PageID# 2; First MSJ Reply, **R. 46**, PageID# 291.  The district court properly

explained that the Sixth Circuit uses a burden-shifting framework to evaluate such

a claim, whereby the employee must show as part of her *prima facie* case that she

44

engaged in constitutionally protected speech or conduct.  First MSJ Order, **R. 88**,

PageID# 2621 (citing *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th

Cir. 2012)).

Williams contends the district court dismissed this claim "without a

complete analysis under the standards."  OB at 52.  In particular, Williams takes

issue with the court's finding that she spoke pursuant to her official duties, not as a

private citizen.  *Id*. at 53-54.  Williams also is not satisfied that the district court

analyzed only one element of the test for whether the Constitution protects a public

employee's speech; however, *she* does not analyze the other two elements to

establish she is able to establish them.  *Id*. at 53.

The district court correctly explained:

[T]he constitution protects a public employee's speech only if it meets these
three requirements:

> (1) it touches on 'a matter of public concern;' (2) it is not uttered
> pursuant to the employee's 'official duties' but rather 'as a citizen;'
> and (3) the employee's interest in the speech outweighs the
> government's interest in promoting "the effective and efficient
> fulfillment of its responsibilities to the public."

*Housey v. Macomb Cnty.*, 534 F. App'x 316, 321 (6th Cir. 2013) (citations
omitted).

When "a public employee speaks pursuant to her official duties, then she
was not speaking as a citizen, and the First Amendment will 'not insulate
[her] communications from employer discipline.'"  *Keeling [v. Coffee Cnty.,
Tenn.*], 541 F. App'x [522,] 526 (6th Cir. 2013) (quoting *Garcetti [v.
Ceballos]*, 547 U.S. [410,] 417 (2006)) (alteration in original).  Courts are to
look at the "impetus for the speech, the setting of the speech, the speech's

45

audience, and its general subject matter" to determine the type of the speech. *Id*…. While the fact that the speech "owes its existence to a public employee's professional responsibilities" is an important factor, the main consideration is whether the employee made the speech in furtherance "of the ordinary responsibilities of [her] employment." *Boulton v. Swanson*, 795 F.3d 526, 533–34 (6th Cir. 2015) (citing *Lane v. Franks*, 134 S. Ct. 2369 (2014)).

First MSJ Order, **R. 88**, PageID# 2622-2623.

The district court then went on to describe various Sixth Circuit decisions relating to whether a government employee spoke pursuant to her official duties or as a private citizen: *Keeling*, 541 Fed. App'x 522; *Housey*, 535 Fed. App'x 316, 322; and *Handy-Clay v. City of Memphis*, 695 F.3d 531, 542 (6th Cir. 2012). First MSJ Order, **R. 88**, PageID# 2623-2625. The district court correctly applied these cases and others to find Williams' speech unprotected by the First Amendment for the following key reasons:

- Reporting her fraud allegations relating to the "delivery of the curriculum and the "execution of responsibilities" up the School Board chain of command, which are listed in her job duties, constitutes unprotected speech under *Fox v. Traverse City Area Public Schs. Bd. of Educ.*, 605 F.3d 345, 350 (6th Cir. 2010) because Williams had an obligation, according to her job duties, to make sure that the AEP carried out these duties in "accordance with lawful and ethical standards";

- The "de facto" duty to report such allegations to state officials developed

  with state officials visited the AEP to observe the organization under

  *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 544 (6th Cir. 2007)[30]; and

- Williams' reporting was not about matters outside her official job duties and

  did not include acting as a union member, but rather arose from her job, and

  she reported fraud to advance the ordinary responsibilities of her

  employment.

First MSJ Order, **R. 88**, PageID# 2625-2627; School Board's First MSJ

Memorandum, **R. 42-1**, PageID# 131.

Williams misconstrues the deposition testimony of AEP Supervisor Griffin

as stating that "she was not allowing Williams to carry out her job

responsibilities." OB at 54. After being asked, You were not allowing her to do

her job, were you?," Griffin testified, "Yes, I was. I was trying to the best of my

---

[30] Williams appears to misunderstand the district court's reasoning with regard to
the "de facto" duty under *Weisbarth*, and she confusingly refers to the State of
Tennessee as "a governmental agency." OB at 54. The district court clearly
explained its analogy to *Weisbarth*, in which the Sixth Circuit found that a park
ranger had a "de facto" duty to speak with a third-party consultant who was
evaluating the department: "If communications to a third-party consultant [hired
by the plaintiff's employer] constitute unprotected employment speech, so does
speech to a government official overseeing the grant program funding the AEP."
R. 88, PageID# 2626. The fact that the LEA was accountable to the state
regarding public funding further supports the district court's reasoning, not the
opposite as Williams misguidedly suggests. OB at 54. Furthermore, Williams'
citation to a Northern District of Ohio case is non-precedential and misplaced.

47

ability to make sure she was successful at her job." Griffin Deposition Transcript,

**R. 54-1**, PageID# 1295:3-6. Nevertheless, Williams alleges herself that she

reported the fraud and grant money misappropriation to state and local officials

regarding the AEP (First MSJ Reply, **R. 46**, PageID# 291); thus, **Williams admits**

**she was able at least to carry out that job responsibility**. Accordingly, Williams

made the speech in furtherance "of the ordinary responsibilities of [her]

employment." *See Boulton*, 795 F.3d at 533-34.

**M.**    **Issue 12**: **The district court's granting of summary judgment to the School Board on Williams' TPPA retaliation claim is sounded in strong support from the record and Sixth Circuit precedent.**

Williams outlandishly contends her TPPA claim was not "evaluated on the

merits." OB at 55-57. The district court clearly analyzed the question of "whether

a reasonable jury could find that Defendant terminated Plaintiff solely because of

her reports on the alleged activities occurring at the AEP." First MSJ Order, **R. 88**,

PageID# 2633. This issue goes to the merits of the TPPA claim because one of the

undisputed elements a plaintiff must establish is that "'her refusal to remain silent

was the sole reason for the discharge.'" *Id*. at 2632 (quoting *Haynes v. Formac*

*Stables, Inc.*, 463 S.W.3d 34, 37 (Tenn. 2015)).[31] Williams seems not to

understand that the failure to establish one of the elements of a prima facie case

---

[31] The TPPA states that "no employee shall be discharged or terminated **solely** for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code. Ann. § 50-1-304(b) (emphasis added). *See* Addendum 7.

precludes the plaintiff from relief and there is no need to analyze the next step in the burden-shifting framework as to whether the employer had a legitimate non-discriminatory reason for the discharge[32].  OB at 55-56.

The district court answered its question in the negative based on the following undisputed material facts: (1) the entire AEP program was eliminated because of a loss of grant funding; (2) all employees whose positions depended on grant funding were terminated; and (3) Williams' position depended on grant funding and had to be terminated.  First MSJ Order, **R. 88**, PageID# 2633 (citing Williams' Response to Facts, **R. 46-1**, PageID# 303, 313).  Williams disputes now whether she should have been transferred into another position, yet she cites no law requiring the School Board to transfer her to a new position.  OB at 54.  This does not create a dispute of material fact as to whether a reasonable jury could conclude that she was terminated solely for reporting illegal activity.  It would not be logical to find in the affirmative because doing so would indicate the School Board somehow orchestrated the state's grant funding to be pulled and terminated all the other AEP employees to retaliate against Williams for her reporting illegal activity.  There is no support for this in the record and is farfetched, even for Williams, to argue.

---

[32] Tenn. Code. Ann. § 50-1-304(h) sets for the burden-shifting framework for TPPA claims, and explains the burden shifts to the employer only if the plaintiff satisfies her burden of establishing a prima facie case.  *See* Addendum 7.

US_ACTIVE\122558399\V-8

**N.    Issue 13:  The district court did not abuse its discretion by not granting Williams' Motion for Judicial Admission and Judicial Notice.**

In a November 8, 2021 proceeding, Judge Parker denied Williams'

Motion for Judicial Admission and Judicial Notice consistent with Sixth Circuit

precedent and the Federal Rules of Evidence.  Judicial Admission/Notice Minute

Entry, **R. 291**. Williams had requested that the court take judicial admission of the

School Board's responses to Paragraphs 31 and 32 of the Complaint along with

various excerpts from deposition testimony.  The School Board explained

Williams' request is improper and should be denied because the statements do not

qualify as judicial admissions under the prevailing Sixth Circuit standard in that

they are **not "clear and unambiguous."**  School Board Opposition to Judicial

Admission/Notice, **R. 281**, PageID# 7812-7813.  Regarding Williams' request for

judicial notice of four categories of documents including a Tennessee Open

Records Request and the Preferred List for Employment, the School Board

identified that Williams was asking the court to take judicial notice of the contents

of the documents not to confirm their existence, but **for the truth of the matters**

**the documents assert**, and therefore was not proper for the court to take judicial

notice as requested by Williams under Fed. R. Evid. 201(b).  School Board

Opposition to Judicial Admission/Notice, **R. 281**, PageID# 7814.

**O.    Issue 14:  The district court did not abuse its discretion in determining that Jones credibly testified as to key facts related to the § 1983 claim.**

For purposes of its § 1983 analysis, the district court found that, based on the School Board's Manager of Recruitment and Certificated Staffing Eddie Jones' trial testimony, that the School Board first placed Williams' name on its reemployment list at some point after Jones sent a January 2019 email regarding the reemployment list but before his deposition in February 2019.[33]  § 1983 Final Order, **R. 309**, PageID# 8125, 8128.  **Because this factual finding rests upon a credibility determination, this Court must afford great deference to the district court's finding**.  *See Nagarajan v. Williams*, 172 F.3d 49 (6th Cir. 1998) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) and *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1067 (6th Cir.1994)).

Williams now presents the issue of whether the district court abused its discretion in determining that Jones was a credible witness **without also asking**

---

[33] In her OB, Williams challenges the district court's admission of Jones' January 2019 email because it was not produced before his deposition, yet she does not include that in her Statement of Issues.  OB at 10-13, 59-60.  At trial, the district c court explained that it was admitting the email because Jones "testified here what this email chain is" and told Williams that she "can redirect him and see about that."  Bench Trial Day 1 Transcript, **R. 314**, PageID#8305: 4-7.  Nevertheless, the district court explained that Jones' "credible testimony is sufficient on its own to show that Defendant maintained a reemployment list and that Defendant placed Plaintiff's name on the reemployment list after January 2019.  § 1983 Final Order, **R. 309**, PageID# 8125 n.12.  Thus, whether or not the email was properly admitted is irrelevant.

whether the district court erred in finding the School Board placed Williams name on its reemployment list.  OB at 12-13, 62-63.

As referenced by Williams, the district court was forthcoming in its description of Jones' testimony in that it was "confusing at times" and that after his trial testimony, "the waters remain somewhat murky" as to whether the School Board ever placed Williams on a reemployment list.  § 1983 Final Order, **R. 309**, PageID# 8121.  However, neither of these comments indicate that Jones' testimony was not credible on the issue of whether the School Board placed Williams' name on the reemployment list after January 2019.

### 1. Jones testified credibly regarding key facts related to the § 1983 claim.

The trial court based its solid credibility determination on various statements in  Jones' trial testimony which it identified in the Proof at Trial section of its § 1983 Order.  § 1983 Final Order, **R. 309**, PageID# 8121-8124.  Most significantly:

- When asked whose names are typically included on the reemployment list, Jones credibly testified, "On the reemployment list we would keep individuals' names, such as a teacher – the main person would be a tenured teacher who had been excessed through the reduction in force period of time."  Bench Trial Day 1 Transcript, **R. 314**, PageID# 8234:24-8235:4.

52

- When Jones reviewed the January 2019 email (Exhibit 10), he credibly testified that it is the email which he sent to several business partners in January 2019 which states that Williams' name should be included on the reemployment list, then maintained on (or being migrated to) SharePoint, a web-based collaborative platform that integrates with Microsoft Office.   *Id*. at 8303-8305.

- Judge Parker asked Jones: "When you emailed – it looks like Exhibit Number 10 is an email from you, Dr. Jones, to your business partners. And it's asking that certain names be added to the reemployment list. And included at the very top of that list is Sonya Williams from The Messick Adult Center.  So does that tell you that Dr. Williams was added to the reemployment list as of late January 2019?"  Jones replied: "Yes, sir.  Yes, sir." *Id*. at 8326: 10-19.

### 2.     The issue of Jones' testimony is moot.

Finally, the issue of whether Jones credibly testified about whether Williams' name was added to the reemployment list is moot because the district court held that Williams failed to establish that "a person acting under color of law" caused the alleged deprivation of due process rights, which is a necessary element of the § 1983 claim.  § 1983 Final Order, **R. 309**, PageID# 8131.

## VIII. __CONCLUSION__

The district court's final Judgment and all of its Orders and rulings on appeal should be affirmed.

DATED:  Atlanta, Georgia on November 2, 2022.

 S/ RODNEY G. MOORE
RODNEY G. MOORE
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
Telephone:  404.527.4903
Email: rodney.moore@dentons.com

Attorney for Defendant-Appellee
SHELBY COUNTY BOARD OF
EDUCATION

## <u>STATEMENT OF RELATED CASES</u>

There are no related cases pending in this Court.

DATED:  Atlanta, Georgia on November 2, 2022.


 S/ RODNEY G. MOORE
RODNEY G. MOORE
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
Telephone:  404.527.4903
Email: rodney.moore@dentons.com

Attorney for Defendant-Appellee
SHELBY COUNTY BOARD OF
EDUCATION

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that:

I am an attorney with the law firm of Dentons US LLP, counsel for

Defendant-Appellee SHELBY COUNTY BOARD OF EDUCATION in this

action.

This brief contains 12,934 words, excluding the items exempted by Fed. R.

App. P. 32(f) and Sixth Circuit Rule 32(b)(1), and complies with the word limit of

Fed. R. App. P. 32(a)(7).  It complies with the typeface and typestyle requirements

of Rules 32(a)(4), 32(a)(5), and 32(a)(6) because it was prepared in a

proportionately spaced typeface using Microsoft Word for Microsoft 365 Times

New Roman 14-point font.

DATED:  Atlanta, Georgia on November 2, 2022.


 S/ RODNEY G. MOORE
RODNEY G. MOORE
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
Telephone:  404.527.4903
Email: rodney.moore@dentons.com

Attorney for Defendant-Appellee
SHELBY COUNTY BOARD OF
EDUCATION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a copy of the foregoing document was duly served upon the following individual to her last known address via e-mail and U.S. Mail, Postage Pre-Paid as follows:

SONYA P. WILLIAMS
3995 Point Church Road
Memphis, TN  38127
williamspw5269@yahoo.com

Plaintiff-Appellant

DATED:  Atlanta, Georgia on November 2, 2022.

 S/ RODNEY G. MOORE
RODNEY G. MOORE
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308
Telephone:  404.527.4903
Email: rodney.moore@dentons.com

Attorney for Defendant-Appellee
SHELBY COUNTY BOARD OF
EDUCATION

## <u>ADDENDUM 1</u>
**Designation of Relevant Lower Court Documents**
**Pursuant to 6 Cir. R. 28(b)(1)(A)(i) and 6 Cir. R. 30(g)**

| Record Entry # | Filing Date | Description | PageID# Range | Abbreviation/Designation in Appellee's Brief |
|---|---|---|---|---|
| 1 | January 24, 2017 | Complaint | 1-10 | Compl. |
| 42-1 | June 15, 2018 | Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment | 122-142 | School Board's First MSJ Memorandum |
| 46 | July 13, 2018 | Plaintiff's Response to Motion for Summary Judgment | 272-298 | First MSJ Reply |
| 46-1 | July 13, 2018 | Plaintiff's Response to Defendant's Statement of Undisputed Material Facts | 299-316 | Williams' Response to Facts |
| 54-1 | July 13, 2018 | Deposition of Rochelle Griffin Taken March 27, 2018 | 1103-1302 | Griffin Deposition Transcript |
| 76 | August 3, 2018 | Plaintiff's Sur-Reply to Defendant's Motion for Summary Judgment | 2373-2379 | Williams' Sur-Reply to School Board's First MSJ |
| 88 | December 18, 2018 | Order Granting in Part and Denying in Part Motion for Summary Judgment | 2615-2647 | First MSJ Order |
| 117 | January 15, 2019 | Minute Entry for proceedings held before Judge Thomas L. Parker; Pretrial Conference held on January 15, 2019 | N/A | 2018 Resolution Minute Entry |

| Record Entry # | Filing Date | Description | PageID# Range | Abbreviation/Designation in Appellee's Brief |
|---|---|---|---|---|
| 118 | January 17, 2019 | Plaintiff's Response to Defendant's Motion *In Limine* to Exclude Evidence on Plaintiff's Job Applications and Motion for Reconsideration of Order Entered at Doc. Entry 115 | 3136-3142 | Williams' Motion *In Limine* Response |
| 122-3 | January 22, 2019 | Resolution Ratifying the Excessing of Certain Additional Employees and Approving the Excessing of Certain Additional Employees | 3325-3328 | 2018 Resolution |
| 150 | February 22, 2019 | Plaintiff's Response to Defendant's Memorandum Regarding Plaintiff's Teacher Tenure Act Claim | 3639-3660 | Williams' Response to School Board's Tenure Act Memorandum |
| 156 | February 22, 2019 | Jennifer Ervin 30(b)(6) Deposition Taken February 1, 2019 | 4298-4381 | Ervin Deposition Transcript |
| 164 | February 27, 2019 | Plaintiff's Motion for Reconsideration of Due Process Claim | 4757-4758 | Williams' § 1983 Reconsideration Motion |
| 174 | March 18, 2019 | Minute Entry for proceedings held before Judge Thomas L. Parker; Motion Hearing held on March 18, 2019 | N/A | Rehire SJ Minute Entry |

| Record Entry # | Filing Date | Description | PageID# Range | Abbreviation/Designation in Appellee's Brief |
|---|---|---|---|---|
| 186 | June 3, 2019 | Plaintiff's Motion for Summary Judgment on Title VII Retaliation Claim: Failure to Rehire | 4992-4993 | Williams' Rehire MSJ |
| 186-3 | June 3, 2019 | October 29, 2013 letter with enclosures from Williams to EEOC regarding not being selected for AEP Advisor position | 5025-5035 | Letter to EEOC |
| 188-1 | June 17, 2019 | Plaintiff's Response to Defendant's Statement of Undisputed Material Facts for "Failure to Hire" Motion for Summary Judgment | 5167-5173 | Williams' Rehire Response to School Board's Facts |
| 207 | April 10, 2020 | Order Granting Defendant's Partial Motion for Summary Judgment and Denying as Moot Plaintiff's Partial Motion for Summary Judgment | 5958-5970 | Failure to Rehire Order |
| 215-2 | May 11, 2020 | Plaintiff's Memorandum in Support of Motion for Revision of Interlocutory Order Title VII Retaliation: Failure to Rehire | 6141-6159 | Williams' Rehire Reconsideration Memorandum |
| 220 | July 7, 2020 | Order Granting Plaintiff's Motion for Revision of an Interlocutory Order as to Her Claim under 42 | 6308-6330 | § 1983 Revision Order |

