
RECEIVED
NOV 2 8 2022
DEBORAH S. HUNT, Clerk

No. 22-5591

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

SONYA P. WILLIAMS
Plaintiff-Appellant

v.

SHELBY COUNTY, TN BOARD OF EDUCATION
Defendant-Appellee

On Appeal from the United States District Court
For the Western District of Tennessee
Western Division
Honorable Thomas L. Parker
Case No. 2:17-cv-02050-TLP-jay

## REPLY BRIEF

Sonya P. Williams
*Pro Se* Litigant
3995 Point Church Rd.
Memphis, TN 38127

November 23, 2022

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT…..……..….………………….……..1

II. ARGUMENT………………………………………………….4

    A. District Court Erred in Concluding as Fact Williams' Termination was the Result of a RIF……………………………………………4

        1. The Board Offered No Evidence or Testimony a RIF Occurred at the Time Williams was Fired. …………………………………6

            a. Hopson nor the Board Evaluated Williams' Ability to Fill Vacancies……………………………………………8

            b. Williams was Not Placed on a Preferred List for Employment Pursuant to the Tenure Act…………………………………9

            c. Under a RIF the Board Has a Responsibility to Consider Tenured Teachers for Reemployment…………………………10

        2. Hopson Lacked Sufficient Demonstrable Grounds to Fire Williams…………………………………………...12

    B. District Court Erred in Determining Williams' Right to Due Process Was Not Violated……………………………………….……12

        1. District Court Erroneously Decided Violation of §1983 Did Not Encompass the Manner of Williams' Termination……………13

        2. The Board Provided No Pre-termination Process At All to Williams……...................................................15

    B. The District Court Erred in Granting Summary Judgment to the Board…………………………………………………....18

        1. Hopson Terminated Williams Illegitimately……………………………………………..19

        2. The Board Denied Williams Reemployment……………………20

Case: 22-5591    Document: 18    Filed: 11/28/2022    Page: 2

a.  Williams Satisfied Exhaustion Requirements....………...........20

b.  Williams' Charge of Retaliation is Sufficient to Cover Acts of
Retaliation by the Board Post Termination………….............22

3. Williams' Speech Was Protected……………………………......22

4. District Court Erred in Not Analyzing Williams' TPPA Claim....23

D.  The District Court Abused Its Discretion, In Doing So, the Following
Rulings Resulted in Prejudice to Williams……………………………25

1. 2018 Resolution Was Not Applicable to Williams………………25

2. Williams is Entitled to Backpay That Includes Annual Salary
Increases for the Time She was Denied Reemployment…………26

3.  Williams is Statutorily Entitled to Post-Judgment Interest………27

4.  Judicial Admission and Notice…………………………....………...28

a.    The Board's Contentions Regarding Their Employment
List Changed Throughout Litigation, However They Were
Clear and Unambiguous…………………………………28

b. Williams' Summary Chart of Family and Consumer Sciences
New Hires Should Have Been Admitted and Considered…....29

5. Jones' Credibility and The Board's Reemployment List………...29

III.  CONCLUSION……………………………………....…………….31

CERTIFICATE OF COMPLIANCE………………………………….....32

CERTIFICATE OF SERVICE……………………………………………33

# TABLE OF AUTHORITIES

## Cases

Page(s)

*Albright v. Oliver*,
    510 U.S. 266 (1994)………………………………………..…………….....15

*Arnwine v. Union County Bd. of Educ.*,
    120 S.W. 3d 804 (2003)……………………………………………………11

*Cleveland Bd. of Educ. v. Loudermill*
    470 U.S. 532 (1985)………………………………………………….....17

*Board of Comm'rs. v. Brown*,
    520 U.S. 397 (1997)…………………………………………………..18

*Bd. of Regents v. Roth*,
    408 U.S. 564 (1972)………………………………………………… .15

*Dallas v. Shelby Cty. Bd. Educ.*,
    No. W2018-01661-COA-R3-CV (Tenn. Ct. App., August 19, 2019)…………3

*Emory v. Memphis Sch. Bd. of Educ.*,
    No. 2014-01293-COA-R3-CV, 2015 WL 1934397
    (Tenn. Ct. Appeal, April 29, 2015)..…………………………………15,16

*Inman v. Inman*,
    840 S.W. 2d. 927, 932 (Tenn. Ct. App. 1992)……………………………..27

*Johnston-Taylor v. Gannon*,
    907 F. 2d 1577 (6th Cir. 1990)…………………………………………....14

*Jones v. Brown*,
    727 S.W. 2d 497……………………………………………………………11

*Jones-Tate v. Shelby Cty. Bd. Educ.*,
    No. 2:17-cv-02307-SHL-dkv (W.D. Tenn. 2018)…………………………17,20

Case: 22-5591    Document: 18    Filed: 11/28/2022    Page: 4

*Kee v. Shelter Ins.*
852 S.W. 2d 226 (Tenn. 1993)……………………………………………..16

*Kelley v. Shelby Cty. Bd. of Educ.*,
198 F. Supp. 3d 842 (W.D. Tenn. 2016)………………………………15, 20

*Kelley v. Shelby Cty. Bd. of Educ.*,
751 F. App'x. 650 (6th Cir. 2018)………………………………………14,17

*King v. Betts*,
354 S.W. 3d 691 (Tenn. 2011)………………………………...…15

*Lee v. Franklin Special Sch. Dist. Bd. of Ed.*,
237 S.W. 3d 322 (Tenn. Ct. App. 2007)………………………….1,4,8,11,16

*Little v. Carter*
146 S.W. 2d 144 (Tenn. Ct. Appeal 1940)……………………………...6

*Nat'l Gas Distribs., Inc. v. State*,
804 S.W. 2d 66, 67  (Tenn. 1991)……………………………………….6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 587 (1986)………………………………………….19

*Marshall v. Rawlings Co.*, LLC,
854 F. 3d 368 (6th Cir. 2017)……………………………………...24