3

| Record Entry # | Filing Date | Description | PageID# Range | Abbreviation/Designation in Appellee's Brief |
|---|---|---|---|---|
| | | U.S.C. § 1983, Denying Plaintiff's Motion for Revision of an Interlocutory Order as to the Remainder of Her Claims, and Denying Defendant's Motion for Attorneys' Fees Arising Out of Plaintiff's Second Motion for Revision | | |
| 221 | July 7, 2020 | Order Denying Plaintiff's Motion for Revision of an Interlocutory Order on Her Title VII Failure to Rehire Claim | 6331-6340 | Rehire Reconsideration Order |
| 237 | August 13, 2020 | Order on Plaintiff's Teacher Tenure Act Claim | 6935-6948 | Tenure Act Order |
| 239 | September 17, 2020 | Plaintiff's Opening Brief on Damages under Teacher Tenure Act Claim | 6951-6955 | Williams' Damages Brief |
| 239-2 | September 17, 2020 | Plaintiff's Exhibit B | 6958-6961 | Finance Department Letter |
| 239-3 | September 17, 2020 | Plaintiff's Exhibit C | 6962 | Williams' Backpay Calculations |
| 246 | December 2, 2020 | Order on Plaintiff's Damages for Her Teacher Tenure Act Claim | 6999-7007 | Tenure Act Damages Order |
| 247-2 | December 14, 2020 | Plaintiff's Memorandum in Support of Revision of Court Order on | 7012-7015 | Williams' Tenure Act Damages Revision Memorandum |

4

| Record Entry # | Filing Date | Description | PageID# Range | Abbreviation/Designation in Appellee's Brief |
|---|---|---|---|---|
| | | Plaintiff's Damages Under Teacher Tenure Act Claim | | |
| 254 | February 23, 2021 | Order Granting in Part Plaintiff's Motion to Reconsider and Calculating Prejudgment Interest | 7064-7073 | Prejudgment Interest Order |
| 258-1 | May 20, 2021 | School Board's Memorandum of Law in Support of Motion for Leave to Deposit Funds Into the Court Treasury | 7079-7083 | Funds Deposit Memorandum |
| 261 | June 1, 2021 | Order Granting Defendant's Motion for Leave to Deposit Funds into the Court's Registry and Directing Clerk to Deposit Funds into an Interest-Bearing Account | 7092-7093 | Funds Deposit Order |
| 277 | October 22, 2021 | Pre-Trial Order | 7721-7732 | Pre-Trial Order |
| 281 | November 2, 2021 | Defendant's Opposition to Plaintiff's Motion for Judicial Admission and Judicial Notice | 7812-7816 | School Board Opposition to Judicial Admission/Notice |
| 291 | November 9, 2021 | Minute Entry for proceedings held before Judge Thomas L. Parker on November 8, 2021 | N/A | Judicial Admission/Notice Minute Entry |
| 293-1 | November 22, 2021 | Williams' Memorandum in Support of Motion for | 7887-7894 | Williams' Tenure Act Judgment Memorandum |

US_ACTIVE\122558399\V-8

| Record Entry # | Filing Date | Description | PageID# Range | Abbreviation/Designation in Appellee's Brief |
|---|---|---|---|---|
| | | Entry of Final Judgment Decree on Teacher Tenure Act Claim | | |
| 294-1 | December 9, 2021 | Court Clerk Receipt for $238,773.33 School Board's Deposit | 7907-7908 | $238,773.33 Receipt |
| 302 | January 28, 2022 | Minute Entry for Pre-Trial Conference held before Judge Thomas L. Parker on January 28, 2022 | N/A | Title VII Claims Waiver Minute Entry |
| 303 | February 3, 2022 | Order Denying Plaintiff's Motion for Entry of Partial Judgment and Denying Defendant's Motion to Amend | 8052-8061 | Partial Judgment Entry Order |
| 304 | February 15, 2022 | Minute Entry for Non-Jury Trial held before Judge Thomas L. Parker on February 14 and 15, 2022 | N/A | Bench Trial Minute Entry |
| 305 | February 28, 2022 | Plaintiff's Post-Trial Brief | 8062-8091 | Williams' Post-Trial Brief |
| 309 | June 14, 2022 | Order on Plaintiff's Claim under 42 U.S.C. § 1983 | 8109-8134 | § 1983 Final Order |
| 310 | June 14, 2022 | Judgment | 8135 | Final Judgment |
| 311 | July 13, 2022 | Notice of Appeal | 8136-8137 | Notice of Appeal |
| 314 | August 17, 2022 | Transcript of Bench Trial (Day 1 of 2) before the Honorable Thomas L. Parker | 8142-8359 | Bench Trial Day 1 Transcript |

## STATUTES AND UNPUBLISHED DECISIONS
### Pursuant to Fed. R. App. P. 28(f) and 6 Cir. R. 32.1(a)

| Addendum Number | Statute or Case Citation |
|---|---|
| 2 | Tenn. Code. Ann. § 47-14-103 |
| 3 | Tenn. Code. Ann. § 47-14-121 |
| 4 | Tenn. Code. Ann. § 47-14-122 |
| 5 | Tenn. Code. Ann. § 47-14-123 |
| 6 | Tenn. Code. Ann. § 49-5-511 |
| 7 | Tenn. Code. Ann. § 50-1-304 |
| 8 | *Bennett v. Highland Graphics, Inc.*, No. 3:14-cv-02408, 2017 WL 4512470 (M.D. Tenn. Oct. 10, 2017) |
| 9 | *Jones-Tate v. Shelby Cnty. Bd. of Ed.*, No. 2:17-cv-02307-SHL-dkv, 2018 WL 11348053 (W.D. Tenn. Aug. 21, 2018) |
| 10 | *Kelley v. Shelby Cnty. Bd. of Ed.*, No. 2:14-cv-2632-SHL-cgc, No. 14-cv-2633-SHL-cgc, 2017 WL 11139931 (W.D. Tenn. Aug. 24, 2017) |
| 11 | *MAKS, Inc. Gen. Trading & Contracting Co.*, No. 3:10-CV-443, 2014 WL 297291 (E.D. Tenn. Jan. 27, 2014) |
| 12 | *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10 C 00400, 2016 WL 9116026 (M.D. Tenn. Apr. 8, 2016) |

West's Tennessee Code Annotated
Title 47. Commercial Instruments and Transactions
Chapter 14. Interest Rates Generally (Refs & Annos)
Part 1. General Provisions

T. C. A. § 47-14-103

§ 47-14-103. Maximum rates

Effective: August 5, 2013

Currentness

Except as otherwise expressly provided by this chapter or by other statutes, the maximum effective rates of interest are as follows:

(1) For all transactions in which other statutes fix a maximum effective rate of interest for particular categories of creditors, lenders, or transactions, the rate so fixed;

(2) For all written contracts, including obligations issued by or on behalf of the state of Tennessee, any county, municipality, or district in the state, or any agency, authority, branch, bureau, commission, corporation, department, or instrumentality thereof, signed by the party to be charged, and not subject to subdivision (1), the applicable formula rate; and

(3) For all other transactions, ten percent (10%) per annum.

**Credits**

1979 Pub.Acts, c. 203, § 2; 1980 Pub.Acts, c. 601, § 26; 1983 Pub.Acts, c. 464, § 2.

Notes of Decisions (35)

T. C. A. § 47-14-103, TN ST § 47-14-103
Current with laws from the 2022 Second Regular Sess. of the 112th Tennessee General Assembly. Pursuant to §§ 1-1-110, 1-1-111, and 1-2-114, the Tennessee Code Commission certifies the final, official version of the Tennessee Code and, until then, may make editorial changes to the statutes. References to the updates made by the most recent legislative session should be to the Public Chapter and not to the T.C.A. until final revisions have been made to the text, numbering, and hierarchical headings on Westlaw to conform to the official text. Unless legislatively provided, section name lines are prepared by the publisher.

ADDENDUM 2

**§ 47-14-103. Maximum rates, TN ST § 47-14-103**

**End of Document**                                      © 2022 Thomson Reuters. No claim to original U.S. Government Works.

| West's Tennessee Code Annotated |
| Title 47. Commercial Instruments and Transactions |
| Chapter 14. Interest Rates Generally (Refs & Annos) |
| Part 1. General Provisions |

T. C. A. § 47-14-121

§ 47-14-121. Interest on judgments and decrees

Effective: August 5, 2013

Currentness

(a) Except as set forth in subsection (c), the interest rate on judgments per annum in all courts, including decrees, shall:

(1) For any judgment entered between July 1 and December 31, be equal to two percent (2%) less than the formula rate per annum published by the commissioner of financial institutions, as required by § 47-14-105, for June of the same year; or

(2) For any judgment entered between January 1 and June 30, be equal to two percent (2%) less than the formula rate per annum published by the commissioner of financial institutions, as required by § 47-14-105, for December of the prior year.

(b) To assist parties and the courts in determining and applying the interest rate on judgments set forth in subsection (a) for the six-month period in which a judgment is entered, before or at the beginning of each six-month period the administrative office of the courts:

(1) Shall calculate the interest rate on judgments that applies for the new six-month period pursuant to subsection (a);

(2) Shall publish that rate on the administrative office of the courts' web site; and

(3) Shall maintain and publish on that web site the judgment interest rates for each prior six-month period going back to the rate in effect for the six-month period beginning July 1, 2012.

(c) Notwithstanding subsection (a) or (b), where a judgment is based on a statute, note, contract, or other writing that fixes a rate of interest within the limits provided in § 47-14-103 for particular categories of creditors, lenders or transactions, the judgment shall bear interest at the rate so fixed.

ADDENDUM 3

**Credits**

1979 Pub.Acts, c. 203, § 20; 1981 Pub.Acts, c. 263, § 1; 2008 Pub.Acts, c. 655, § 1, eff. March 27, 2008; 2012 Pub.Acts, c. 1043, § 1, eff. July 1, 2012.

Notes of Decisions (47)

T. C. A. § 47-14-121, TN ST § 47-14-121

Current with laws from the 2022 Second Regular Sess. of the 112th Tennessee General Assembly. Pursuant to §§ 1-1-110, 1-1-111, and 1-2-114, the Tennessee Code Commission certifies the final, official version of the Tennessee Code and, until then, may make editorial changes to the statutes. References to the updates made by the most recent legislative session should be to the Public Chapter and not to the T.C.A. until final revisions have been made to the text, numbering, and hierarchical headings on Westlaw to conform to the official text. Unless legislatively provided, section name lines are prepared by the publisher.

**End of Document**    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

West's Tennessee Code Annotated
Title 47. Commercial Instruments and Transactions
Chapter 14. Interest Rates Generally (Refs & Annos)
Part 1. General Provisions

T. C. A. § 47-14-122

§ 47-14-122. Interest on judgments and decrees; time from calculation

Currentness

Interest shall be computed on every judgment from the day on which the jury or the court, sitting without a jury, returned the verdict without regard to a motion for a new trial.

**Credits**

1979 Pub.Acts, c. 203, § 21.

Notes of Decisions (56)

T. C. A. § 47-14-122, TN ST § 47-14-122
Current with laws from the 2022 Second Regular Sess. of the 112th Tennessee General Assembly. Pursuant to §§ 1-1-110, 1-1-111, and 1-2-114, the Tennessee Code Commission certifies the final, official version of the Tennessee Code and, until then, may make editorial changes to the statutes. References to the updates made by the most recent legislative session should be to the Public Chapter and not to the T.C.A. until final revisions have been made to the text, numbering, and hierarchical headings on Westlaw to conform to the official text. Unless legislatively provided, section name lines are prepared by the publisher.

     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.   1

**ADDENDUM 4**

| West's Tennessee Code Annotated |
| Title 47. Commercial Instruments and Transactions |
| Chapter 14. Interest Rates Generally (Refs & Annos) |
| Part 1. General Provisions |

T. C. A. § 47-14-123

§ 47-14-123. Prejudgment interest

Currentness

Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, that with respect to contracts subject to § 47-14-103, the maximum effective rates of prejudgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103.

**Credits**

1979 Pub.Acts, c. 203, § 22.

Notes of Decisions (176)

T. C. A. § 47-14-123, TN ST § 47-14-123
Current with laws from the 2022 Second Regular Sess. of the 112th Tennessee General Assembly. Pursuant to §§ 1-1-110, 1-1-111, and 1-2-114, the Tennessee Code Commission certifies the final, official version of the Tennessee Code and, until then, may make editorial changes to the statutes. References to the updates made by the most recent legislative session should be to the Public Chapter and not to the T.C.A. until final revisions have been made to the text, numbering, and hierarchical headings on Westlaw to conform to the official text. Unless legislatively provided, section name lines are prepared by the publisher.

**End of Document**    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**ADDENDUM 5**

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Tennessee Code Annotated

Title 49. Education

Chapter 5. Personnel

Part 5. Teachers' Tenure

T. C. A. § 49-5-511

§ 49-5-511. Dismissal or suspension

Effective: July 1, 2014

Currentness

(a)(1) No teacher shall be dismissed or suspended except as provided in this part.

(2) The causes for which a teacher may be dismissed or suspended are: incompetence, inefficiency, neglect of duty, unprofessional conduct, and insubordination, as defined in § 49-5-501.

(3) A director of schools may suspend a teacher at any time that may seem necessary, pending investigation or final disposition of a case before the board or an appeal. If the matter under investigation is not the subject of an ongoing criminal investigation or a department of children's services investigation, and if no charges have been made pursuant to subdivision (a)(4), a suspension pending investigation shall not exceed ninety (90) days in duration. If vindicated or reinstated, the teacher shall be paid the full salary for the period during which the teacher was suspended.

(4) When charges are made to the board of education against a teacher, charging the teacher with offenses that would justify dismissal of the teacher under the terms of this part, the charges shall be made in writing, specifically stating the offenses that are charged, and shall be signed by the party or parties making the charges.

(5) If, in the opinion of the board, charges are of such a nature as to warrant the dismissal of the teacher, the director of schools shall give the teacher a written notice of this decision, together with a copy of the charges and a copy of a form, which shall be provided by the commissioner of education, advising the teacher as to the teacher's legal duties, rights, and recourse under the terms of this part.

(b)(1) When it becomes necessary to reduce the number of teaching positions or nonlicensed positions in the system because of a decrease in enrollment or for other good reasons, the board shall be empowered to dismiss such teachers or nonlicensed

ADDENDUM 6

employees based on their level of effectiveness determined by the evaluation pursuant to § 49-1-302 for licensed employees and an evaluation of work performance for nonlicensed employees.

(2) The board shall give the teacher or nonlicensed employee written notice of dismissal explaining fully the circumstances or conditions making the dismissal necessary.

(3) A teacher rated in the three (3) highest categories based on evaluations pursuant to § 49-1-302 who has been dismissed because of abolition of a position shall be placed on a list for reemployment. Nothing in this subsection (b) shall be construed to deprive the director of schools of the power to determine the filling of such vacancy on the basis of the director of schools' evaluation of the teacher's competence, compatibility, and suitability to properly discharge the duties required for the vacant position considered in the light of the best interest of the students in the school where the vacancy exists. A principal may refuse to accept the placement or transfer of a teacher by the director of schools to the principal's school. The teacher's most recent evaluations shall be a factor in such determination.

(4) The right to remain on the preferred list for employment shall remain in effect until:

   (A) The teacher accepts a bona fide offer of reemployment for a comparable position within the LEA; or

   (B) The teacher rejects four (4) bona fide offers of reemployment for comparable positions within the LEA.

(c)(1) Notwithstanding subsection (a), but subject to the appeal and review provisions of §§ 49-5-512 and 49-5-513, any teacher convicted of a felony listed in § 40-35-501(i)(2) or convicted of an offense listed in § 39-17-417 shall be immediately suspended, and dismissed subject to subdivision (c)(2).

(2) If the dismissal of the teacher is upheld in the board and court reviews provided for in §§ 49-5-512 and 49-5-513, the director shall notify in writing the commissioner of education who shall begin licensure revocation proceedings under applicable rules of the state board of education.