*Monell v. Dept. of Social Servs.*,
436 U.S. 658, 690-91(1978)……………………………………………..18

*Pembaur v. Cincinnati*,
475 U.S. 469 (1986)……………………………………………18

*Randall v. Hankins*,
675 S. W. 2d 712 (Tenn. 1984)………………………………………….....4,8

*Randall v. Hankins*,
733 S.W. 2d 871 (Tenn. 1987) ………….................................4,8,9,11

*Saylors v. Riggsbee,*
    544 S.W. 2d 609(Tenn. 1976)…………………………………………...16

*Thompson v. Memphis City Sch. Bd. of Educ.,*
    395 S.W. 3d 616 (Tenn. 2012) ……...……………………….4,12,14,16,17

*Washington Cty. Educ. Ass'n. et al.  v. Washington*
    *Cty. Bd. Educ.*, et al. No. E2018-01037-COA-R3-CV
    (Tenn. Ct. App. June 20, 2019)……………………………………...3

*Webb v. Nashville Area Habitat for Humanity, Inc.,*
    346 S.W. 3d 422, 437 (Tenn. 2011)…………………………………..23

### Federal Statutes

Title VII Civil Rights Act of 1964……………….....................................20,21,25

### Tennessee Statutes

Tenn. Code Ann. §47-14-121 (Public Chapter 1043)…………………….....28

Tenn. Code. Ann. §49-2-301 (b)(1)(FF)(GG)(i)-(vii)…………………………...3

Tenn. Code Ann. §49-2-203(b)…………………………………………....3

Tenn. Code Ann. §49-5-501 *et. seq* (2014)……………….....1,3,5,6,7,9,10,12,13
………………………………………………….14,15,16,25,26,27, 29

Tenn. Code. Ann. §50-1-304………………………...……………………..23,25

Tenn. Code. Ann. §49-2-301(b)(1)(A) ……………………………...……….....3

### Constitutional Provisions

First Amendment 42 USC §1983 & §1988……....…...……………………..25

Fourteenth Amendment 42 USC §1983……………….....12,13,14,15,17,18,25,29

# I. PRELIMINARY STATEMENT

Williams accepted responsibility and accountability as a teacher by meeting performance expectations as outlined in the Tenure Act ("TA"), however the Board did not meet its responsibility of ensuring that Williams' rights were protected and should be held fully accountable. "The Board has the corresponding affirmative duty to ensure the teacher's rights are not swept under the carpet…"[*Lee v. Franklin Special Sch. Dist. Bd. of Ed.*,237 S.W. 3d 322,334 (Tenn. Ct. App. 2007)].

The crux of the case is simple: violation of a tenured teacher's statutory right to continued employment and priority in reemployment; yet made complex by both the Board's strategy and district court's ("DC") rulings. Williams contended at the onset and throughout litigation that nearly the entire dismissal provision was ignored when she was fired. The Board's introduction of their 2018 Resolution changed the trajectory of the case; and Williams is still perplexed as to how this was allowed to happen. Williams never claimed that she was improperly "excessed" as part of a Reduction in Force ("RIF")[OB*20,32 ].

The board sought to justify its noncompliance with the TA by arguing that Williams was an at will employee and when that strategy didn't work it shifted its position: The Board's 2018 Resolution ratified the "excessing" of Williams. The

Board's shifting position should have been rejected by the DC as the positions are contradictory. The 'protocol' for dismissal of tenured teachers is distinctly different for an at will employee. Williams was fired as if she were an at-will employee. It is not plausible to believe that the Board, along with Chantay Branch("Branch"), and Dorsey E. Hopson, Esq. ("Hopson") believed that Williams became an at-will employee when she was placed into the AE Advisor position; when Tennessee law specifically states, "If a teacher acquires tenure, the teacher shall remain under that status until such time as the teacher resigns, retires, is dismissed…" [Tenn. Code Ann.§ 49-5- 501(11)(B)(i)].

Further, the Board had access to in house counsel (current defense counsel)along with a team of legal professionals; Hopson had years of experience as counsel for the Board and other school boards; Branch had years of experience in the labor relations department; and the Board was engulfed in litigation regarding the TA at the time Williams was fired, which leaves no room for 'oops.' [Hopson Depo. R. 60, PageID# 1731-34,1736; Branch Depo.51, R. 51, PageID#874-77; Ervin Depo. R.156, PageID#4315-4317]. By virtue of their positions, Hopson, Branch, Defense Counsel Moore; and Jones were required to have working knowledge of employment laws, state laws relating to schools and the rules of the state and local boards of education. Jones even testified that their office maintained manuals relating to TN laws [Trial Transcript ("TT") R. 314,

2

PageID#8223-24:17-25;1-14]. The Board's actions and the actions of its officials were not reasonable under the circumstances.

Additionally, to justify its actions and negate Williams' entitlement to statutory priority in reemployment the Board argued that the dismissal provision of the TA applied to both tenured and non-tenured teachers [MSJ, R. 70, PageID#2348, Fn. 4; Tenure Brief, R. 122, PageID# 3299; Post Trial Brief, R. 306, PageID#8102-03]. Dismissal for cause for a non-tenured is governed by Tenn. Code. Ann. §49-2-301 (b)(1)(FF)(GG)(i)-(vii). Further, Tenn. Code Ann. §49-2-203(b) is the only statutory provision that affirmatively gives legal rights to non-tenured teachers whose employment contracts are not renewed; [*Washington County Education Association v. Washington County Board of Education*, No. E2018-010307-COA-R3-CV, (Tenn. Ct. App. June 2019)*5; references TA as codified in 2014]. Non-tenured teachers have no rights to placement on the preferred list for employment ("PLE") pursuant to the TA; and the Board understood this fact. In *Dallas v. Shelby County Board of Education*, No. W2018-01661-COA-R3-CV (Tenn. Ct. App., August 19, 2019) the Board filed a motion for summary judgment on the basis that the teacher plaintiff was not a tenured teacher entitled to relief under the TA [*2]. The version of the TA applicable in *Dallas* is also applicable to this case as *Dallas*' employment ended in 2015 with the Board.