**Credits**

1951 Pub.Acts, c. 76, §§ 2, 6, 7, 15; 1955 Pub.Acts, c. 343, § 2; 1989 Pub.Acts, c. 197, § 1; 1990 Pub.Acts, c. 948, § 23; 1999 Pub.Acts, c. 43, § 1, eff. March 31, 1999; 2001 Pub.Acts, c. 197, § 1, eff. July 1, 2001; 2002 Pub.Acts, c. 535, § 1, eff. July 1, 2002; 2008 Pub.Acts, c. 612, §§ 1 to 3, eff. March 11, 2008; 2011 Pub.Acts, c. 70, § 9, eff. July 1, 2011; 2011 Pub.Acts, c. 378, § 3, eff. June 1, 2011; 2012 Pub.Acts, c. 801, § 1, eff. April 23, 2012; 2012 Pub.Acts, c. 1012, § 1, eff. May 15, 2012; 2013 Pub.Acts, c. 369, § 1, eff. July 1, 2014; 2014 Pub.Acts, c. 684, § 1, eff. July 1, 2014.

**Formerly** Williams' Code, §§ 2345.2, 2345.6, 2345.7, 2345.15; §§ 49-1410, 49-1412 to 49-1415.

**§ 49-5-511. Dismissal or suspension, TN ST § 49-5-511**

Notes of Decisions (82)

T. C. A. § 49-5-511, TN ST § 49-5-511
Current with laws from the 2022 Second Regular Sess. of the 112th Tennessee General Assembly. Pursuant to §§ 1-1-110, 1-1-111, and 1-2-114, the Tennessee Code Commission certifies the final, official version of the Tennessee Code and, until then, may make editorial changes to the statutes. References to the updates made by the most recent legislative session should be to the Public Chapter and not to the T.C.A. until final revisions have been made to the text, numbering, and hierarchical headings on Westlaw to conform to the official text. Unless legislatively provided, section name lines are prepared by the publisher.

**End of Document**
© 2022 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

West's Tennessee Code Annotated

Title 50. Employer and Employee

Chapter 1. Employment Relationship and Practices

Part 3. Working Conditions Generally

T. C. A. § 50-1-304

§ 50-1-304. Retaliatory discharge

Effective: May 26, 2021

Currentness

(a) As used in this section:

(1) "Employee" includes, but is not limited to:

(A) A person employed by the state or any municipality, county, department, board, commission, agency, instrumentality, political subdivision or any other entity of the state;

(B) A person employed by a private employer; or

(C) A person who receives compensation from the federal government for services performed for the federal government, notwithstanding that the person is not a full-time employee of the federal government;

(2) "Employer" includes, but is not limited to:

(A) The state or any municipality, county, department, board, commission, agency, instrumentality, political subdivision or any other entity of the state;

(B) A private employer; or

ADDENDUM 7

(C) The federal government as to an employee who receives compensation from the federal government for services performed for the federal government, notwithstanding that the person is not a full-time federal employee; and

(3) "Illegal activities":

(A) Means activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety, or welfare; and

(B) Does not include activities prohibited under title 4, chapter 21, § 8-50-103, or federal laws prohibiting discrimination in employment.

(b) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

(c)(1) Any employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled, subject to the limitations set out in § 4-21-313.

(2) Any employee terminated in violation of subsection (b) solely for refusing to participate in, or for refusing to remain silent about, illegal activities who prevails in a cause of action against an employer for retaliatory discharge for the actions shall be entitled to recover reasonable attorney fees and costs.

(d)(1) No employee shall be discharged or terminated solely for participating or engaging in the use of an agricultural product not regulated by the alcoholic beverage commission that is not otherwise proscribed by law, if the employee participates or engages in the use in a manner that complies with all applicable employer policies regarding the use during times at which the employee is working.

(2) No employee shall be discharged or terminated solely for participating or engaging in the use of the product not regulated by the alcoholic beverage commission that is not otherwise proscribed by law if the employee participates or engages in the activity during times when the employee is not working.

(e)(1) This section shall not be used for frivolous lawsuits, and anyone trying to do so is subject to sanction as provided in subdivision (e)(2).

(2) If any employee files a cause of action for retaliatory discharge for any improper purpose, such as to harass or to cause needless increase in costs to the employer, the court, upon motion or upon its own initiative, shall impose upon the employee an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred, including reasonable attorney's fees.

(f) In any civil cause of action for retaliatory discharge brought pursuant to this section, or in any civil cause of action alleging retaliation for refusing to participate in or remain silent about illegal activities, the plaintiff shall have the burden of establishing a prima facie case of retaliatory discharge. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the plaintiff's discharge. The burden on the defendant is one of production and not persuasion. If the defendant produces such evidence, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the plaintiff's discharge and that the stated reason was a pretext for unlawful retaliation. The foregoing allocations of burdens of proof shall apply at all stages of the proceedings, including motions for summary judgment. The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff has been the victim of unlawful retaliation.

(g) This section abrogates and supersedes the common law with respect to any claim that could have been brought under this section.

## Credits

1990 Pub.Acts, c. 771, §§ 1, 2; 1997 Pub.Acts, c. 511, §§ 1, 2, eff. June 13, 1997; 2000 Pub.Acts, c. 688, § 1, eff. July 1, 2000; 2009 Pub.Acts, c. 161, § 1, eff. May 7, 2009; 2011 Pub.Acts, c. 461, § 2, eff. June 10, 2011; 2014 Pub.Acts, c. 995, §§ 4 to 6, eff. July 1, 2014; 2021 Pub.Acts, c. 556, § 1, eff. May 26, 2021.

Notes of Decisions (203)

T. C. A. § 50-1-304, TN ST § 50-1-304
Current with laws from the 2022 Second Regular Sess. of the 112th Tennessee General Assembly. Pursuant to §§ 1-1-110, 1-1-111, and 1-2-114, the Tennessee Code Commission certifies the final, official version of the Tennessee Code and, until then, may make editorial changes to the statutes. References to the updates made by the most recent legislative session should be to the Public Chapter and not to the T.C.A. until final revisions have been made to the text, numbering, and hierarchical headings on Westlaw to conform to the official text. Unless legislatively provided, section name lines are prepared by the publisher.

**End of Document**                                      © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 4512470
Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee,
Nashville Division.

Chris BENNETT, Plaintiff,
v.
HIGHLAND GRAPHICS, INC. and Ron Wall,
Defendants.

No. 3:14–cv–02408
|
Filed 10/10/2017

**Attorneys and Law Firms**

David W. Garrison, Joshua A. Frank, Seth Marcus Hyatt,
Barrett Johnston Martin & Garrison, LLC, Nashville, TN,
for Plaintiff.

Andrew C. Cameron, Desiree Julein Clark Goff, Irene R.
Haude, John A. Beam, III, Equitus Law Alliance, PLLC,
Nashville, TN, for Defendants.

## MEMORANDUM OPINION AND ORDER

WAVERLY D. CRENSHAW, JR., CHIEF UNITED
STATES DISTRICT JUDGE

**\*1** Before the Court are: (1) Plaintiff's Renewed Motion
for Judgment as a Matter of Law and Motion for a New
Trial on Back Pay Damages (Doc. No. 267); (2)
Plaintiff's Motion for Leave to File Reply (Doc. No. 281);
(3) Plaintiff's Motion for Liquidated Damages and
Pre-judgment Interest (Doc. No. 269); (4) the Motion for
Renewed Judgment [sic] as a Matter of Law (Doc. No.
275) filed by Highland Graphics, Inc. and Ron Wall
(referred to collectively herein, in the singular, as
"Highland"); and (5) Defendants' Motion for Leave to
File Reply (Doc. No. 287).

As an initial matter, both motions for leave to file a reply
brief (Doc. Nos. 281, 287) are **GRANTED**, and the Clerk
is **DIRECTED** to file separately the proposed reply briefs
attached to the motions. The Court has considered the

proposed replies in ruling on the motions, all of which are
fully briefed and ripe for review.

## I. Plaintiff's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on Back Pay Damages

Plaintiff Chris Bennett renews his motion for judgment in
his favor as a matter of law on Highland's affirmative
defense of failure to mitigate the damages related to his
FLSA retaliation claim, under Rule 50(b) of the Federal
Rules of Civil Procedure. He also requests a new trial
solely on the issue of back pay damages under Rule 59(a).

### A. Standard of Review

The Court may grant a Rule 50(b) motion for judgment as
a matter of law only if, "when viewing the evidence in a
light most favorable to the non-moving party, giving that
party the benefit of all reasonable inferences, there is no
genuine issue of material fact for the jury, and reasonable
minds could come to but one conclusion in favor of the
moving party." Rhinehimer v. U.S. Bancorp Investments,
Inc., 787 F.3d 797, 804 (6th Cir. 2015) (quoting
Barnes v. City of Cincinnati, 401 F.3d 729, 736 (6th
Cir. 2005)). "The evidence should not be weighed, and
the credibility of the witnesses should not be questioned.
The judgment of [the] court should not be substituted for
that of the jury." Id. (quoting Balsley v. LFP, Inc., 691
F.3d 747, 757 (6th Cir. 2012)). "In other words, the
decision to grant judgment as a matter of law ... is
appropriate whenever there is a complete absence of
pleading or proof on an issue material to the cause of
action or when no disputed issues of fact exist such that
reasonable minds would not differ." Jackson v. FedEx
Corp. Servs., 518 F.3d 388, 392 (6th Cir. 2008) (citation
omitted). In ruling on a Rule 50(b) motion, the Court may
allow the verdict to stand, order a new trial, or direct entry
of judgment as a matter of law. Fed. R. Civ. P. 50(b).

Rule 59(a)(1)(A) provides that "[t]he court may, on
motion, grant a new trial on all or some of the
issues—and to any party ... for any reason for which a
new trial has heretofore been granted in an action at law
in federal court." "The language of Rule 59(a) has been
interpreted to mean that a new trial is warranted when a
jury has reached a seriously erroneous result as evidenced

ADDENDUM 8

by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1066 (6th Cir. 2015) (internal quotation marks and citations omitted).

### B. Timeliness of Rule 50(b) Motion

**\*2** A party may submit a Rule 50(a) motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If the court denies relief on the basis sought, the movant may renew the motion no later than 28 days after entry of judgment. Fed. R. Civ. P. 50(b). Here, the question is whether Bennett's Rule 50(a) motion was timely, such that a Rule 50(b) motion was proper at all.

Bennett's Rule 50(a) motion for judgment in his favor on the affirmative defense of failure to mitigate was filed on March 23, 2017, after closing arguments but before the jury had been charged. (See Doc. Nos. 243 (motion), 244 (memorandum).) The motion followed an in-court discussion regarding Highland's proposal to add additional language to the mitigation instruction already included in the jury charge. Highland asserts that the Rule 50(a) motion was not timely because it was filed after closing arguments rather than after the close of proof. It also claims that the Rule 50(a) motion did not put it on notice of the arguments raised in the Rule 50(b) motion, because Bennett "did not mention any cases in support of the argument promoted ... in his post trial Rule 50(b) [motion]." (Doc. No. 279, at 3–4.) Finally, it contends that, because Bennett did not "raise the issue at the close of Defendants' proof, Defendants were not aware (or on notice) that Plaintiff Bennett was making his own Rule 50(a) motion when filing his Motion for Judgment as a Matter of law at the same time as the Defendants' request for an instruction on self-employment." (Doc. No. 279, at 4.)

Highland's contention that the motion is untimely fails. Prior to 2006, Rule 50 contained language requiring that a Rule 50(a) motion be made at the close of all the evidence, see Fed. R. Civ. P. 50 advisory committee's note on 2006 Amendment, but this requirement was modified to allow a Rule 50(a) motion to be made "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). Highland cites to no precedent establishing that a Rule 50(a) motion, under the rule's current

language, is untimely if presented after closing arguments.

Highland's other arguments are likewise without merit. Bennett filed a written motion, docketed in the Court's electronic filing system, styled, "Motion for Judgment as a Matter of Law as to Defendants' Defense that Plaintiff Failed to Mitigate His Damages." (Doc. No. 243.) The first line of the motion specified that it was brought pursuant to Rule 50(a). The Certificate of Service serves as proof that it was served electronically on defense counsel on the day of its filing, March 23, 2017. (Doc. No. 243, at 3.) The Rule 50(a) motion cross references the contemporaneously filed brief. (Id.) In the brief, Bennett raises the same arguments and cites to most of the same cases referenced in his current Rule 50(b) motion. (See Doc. No. 244.) In short, it is clear that the timely Rule 50(a) motion put Highland on notice of the issue raised in the Rule 50(b) motion and that the Rule 50(b) motion is simply a renewal of an argument raised in the Rule 50(a) motion.

### C. Discussion

Bennett argues now, as he did in his initial Rule 50(a) motion, that he is entitled to judgment as a matter of law in his favor on Highland's affirmative defense of failure to mitigate damages, because Highland did not introduce any evidence from which the jury could conclude that comparable employment was available to Plaintiff after his retaliatory termination. He contends that, as a result, he is entitled to a new trial on the issue of damages. Highland argues in response that the $5,000 awarded to Bennett by the jury is reasonable, because the jury evidently concluded that Bennett removed himself from the job market by going into business for himself immediately following his departure from Highland and that a new trial is not warranted. (Doc. No. 278, at 1, 2.)

**\*3** Damages for violation of the anti-retaliation provisions of the FLSA are controlled by 29 U.S.C. § 216(b), which provides in pertinent part:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without

limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

"The purpose of a back pay award is to 'restore the employee to the status quo he would have enjoyed if the discriminatory discharge had not taken place.' " Bohannon v. Baptist Mem'l Hosp.–Tipton, No. 08–2220–STA, 2010 WL 1856548, at *4 (W.D. Tenn. May 7, 2010) (quoting Hawley v. Dresser Indus., Inc., 958 F.2d 720, 725 (6th Cir. 1992)).

Although the FLSA, unlike Title VII, does not expressly contain a provision requiring an employee subjected to a retaliatory termination to mitigate his damages, courts have imported such a requirement into the cause of action. See, e.g., Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 880 (2d Cir. N.Y. 1988) (presuming duty to mitigate in FLSA case). Neither party disputes that an employee who seeks back pay as damages has a duty to mitigate his damages by seeking other comparable employment. The defendant bears the burden of pleading and proving the affirmative defense of failure to mitigate, and the burden arises "[o]nce a claimant establishes a prima facie case and presents evidence on the issue of damages." Rasimas v. Mich. Dep't of Mental Health, 714 F.2d 614, 623 (6th Cir. 1983).

The Court instructed the jury on mitigation of damages as follows:

Under the law, a plaintiff must make reasonable efforts to minimize or reduce his damages for loss of compensation by seeking equivalent employment. This is called mitigation of damages.

The reasonableness of a plaintiff's effort to secure substantially equivalent employment must be evaluated in light of the plaintiff's background, experience, and the relevant job market. The burden of proof is on the employer to prove that the plaintiff failed to mitigate his damages. The employer satisfies its burden by establishing that there were substantial [sic] equivalent positions available in the area and that the plaintiff did not use reasonable care and diligence in seeking such positions. Self-employment, if it is undertaken in good faith, and as a reasonable alternative to seeking other comparable employment, may be considered permissible mitigation.

If you find that

1. Plaintiff did not take reasonable actions to reduce his damages, and

2. Plaintiff reasonably might have found comparable employment if he had taken such action,

then you should reduce any amount you might award to Plaintiff for lost wages and benefits by the amount he reasonably would have earned during the period for which you are awarding such damages.

(Trial Tr. Vol. IV, Doc. No. 261, at 25.)

The plaintiff does not contend that the jury instruction constituted an incorrect statement of law. Instead, he argues that the court should not have instructed the jury on mitigation of damages at all, because the defendant failed to present any evidence that the plaintiff failed to mitigate damages. He further insists that the jury award is perplexing and inconsistent insofar as the jury found in his favor on his retaliatory discharge claim but awarded him only $5,000 in back-pay damages—two weeks' of pay—rather than the back pay for more than two years that he sought. He argues that the only explanation for the amount of the award is that the jury concluded that he had failed to mitigate damages, despite Highland's failure to put on proof of failure to mitigate.

**\*4** Bennett testified that upon being terminated, because he is a Canadian citizen and his immigration status in the United States was directly tied to employment, he made immediate plans to sell his house and move his family back to London, Ontario. He testified that he briefly searched for jobs, but that the job market in Canada has far fewer executive-level openings than in the United States that would be comparable to his job with Highland. He claimed that, when he was unable to identify any available comparable positions, he and his wife went into business for themselves. (Trial Tr. Vol. II, Doc. No. 259, at 169–70.)

As Highland points out, however, Bennett received his last pay check from Highland on Saturday, December 6, 2014. On Sunday, December 7, he submitted a domain name application for his new business, Northern Home Accents. (Doc. 259, at 223.) On Monday, December 8, 2014 the domain name was registered. (Id.) On Wednesday, December 10, 2014, Bennett incorporated his new business, Northern Home Accents, in Canada. (Id.) Highland argues now, as it did at trial, that Bennett failed to mitigate his damages by taking himself out of the work force and going into business for himself. The Sixth Circuit has held that "[s]elf-employment, if it is

undertaken in good faith and is a reasonable alternative to seeking other comparable employment, may be considered permissible mitigation." Taylor v. Invacare Corp., 64 Fed.Appx. 516, 523 n.9 (6th Cir. 2003) (quoting Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 696 (2d Cir. 1998)).

Here, however, in light of the timing of events, the jury could have found that Bennett's removal of himself from the job market was not in good faith and that his plans to start his own competing business predated his departure from Highland. The evidence in the record also reasonably permitted the jury to find that Bennett, if he had not been retaliatorily discharged, would have soon left on his own anyway to begin the new business. As indicated above, the purpose of back pay damages is to restore the plaintiff to "the status quo he would have enjoyed if the discriminatory discharge had not taken place.' " Bohannon, 2010 WL 1856548, at *4. The jury could have believed that the "status quo" in this case was Bennett's decision to start a competing business for which it would have been inequitable to require Highland to bear the start-up and investment costs. The jury may well also have found that awarding damages in excess of $5,000 would have amounted to a windfall to Bennett, in light of his investment in his new business and expectation of an eventual substantial return on that investment.