3

These actions underscored the necessity for Williams to initiate this litigation and stand on her rights. In doing so, Williams has maintained professionalism while dealing with all parties involved. In submitting her opening brief ("OB") as a *pro se* plaintiff, Williams was not required to file a civil appeals statement, include a standard of review, or a statement of the issues. She answered the requisite questions outlined in the template for a *pro se* brief published by this Court, also included a standard of review at the beginning of each applicable section; and made citations to the record to include rulings made by the DC.

The Board's arguments in support of affirming the DC's decisions should fail for the reasons set forth in Williams' OB and below.

## II. ARGUMENT

### A.  District Court Erred in Concluding as Fact Williams' Termination was the Result of a RIF.

DC determined as fact that Williams was fired because of a RIF; incorrectly applied the law; and failed to follow established precedent. The Board and the DC ignores the *Lee, Id.*, *Randall v. Hankins*,675 S. W. 2d 712 (Tenn. 1984); *Randall v. Hankins*,733 S.W. 2d 871 (Tenn. 1987); and *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W. 3d 616 (Tenn. 2012) decisions, even though they are still good case law, persuasive, controlling, and encompass Tennessee's few precedents

discussing tenured teachers, the PLE, or an LEA total disregard for the TA.
Further, the DC's analysis and the Board's argument requires extending
protections to non-tenured teachers, forcing an interpretation of the statute, and
limiting the statutory rights afforded to tenured teachers including priority in
reemployment.

At trial, the DC listed one of the stipulated and established facts as, "Defendant
then excessed Plaintiff, terminating her employment…" (Williams has not ever
stipulated this fact; nor was this fact established(though determined by the
DC)[Order R. 309, PageID#8110; TT. R. 314, PageID#8149-50;  See Joint
Proposed & Pre-Trial Orders, R.98, PageID#2926-27;R. 277, PageID# 7727-28].

The dismissal provision of the TA declares with certainty, "[n]o teacher shall be
dismissed or suspended except as provided in this part." Which means that the
requirements of the act are to be abided by at the time a tenured teacher is fired for
cause or dismissed due to a RIF. The DC also forced an interpretation that the
program abolishment at Messick means "in the system" according to the statute;
and the Board offers that the TA leaves open the possibility that the AEP could be
considered a "system" [BB, *32/21]. The natural and ordinary meaning of system
is, "an assemblage or combination of things or parts forming a complex or unitary
whole[Random House Unabridged Dictionary, 2022]; or from a legal perspective,

5

"Purposeful organized structure that is regarded as a whole and consists of interdependent and interrelated elements [Black's Law Dictionary, 2nd ed.]. If Tennessee's legislature intended for a RIF to apply to a single school, the term 'school' would have been used instead of system. Caselaw, the canons of statutory construction, and the inclusion of the AEP grant program in the Board's finalized budget contradicts the DC's determination and the board's suggestion. The TA should be read "without any forced or subtle construction which would extend or limit its meaning" [*Nat'l. Gas Distribs., Inc. v. State*, 804 S.W. 2d 66, 67 (Tenn. 1991).

1. The Board Offered No Evidence or Testimony that a RIF Occurred at the Time Williams was Fired.

The DC missed the mark. Even though Williams was not fired due to a RIF, the Tenure Act provides dismissal of a tenured teacher under this condition only: "when it is necessary to reduce the number of teaching positions within the system…" The impetus is the need to reduce the number of positions and not the reason that may behind the need to reduce positions, whether it be for "…decreased enrollment or other good reasons" [OB*2,17,28,29]. In fact, *Little v. Carter*(still good case law) specifically communicates that a tenured teacher cannot be dismissed before the end of a school term for financial or economic reasons

[146 S. W. 2d 144 (Tenn. Ct. App., 1940) (holding that the Board was not justified in dismissing the tenured teacher because her services were not needed)]. There was no demonstration by the Board of the need to reduce the number of positions in the system, as a whole at the time Williams was fired; even if it did, it still would not have been justified in firing Williams before the end of the school year as Williams' certificated position as AE Advisor was funded for the whole school year via the Board's approved general fund budget [OB*14,27].

The Board cites Eleventh Circuit, unpersuasive authority, to support their contention and DC's decision; "that a reduction in force of more than forty employees due to lost state funding" was a justifiable reason for Williams' termination [BB *54/43]. Both the Board and the DC are off point. As a RIF for a school system in Tennessee is handled differently, and funding/budget cuts is not one of the reasons listed as cause for termination or dismissal of a tenured teacher under the TA. The Board must demonstrate a need to reduce the number of positions [OB*2,17,28,29].

Also, the board meeting minutes do not reflect the approval of a RIF when Williams was fired nor any action regarding Williams [OB*7]. None of the meeting minutes on record reflect a discussion of Williams during the Board's business meetings [OB*49; R.61,62,160-1,160-3,161-1,161-3]. Any decision by the Board whether it be to terminate a tenured teacher or deny reemployment to a

tenured teacher should be in writing. The purpose of the decision being in writing is in case a judicial review is requested [ *Randall*, 733 S.W. 2d 871,875 (1987)]. In conjunction, the Board speaks "only through its minutes" and "if it does not appear in the minutes it didn't happen" [*Randall v. Hankins*, 675 S. W. 2d 712,713 (1984)(referencing the chancellor's opinion)]. The Board's meeting minutes are public records which are an exception to the hearsay rule [Sur-Reply, R.76, PageID#2374; Fed. R. Evid. §803 (8)]. DC ignored the Board's minutes.

    a.    Hopson nor the Board Evaluated Williams Ability to Fill Vacancies.