In sum, the Court finds that the instruction on mitigation of damages was a correct statement of the law and that there was not a "complete absence of ... proof" on the issue of mitigation. Rhinehimer, 787 F.3d at 804. Rather, there is sufficient evidence in the record to permit the jury to find that the plaintiff made no effort to find a comparable job and instead immediately proceeded with preconceived plans to pursue his own business venture.

The Court therefore **DENIES** the plaintiff's Rule 50(b) motion for judgment in his favor on the issue of the affirmative defense of failure to mitigate damages and **DENIES** the motion for a new trial on the issue of damages. (Doc. No. 267.)

## II. Plaintiff's Motion for Liquidated Damages and Pre-judgment Interest

Under 29 U.S.C. § 216(b), when an employer terminates an employee for seeking to vindicate his rights under the FLSA and the jury awards the employee back pay, the Court may award an equal amount as liquidated damages. Blanton v. City of Murfreesboro, 856 F.2d

731, 734 (6th Cir. 1988). Unlike liquidated damages for minimum wage or overtime violations, liquidated damages for FLSA retaliation claims are not presumed to be mandatory. Instead, the district court has broad discretion to liquidate such back wages, based on whether liquidation is "appropriate to effectuate the purposes of section 215(a)(3)" of the FLSA. Id. (citing 29 U.S.C. § 216(b)).

**\*5** The Court finds under the circumstances presented here that an award of liquidated damages in the amount of $5,000 is appropriate to effectuate the purposes of § 215(a)(3). Specifically, no front pay award has been issued, the amount of damages is low, and the plaintiff has had to wait several years to recover even the small amount awarded by the jury. The motion for liquidated damages (Doc. No. 269) in the amount of $5,000 is therefore **GRANTED**.

Bennett also moves for interest at the statutory rate of 10% on the amount awarded on his unjust enrichment claim, or $1,818.15. "Where state law claims come before a federal court on supplemental jurisdiction, the award of prejudgment interest rests on state law." Mills v. River Terminal Ry. Co., 276 F.3d 222, 228 (6th Cir. 2002); Gentek Bldg. Products, Inc. v. Sherwin–Williams Co., 491 F.3d 320, 333 (6th Cir. 2007).

Under Tennessee law, the award of prejudgment interest, as an element of, or in the nature of damages, is permitted in accordance with the principles of equity at a rate not to exceed 10% per annum. See Tenn. Code Ann. § 47–14–123. An award of prejudgment interest is within the trial court's discretion, and the Tennessee Supreme Court has established that equity is the guiding principle for exercising that discretion: "Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." Myint v. Allstate Ins. Co., 970 S.W.2d 920, 927 (Tenn. 1998). "[T]he purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." Id. "Tennessee courts have identified six factors to aid trial courts in deciding whether prejudgment interest is fair and equitable: (1) promptness in commencing the claim, (2) unreasonable delay of the proceedings, (3) abusive litigation practices, (4) certainty of the existence of an underlying obligation, (5) certainty of the amount due, and (6) previous payment for the lost time value of the money." FLSmith Inc. v. Fiber Innovation Tech., Inc., 626 Fed.Appx. 625, 630 (6th Cir. 2015) (citing Poole v. Union Planters Bank, N.A., 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010)).

Bennett points out that his employment was terminated in November 2014 and this matter went to trial in March 2017; for ease of calculation, however, he seeks only 24 months of prejudgment interest. He argues that he is entitled to prejudgment interest because: (1) the amount owed to him based on his agreed-upon salary has always been reasonably certain; (2) Tennessee law favors "awarding prejudgment interest whenever doing so will more fully compensate plaintiffs for the loss of use of their funds" (Doc. No. 270, at 7 (quoting Scholz v. S.B. Int'l, Inc., 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000)); and (3) he was not dilatory in seeking relief, did not unreasonably delay proceedings, and has not otherwise been compensated for the lost time value of his money. He also asserts that interest at the rate of 10% is reasonable and has been upheld in recent opinions, including FLSmidth, supra.

In response, Highland argues only that it was not unjustly enriched, the jury's determination to the contrary notwithstanding, and that the rate of 10% is inequitable in light of the fact that the Wall Street Journal average prime rate between the filing of the complaint in December 2014 through March 2017 was 3.44%.

*6 The Court finds that it is equitable in this case to award prejudgment interest to compensate Bennett for two years' loss of the use of funds. Bennett promptly pursued his interests and has not engaged in abusive or dilatory litigation practices, and the amount of the damages, while not precisely calculable, was reasonably certain. In light of low prevailing interest rates during the relevant time frame, however, the Court will exercise its discretion to award interest at the rate of 5% rather than 10%. Accord Lativafter Liquidating Trust v. Clear Channel Comm'ns, Inc., 345 Fed.Appx. 46, 52 (6th Cir. 2009) (affirming the district court's award of prejudgment interest at the rate of 4.66%, the actual average rate during the relevant time frame). The Court finds that interest at this rate, rather than the lower actual rate, is equitable in light of the fact that the plaintiff has already reduced the amount of time for which he seeks prejudgment interest.

The Court therefore **GRANTS IN PART** the motion for prejudgment interest (Doc. No. 269) and **AWARDS** prejudgment interest in the amount of **$909.08**.

### III. Defendants' Renewed Motion for Judgment as a Matter of Law

In its motion and supporting memorandum (Doc. Nos. 275, 276), Highland argues that: (1) it is entitled to judgment as a matter of law on the retaliatory discharge claim, because the evidence presented at trial was not sufficient to allow reasonable minds to conclude that an adverse employment action occurred or that there was a causal connection between the alleged adverse action and Bennett's lawyer's letter alleging FLSA violations; (2) it is entitled to judgment as a matter of law on the unjust enrichment claim, because the claim is preempted by the FLSA as a matter of law and should never have been presented to the jury; and (3) alternatively, it is entitled to a new trial on the issue of unjust enrichment, because the Court erred as a matter of law in failing to instruct the jury on the affirmative defense of unclean hands.

The Court finds, first, that the evidence presented at trial was legally sufficient to permit the jury to find that Bennett was discharged in retaliation for having submitted, through an attorney, a letter accusing Highland of violating the FLSA. The jury obviously credited Chris Bennett's testimony and discredited that of Ron Wall regarding the events following Wall's receipt of the attorney's letter. The jury reasonably concluded that Bennett was discharged when his access to email and company accounts was cut off following Wall's receipt of the lawyer's letter, and when Wall refused to respond to Bennett's inquiries about the status of his employment.

Second, the Court has already determined that the state law unjust enrichment claim was not duplicative of and therefore not preempted by the FLSA. (See Doc. No. 150, at 26–27 (denying Defendants' Motion for Summary Judgment on the unjust enrichment claim).) Accord Cannon v. Citicorp Credit Services, Inc., No. 2:12–CV–88, 2014 WL 1267279, at *5 (E.D. Tenn. March 26, 2014); Woodall v. DSI Renal, Inc., No. 11–2590, 2012 WL 1038626, at *6 (W.D. Tenn. March 27, 2012). The Court will not reconsider that determination.

Third, the Court denied Highland's request for a jury instruction on the defense of unclean hands on the basis that Highland had not raised that defense in the Joint Pretrial Order, which expressly amended the pleadings to conform to the Order. (Doc. No. 221, at 1; see id. at 7–9 (identifying Defendants' Issues for the Court and Issues for the Jury).) Nor did Highland raise the defense of unclean hands in its Answer. (Doc. No. 20.) "Failure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense." Horton v. Potter, 369 F.3d 906, 911 (6th Cir. 2004) (citing Haskell v. Washington Twp., 864 F.2d 1266, 1273 (6th Cir. 1988)).

**\*7** That general rule is not without exceptions. See, e.g., Seals v. Gen. Motors Corp., 546 F.3d 766, 770 (6th Cir. 2008) (noting exceptions to the rule, including when an amendment is permitted under Rule 15(a) or "when the plaintiff receives notice of the affirmative defense by some other means"). Here, however, Highland never sought to amend the Answer to include the defense of unclean hands; it did not articulate the defense in the Joint Pretrial Order; and there is no evidence that Bennett had notice of the defense by any other means prior to Highland's submission of a request for a jury instruction on unclean hands. The Court finds that Highland waived the defense by not raising it in a timely fashion.

Even if it had not, the evidence presented at trial would not have supported the defense. Unclean hands requires a showing that the party seeking equitable relief is "is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." Performance Unltd. v. Questar Publishers, 52 F.3d 1373, 1383 (6th Cir. 1995) (citation omitted). Proof of such behavior must be "clear, unequivocal and convincing." Hoover Transp. Servs., Inc. v. Frye, 77 Fed.Appx. 776, 784 (6th Cir. 2003). The evidence here would not have been sufficient to support a defense of unclean hands even if the defense had been properly raised. Highland is not entitled to a new trial on that issue.

Highland's motion (Doc. No. 275) is **DENIED**.

## IV. Conclusion

To summarize:

1. Both parties' motions to file reply briefs (Doc. Nos. 281, 287) are **GRANTED**.

2. Plaintiff's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on Back Pay Damages (Doc. No. 267) are **DENIED**.

3. Plaintiff's Motion for Liquidated Damages and Pre-judgment Interest (Doc. No. 269) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** insofar as it seeks liquidated damages and **GRANTED IN PART** with respect to the request for prejudgment interest. The Court awards prejudgment interest at the rate of 5% and in the amount of $909.08 on the damages awarded for unjust enrichment.

4. Defendants' Motion for Renewed Judgment as a Matter of Law [sic] (Doc. No. 275) is **DENIED**.

IT IS SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2017 WL 4512470

---

    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 11348053
Only the Westlaw citation is currently available.
United States District Court, W.D. Tennessee,
Western Division.

Curlean JONES-TATE, Plaintiff,
v.
SHELBY COUNTY BOARD OF EDUCATION and
Superintendent Dorsey E. Hopson, II, Defendants.

No. 2:17-cv-02307-SHL-dkv
|
Signed 08/21/2018

**Attorneys and Law Firms**

Richard L. Colbert, Nina Musinovic Eiler, Kay, Griffin,
Enkema & Colbert, PLLC, Nashville, TN, for Plaintiff.

Lori Hackleman Patterson, Mary Wu Tullis, Baker
Donelson Bearman Caldwell & Berkowitz, Memphis, TN,
for Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

SHERYL H. LIPMAN, UNITED STATES DISTRICT
JUDGE

**\*1** Before the Court are the parties' Motions for Summary
Judgment. The parties filed their motions on May 4, 2018,
(ECF Nos. 37, 41), responses on June 1, 2018, (ECF Nos.
43, 45), and replies on June 15, 2018. (ECF Nos. 46, 47.)

In their motions, both parties contend that there are no
disputed material facts, and they both argue that they are
entitled to judgment as a matter of law. For reasons more
fully described below, the Court **GRANTS** Plaintiff's
Motion for Summary Judgment and **DENIES**
Defendants' Motion for Summary Judgment.

**BACKGROUND**

The following facts come from the parties' statements of
undisputed material facts. Any disputes of material fact
are noted.

Each spring, the Shelby County Schools ("SCS") system
engages in a "budget check out" process, during which
the number of teaching positions allotted to each SCS
school for the coming school year is determined based on
projected enrollment. (ECF No. 45-1 at ¶¶ 12, 13.) If a
school has more staff than it will be allotted the following
school year, the school principals identify positions to be
"excessed." (ECF No. 45-1 at ¶¶ 14, 16; ECF No. 44 at ¶
8.) "Excessed" teachers, if they want to remain employed
in the school system, must apply and interview for
available positions at different schools. (ECF No. 45-1 at
¶ 17.)

Curlean Jones-Tate was a tenured teacher in the SCS
school system. (ECF No. 45-1 at ¶ 1.) She taught
"business technology and personal finance," a Career and
Technology Education ("CTE") position, at East High
School ("East") and received positive evaluations. (ECF
No. 45-1 at ¶¶ 2, 3; ECF No. 44 at ¶ 2.) However, "on
May 8, 2015, [East Principal Eric] Harris informed her
that she was being excessed." (ECF No. 44 at ¶ 4.)
Specifically, she was informed that "the business
technology position at East High was being converted into
a STEM position." (ECF No. 45-1 at ¶ 4.) On June 11,
2015, Superintendent Dorsey Hopson sent Ms. Jones-Tate
a letter notifying her that, "[d]ue to budget cuts and/or
programmatic changes [at East], [the] next school year
[her] current position [would] no longer exist with Shelby
County Schools." (ECF No. 45-1 at ¶ 5; ECF No. 1-4.)[1]
On July 2, 2015, the Shelby County School Board
("School Board" or "Board") adopted its 2015–2016
budget, which called for the elimination of three CTE
teaching positions. (ECF No. 44 at ¶ 14, 15.)[2]

**\*2** Ms. Jones-Tate submitted several applications for
vacant positions, to no avail. (ECF No. 45-1 at ¶ 8.)
Because she had not secured a new position by June 15,
2015, she was placed on the "preferential employment
list" and notified that, if she failed to find another
assignment, she would be dismissed at the conclusion of
the fiscal year. (ECF No. 44 at ¶ 16.)[3] She never held
another permanent teaching position with SCS. (Id.)
Rather, Ms. Jones-Tate alleges that she was forced to
retire, effective July 1, 2017. (ECF No. 45-1 at ¶ 9.)

Ms. Jones-Tate challenges the process by which she was

**ADDENDUM 9**

dismissed, but she is not the first to do so. In Kelley v. Shelby County Board of Education, 198 F. Supp. 3d 842 (W.D. Tenn. 2016), plaintiffs challenged SCS's "excessing" process, and this Court held that Tennessee's Teacher Tenure Act requires the Board to take ultimate responsibility for excessing decisions "beyond simply approving a general reduction in force. The Board of Education must participate in the decisions to dismiss any tenured teacher pursuant to a reduction in force." Id. at 854. In the wake of that decision, the School Board met and passed a Resolution Ratifying the Excessing of Certain Employees and Approving the Excessing of Certain Employees (the "Resolution"), which "ratified and approved" ninety-nine excessing decisions, including those involving the Kelley plaintiffs. (ECF No. 45-1 at ¶ 26, 27.) While the resolution was sufficient to bring those "otherwise unlawful terminations into compliance with Tennessee law," Kelley v. Shelby Cty. Bd. of Educ., Case No. 2:14-cv-02632-SHL-cgc, ECF No. 89 at 10 (W.D. Tenn. Aug. 24, 2017), it did not include Ms. Jones-Tate. (ECF No. 45-1 at ¶¶ 26, 27, 28.) Ms. Jones-Tate alleges that the decision to eliminate her position was never approved by the School Board, and that, "[t]o date, the Board has not taken any action on [her] excessing." (ECF No. 45-1 at ¶ 29.)

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court is to view facts in the record, and to draw reasonable inferences from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been made, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or must argue that the moving party is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). While the Court views all evidence and factual inferences in the light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1996) (emphasis in original).

In addition, the opposing party "cannot rest solely on the allegations made in [its] pleadings." Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (quoting Skousen v. Brighton High Sch., 305 F.3d 520, 527 (6th Cir. 2002)) (alteration in original). Rather, when a motion is supported by documentary proof, the nonmoving party is obligated to present "specific facts showing that there is a genuine issue for trial." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 587. A "mere scintilla" of evidence is also insufficient to establish that the nonmoving party may be entitled to a verdict. Anderson, 477 U.S. at 252.

**\*3** As to claims arising under state law, courts apply the substantive law of the forum state. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Pennington State Farm Mut. Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). When an issue is not directly addressed by state statute or courts, federal courts must "anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." Id. "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." Id.

## ANALYSIS

Plaintiff argues that she is entitled to summary judgment because the undisputed facts establish that Defendants violated the Tennessee Tenure Act when they eliminated her position for "programmatic" reasons, as opposed to a necessary reduction in force. Plaintiff also maintains that the decision to eliminate her position was unlawfully delegated by the School Board to Principal Harris, in violation of the Act.[4] As such, Plaintiff argues that she is entitled to reinstatement and full salary without offset, as contemplated by the Act.

Defendants counter that Plaintiff's dismissal was due, at least in part, to a system-wide reduction in force. In addition, Defendants argue that the School Board "doesn't have to be the sole and exclusive entity to determine which particular teachers are dismissed in the event of a reduction in force." (ECF No. 44-1 at 2.)

While the Court agrees that the Tenure Act does not require that the School Board render final employment

decisions in a vacuum, the undisputed material facts demonstrate that Plaintiff was dismissed in violation of the Tenure Act because the Board played <u>no</u> part in the final excessing decision. As such, summary judgment is **GRANTED** to Plaintiff and **DENIED** to Defendants. The Court first addresses whether Plaintiff's termination violated the Tenure Act, concluding that summary judgment is appropriate because the excessing decision here was unlawfully delegated. The Court then addresses the issue of damages.

## I. Tenure Act Violation

### A. Reduction in Force: Programmatic or System-Wide?

Plaintiff first argues that she was dismissed in violation of the Tenure Act because the employment decision was not made as part of a system-wide reduction in force. Rather, she asserts that she was dismissed because of "programmatic" considerations at her school, which is not one of the ways a tenured teacher may be dismissed.[5] Defendants dispute that the decision to excess Plaintiff was solely motivated by programmatic considerations. Because there is a dispute of material fact on this point, summary judgment is **DENIED** as to this argument.

In support of her argument, Plaintiff cites the deposition testimony of Chantay Branch, Director of Employee Relations, Employee Performance and Support at SCS. During her deposition, Ms. Branch testified that Ms. Jones-Tate "was actually excessed due to programmatic needs because the principal actually utilized the allocation to secure ... a STEM teacher at his school." (ECF No. 38-1 at 9.) Principal Harris, for his part, testified that he didn't "recall" a reduction in force "being a reason for this specific—this particular decision." (ECF No. 38-3 at 9.) Indeed, Defendants themselves suggest that Ms. Jones-Tate's position was not eliminated, but "converted" into a STEM position. (ECF No. 44 at ¶ 3.) Defendants represent numerous times in their own briefing that "Ms. Jones-Tate's position was eliminated to further [East's] goal of increasing STEM classes." (See, e.g., ECF No. 41-1 at 3.)