Hopson nor the Board evaluated Williams' competence, compatibility, and suitability to hold a teaching position as they were statutorily entitled to do pursuant to Tenn. Code Ann. §49-5-511 (b)(3)[ OB*31; See *Lee, Id.*(concluding the Board did not consider the teacher's qualifications after the RIF it had no right to consider the teacher unqualified, the teacher was "wrongfully denied reemployment" and was "entitled to reemployment"].

Additionally, in the event of a RIF a principal has some input into accepting the placement of a teacher based on evaluation scores, however Jones testified that even with the Board's mutual consent policy Hopson maintained the authority to "override" a principal's decision not to hire an individual [TT, R. 314, PageID#8291:5-8]. "If the Board does not reemploy preferred tenured personnel

8

Case: 22-5591    Document: 18    Filed: 11/28/2022    Page: 15

pursuant to T.C.A. 49-5-511 (b)(3) for positions for which they are ostensibly qualified, it must state reasons on the record, and its actions, of course may be subject to appropriate judicial review"[*Randall, Id.* at 875].

b. Williams was Not Placed on a PLE Pursuant to the TA.

The Board admitted Williams was not placed on their reemployment or any list that would make her available for future employment [Answer R. 11, PageID#29, ¶31-32; See also Board Minutes R.61, PageID#1806-1871]. The DC also acknowledged the Board failed to place Williams on their reemployment list at the time she was fired  [R 306, PageID#8125]. What's more, the Board's list was not a PLE [OB*54]. The TA concerns itself with the PLE which gives tenured teachers priority status for reemployment over nontenured teachers. Jones testimony regarding the distinction between PLE and their reemployment list was insightful:

> "...there was an interchange of terminology with reemployment list and the PLE...the same type of list...not necessarily the same function... [the PLE] was a living document,... the reemployment list did not carry this preferential... connotation" [TT, R. 314, PageID#8231-32]

> "...preferred list...evolved into a reemployment list...but we are not making it preferential that you have to interview them and consider and hire them prior to hiring another individual that's outside of this list...I don't see the term reemployment list in the policy [RIF Policy, Trial Exhibit 7] piece..."[TT , R. 314, PageID# 8233-36].

9

Further he contradicted his testimony When questioned about the Board not having the PLE while he was the manager of staffing, "I wouldn't say that there was not a preferred list…" [PageID#8234]; but when asked a clarifying question regarding the list pursuant to the TA close to the end of his testimony he testified:

> Q. My question was, did you all have a preferred list for employment?
> A. We didn't have any names on that list for employment.
> Q. Okay,
> The Court: As of February 2019.
> The Witness: As of February 2019, we had no names to put on that list that would have been separated.
> The Court: Okay.
>
> [TT, R. 314, PageID#8344-45:20-25].
>
> Jones' testimony reveals that Williams was not on a PLE.

C. Under a RIF the Board Had the Responsibility to Consider Tenured Teachers for Reemployment.

If the Court is to adopt the Board's position that a RIF occurred when Williams was fired, the Board was required to consider Dr. Williams for all comparable positions for which she could demonstrate credentials [Tenn. Code Ann. §49-5-511 (b)(4)(1-2)]. The Board and the DC overlooks this portion of the TA. The DC limits tenured teachers' rights when it opined, the Board did not have to hire Williams in any position she applied for after being fired [*Id.* 306, PageID#8117].

10

The record reflects that she demonstrated credentials for positions for which she knew about and applied pre and post her last day of employment, March 4, 2016; most of which were teaching positions because they required certification [OB*47; See *Arnwine v. Union County Bd. of Educ.,* 120 S.W. 3d 804,807 (2003)(classifying a superintendent as a "supervisor" who by definition is a "teacher" according to Tenn. Code Ann. §49-5-501(10)].

Even though Williams' tenure status does not "require" the Board to rehire her; she still maintained priority over others who lacked tenure in the system [*Randall, Id.*; See also *Lee v. Franklin, Id.*]. Per Hopson, consideration is given by granting the tenured teacher an interview for vacancies [OB*23]. There were numerous opportunities [OB*9,41,42; Trial Exhibit 6, TT., R. 314, PageID#8273-8279, 8284] for the Board to consider Williams via allowing an interview; but they did not. Williams should have been reemployed over the non-tenured, non-qualified individuals [See *Jones v. Brown*, 727 S.W. 2d 497,499 (1987)(noting that the parties stipulated that there had been at least one individual hired by the board ahead of plaintiff who lacked the qualifications and status of the plaintiff. Therefore, plaintiff must be reinstated...)]. Williams was not granted any interviews for consideration for comparable positions [TT, R.314, PageID#8183:14-16; OB*40].

11

## 2. Hopson Lacked Sufficient Demonstrable Grounds to Fire Williams.

Hopson did not prefer charges against Williams or give her an opportunity to be heard. Hopson did not charge Williams with any offense constituting cause for dismissal under the TA. The Board did not have a RIF at the time Williams was fired; nor did it comply with the mandates of the statute when a tenured teacher is dismissed because of a RIF. There is no dispute that Williams was a tenured teacher at the time she was fired. There is no dispute that the Board did not follow any of the statutory procedures required for dismissal of a tenured teacher. The Board demonstrated a material disregard of the procedural requirements of the statute. The Board refused to comply with the TA, therefore Section 49-5-511(a)(3) "provides the appropriate remedy" [*Thompson v. Memphis City Sch. Bd. of Educ.,* 395 S.W. 3d 616,628 (Tenn. 2012)].

The order [ R. 237, PageID#6935-6948] cutting Williams' backpay off at the time of the 2018 Resolution should be vacated, and the matter should be remanded for entry of an order in Williams' favor as a matter of law; and determination of the backpay she is entitled to receive for deprivation of employment up until resolution of this matter.