**\*4** Despite these statements, however, Defendants also cite undisputed material facts that support the conclusion that Plaintiff's dismissal was part of a system-wide reduction in force. For example, it is undisputed that the annual budget, authorized by the Board, called for the elimination of three CTE positions. (ECF No. 44 at ¶ 14.) In addition, Defendants rely on the Board resolution ratifying excessing decisions made around the same time as Plaintiff's, which acknowledged "financial challenges of the school system" necessitating a reduction of "the number of teachers on its payroll" between 2014 and 2016. (ECF No. 38-1 at 19.)[6]

There is a genuine dispute of material fact as to whether the dismissal was based primarily on "programmatic" concerns or part of a system-wide reduction in force. As such, neither party is entitled to summary judgment on this ground.

Even if there were no genuine dispute of material fact, it is unlikely that Ms. Jones-Tate would be entitled to judgment as a matter of law on this issue. In <u>Kelley</u>, plaintiffs argued that "because § 49-5-511(b)(1) requires that the necessity for a reduction in force be determined on a system-wide basis, the decision to excess ... on the basis of a particular school's staffing needs was contrary to the statute." <u>Kelley v. Shelby Cty. Bd. of Educ.</u>, Case No. 2:14-cv-02632-SHL-cgc, ECF No. 89 at 8 (W.D. Tenn. Aug. 24, 2017). The Court rejected this argument because "such an interpretation requires reading more into the statutes than the words convey." <u>Id.</u>

Plaintiff's Motion for Summary Judgment on this basis is therefore **DENIED**.

### B. Unlawful Delegation

Plaintiff also argues that she is entitled to summary judgment because the undisputed facts establish that the Board of Education unlawfully delegated its authority to dismiss her.[7] The Court agrees, holding as it did in <u>Kelley</u> that the Board's failure to participate in the final decision to excess a tenured teacher such as the Plaintiff constitutes an unlawful delegation of the Board's nondelegable power to dismiss tenured teachers. See <u>Kelley, 198 F. Supp. 3d at 853</u>.

There is no genuine dispute of material fact regarding the Board's failure to participate in Ms. Jones-Tate's excessing. Plaintiff again cites the deposition testimony of Ms. Branch, who was asked if the School Board participates in excessing or layoff decisions. (ECF No. 38-1 at 7.) Ms. Branch responded that, in 2016, "the Board did approve some teachers who were identified for layoff [in] previous years." (<u>Id.</u>) She was then asked whether, other than the 2016 resolution, the Board itself

had "taken any action to approve excessing or layoff decisions." (Id.) Ms. Branch responded that:

> [I]n regards to excessing, it wouldn't be a need to approve anything for excessing process because the teacher is still under contract with the District. Basically, it just – it just notifies the teacher that they would not be reporting to their current location for the upcoming school year.
>
> But as it relates to layoffs, previously [to the 2016 Resolution], they have not.

(Id.) Ms. Branch also testified—as the attachments to the Resolution make clear—that Ms. Jones-Tate's name was not included among the ninety-nine names the Board approved after the Court's decision in Kelley. (Id. at 9.)

**\*5** Defendants only ostensibly "dispute" Plaintiff's allegation that the Board has not taken any action to approve her excessing. Defendants "object[ ] to the use of vague terms and phrases such as 'any action to approve' " and assert that Plaintiff has mischaracterized and unfairly extrapolated from Ms. Branch's testimony. (See ECF No. 45-1 at ¶ 29.) However, the testimony speaks for itself. Furthermore, at this stage in the proceedings, Defendants may not rely on "metaphysical doubt" regarding the Board's participation in this decision. See Matsushita, 475 U.S. at 587. Once a properly supported motion for summary judgment has been made, a non-moving party is obligated to present "specific facts showing that there is a genuine issue for trial." Adams, 31 F.3d at 379. Defendants have pointed to no action on the part of the School Board to take "ultimate responsibility" for Ms. Jones-Tate's excessing, and the Court is not aware of any. Cf. Kelley, Case No. 2:14-cv-02632-SHL-cgc, ECF No. 89 at 10 (recognizing Board Resolution sufficient to bring "otherwise unlawful terminations into compliance with Tennessee law").

Given that there is no genuine dispute of material fact regarding the Board's failure to participate as the final decision-maker in Ms. Jones-Tate's excessing, the Court turns to the question of law and concludes that Defendants violated the Teacher Tenure Act. Plaintiff is therefore entitled to judgment as a matter of law. See Kelley, 198 F. Supp. 3d at 854.

In her Motion, Plaintiff offers the same arguments that proved successful in the Kelley matter. In Kelley, the Defendant Board took no action to approve layoffs of the tenured plaintiffs beside authorizing an overall reduction in force, after which the budget office determined the number of positions at each school, principals identified

the positions to be "excessed," and the superintendent approved those recommendations. The Court held that this "excessing" process constituted an unlawful delegation of the Board's nondelegable power to dismiss tenured teachers based on the plain language of the statute, its neighboring provisions and Tennessee case law. Id. at 853.

Defendants now defend an apparently identical process. While Defendants "acknowledge" Kelley, they dispute whether it entitles Plaintiff to judgment as a matter of law. Essentially, Defendants invite the Court to revisit Kelley, primarily relying on a recent Tennessee Supreme Court decision and other caselaw predating Kelley. The Court declines the invitation.

First, Defendants argue that "strict compliance with all of the statutory provisions of the Tenure Act"—including School Board approval—"is not required under Tennessee law," citing Emory v. Memphis City Schools Board of Education, 514 S.W.3d 129 (Tenn. 2017). In Emory, the Tennessee Supreme Court denied relief to a tenured teacher whose termination hearing had not been held within thirty days of her request, as required under the Tenure Act. See Tenn. Code Ann. § 49-5-512(a)(2). However, the lesson of Emory is not that school boards are free to pick and choose the provisions of the Tenure Act with which they will comply (or that the Court is free to disregard its plain language). Rather, the lesson of Emory is that a tenured teacher must raise any objection to an adverse employment decision at the first available opportunity, particularly "with respect to alleged procedural deficiencies in underlying administrative proceedings," in order to avail herself of judicial review. Id. at 146–47. In the present case, Ms. Jones-Tate does not challenge a procedural defect—she challenges the Board's delegation of its decision-making authority in the first instance, and, therefore, the substantive legal basis for her dismissal. This difference renders Emory largely inapplicable to the present case.

Defendants also argue that cases predating Kelley "call into question whether the board is required to be the final decision maker." (ECF No. 45 at 10–11 (emphasis in original).) Defendants argue that in Lee v. Franklin Special School District Board of Education, 237 S.W.3d 322 (Tenn. Ct. App. 2007),[8] and Forrest v. Trousdale County Board of Education, 954 F. Supp. 2d 720 (M.D. Tenn. 2013),[9] "[i]t was satisfactory to the courts ... that the boards ... had approved a reduction in the number of positions in the system overall," and that "the courts did not go as far as to require that the school boards decide which particular teachers would be terminated." (ECF No.

45 at 11 (emphasis in original).) However, the plaintiffs in Lee and Forrest did not object to the unlawful delegation of the challenged employment decisions. Because the issue was not squarely presented to either court, the persuasive value of these cases in resolving the question answered by Kelley is slight.

**\*6** Moreover, in Lee and Forrest, it is unclear that either board stopped at approving a general reduction in force, as is the case here. See 🚩 Lee, 237 S.W.3d at 331 ("[T]he Board of Education had voted to abolish five regular education teaching positions and one special education teaching position, one of which was [plaintiff's] position.") (emphasis added); 🚩 Forrest, 954 F. Supp. 2d at 722 ("[The Director of Trousdale County Schools] recommended, and the Board approved, the abolition of [five] teaching positions.... [Plaintiff's] teaching position was one of the five that was abolished.") (emphasis added). This ambiguous language cast doubt on whether unlawful delegation was even a potential issue in these cases.

In sum, the Court declines to revisit its holding in Kelley. School boards may not delegate their final decision-making authority to remove tenured teachers, but rather "must ultimately be responsible for the decisions in the layoff process beyond simply approving a general reduction in force." Kelley, 198 F. Supp. 3d at 852–84. Because there is no genuine dispute of fact regarding the Defendant Board's failure to participate in the final decision to excess Ms. Jones-Tate, she is entitled to judgment as a matter of law. Plaintiff's Motion for Summary Judgment is therefore **GRANTED**.

Defendants' Motion for Summary Judgment purports to defend a reasonable proposition: "The Shelby County Board of Education ... need not be the sole and exclusive entity to determine which particular teachers are dismissed in the event of a reduction in force." (ECF No. 41-1 at 2 (emphasis added).)[10] The Court generally agrees. "[P]rincipals can and [probably] should be involved in these personnel decisions." (ECF No. 47 at 5.) Moreover, superintendents, school principals and human resources professionals should offer opinions as to final employment decisions. However, the ultimate responsibility for those decisions rests with the school board alone. Kelley, 198 F. Supp. 3d at 852. Defendant Board's failure to take this final action regarding Ms. Jones-Tate is fatal to its defense. As such, Defendants' Motion for Summary Judgment is **DENIED**.

## II. Damages

As for damages, Plaintiff argues that she is entitled to reinstatement and back pay, without offset, from the date of her dismissal until her reinstatement. (ECF No. 40 at 15–16.) Indeed, this Court concluded in Kelley that this is the remedy afforded tenured teachers dismissed in violation of the Tenure Act, 🚩 Tenn. Code Ann. § 49-5-511(b). Kelley, 198 F. Supp. 3d at 855–56.

Defendants argue that Ms. Jones-Tate is not entitled to this relief, again asking the Court to reconsider Kelley in light of Emory. In Emory, although the defendant school board failed to comply with the Tenure Act's timely hearing requirement when it terminated the plaintiff, a tenured teacher, the damages awarded by the Tennessee Court of Appeals were inappropriate because the timely hearing requirement carries "no specific penalty for noncompliance." Emory, 514 S.W.3d at 219.

Emory does not change the result reached in Kelley. Critically, the Defendant Board's failure to take final action on the decision to excess Ms. Jones-Tate—unlike a failure to comply with the timely hearing requirement—invalidates that employment decision. As such, the decision to excess Ms. Jones-Tate was made in violation of the Tenure Act, and she is entitled to "full salary" during the period for which she was wrongly denied employment, as provided by the Act. See 🚩 Tenn. Code Ann. § 49-5-511(a)(3). See also Kelley, 198 F. Supp. 3d at 855–56; Thompson v. Memphis City Sch. Bd. of Educ., 395 S.W.3d 616, 628 (Tenn. Dec. 21, 2012) ("Where, as here, a tenured teacher's employment is ... terminated in violation of the Tenure Act, 🚩 section 49–5–511(a)(3) provides the appropriate remedy."); 🚩 Lee, 237 S.W.3d at 337 ("Our finding that Ms. Lee was wrongly denied reemployment ... is equivalent to finding that a teacher, who was suspended without pay, has been vindicated and should be reinstated.").

**\*7** Finally, Defendants suggest that "the Board has ... demonstrated its willingness to approve and ratify the terminations of tenured teachers who have been dismissed ... in previous school years." (ECF No. 45 at 14–15.) However, the Board's willingness to exercise its authority is not the same as actually exercising it. The Defendant Board has not exercised its statutory authority to dismiss Ms. Jones-Tate until it has actually done so.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's

2018 WL 11348053

Motion for Summary Judgment and **DENIES** Defendants' Motion for Summary Judgment. The Court will hold a status conference on **Friday, September 7, 2018, at 1:45 p.m.** to establish a schedule for consideration of damages. The parties shall submit a joint proposed schedule by **Tuesday, September 4, 2018,** for the Court's consideration.

**IT IS SO ORDERED,** this 21st day of August, 2018.

**All Citations**

Slip Copy, 2018 WL 11348053

### Footnotes

[1]   The parties dispute whether Mr. Harris's decision to excess Mr. Jones-Tate was meaningfully "reviewed" or "approved at the District level." (ECF No. 44 at ¶¶ 9, 10; ECF No. 45-1 at ¶¶ 5, 23.) However, given this ruling, this dispute is of no significance.

[2]   Defendants have attached the Shelby County Board of Education's Fiscal Year 2015–16 District Budget to their Motion for Summary Judgment. (ECF No. 41-11.) That 469-page document does appear to call for a net reduction of three classroom CTE teaching position. (See id. at PageID 282.) The document also includes a reproduction of the Resolution Approving the Shelby County Board of Education's Fiscal Year 2015–16 Budget, which approves the overall budget by general category and was adopted on July 2, 2015. (Id. at 448–49.) However, neither the specific positions eliminated, nor the schools losing the positions, are ever identified.

[3]   The parties dispute the significance of the "preferential employment list." (ECF No. 45-1 at ¶ 20.)

[4]   Plaintiff also appears to challenge whether the existing procedures afford a tenured teacher who has been laid off the requisite level of preference in rehiring. (See, e.g., ECF No. 40 at 8–10, 14–15.) However, because the Court ultimately concludes that the Defendant Board violated the Tenure Act by improperly delegating its final decision-making authority, it is unnecessary for the Court to consider this question.

[5]   Under the Tenure Act, a tenured teacher may only be dismissed for cause or due to a system-wide reduction in force.  Tenn. Code Ann. § 49-5-511(a),  (b).

[6]   As noted supra at p.3, the Resolution did not ratify the elimination of Ms. Jones-Tate's position. (See also ECF No. 38-1 at 21–36.)

[7]   Although the parties dispute whether Superintendent Hopson had any meaningful involvement in the decision to "excess" Ms. Jones-Tate, this dispute has no bearing on the decision here. The material issue is whether the School Board played any part in the decision to excess Ms. Jones-Tate. Kelley, 198 F. Supp. 3d. at 854. See also infra.

8    <u>Lee</u> was explicitly considered in <u>Kelley</u> and cited as support for its determination that the board's duties related to tenured teachers cannot be delegated. <u>Kelley</u>, 198 F. Supp. 3d at 853.

9    <u>Forrest</u> was issued by a federal court, and thus is not controlling here.

10   In reality, Defendants primarily challenge this Court's holding in <u>Kelley</u>. <u>See</u> <u>supra</u>.

---

**End of Document**                                                        © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

Kelley v. Shelby County Board of Education, Not Reported in Fed. Supp. (2017)

2017 WL 11139931

2017 WL 11139931
Only the Westlaw citation is currently available.
United States District Court, W.D. Tennessee,
Western Division.

Marcia KELLEY, Ida Steinberg, Laverne Jackson,
Paul Banks and the Memphis-Shelby County
Education Association, Plaintiffs,
v.
SHELBY COUNTY BOARD OF EDUCATION and
Superintendent Dorsey E. Hobson, II, Defendants.
Dale Thompson, Plaintiff,
v.
Shelby County Board of Education and
Superintendent Dorsey E. Hobson, II, Defendants.

No. 2:14-cv-2632-SHL-cgc, No.
14-cv-2633-SHL-cgc
|
Signed 08/24/2017

**Attorneys and Law Firms**

Richard L. Colbert, Courtney Lynch Wilbert, William
Walter Franklin Wilbert, Nina Musinovic Eiler, Kay,
Griffin, Enkema & Colbert, PLLC, Nashville, TN, for
Plaintiff Marcia Kelley.

Darrell J. O'Neal, Law Office of Darrell J. O'Neal,
Memphis, TN, for Plaintiff Memphis-Shelby County
Education Association.

Courtney Lynch Wilbert, Richard L. Colbert, William
Walter Franklin Wilbert, Kay, Griffin, Enkema &
Colbert, PLLC, Nashville, TN, for Plaintiff Dale
Thompson.

Ashley Satterfield Patterson, Lori Hackleman Patterson,
Mary Wu Tullis, Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC, Memphis, TN, for Defendants.

(consolidated with No. 14-cv-2632 by Order, No.
14-cv-2633, ECF No. 42)

**ORDER RECONSIDERING PRIOR ORDER AND
CALCULATING DAMAGES**

SHERYL H. LIPMAN, UNITED STATES DISTRICT
JUDGE

**\*1** This matter arises out of a dispute over the process by
which certain tenured teachers, Plaintiffs in these
consolidated cases, were laid off from their positions
within the Shelby County School system in the summer of
2014. On August 3, 2016, the Court entered summary
judgment for Plaintiffs, finding that the "excessing"
process Defendants implemented to effect the layoffs
violated 📕 Tenn. Code Ann. § 49-5-511 (the "Tenure
Law") "because the Shelby County Board of Education
improperly delegated its power to the Shelby County
Schools' administration." (ECF No. 57 at 2.) However,
the Court also held that the "excessing" process did not
violate the Fourteenth Amendment to the United States
Constitution or the Family and Medical Leave Act
("FMLA").

On August 26, 2016, the Court entered a Scheduling
Order on Damages, establishing deadlines for the
damages phase of this litigation. (ECF No. 65.) Pursuant
to that schedule, Plaintiffs Marcia Kelley, Ida Steinberg,
Laverne Jackson, Paul Banks and Dale Thompson filed
their Position Statement on Remedy on January 23, 2017.[1]
(ECF No. 71.) At the same time, these Plaintiffs filed a
Motion to Reconsider pursuant to Federal Rule of Civil
Procedure 54(b), arguing that subsequent developments in
this case necessitated the Court's examination of
additional state law issues that it did not reach at summary
judgment. (ECF No. 72.)