## B. District Court Erred in Determining Williams' Right to Due Process Was Not Violated.

Case: 22-5591    Document: 18    Filed: 11/28/2022    Page: 18

1. District Court Erroneously decided Violation of §1983 Did Not
   Encompass the Manner of Williams' Termination.

The DC construed Williams' §1983 claim "narrowly" by " excluding

Plaintiff's termination from its scope; and incorrectly decided that Williams' due

process rights were not violated based on the following:

(1)    Her claim relates only to whether the Board placed her on a list for

       reemployment;

(2)    Even though the Board violated the TA in the way it terminated her; it

       did not violate her due process rights [Order R. 306, 8113-8114];

(3)    Her manner of termination remains separate from §1983 and falls

       under her TA claim [R 306, PageID#8118-119, FN 6];

(4)    §1983 only protects violations of federally created rights; therefore

       plaintiff cannot assert a §1983 claim for violations of state policy or

       state law [Order, R. 309, PageID#8128 Fn. 13];

The DC also determined "the 2014 Tenure Act creates a protectable property

interest in the process afforded to a teacher excessed as part of a legitimate

reduction in force…" [R 309, PageID#8127-28]. Further, even though the DC

communicated Plaintiff had a reasonable expectation that Defendant would place

her name on a reemployment list after termination of the AEP…[R. 309,

PageID#8118]; the court later offered a contradiction, "…the relevant period for

13

Plaintiff's §1983 claim begins on October 31, 2018. Put another way, Defendant's obligation to place Plaintiff's name on a reemployment list began when Defendant brought Plaintiff's termination into compliance with the Tenure Act" (R. 309, PageID#8120, 8128, Fn. 8]. The DC's analysis is flawed not only because it applied the wrong legal standard as it communicated it "relied heavily on *Kelley*…"[R. 309, PageID#8112]. The *Kelley* plaintiffs did not challenge that the Board had a RIF at the time they were dismissed. The Board's obligation to adhere to the dismissal provision of the TA began when the decision was made to fire Williams in February 2016.

Contrary to what the Board contends in its brief [*36/25] Williams has consistently argued before the DC, her termination was not a part of a RIF or for cause and the Board did not follow the mandates of either process[R. 1; R. 46, PageID#274  Fn.1, 289-90; R. 150, PageID#3651;R. 184, PageID#4942-55; R. 202-3, PageID#5459, 5463-66; R.218-2, PageID#6286 Fn. 7; R. 290, PageID#7873, 7879; R. 298, PageID#8020 Fn 2 ]. This argument was also mentioned at trial and the DC threatened to change its ruling on the damages [TT, R.314, PageID#8174:15-23]. Williams had a constitutionally protected property interest in continued employment and could not be deprived of it without due process [*Thompson, Id.*; *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990)].

14

The Fourteenth Amendment does not create the right in question it protects from deprivation without due process [*Bd. of Regents v. Roth*, 408 U.S.564, 577 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Kelley v. Shelby Cty. Bd. of Educ.*, 198 F. Supp. 3d 842, 854 (W.D. Tenn. 2016]. In this case the right to continued employment is created by the State via the TA which "provides greater protections to teachers than the minimal constitutional due process requirements…" [*Emory v. Memphis Sch. Bd. of Educ.*, No. 2014-01293-COA-R3-CV, 2015 WL 1934397, at *3-4 (Tenn. Ct. App. Apr. 29, 2015), perm. App. Granted (Sept. 18, 2015)]. Section 1983 allows damages as described in the OB [*33]when a teacher's constitutional rights are violated [*King v. Betts*, 354 S.W. 3d 691 (Tenn. 2011)(citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)].

The reasoning provided by the DC to support its determination also ignores the law. Contrary to what the DC opined, an examination of Williams' constitutional claim requires, looking to the TA to determine the extent of the right;  a review of the process provided prior to her being fired; and whether it complied with the statutory requirements[ ]. A discussion of that process was critical to determine the appropriate outcome.

2.The Board Provided No Pre-Termination Process at All to Williams.

Williams was not provided any process[TT, R. 314, PageID#8167:23-25]; and the Board concedes to this fact as it did not address a process provided to Williams in its brief to this Court or throughout litigation. She is entitled to substantive relief because the testimony and documentary evidence on record demonstrate that she was damaged both by being deprived of continued employment and continually damaged by being deprived of reemployment: financially, psychologically, and emotionally, due to the Board's procedural violations in that it failed to adhere to the mandates of the dismissal provision of the TA. As in *Thompson, Id.*, "the noncompliance with the Tenure Act [is] so extensive" it violates Williams' "substantive rights" [*Emory, Id.* *9].

Williams did not receive the statutory protections afforded her under the TA. The Board also failed to abide by its own policies regarding tenured teachers before terminating Williams[R. 290, PageID#7866, 7868-69; Order, R. 309, PageID#8128, Fn. 13]. When a tenured teacher is dismissed because of a RIF she has a right to placement on a PLE which honors her entitlement to statutory priority in reemployment over others who are not tenured; and to remain on the PLE until certain conditions are met, "…[s]uch rights once vested, cannot be impaired [*Kee v. Shelter Ins.* , 852 S.W. 2d 226, 228 (Tenn. 1993); See also *Saylors v. Riggsbee*, 544 S.W. 2d 609, 610 (Tenn. 1976); *Lee, Id.*, at 334].

The Board and the DC are incorrect. Williams introduced the Board's RIF Policy as evidence; and it lists Hopson as the individual responsible for the policy being followed [Trial Exhibit 7 ].  Further, Hopson is the individual that communicates to tenured teachers who have been affected by a RIF notifying them of their placement on their list [OB*30]. He acted under color of state law when He fired Williams. There is no question that Hopson fired Williams; and that unlawful delegation of authority was a custom and practice by the Board as evident in this case, and other litigation involving tenured teachers and the Board to also include: *Cynthia Frazier v. Memphis City Sch. Bd. of Educ.*, Shelby County Chancery Court No. CH-07-1925-2; *Christopher Jones v. Memphis City Sch. Bd. of Educ.*, Shelby County Chancery Court No. CH-07-1934-2]in addition to *Thompson*, *Kelley*, and *Jones-Tate*.