The Court heard the Motions on March 23, 2017, at which
time the Court took the Parties' arguments under
advisement. In addition, the Court ordered the Parties to
file supplemental briefing on the issues raised during the
hearing. In compliance with the Court's order, Plaintiffs
filed a Supplemental Brief on Relief (ECF No. 86) on
April 14, 2017, and Defendants filed a Response (ECF
No. 87) on April 28, 2017. Thereafter, on May 12, 2017,
Plaintiffs submitted a Reply. (ECF No. 88.)

For reasons more fully articulated herein, the Court has
reconsidered its previous order and denies Defendants'
Motion for Reconsideration. (ECF No. 71.) The instant
Order simply clarifies the Court's previous holding
regarding the ways in which Defendants excessing

**ADDENDUM 10**

Kelley v. Shelby County Board of Education, Not Reported in Fed. Supp. (2017)

2017 WL 11139931

procedure ran afoul of the Tennessee tenure statutes. In short, the Court is satisfied that its August 3, 2016, Order Granting Plaintiffs' Motion for Summary Judgment and Denying Defendants' Motion for Summary Judgment addresses the full extent of Defendants' violation, and it thus declines to expand its previous holding.

## **BACKGROUND**

**\*2** The following recitation of facts is drawn directly from the Court's findings of fact at summary judgment.

The events in this case took place in the aftermath of the merger between Memphis City Schools and Shelby County Schools. After the merger took place, a number of municipalities formerly located within the Shelby County Schools ("SCS") school district formed their own school districts. The new school districts drew away a significant number of students from the consolidated Memphis-Shelby County school district. As a result of the projected decline in student enrollment after the 2013-2014 school year, SCS had to reduce the number of teachers on its payroll for the 2014-2015 school year. (ECF No. 33-2 at ¶ 3.) Although 1,908 teachers also moved to the new municipal school districts, and 342 teachers resigned or retired at the end of the 2013-2014 school year, the projected enrollment shortfall required further system-wide reductions of teaching positions. (See id. at ¶ 6.)

To effectuate these further reductions, SCS implemented its "excessing" process that is at issue in this case. First, the Board of Education approved a general reduction in force. After approving the reduction in force, the Board of Education delegated the rest of the process to the Superintendent and school principals. Pursuant to its mandate to reduce the size of the teaching force, the SCS Budget Office received projected system-wide enrollment numbers, calculated the number of teaching positions allowed at each school, and then relayed this information to the principals of each school. (Id. at ¶ 9.) Each school's principal then decided which teaching positions should be eliminated. (Id. at ¶ 11.) When the excessing decisions were being made, the principals were not required to prefer tenured teachers over non-tenured teachers solely by virtue of their tenured status – instead, a teacher's effectiveness as measured by state evaluation standards was a main determinant in whether a teacher was retained. (ECF No. 29 at ¶ 14; ECF No. 40-1 at ¶14.) The principals' decisions were then submitted to the SCS department of human resources for review and approval. (ECF No. 33-2 at ¶ 12.)

After the excessing decisions were approved, the teachers whose positions were eliminated received a letter, signed by the Superintendent, informing them that their position had been abolished. (ECF No. 33-2 at ¶14; see ECF No. 29 at ¶ 6.) If the excessed teachers desired to continue working within the SCS system, they had to apply for positions at schools with vacancies. (See ECF No. 33-2 at ¶ 15.) If an excessed teacher did not successfully obtain a vacant position by June 15, then that teacher was notified that he or she would be officially laid off on July 1, and if that teacher scored in the three highest teacher evaluation categories, the teacher was placed on what is known as the "preferred list." (Id. at ¶ 17.) While principals were required to interview qualified teachers from the reemployment list for vacancies, they were not required to afford preferential treatment to the teachers on the list, and principals could also consider other applicants alongside those teachers on the reemployment list. (ECF No. 33-2 at ¶ 21; ECF No. 29 at ¶¶ 18–19.) The policy of requiring both teachers and principals agree to a placement at a particular school is known as the "Mutual Consent Policy."

**\*3** All individual Plaintiffs were laid off in the summer of 2014 according to the above-described process. Additionally, Plaintiff Thompson was on approved FMLA leave when all positions at her school, Northside High School, were abolished, requiring all faculty there to reapply for their jobs. Plaintiffs Kelley and Steinberg found employment within SCS for the 2014-2015 school year.[2] Plaintiff Banks eventually found employment within SCS but not until after the 2014-2015 school year. Plaintiff Jackson, a cosmetology teacher, has not found employment since being laid off after the 2013-2014 school year. Plaintiff Thompson could not find a new teaching position after being laid off and elected to retire.

## **ANALYSIS**

The Court will first address Plaintiffs' Motion for Reconsideration before turning to a calculation of damages.

### **I. Plaintiffs' Motion for Reconsideration**
On October 5, 2016, the Shelby County Board of Education adopted a Resolution ratifying or, in the alternative, approving, the decisions to excess Plaintiffs.

Kelley v. Shelby County Board of Education, Not Reported in Fed. Supp. (2017)

2017 WL 11139931

Plaintiffs argue that "[t]he apparent purpose of the Board Resolution was to ratify *nunc pro tunc* the excessing of the Plaintiffs more than two years ago; and to the extent that the ratification is ineffective, to expressly approve those excessing decisions that this Court already found the Board did not make." (ECF No. 72 at ¶ 4.) Thus, as a result of what Plaintiffs refer to as "Defendant's apparent effort to circumvent this Court's August 3, 2016, Order," Plaintiffs argue that the "state law issues that the Court did not reach" are now "particularly important." (Id. at ¶ 5.) While Defendants initially opposed the requested relief on the grounds that Plaintiffs had not satisfied the requirements of Local Rule 7.3(b), in open court on March 23, 2017, they conceded that the Board Resolution opened the door to re-examination of the excessing process.

"District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment. Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 Fed. App'x 949, 959 (6th Cir. 2004) (citing Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991)). That authority allows a district court "to afford such relief from [interlocutory orders] as justice requires." Id. (quoting Citibank N.A. v. Fed. Deposit Ins. Corp., 857 F. Supp. 976, 981 (D.D.C. 1994)). Grounds for reconsidering an interlocutory order traditionally include "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Id. In the Western District of Tennessee, Local Rule 7.3(b) adds that a Motion to Reconsider is appropriate where there is "(1) a material difference in fact or law ...; (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order."

The Court finds Plaintiffs' Motion well-taken. Defendants argue that the Board of Education "has the legal authority to retroactively ratify the actions of the Superintendent[,]" and that the Court should find that "Plaintiffs' dismissals were necessary and proper, due to a reduction in force." (ECF No. 77 at 8.) Thus, Defendants contend that Plaintiffs are not entitled to any relief as a result of the unlawful excessing. (Id.) While the situation presented here does not fit neatly into the traditional reasons to reconsider an interlocutory order, the Court finds that the questions raised by Plaintiffs are directly relevant to the question of Defendants' alleged authority to ratify or authorize the excessing decisions *post hoc.* Therefore, Defendants having withdrawn their opposition to the

Motion, the Court finds that the interests of justice allow the Court to take up the questions presented by Plaintiffs in their Motion.

**\*4** As for the substance of the Motion, Plaintiffs raise two interrelated issues of state law, which the Court did not consider at summary judgment, that they now contend are materially related to the calculation of damages. First, Plaintiffs contend that Defendants failed "to treat the Plaintiffs' tenure as a system-wide right as opposed to a right to a particular position." (ECF No. 72 at ¶ 2.) Second, Plaintiffs argue that "Defendants' [dismissed] the Plaintiffs based on personnel needs of a particular school rather than based on a system wide assessment." (Id.) Essentially, Plaintiffs argue that the decisions made by the principals were unlawful (as opposed to simply being improperly delegated), and thus the Board does not have the authority to now ratify or authorize those decisions. (ECF No. 73.)

Defendants, unsurprisingly, disagree. They argue that the Court was correct to limit its holding at summary judgment to the Board's decision to delegate final decision-making authority regarding excessing to the Superintendent and principals. Therefore, they contend that, because "[t]he Board of Education intended for the dismissals of Plaintiffs to occur, not out of malice, but out of consideration of its system-wide needs during a time of a reduction in force," its *post hoc* ratification of those decisions was proper. (ECF No. 87 at 7-8.)

The Court finds that Defendants' violation of the Tenure Law was limited to the unlawful delegation of decision making authority from the Board to the Superintendent.[3] Tenn. Code Ann. § 49-5-511(a)(1) provides strictly that "[n]o teacher shall be dismissed or suspended except as provided in this part." Thereafter, the statute establishes two processes by which a teacher may be dismissed—either (1) for cause or (2) as part of a system-wide reduction in force.

With regard to a system-wide reduction in force, Tenn. Code. Ann. § 49-5-511(b)(1) reads, in relevant part,

> When it becomes necessary to reduce the number of teaching positions or nonlicensed positions **in the system** because of a decrease in enrollment or for other good reasons, the board shall be empowered to dismiss such

Kelley v. Shelby County Board of Education, Not Reported in Fed. Supp. (2017)

2017 WL 11139931

teachers or nonlicensed employees **as may be necessary**.

The statute requires any teacher dismissed pursuant to § 49-5-511(b)(1) receive "written notice of dismissal explaining fully the circumstances or conditions making the dismissal necessary." Id. at § 49-5-511(b)(2). After the dismissals are effectuated, § 49-5-511(b)(3) provides that "[a] tenured teacher who has been dismissed because of abolition of a position shall be placed on a list for reemployment in the first vacancy the teacher is qualified by training and experience to fill." This list was referred to as "the preferred list." Id. at § 49-5-511(b)(4).

Plaintiffs argues that, because § 49-5-511(b)(1) requires that the necessity for a reduction in force be determined on a system-wide basis, the decision to excess each Plaintiff on the basis of a particular school's staffing needs was contrary to the statute. However, such an interpretation requires reading more into the statutes than the words convey. While it may be true that "a teacher does not enjoy tenure in a particular position," (ECF No. 73 at 7), it does not necessarily follow that each tenured teacher is entitled to a system-wide determination of need before he or she is specifically excessed. Defining the contours of a tenured teacher's interest in his or her position is best accomplished by looking directly to the process outlined by the Tenure Law.

**\*5** To that end, the Tenure Law establishes a process by which teachers may be excessed when enrollment numbers dictate a system-wide reduction in force, and the statute is otherwise silent regarding whether any tenured teacher is entitled to the specific Board consideration now demanded by Plaintiffs. Instead, the Court finds that Defendants adhered to the process outlined by the statute, the improper delegation of final decision making authority notwithstanding. The record demonstrates that the Board approved a reduction in force based on a system-wide analysis of projected student enrollment. The Superintendent, along with the principals of the various schools, were then tasked with deciding which teaching positions should be eliminated based on that particular school's needs. Those decisions were referred to Shelby County Schools' human resources department for approval, after which the dismissed teachers received notice of dismissal. Plaintiffs were then put on the "preferred list" pursuant to § 49-5-511(b)(3).

The Court finds that this process is all the statute requires,

again with the exception of the improper delegation of final authority. As the Court has explained, its decision to grant Plaintiffs' Motion for Summary Judgment "does not stand for the proposition that the Board of Education itself must go through the SCS payroll and make individualized decisions for each teacher. Instead, based on the statutory language at issue here, this Court holds that the Board of Education must ultimately be responsible for the decisions in the layoff process beyond simply approving a general reduction in force." (ECF No. 57 at 15-16.) Thus, it was not the substance of the decisions themselves that were unlawful, but rather the fact that the Board improperly abdicated its "duty to the public, students and to teachers to exercise their judgment and discretion to further the purpose of tenure." (Id. at 12) (citing Lotspeich v. Morristown, 207 S.W. 719, 722 (Tenn. 1918).)

The Court thus holds that Defendants' violation of the Tennessee Tenure Law was limited to an unlawful delegation of final decision-making authority to the Superintendent and school principals. To hold otherwise would be to require Defendants to extend tenured teachers more protection than the statute can reasonably be read to require.

## II. Ratification and/or Authorization
In light of this holding, the question becomes whether, or the extent to which, Defendants may ratify or authorize *post hoc* the decisions to excess Plaintiffs. Defendants contend that the law of agency permits the Board to retroactively ratify the excessing decisions made by the Superintendent and school principals pursuant to their improperly delegated authority. (ECF No. 87 at 3.) In this way, Defendants assert that "[t]he express statements in the Resolution show that the Board, as the principal, accepted the actions of the agent and had full knowledge of the facts, as evidenced by the adopted Resolution." (Id. at 4.) Plaintiffs argue that the Board Resolution should be "seen only as the litigation device that it clearly is and disregarded, both retroactively and prospectively." (ECF No. 86 at 7.) Plaintiffs contend that to do otherwise would "render two years of litigation in these cases meaningless." (ECF No. 88 at 2.)

The Court partially agrees with Plaintiffs and finds that Defendants' position as to ratification is untenable. In the Summary Judgment Order, the Court found that the Board was in direct violation of a Tennessee statute when it delegated the final decision-making authority over Plaintiffs' excessing to the Superintendent and school

Kelley v. Shelby County Board of Education, Not Reported in Fed. Supp. (2017)

2017 WL 11139931

principals. Thus, the Court found that it was the Board's own actions that were unlawful. To allow the Board to now ratify those unlawful actions is an illogical result and would work a manifest injustice in this case.

On the other hand, Plaintiffs' argument that the Board should be precluded from even authorizing the decisions at this time disregards the basis for the Court's holdings at summary judgment. The Court held "that the Board of Education must ultimately be responsible for the decisions in the layoff process beyond simply approving a general reduction in force." (ECF No. 57 at 15-16.) Thus, while the Board may not now snap its fingers and make its unlawful conduct disappear, the Court thinks it entirely appropriate for the Board to exercise its statutory authority by serving as the final decision maker as to Plaintiffs' excessing. In adopting the Board Resolution, the Court finds that the Board brought Plaintiffs' otherwise unlawful terminations into compliance with Tennessee law by taking ultimate responsibility for the excessing decisions, and it is not this Court's place to intrude into decisions made pursuant to the Board's lawful authority. Therefore, the date of the Board Resolution, October 5, 2016, serves as the appropriate cut-off to Plaintiffs' relief.

**\*6** For these reasons, the Court holds that Plaintiffs are entitled to damages from the time of their excessing until the date of the Board Resolution.

### III. Damages

The Parties also disagree as to the appropriate remedy for the Board's violation of the Tenure Law. Plaintiffs argue that the relief afforded to tenured teachers wrongly dismissed for cause pursuant to Tenn. Code Ann. § 49-5-511(a)(3) also applied to tenured teachers wrongfully excessed pursuant to Tenn. Code Ann. § 49-5-511(b). (ECF No. 71 at 3-5.) In support of this position, Plaintiffs have marshalled several Tennessee cases extending the former's remedies to a violation of the latter, and they point to this Court's finding in the August 3, 2016, Order that "the remedy afforded to tenured teachers wrongly dismissed for cause also applies to tenured teachers dismissed in violation of Tenn. Code Ann. § 49-5-511(b)." (Id. at 4-5.)

Defendants argue that "the proper remedy for a purported violation of Sections 49-5-511(b)(1) or (2) of the Teacher Tenure Act ... as opposed to Section 49-5-511(b)(3), has not been addressed by case law and is a matter of first impression in Tennessee courts." (ECF No. 77 at 3.) They assert that the cases Plaintiffs cite address the proper remedy only where there has been a "wrongful denial of reemployment" in violation of § 49-5-511(b)(3), and that the Court should thus apply common law remedies for wrongful termination in this case. (Id. at 5.)

Although Defendants have made a spirited argument, the Court declines to upset its holding in the August 3, 2016, Order. In the absence of Tennessee case law suggesting that the remedies pursuant to § 49-5-511(b) should be bifurcated in the way envisioned by Defendants, the Court finds that its prior holding represents the most reasonable Erie guess as to the way the Tennessee courts would decide this issue. In re Dow Corning Corp., 778 F.3d 545, 548 (6th Cir. 2015) ("In resolving issues of state law, the [Court] looks to 'the final decisions of that state's highest court, and if there is no decision directly on point, then we must make an Erie guess to determine how that court, if presented with the issue would resolve it.' "). Indeed, assuming this discrete question is an issue of first impression, the cases cited by Plaintiffs indicate, if nothing else, a desire to bring uniformity to the remedies afforded under the Tenure Law. See Lee v. Franklin Special Sch. Dist. Bd. of Educ., 237 S.W.3d 322, 337 (Tenn. Ct. App. 2007) (holding that a teacher wrongfully denied reemployment in violation of Tenn. Code Ann. § 49-5-511(b)(3) is entitled to reinstatement and back pay pursuant to § 49-5-511(a)(3)); Randall v. Hankins, 675 S.W.2d 712, 714 (Tenn. Ct. app. 1984) (holding the same).

Therefore, the Court finds that, pursuant to Tenn. Code Ann. § 49-5-511(a)(3), each Plaintiff is entitled to full back pay without offset for the period of time beginning on July 1, 2014, to the earlier of the date of the Board Resolution or the date that a particular Plaintiff procured alternative employment within the school system. However, Plaintiffs are not entitled to any relief beyond back pay because, "under the plain language of the statute, [a plaintiff] is not entitled to recover for career ladder benefits, vacation days, sick days, retirement contribution, or social security contribution." Munford v. Bd. of Educ. of City of Memphis, 173 S.W.3d 452, 457 (Tenn. Ct. App. 2004). Finally, despite the Court's August 3, 2016, Order, no Plaintiff is entitled to reinstatement at this time because the Board Resolution effectively foreclosed this avenue of relief.

**\*7** It is undisputed that Plaintiff Marcia Kelley was excessed on July 1, 2014, and that she remained unemployed until October 13, 2014. Therefore, according

Kelley v. Shelby County Board of Education, Not Reported in Fed. Supp. (2017)

2017 WL 11139931

the applicable salary schedule, taking into account Ms. Kelley's experience and education, the Court finds that she is entitled to damages in the amount of $ 17,171.00.