Pre-deprivation notice and an opportunity to respond and present [her] side of the story are essentials of due process[*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542,546 (1985). Williams was entitled to judicial review of the action by Hopson representing the Board. On the facts of this case, the failure to provide notice of written charges and an opportunity for a hearing also establishes a violation of Williams' constitutional rights [See *Thompson, Id.* *1 (ruling the teacher's constitutional rights violated when she was not provided the "minimal constitutional safeguards": written charges and opportunity for a hearing [*1, *13].

Local governments may be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision[-]making channels"[*Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690-91(1978)]. Hopson was the final decisionmaker in Williams' termination, so his actions are properly chargeable to the Board [*Bd. of Cty. Commissioners. v. Brown*, 520 U.S. 397, 406 (1997); *Pembaur v. Cincinnati*, 475 U.S. 469(1986). Williams is entitled to damages, therefore the DC's Order [R. 309] on the §1983 claim should be reversed; and remanded back to determine the appropriate compensatory damages and attorney fees[OB*35].

## C. District Court Erred in Granting Summary Judgment to the Board.

The Board's MSJ was not properly supported as documentary evidence and testimony were not provided that established Williams was terminated because of a RIF; the Board also failed to properly dispute some of the facts presented [Sur-Reply, R. 76, PageID#2373]. In those instances, as permitted by Rule 56 the DC had the option of considering the facts undisputed for purposes of the motion, to issue any other appropriate order to include judgment independent of a motion; and granting summary judgment for the nonmovant.

Also DC did not view the evidence in the light most favorable to Williams; did not analyze all the claims fully, and did not consider the claims in holistic relationship with reflection on the record as a whole[Mot. Rev., R. 206-2 , PageID#5458-5479]. At the MSJ stage there was no dispute Hopson fired Williams; and that action was an unlawful delegation of authority given him by the Board and it rendered her termination illegitimate.

The DC did not believe Williams' version of some facts and in so doing overlooked a critical element in analyzing the MSJ: accepting the plaintiff's allegations as true; taking the strongest legitimate view of the evidence and making all reasonable inferences in Williams' favor [*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)].

1.    Hopson Terminated Williams Illegitimately.

The undisputed facts, and the inferences reasonably drawn from the undisputed facts, supported Williams' termination was invalid and therefore could not provide a justification for granting summary judgment in the Board's favor on the termination aspect of Williams' claim. Williams established a *prima facie* case of Retaliation [Order, R. 88, PageID#2571,2573-75]. The Board's rebuttal should not have sufficed as the Board's reason for Williams' termination was false as they did not provide any testimony or documentary evidence to support a RIF. In

*Kelley*, an affidavit from Hopson demonstrated a RIF; and in *Jones-Tate* the Board's finalized 2015-2016 budget demonstrated a RIF [Mot. Rev., R. 206-2, PageID#5463].

Contrary to the Board's contention Williams does not offer the cat's paw theory to assign responsibility for her termination as did prior counsel because Hopson was aware of her protected activity via his signature on the EEOC Negotiated Settlement[OB*5 ]; and knew he did not have the authority to terminate Williams[OB*15].

## 2. The Board Denied Williams Reemployment,

In denying Williams reemployment the Board failed to rehire her, even though there were vacancies for which she was qualified. The Board admitted that it denied Williams reemployment at least four times [Answer, R. 11, PageID# 29; Mot. Limine, R. 109, PageID#3050; Def. Resp. Mot. Recons., R. 121, PageID#3284; Def. MSJ. Failure to Hire, R. 185-1, PageID#4980 ].

### a. Williams Satisfied Exhaustion Requirements

The DC allowed the Defendant to move for a second MSJ after the Board and the DC failed to address Williams' claim of failure to rehire [OB * 9]. The DC later ruled in the Board's favor for failure to exhaust

administrative remedies and ruled Williams' motion as moot not analyzing the motion on its merits [OB*3,40,]. In doing so it circumvented the scheduling order established under Fed. Rule Civ. P. 16[R.32].

The DC also communicated the record showed that, as soon as Plaintiff sought to assert this claim, Defendant moved for summary judgment based on Plaintiff's failure to exhaust administrative remedies" [Order Mot. Rev. Int. R. 221, PageID#6335-36]. The DC is mistaken, failure to rehire was asserted in the complaint and during the MSJ stage [OB*39]. The DC also communicated that it addressed the merits of Williams' MSJ when it granted the Board's MSJ [R. 221, PageID# 6337 ]. This is not true as the court's ruling specifically stated, "And because Plaintiff failed to exhaust her administrative remedies as a prerequisite to suit, the Court finds it unnecessary to delve into the merits of that claim" [Order R. 207, PageID#5970]. By the DC allowing the Board to file a second MSJ; not analyzing Williams MSJ for Failure to Rehire [R. 186-1,189,191] on the merits and ruling it as moot it did not afford her "equal treatment under the law."

The Board denied Williams reemployment. The denial of reemployment is synonymous with failure to rehire. Williams has not been granted any interviews and demonstrated interest in continued employment by attending a resume/interview workshop; sharing her contact information with Tiffany Smith,

(HR representative assigned to Messick) for future employment opportunities; and applying for vacancies with the Board [OB* 7,9,41,42; Griffin Depo., R. 55, PageID#1318]. The Board was statutorily obligated to consider Williams for comparable positions when vacancies were available for which she was qualified.

      b.   Williams' Charge of Retaliation is Sufficient to Cover Acts of Retaliation by The Board Post Termination.

As discussed in the OB [*39-41,43] acts of retaliation stemming from an EEOC charge are sufficiently before the Court. Several actions by the Board post Williams' termination were retaliatory: failure to place on PLE, refusal to consider (grant an interview per Hopson)Williams for comparable positions, and even unfounded allegations of misconduct after five years of litigation [Def. Motion Amend. Answer, R. 295/296, PageID#7929; Pl.'s Resp. R. 8026-28].