It is undisputed that Plaintiff Ida Steinberg was excessed on July 1, 2014, and that she remained unemployed until October 13, 2014. Therefore, according to the applicable salary schedule, taking into account Ms. Steinberg's experience and education, the Court finds that she is entitled to damages in the amount of $ 17,171.00. The Court also finds that equity demands that Ms. Steinberg have her service credit restored to return her to the *status quo ante.* Restoration of Ms. Steinberg's service credit does not amount to recovery for non-salary benefits; it is simply a recognition that the disruption in her continuous employment was through no fault of her own.

It is undisputed that Plaintiff Paul Banks was excessed on July 1, 2014, and that he remained unemployed until the beginning of the 2015-16 school year. It is likewise undisputed that when Mr. Banks procured new employment with Shelby County Schools, his salary was less than it would have been had he not been excessed. Therefore, according to the applicable salary schedule, taking into account his experience and education, the Court finds that Mr. Banks is entitled to damages in a total amount of $ 75,457.00, representing $ 69,169 in back pay for the year he remained unemployed and a difference in salary of $ 6,288 between the position he was excessed from and the position he received during the 2015-16 school year.

It is undisputed that Plaintiff Laverne Jackson was excessed on July 1, 2014, and that she had not found employment within the Shelby County Schools by October 5, 2016, the date of the Board Resolution. Therefore, according to the applicable salary schedule, taking into account her experience and education, the Court finds that Ms. Jackson is entitled to damages in a total amount of $ 112,719.25, representing her back pay for that period.[4]

It is undisputed that Plaintiff Dale Thompson was excessed on July 1, 2014, and that he had not found employment within the Shelby County Schools by October 5, 2016, the date of the Board Resolution. Therefore, according to the applicable salary schedule, taking into account his experience and education, the Court finds that Mr. Thompson is entitled to damages in a total amount of $ 174,581.50, representing his back pay for that period.[5]

**IT IS SO ORDERED,** this 24th day of August, 2017.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 11139931

## Footnotes

[1]    Plaintiffs Memphis-Shelby County Education Association ("M-SCEA"), Lisa Ballard and Robert Newman also filed their position statements on January 23, 2017. (See ECF No. 74; No. 15-cv-2740-SHL-cgc, ECF No. 16; No. 16-cv-2127-SHL-cgc, ECF No. 20.) However, the Court finds that the claims of Lisa Ballard and Robert Newman are not ripe at this time, as there has been no determination as to either Plaintiff's entitlement to relief in this matter. Therefore, these Plaintiffs are directed to file whatever documents they deem appropriate to articulate their grounds for entitlement to relief in light of the Court's holdings in this matter.

[2]    Plaintiff Kelley has since retired.

[3]    It should be noted at the outset that the Parties dispute which version of the Tenure Law applies in this case and that the Court found this distinction inapposite at summary judgment. Plaintiffs argue that the actions of the Board and the Superintendent were governed by the version of the law that was in effect from May 15, 2012, to June 30, 2014. (ECF No. 38 at 8 n.7.) Defendant argues that the current version of the statute applies because it went into effect the day that Plaintiffs' terminations became final. (ECF No. 40 at 5-7.) While it appears that the current version of the law offers fewer protections to teachers dismissed due to an abolition of their positions pursuant to § 49-5-511(b), the Court finds that Defendants acted within the scope of their authority under both versions of

Kelley v. Shelby County Board of Education, Not Reported in Fed. Supp. (2017)

2017 WL 11139931

the statute. Therefore, for the purpose of this Order, the Court will assume that the earlier version of the law governs this case.

4       Back pay for the 2016-17 school year calculated based on a monthly salary of $ 4,303.08, derived from a total yearly salary of $ 51,637.00, multiplied by three (3) months, from July 1, 2016 to October 5, 2016.

5       Back pay for the 2016-17 school year calculated based on a monthly salary of $ 6,637.83, derived from a total salary of $ 79,654.00, multiplied by three (3) months, from July 1, 2016, to October 5, 2016.

---

**End of Document**                                            © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 297291
Only the Westlaw citation is currently available.
United States District Court, E.D. Tennessee.

MAKS, INC. GENERAL TRADING AND
CONTRACTING CO., Plaintiff /
Counter–Defendant,
v.
STERLING OPERATIONS, INC., Formerly known
as Eod Technology, Inc., Defendant /
Counter–Plaintiff.

No. 3:10–CV–443.
|
Jan. 27, 2014.

**Attorneys and Law Firms**

Deborah Buchholz, Attorney at Law, Knoxville, TN, John J. Beins, Joseph Aloysius Hennessey, Beins, Goldberg & Hennessey, LLP, Chevy Chase, MD, for Plaintiff/Counter-Defendant.

Jason E. Fisher, Brian C. Quist, Joanna Robertson O'Hagan, Ryan Jarrard, Quist, Cone & Fisher, PLLC, Knoxville, TN, for Defendant/Counter-Plaintiff.

*REPORT AND RECOMMENDATION*

H. BRUCE GUYTON, United States Magistrate Judge.

**\*1** This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of the Court, and the referral of the Chief District Judge. This case is now before the Court to address a request for prejudgment and post-judgment interest presented by MAKS Inc. Trading and Contracting Company ("MAKS"). Sterling Operations Inc., formerly known as EOD Technology, Inc., ("Sterling/EODT") has responded in opposition to the request for interest, and MAKS has filed a final reply. The issue before the undersigned in now ripe for adjudication.

On December 3, 2012, the jury in this case rendered a verdict in favor of MAKS on its breach of contract claims and a conversion claim. On December 17, 2012, MA KS filed a motion moving the Court to assess prejudgment and post-judgment interest on both its breach of contract claims and conversion claim, [Doc. 324]. On January 24, 2013, the Court entered an Order directing MAKS to elect between the damages award for breach of contract with regard to Work Authorization 02 and the damages awarded on its conversion claim. On January 29, 2013, MAKS elected to take the remedy available for the breach of contract under Work Authorization 02 ($975,000.00). MAKS's request for prejudgment and post-judgment interest relating to its conversion claim was rendered moot by this election. However, the request for prejudgment and post-judgment interest with regard to the breach of contract claims remained ripe for adjudication.

On February 14, 2013, the Clerk of Court entered Judgment in favor of MAKS. [Doc. 336]. On the same day, the Chief District Judge entered a Memorandum, Opinion, and Order [Doc. 335], finding *inter alia* that MAKS was entitled to both an award of prejudgment and an award of post-judgment interest. However, the Chief District Judge referred the determination of the rate and amount of the interest to the undersigned. On October 7, 2013, the Chief District Judge denied various post-judgment motions including Sterling's Motion for New Trial and/or Renewed Motion for Judgment as a Matter of Law. Accordingly, this matter is now ripe for adjudication.

*A. Prejudgment Interest*
With regard to prejudgment interest, the Court has already found that "an award of prejudgment interest on the damages awarded by the jury for the breach of Work Authorization 01, the breach of Work Authorization 02, and the breach of the security agreement [is] appropriate in this case." [Doc. 335 at 5–6]. Therefore, the only issue remaining for the undersigned to decide is the rate of the prejudgment interest and the period for which it should be awarded.

MAKS moves the Court to award prejudgment interest at ten percent (10%), the statutory maximum under Tenn.Code Ann. § 46–14–123. In support of this position, MAKS argues that the jury completely rejected the positions of EODT/Sterling and that 10% interest is appropriate because Sterling/EODT wrongfully denied MAKS the funds owed to it. [*See* Doc. 325 at 2].

ADDENDUM 11

**\*2** EODT/Sterling responds that MAKS has not offered any evidence supporting its position that 10% is appropriate. EODT/Sterling argues that the Court should calculate prejudgment interest using either: (1) the rate of interest which MAKS is entitled to on federal judgments (approximately .15%); or (2) the rate of interest which one can expect from an one-year certificate of deposit at a commercial bank (approximately .15%). [Doc. 326 at 3].

MAKS responds that EODT/Sterling's suggestion that the Court use a rate of .15% is not credible. [Doc. 327]. MAKS submits that it was forced to borrow money to cover the missing working capital anticipated by Work Authorization 1 and Work Authorization 2, and therefore, applying interest rates for certificates of deposit would be inequitable. [*Id.* at 2]. MAKS maintains that a rate of ten percent accurately reflects the interest rates assessed to MAKS on the working capital obtained to replace the money that should have been paid to MAKS by EODT under the contract. [*Id.*].

The Court has considered the parties' positions, and the Court finds that the appropriate rate for calculating prejudgment interest is 5% per annum. In so finding, the Court has considered the rates of interest available during the relevant period, the case law of this District, and the equities of this case.

The Court finds that MAKS's suggestion that the Court award interest at a rate of 10% is not consistent with the case law of this District. In evaluating a request for prejudgment interest covering approximately the same period, the Honorable Curtis L. Collier, United States District Judge, explained that awarding interest at the rate of 10%, though permissible would be "a windfall, particularly in light of the current economic climate." *Krystal Co. v. Caldwell,* 2012 WL 876793, at *11 (E.D.Tenn. Mar.13, 2012); *see also* 🔖 *Dorothy J. v. City of New York,* 749 F.Supp.2d 50, 81 (E.D.N.Y.2010) (noting the court would not apply the prejudgment interest rate of 9% per annum designated under New York law because such a rate "would produce a windfall for the plaintiffs in light of the historically low rates of interest and inflation that have prevailed over much of the relevant period").

Consistent with this position, recent decisions in the Eastern District of Tennessee have declined to award interest at a rate of 10%. *See Nat'l Fitness Cent., Inc. v. Atlanta Fitness,* 2013 WL 6231774 (E.D.Tenn. Dec.2, 2013) (Campbell, J.) (adopting recommendation that the Court award prejudgment interest at a rate of 5% per annum rather than 10% per annum under Tenn.Code Ann. 47–14–123).

The Court finds that MAKS's request that prejudgment interest be calculated at a rate of 10% per annum is unreasonable under the circumstances. The dispute at issue arose during one of the worst economic downturns in history, and this litigation persisted during a continued period of extremely low interest rates, *see* 🔖 *Dorothy J.,* 749 F.Supp.2d at 81. MAKS has not brought forth any evidence demonstrating that it could have obtained a 10% return on a reasonably secure investment during this period. Moreover, it has not cited the Court to any case law supporting its position that the rate of interest should be calculated at the interest rate for borrowing capital, and even if there were such precedence, MAKS has not demonstrated that the general cost of borrow capital was 10%. While the Court declines to award 10%, the Court also finds that EODT/Sterling's suggested rate of .15% does not appropriately account for the period that MA KS was denied access to its capital.

**\*3** Accordingly, the undersigned finds that the appropriate rate for prejudgment interest is 5% per annum. The Court finds that this rate is somewhat generous given the economic downturn, but it is appropriate given the period MAKS was denied its capital and the finite nature of these damages. Therefore, the undersigned **RECOMMENDS** that MAKS be awarded prejudgment interest at a rate of 5%: (a) from **September 9, 2009,** to entry of Judgment on Work Authorization 01 ($990,000.00); and (b) from **October 23, 2009,** to entry of Judgment on Work Authorization 02 ($975,000.00). That is, the undersigned **RECOMMENDS** that MAKS be awarded **$169,927.40** prejudgment interest on Work Authorization 01 and **$161,476.03** on Work Authorization 02.

### *B. Post–Judgment Interest*

The Court has determined that MAKS is entitled to post-judgment interest. [Doc. 335 at 8–9]. The undersigned, however, must determine whether MAKS's award of post-judgment interest should be calculated pursuant to Tenn.Code Ann. § 47–14–222 or 28 U.S.C. § 1961.[Id.]. Further, the undersigned is to determine the rate of the post-judgment interest and the period for which it should be awarded. [*See id.*].

MAKS does not suggest a specific amount of post-judgment interest. Instead, it submits simply that, "[p]ursuant to Tenn.Code Ann. § 47–14–122, post judgment interest is due to MAKS dated from December 2, 2012, the day the jury rendered verdict." [Doc. 325 at

MAKS, Inc. General Trading and Contracting Co. v...., Not Reported in...

2014 WL 297291

6].

EODT/Sterling has responded in opposition. EODT/Sterling maintains that federal l aw controls post-judgment interest, and that the appropriate amount of interest is determined through application of 28 U.S.C. § 1961. [Doc. 326 at 4–5]. EODT/Sterl i ng submits that, at the time of briefing, the appropriate interest rate for post-judgment interest was 0.15%. [*Id.* at 5].

In its reply, MAKS does not contest EODT/Sterling's position that 28 U.S.C. § 1961 governs the award of post-judgment interest, nor does MA KS contest that, at the time of briefing, the appropriate interest rate for post-judgment interest was 0.15%. [Doc. 327 at 2]. Instead, MAKS argues simply that EODT/Sterling's position is not credible and that calculating interest at 0.15% would be inequitable. [*Id.*].

Federal law controls post-judgment interest for state-law claims and state law governs awards of prejudgment interest. *Spizizen v. Nat'l City Corp.,* 516 Fed. App'x 426, 432 (6th Cir.2013) (citing *Estate of Riddle v. So. Farm Bur. Life Ins. Co.,* 421 F.3d 400, 409 (6th Cir.2005)). Section 1961(a) requires district courts to award post-judgment interest on all money judgments. *Spizizen,* 516 Fed. App'x at 432 (citing *Hoover v. Provident Life & Accident Ins. Co.,* 290 F.3d 801, 810 (6th Cir.2002)). The underlying purpose of § 1961 is "to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Spizizen,* 516 Fed. App'x at 432 (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835–36, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)).

**\*4** Section 1961 instructs: "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a).

The Court finds that the rate of post-judgment interest is set pursuant to 28 U.S.C. § 1961, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

Judgment in this case was entered on February 14, 2013. MAKS indicated in its initial filing that it believed the appropriate date for post-judgment interest to begin was

December 2, 2012. [Doc. 325 at 6]. December 2, 2012 is the date on which the jury rendered its verdict, but the Judgment in this case was entered on February 14, 2013. Neither party has devoted considerable time to this conflict i n their briefing, but the Court finds that the plain language of § 1961 supports finding that post-judgment interest should be calculated from February 14, 2013, which is the date that the Clerk of Court entered the Judgment [Doc. 336].

The Court finds that the week preceding entry of judgment ended on February 8, 2013, and the Court finds the published rate for 1–year constant maturity Treasury yields was 0.15%.[1]

Accordingly, the undersigned **RECOMMENDS** that MAKS be awarded post-judgment interest at a rate of **0.15%** from February 14, 2013 to the date of decision on this Report and Recommendation.

### C. Conclusion

Based upon the foregoing, the undersigned **RECOMMENDS**[2] that:

1. MA KS's request for assessment of prejudgment interest and post-judgment interest at a rate of 10% per annum be **DENIED.**

2. MA KS be awarded prejudgment interest at a rate of **5%:**

   a. from **September 9, 2009,** to entry of Judgment on Work Authorization 01 ($990,000.00), for a total of **$169,927.40** in prejudgment interest on Work Authorization 01; and

   b. from **October 23, 2009,** to entry of Judgment on Work Authorization 02 ($975,000.00), for a total of **$161,476.03** in prejudgment interest on Work Authorization 02.

3. MAKS be awarded post-judgment interest at a rate of **0.15%** from entry of the Judgment to the date of decision on this Report and Recommendation.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 297291

## Footnotes

1       See http://www.federalreserve.gov/releases/h15/20130219/, accessed Jan. 27, 2014.

2       Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed.R.Civ.P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall,* 806 F.2d 636 (6th Cir.1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers,* 829 F.2d 1370 (6th Cir.1987).

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case: 22-5591    Document: 15    Filed: 11/03/2022    Page: 112

Sutton v. Metropolitan Government of Nashville and..., Not Reported in Fed....

2016 WL 9116026

2016 WL 9116026
Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee,
Nashville Division.

Jermaine SUTTON, Plaintiff,
v.
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY, et al.,
Defendants.

3:10 C 00400
|
Signed 04/08/2016

**Attorneys and Law Firms**

Andrew N. Egan, Law Office of Andrew N. Egan, Hermitage, TN, Mary Leech, Braun & Associates, PLLC, Nashville, TN, for Plaintiff.

Derrick C. Smith, Elizabeth A. Sanders, Keli J. Oliver, R. Alex Dickerson, Melissa S. Roberge, Metropolitan Legal Department, Nashville, TN, for Defendants.

**MEMORANDUM OPINION AND ORDER**

Marvin E. Aspen, United States District Judge

**\*1** Plaintiff Jermaine Sutton alleges that Defendant police officer Richard Martin unlawfully detained him in violation of his Fourth Amendment rights. A jury trial is scheduled for September 12, 2016. Presently before us are four motions in limine and a motion to bifurcate filed by the parties in preparation for trial.

As set forth below, we grant Defendant's motion to bifurcate the liability phase and damages phase of trial. (Dkt. No. 135.) We also grant Plaintiff's motion concerning testimony of Christopher Gilder, Defendant's motions concerning evidence of Defendant's disciplinary history, testimony concerning defense counsels' employment at the Metropolitan Department of Law, and evidence of Plaintiff's acquittal and the alleged role of a second individual in the crime at issue. (Dkt. Nos. 131,

132, 134, 139.)

**STANDARD OF REVIEW**

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine.*" *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 (1984)). "The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures—including motions *in limine*—in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *see also United States v. Huff*, 10 CR 73, 2011 WL 4916195, at \*1 (E.D. Tenn. Oct. 27, 2011). Because a ruling on a motion in limine is "subject to change as the case unfolds," this ruling constitutes a preliminary determination in preparation for trial. *See Luce*, 469 U.S. at 41, 105 S. Ct. at 163; *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). A district court's rulings on in limine motions will be reversed only where the court abuses its discretion, that is, "when it relies on clearly erroneous findings of fact, when it improperly applies the law, or when it employs an erroneous legal standard." *United States v. Gunter*, 551 F.3d 472, 483 (6th Cir. 2009); *United States v. Cline*, 362 F.3d 343, 348–49 (6th Cir. 2004).