3. Williams' Speech Was Protected.

Williams by default was speaking as a private citizen as she was not allowed to perform the responsibilities of the AE Advisor position. She communicated her concerns to district personnel as early as September 2015 [OB*14 ]. Williams also received adverse disciplinary actions for communicating concerns regarding the AEP grant operations in October and December 2015 [ SAMF, R. 70-1, PageID# 2361, ¶¶25,27]. The Board continues to assert that Williams had a responsibility to

22

report illegal activity via what was listed in the AE job description [R. 70-1, PageID#2361, ¶21: R. 45-5, PageID#203-205]. The job description did not indicate Williams had a responsibility to report illegal activity. The use of the portion of the job description "responsible for the delivery of the curriculum" does not equate to reporting anything to the state or district officials. Third, being responsible for the delivery of the curriculum is not the same as being responsible for standardized assessment and testing; educators understand they are fundamentally different.

Williams also alleged that she was not allowed to perform most all of her job responsibilities to include implementing the curriculum and being responsible for testing [OB*5, 27]. Rochelle Griffin's testimony that the Board highlights does not directly answer the question asked of her regarding allowing Williams to do her job; and it comes before she was asked clarification and testified that she did not allow Williams to carry out the job duties [OB*44; R. 54, PageID#1295]. But for Williams' participation in protected activity, she would not have been fired; as Hopson did not have the authority to fire her.

4. The DC Erred in Not Analyzing Williams' TPPA Claim.

Willaims was also terminated because she refused to be silent about illegal activity [*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W. 3d 422, 437

(Tenn. 2011)]. The Board countered incorrectly with Hopson not being aware of Williams engaging in "illegal activity"; and asserted Williams reporting to the state was for her own private interests [Pl.'s Resp. to MSJ, R. 46, PageID#282]. Neither reason for rebuttal should have sufficed even though Branch, Hopson's designee, recommending termination of Williams served as a conduit; [See *Marshall v. Rawlings Co.*, LLC, 854 F. 3d 368 (6th Cir. 2017)]. Absent the cat's paw theory, it could still be inferred that Hopson had knowledge of what led to the termination of the AEP grant as he per Commercial Appeal article had his senior staff to interview those "...who should have known the programs were in trouble" (Williams was not interviewed) and indicated "...someone will be held accountable..." [Hopson Depo. R. 60, PageID# 1787- 89]. Griffin who managed the AEP was not fired, however, Williams the only tenured person associated with the AEP program was fired.  Additionally, Ray assigned some blame to Williams as one of the reasons for the grant being terminated in his memo to Hopson and others[OB*38 ]. All individuals whose job funding depended on the grant were not terminated as averred by the Board [Mot. Sanctions, R. 218-2, PageID#6274-75]. Further it does not matter if all the others were fired because Williams being tenured should have afforded her protections that the non-tenured personnel did not have.

24

The DC order on Williams Title VII retaliatory termination[R. 88] should be reversed and judgment should be entered for Williams as a matter of law. The DC order on the TPPA and First Amendment claims [R.88] should be reversed and remanded for further proceedings.

## D. The District Abused Its Discretion and the Following Rulings Resulted in Prejudice to Williams.

### 1. 2018 Resolution Was Not Applicable to Williams

The Board's 2018 Resolution was a perfunctory stamp of Hopson's decision to fire Williams in violation of the TA and the Due Process Clause [Transcript Pre-trial Conference, R.164-5, PageID# *18/4837]. The Board is mistaken [BB* 36-37/25-26] prior Counsel and Williams objected to the introduction of the resolution because it was prejudicial and did argue before the DC reasons the Resolution did not bring Williams' termination into compliance[Pre-Trial T., R.164-5 PageID#4829, 4835-4837 ]. One of several reasons included that the Board never discussed the resolution at the Board meeting in which they approved the 2018 Resolution ergo no discussion of Williams [Tenure Brief, R. 150 , PageID#3648-49].

Foremost, Williams alleged the TA was violated, not that she was "excessed" improperly. The Board acknowledged as well that the DC ruling on damages "probably wasn't consistent with what she views her claim to be" [TT, R. 314, PageID#8175,10:12]. Also significant, Williams pointed out to the DC Branch arbitrarily decided that the Board's "excessing" process to effectuate a RIF according to the TA did not apply to Williams [OB*23]. Therefore, a resolution could not have approved a process that did not occur for Williams. Next, The Board's 2018 Resolution contention should not have been allowed because it concedes in its answer and during the MSJ stage it essentially did not terminate Williams in accordance with its RIF protocol or according to the dismissal provision of the TA.

The Board insists the evidence is relevant [BB * 34/23]; and none of the exclusions apply; but the 2018 Resolution resulted in an unfair prejudice because Williams was not "excessed." Moreover, it was not that significant in that even though the Board's General Counsel notified former Defense Counsel about it at the latest November 2018; it waited until after the DC's order to introduce it to the Court and Williams' prior counsel [Mot. Sanctions, R. 218-2, PageID#6283-84].

2. Williams is Entitled to Backpay That Includes Annual Salary Increases for the Time She Has Been Denied Reemployment.

Williams, only guessed at the salary increases for certain years because the Board refused to provide the information[Reply B. Exhibit A, R.242-1, PageID#6993-94]. The letter highlighted by the Board[ *40/29] provided by Williams was taken from its approved final 2016-2017 budget [R. 239-2, PageID# 6959-61] therefore the increase was finalized. Williams is entitled to the salary that she would have received had she not been denied reemployment[OB*26,35].

### 3. Williams is Statutorily Entitled to Post Judgment Interest.

The DC abused its discretion as discussed by cutting off the pre-judgment Interest [OB *62] in June 2021 without ordering post-judgment interest[Order 261, PageID#7092-93]. At that juncture the DC had not determined that Williams had been placed on a PLE, even though he had already decided the TA claim. Williams' back pay and pre-judgment interest are incorrect as decided because the DC determined erroneously that Williams was placed on the Board's reemployment list sometime after January 19, 2019 and before Jones' deposition in February 2019 not in October 2018[BB *62/51].