As to Defendant's motion to bifurcate, pursuant to Federal Rule of Civil Procedure 42(b), "[t]he court, in furtherance of expedition and economy, may order a separate trial of any claim." Fed. R. Civ. P. 42(b). The decision to bifurcate is entirely within the discretion of the district court and our decision relies on the specific "facts and circumstances of each case." *Specialty Minerals, Inc. v. Dunbar Mech., Inc.*, 164 Fed. Appx. 539, 541 (6th Cir. 2005); *Creative Home Designs, Inc. v. Fred Francis Builders, L.P.*, No. 6 C 0039, 2006 WL 2469379, at \*2 (M.D. Tenn. Aug. 25, 2006). In this circuit, we must consider the potential prejudice to the parties, "potential confusion to the jury and the relative convenience and economy that would result" from bifurcation. *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982); *Creative Home Designs, Inc.*, 2006 WL 2469379, at \*2. "Only one of these criteria need

**ADDENDUM 12**

Sutton v. Metropolitan Government of Nashville and..., Not Reported in Fed....

2016 WL 9116026

be met to justify bifurcation." *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996).

**ANALYSIS**[1]

**I. Motion to Bifurcate**

**\*2** We first address Defendant's motion to bifurcate damages and liability. (Dkt. No. 135.) Plaintiff opposes the motion as to compensatory damages, arguing that there is substantial overlap between the evidence supporting both a liability and damages determination. (Dkt. No. 160 at 1.) We disagree and grant Defendant's motion.

Before addressing Defendant's motion we first discuss the scope of damages available to Plaintiff for his remaining § 1983 and state law claims. Plaintiff asserts that he is entitled to all damages "flowing from [D]efendant's violation of his Fourth Amendment constitutional rights." (Dkt. No. 160 at 1.) Specifically, Plaintiff seeks damages for bail, attorney's fees for the criminal trial, lost income and damages related to humiliation, embarrassment and mental and emotional anguish due to his detention at his workplace, the time in the police car at Kroger's, the trip to the police station, the citizen's arrest, his booking, the months he awaited trial, and the criminal trial itself. (*Id.* at 2.) While we agree with Plaintiff that he is entitled to all damages that compensate for injuries *caused* by the deprivation of constitutional rights, *Memphis Cmt. Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S. Ct. 2537, 2543 (1986) (emphasis added), we are also aware that damages for a claim brought pursuant to § 1983 are governed by a proximate cause standard, *Estate of Sowards v. City of Trenton*, 125 Fed. Appx. 31, 41 (6th Cir. 2005) (affirming district court's limitation of damages where Plaintiff's eventual death was not proximately caused by either constitutional violation at issue); *Ellis v. Washington Cty. & Johnson City, Tenn.*, 198 F.3d 225, 226 (6th Cir. 1996); *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 652, 659 (6th Cir. 1994); *see also Ruth v. Ford*, No. 09–11278, 2010 WL 3245411, at \*7 (E.D. Mich. Aug. 17, 2010) (holding that plaintiff was not entitled to damages "arising out of his incarceration," such as legal fees and lost wages, because those damages were "too remote" from the alleged constitutional violations). Additionally, for a false arrest claim, damages extend only to the "issuance of process or

arraignment." *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 2371 (1994) (internal citation omitted). Here, Plaintiff seeks damages for injuries sustained after he was formally charged and indicted. We find that those damages are "too remote" from any alleged constitutional violation during the 15–20 minute detention at issue. Accordingly, upon a finding of liability, Plaintiff will only be entitled to damages proximately caused by the 15–20 minute detention and may not recover damages related to bail, attorney's fees for his criminal trial, or lost income due to his indictment. *Heck v. Humphrey*, 512 U.S. at 484, 114 S. Ct. at 2371; *Estate of Sowards*, 125 Fed. Appx. at 41; *Ellis*, 198 F.3d at 226; *Horn*, 22 F.3d at 659; *see also Ruth*, 2010 WL 3245411, at \*7. Plaintiff may present evidence as to his mental and emotional anguish proximately caused by the alleged 15–20 minute detention at issue. *Memphis Cmt. Sch. Dist.*, 477 U.S at 307, 106 S. Ct. at 2543; *Estate of Sowards*, 125 Fed. Appx. at 41.

As to Defendant's motion to bifurcate, because of the previous Sixth Circuit decisions limiting Defendant's potential liability, we grant Defendant's motion. *See Sutton v. Metro. Gov't of Nashville and Davison Cty.*, 700 F.2d 865, 878 (6th Cir. 2012) (limiting Defendant's liability to the 15–20 minute period after Plaintiff produced his cell phone and before Plaintiff was identified by an eye-witness). Trial testimony will be restricted only to proof related to Defendant's conduct during the alleged 15–20 minute detention so to not confuse the jury as to the scope of Defendant's potential liability. *In re Beverly Hills Fire Litig.*, 695 F.2d at 216; *Creative Home Designs, Inc.*, 2006 WL 2469379, at \*2.

**\*3** Accordingly, the jury will first hear evidence concerning Defendant's liability during the 15–20 minutes in question. If the jury finds Defendant liable, they then will hear testimony as to damages.

**II. Motions in Limine**

We first shall briefly address two unopposed motions and then will consider the disputed motions in greater detail.

Plaintiff filed one motion in limine seeking to preclude Defendant from offering the expert testimony of Christopher Gilder. (*See* Dkt. No. 139.) Defendant objects to that motion. (*See* Dkt. No. 147.)

Sutton v. Metropolitan Government of Nashville and..., Not Reported in Fed....

2016 WL 9116026

Defendant filed five motions in limine; two of which we have previously granted. (*See* Dkt. Nos. 130, 133.) In his remaining three motions in limine, Defendant seeks to exclude: (1) evidence related to Defendant's disciplinary history; (2) reference to defense counsels' employment at the Metropolitan Department of Law; and (3) evidence related to Plaintiff's acquittal and/or David Booker's alleged role in the crime at issue. (*See* Dkt. Nos. 131, 132, 134.) Plaintiff has not filed any opposition to Defendant's motion to exclude his disciplinary history and that motion is granted. Plaintiff shall not offer any evidence concerning Defendant's prior disciplinary history. Fed. R. Civ. P. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.") Plaintiff also has not filed any opposition to Defendant's motion to exclude reference to defense counsels' employment at the Metropolitan Department of Law and that motion is granted. *See* Fed. R. Evid. 403, 411.

*A. Plaintiff's Motion Concerning the expert testimony of Christopher Gilder*

In his only motion in limine, Plaintiff seeks to exclude the testimony of defense expert Christopher Gilder. (*See* Dkt. No. 139.) Defendant opposes the motion. (*See* Dkt. No. 147.)

According to Defendant's Rule 26 disclosures and Mr. Gilder's trial statement, Gilder is a Captain with the Metro Nashville Police Department ("MNPD"). (Dkt. Nos. 140-1, 141 at 1.) Captain Gilder is the "On Call Legal Advisor" for MNPD and is "responsible for providing legal guidance to supervisors." (Dkt. No. 141 at 1). Previously, Captain Gilder was assigned to the Legal Resources Division at the MNPD where he "worked extensively at the MNPD training academy." (*Id.*) Captain Gilder was contacted by Defendant's attorney to "evaluate the actions of [Defendant]" on the night in question and to provide a trial statement outlining his opinions regarding Defendant's actions that night.[2] (*Id.* at 2.) In his trial statement, Captain Gilder provides two opinions: (1) it was reasonable for Defendant to believe he had a lawful right to detain Plaintiff during the 15–20 minute time frame at issue, and (2) the majority of officers Captain Gilder has trained would have similarly detained Plaintiff during those 15–20 minutes. (*Id.* at 5.) We find that both opinions are inadmissible.

**\*4** Plaintiff argues that Captain Gilder's statements

should be excluded pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1993). (Dkt. No. 140 at 2.) In *Daubert*, the Supreme Court established the test for admissible scientific expert testimony under Federal Rule of Evidence 702. According to *Daubert*, in assessing the reliability of scientific expert testimony, we must consider "whether the reasoning or methodology underlying the testimony is scientifically valid and [ ] whether that reasoning or methodology can properly be applied to the facts in issue." *Daubert,* 509 U.S. at 592–93, 113 S. Ct. at 2786. Courts apply the same test when considering the admissibility of non-scientific expert testimony, such as Captain Gilder's. *Kuhmo Tire Co. v. Carmichael,* 526 U.S. 137, 149, 119 S. Ct. 1167, 1176 (1999) ("The objective of [the *Daubert*] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.") In the case of non-scientific expert testimony, "the trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152, 119 S. Ct. at 1176; *see also In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 529 (6th Cir. 2008) ("The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation."); *Berry v. City of Detroit,* 25 F.3d 1342, 1350 (6th Cir. 1994) (rejecting expert opinion concerning the effect of lax discipline on the entire police force as unfounded speculation).

Even if expert testimony is deemed reliable, the Federal Rules of Evidence preclude an expert from providing legal conclusions. *Berry,* 25 F.3d at 1354 ("It would have been easy enough for the drafters of the Federal Rules of Evidence to have said that a properly qualified expert may opine on the ultimate question of liability. They did not do so. When the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue.") Accordingly, courts in this circuit have precluded expert testimony that expresses a legal conclusion. *DeMerrell v. City of Cheboygan,* 206 Fed. Appx. 418, 426 (6th Cir. 2006) (precluding expert from testifying that a reasonable officer would not have

Sutton v. Metropolitan Government of Nashville and..., Not Reported in Fed....

2016 WL 9116026

concluded that probable cause existed and that the use of deadly force was "improper and unnecessary"); *Berry, 25 F.3d at 1354; Torres v. Cty. of Oakland, et al., 758 F.2d 147, 151 (6th Cir. 1985)* (finding that expert stated an improper legal conclusion because opinion "tracked almost verbatim the language of the applicable [law]," and because the term expert used had a "specialized meaning in the law"); *see also Brown v. Lewis,* No. 12–14953, 2014 WL 354007, at *5 (E.D. Mich. Jan. 31, 2014) (excluding expert testimony that defendants had "probable cause" and that defendants "acted appropriately"); *Alvarado v. Oakland Cty.,* 809 F. Supp. 2d 680, 688 (E.D. Mich. 2011) (holding that experts may not "express legal conclusions based on their interpretation of the application of [police] policy in a particular case").

Here, we find that Captain Gilder's opinion as to whether Defendant acted reasonably when he detained Plaintiff for the 15–20 minutes in question is an improper legal conclusion. The sole question for the jury will be whether Defendant had either "reasonable suspicion" to detain or "probable cause" to arrest Plaintiff outside the hospital. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968); *United States v. Strickland,* 144 F.3d 412, 415 (6th Cir. 1998). Expert testimony declaring that Defendant acted reasonably goes beyond "suggest[ing] the answer to the ultimate issue," *Berry,* 25 F.3d at 1354, and instead "track[s] almost verbatim the language of the applicable [law]," *Torres,* 758 F.2d at 151.

Captain Gilder's second opinion, that the majority of the officers he trained would have acted in the same manner as Defendant, is equally problematic; the opinion lacks foundation and we find it unreliable. Aside from stating that he has taught sixteen police officer basic training sessions, Captain Gilder provides no further foundation to substantiate his opinion. We do not know how many officers Captain Gilder has trained, if Captain Gilder trained these officers in how to conduct detentions in circumstances that mirrored those on the night in question, or most importantly, why he believes "the majority of officers" would have acted in a particular way. We have no reason to believe Captain Gilder is doing anything more than speculating that the majority of his students would have acted as Defendant did on the day in question. *Berry,* 25 F.3d at 1350.

*5 To be clear, at trial, upon laying the proper foundation, Captain Gilder will be free to testify to the training officers receive and how police officers should respond to certain situations according to MNPD policy and training. *Alvarado,* 809 F. Supp. 2d at 690 ("The Court concludes

that [expert] may testify regarding nationally recognized police standards governing the use of excessive force, as well as the specific [department's] excessive force guidelines to which [defendant] was subject.") Captain Gilder may go no further. He may not testify as to "reasonableness," "probable cause" or any other legal terminology that attempts to take relevant jury determinations away from the jury. *Id.* at 691.

For these reasons, Plaintiff's motion to exclude Christopher Gilder's trial testimony is granted in part in accordance with the preceding analysis.[3]

*B. Defendant's Motion Concerning Evidence Related to Plaintiff's Acquittal and/or David Booker's Alleged Role in the Crime*

Defendant asks that we preclude Plaintiff "from offering testimony related to Plaintiff's acquittal ... or the alleged role of David Booker as the actual thief." (Dkt. No. 134 at 1.) Defendant contends that such evidence is irrelevant and would be unfairly prejudicial. (*Id.* at 3.) In his response, Plaintiff argues that his acquittal and Booker's involvement are relevant to Defendant's credibility, the information available to Defendant at the time of the stop, and to Plaintiff's damages.[4] (Dkt. No. 156 at 1.) We discuss the admissibility of the acquittal and the alleged role of David Booker separately.

a. Plaintiff's Acquittal

Generally, a criminal acquittal is inadmissible in a subsequent civil trial because it is hearsay. *Dunlap v. Fields,* 221 F.3d 1334 (Table), at *1 (6th Cir. 2000); *McKinney v. Galvin,* 701 F.2d 584, 586 n.5 (6th Cir. 1983). Additionally, a previous criminal acquittal does not establish a defendant's innocence, and accordingly, is often inadmissible under Rule 403 based on the likelihood of causing unfair prejudice. *Dunlap,* 221 F.3d at *2; *see also Freeman v. Harris,* No. 10-0071, 2010 WL 5476466, at *4 (M.D. Tenn. Dec. 30, 2010) ("The mere fact of acquittal does not necessarily evidence a constitutional tort.")

Accordingly, we find that Plaintiff's acquittal is inadmissible. Because the only question for trial revolves around whether Defendant had probable cause to arrest or reasonable suspicion to detain prior to the eye witness identification, we find that Plaintiff's acquittal is

irrelevant, prejudicial and likely to confuse the jury. *Dunlap*, 221 F.3d at \*2; *Freeman,* 2010 WL 5476466 at \*4; *see also* 🚩 *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999) (a probable cause determination depends only on the "facts and circumstances *within an officer's knowledge at the time of an arrest*") (emphasis in original).

### b. The Alleged Role of David Booker in the Crime at Issue

As with the evidence of Plaintiff's acquittal, because the jury may only consider the facts and circumstances within Defendant's knowledge at the time of the alleged detention, any evidence acquired after the 15–20 minute detention at issue is irrelevant, and thus inadmissible. 🚩 *Estate of Dietrich,* 167 F.3d at 1012. In Plaintiff's opposition to Defendant's motion, Plaintiff asserts that a witness will testify that prior to the 15–20 timeframe at issue, the witness informed Defendant that the cell phone found at the crime scene belonged to David Booker, not Plaintiff.[5] (Dkt. No. 156 at 2.) This testimony goes directly to the information that Defendant had prior to the detention, and thus, is relevant and admissible. However, to the extent that Plaintiff intends to offer evidence concerning David Booker's alleged role in the crime that was obtained after the 15–20 minute detention, such

testimony is irrelevant and prejudicial and will be excluded. 🚩 *Estate of Dietrich,* 167 F.3d at 1012.

### CONCLUSION

**\*6** For the reasons discussed above, we grant Defendant's motion to bifurcate. (Dkt. No. 135.) We also grant Plaintiff's motion concerning Christopher Gilder's testimony. (Dkt. No. 139.) We grant Defendant's motion to exclude evidence related to Defendant's disciplinary history, Defendant's motion concerning reference to defense counsels' employment at the Metropolitan Department of Law, and Defendant's motion to exclude evidence concerning Plaintiff's acquittal. (Dkt. Nos. 131, 132, 134.) To the extent that Plaintiff attempts to introduce evidence of Mr. Booker's role in the crime that was learned *after* the 15–20 minute detention, Defendant's motion to preclude testimony of Mr. Booker's alleged role in the crime is also granted. (Dkt. No. 134.) It is so ordered.

### All Citations

Not Reported in Fed. Supp., 2016 WL 9116026

### Footnotes

[1]    For purposes of this opinion, we incorporate the facts summarized in Judge Sharp's July 9, 2014 opinion. (Dkt. No. 111.)

[2]    Defendant contends in his Rule 26 disclosures that Captain Gilder is not a retained expert under Rule 26(a)(2)(B). While we seriously question this assertion, we do not address Captain Gilder's status as a retained or non-retained expert at this time.

[3]    Because we find that Captain Gilder's testimony is inadmissible, we deny Plaintiff's motion to strike as moot and will address any contested Rule 26 disclosure concerns at a later date. (*See* Dkt. No. 162.)

[4]    Because we have granted Defendant's motion to bifurcate the liability phase from the damages phase of trial, any testimony relevant only to damages is inadmissible during the liability phase. *See* Fed. R. Evid. 401.

[5]   Based on the information in the record, we have serious doubts as to Plaintiff's proffer that Ms. Richardson informed Defendant that the phone found at the Kroger belonged to Mr. Booker, not Plaintiff. (*See* Richardson Dep. (Dkt. No. 74–4 at 7) (Question: "Back when the police officer on the phone told you that you were listed as Auntie in the cell phone, is there, is there any reason that you didn't mention David Booker's name to the police at that time?" Answer: "I didn't have no reason to").) Unless Plaintiff can provide testimony establishing that Defendant had information concerning David Booker's potential role in the crime prior to or during the 15–20 minute stop, any mention of David Booker will be barred.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.