Williams' argument is properly before the court on post-judgment interest as Williams argued this matter before the DC and cited a statutory basis for the post-judgment interest [R. 293-1, PageID#7887-7894]. Post judgment interest is mandatory [*Inman v. Inman*, 840 S.W. 2d. 927, 932 (Tenn. Ct. App. 1992)]. The

list of judgment interest rates provided to the DC also references the statute by which the interest rates are mandated: Public Chapter 1043: Tenn. Code. Ann. §47-14-121 [R. 239-4, PageID#6963]. Post-judgment interest should begin when the pre-judgment interest ends.

### 4. Judicial Admission and Notice.

#### a. The Board's Contentions Regarding Their Reemployment List Changed Throughout Litigation, However They Were Clear and Unambiguous.

Williams not "on any type of list that would make her available for any future job opportunities" [OB*8 ].

Williams not on a reemployment list; and the list that Jones had was not the reemployment list; the Board had not had a reemployment list for at least two years because there was no need for one [Summary of Jones' Depo. Testimony, R 290, PageID# 7874-7879].

She is on the list [Pre-Trial Conf. Transcript RE 164-5, PageID## 4839-41; R. 122, PageID## 3299, see also Fn 7].

Jones' spreadsheet was the reemployment list [R. 170, PageID## 4906-07].

Board admitted it had not placed Williams on a "preferred list of reemployment" as it was not legally required to do so" [Pl's SUMF, RE 18-1 , PageID# 5235, ¶63].

"Newly discovered evidence" of the actual reemployment list, their

reemployment list was "separate and a part from Jones' personal list from what he

was shown during his deposition"[ Def. Supp. Pre-Trial Disclosure R. 273,

PageID## 7663-67].

Williams' prior counsel did not confuse any list, as it was provided to her by

the Board. The DC and the Board is mistaken, there is no confusion relating to

Jones' deposition testimony and the fact that he testified after the email exchange

[Trial Exhibit 10]the Board did not have a reemployment list.

> b. Williams' Summary Chart of Family and Consumer Sciences New Hires
> Should Have Been Admitted and Considered.

The chart meets evidentiary requirements ; and information was requested

during discovery yet not provided [OB*51,52 ]; and is critical to analysis of both

Williams' TA and Due Process claims.

5. Jones' Credibility and the Board's Reemployment List.

 a. If this Court decides that the Board's reemployment list is the list

pursuant to the TA, Jones' testimony at trial regarding it should not be believed as

it was contradictory and  contradicted his deposition testimony that the Board did

not have a reemployment list [OB*53; TT.  8253-61]. Jones testified in seventeen

29

different ways that the Board did not have a reemployment list and his list was not the Board's reemployment list [R. 290, PageID# 7874-7879].

The DC erred in allowing the Board to contradict its position on Williams' placement on their reemployment list by allowing the introduction of the email exchange [Trial Exhibit 10]. Especially considering this document was not provided during discovery or during the 30(b)(6) depositions when the Board was asked but didn't provide all documents relevant to this litigation and the reemployment list [Interrogatory No. 11 R. 164-3, PageID#4787; Document Request No. 5 R. 164-3, PageID#4794; (30)(b)(6) Notice, R. 125, PageID#3340-3347]. Jones even testified that he was told to make sure he had his documentation [TT, R. 314, PageID#8292-93:11-25; 1-13].

Jones employment with the Board ended in August 2019. The Email exchange[Trial Exhibit 10] should not be considered as it happened before Jones February 2019 deposition and the Board still did not provide their reemployment list to the court or Williams [OB*53].

## III. CONCLUSION

Williams requests that relief be granted in her favor for the foregoing

reasons.

Respectfully Submitted,

SONYA P. WILLIAMS
3995 Point Church Rd.
Memphis, TN 38127

# CERTIFICATE OF COMPLIANCE

## IT IS HEREBY CERTIFIED

That the foregoing brief complies with the typeface requirements in Fed. R. App. P. 32(a)(5); and the type volume limitation provided in Fed. R. App. P. 28.1 (e)(2). It has been prepared in a proportional type-Times New Roman- (14 point) font using Microsoft Word v. 2010, containing 6,497 words. It excludes the parts of the petition exempted by Rule 32(f).

SONYA P. WILLIAMS
3995 Point Church Rd.
Memphis, TN 38127
williamspw5269@yahoo.com
*Pro Se* Litigant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via the United States Postal Service, on the following counsel of record for the Board, this 23rd day of November 2022.

> Rodney G. Moore (TN Bar No. 31929)
> DENTONS US LLP
> 303 Peachtree St., NE, Suite 5300
> Atlanta, GA 30308
> Telephone: 404.527.4000
> rodney.moore@dentons.com

SONYA P. WILLIAMS
*Pro Se* Litigant



PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

**UNITED STATES POSTAL SERVICE**   Retail

**P**   US POSTAGE PAID   Origin: 38111
11/20/22
4795090001-88

**$9.90**

**PRIORITY MAIL®**

0 Lb 9.10 Oz
RDC 04

EXPECTED DELIVERY DAY: 11/26/22

C023

SHIP
TO:
100 E 5TH ST
RM 540
CINCINNATI OH 45202-3945

**USPS TRACKING® #**

9505 5154 2870 2327 8166 98

PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

Label 228, March 2016    FOR DOMESTIC AND INTERNATIONAL USE

**PRIORITY MAIL**

FROM: Sonya Williams
3945 Point Clear Rd
Memphis, TN 38127

TO: United States Court of Appeals
Sixth Circuit
100 East Fifth Street, Room 540
Potter Stewart U.S. Courthouse
Cincinnati, Ohio 45202-3988