**No. 22-5591**

---

**IN THE**

# United States Court of Appeals
### FOR THE SIXTH CIRCUIT

---

SONYA WILLIAMS,
*Plaintiff-Appellant*

v.

SHELBY COUNTY, TN BOARD OF EDUCATION,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Tennessee at Memphis

---

**APPELLEE'S SUPPLEMENTAL BRIEF**

---

JAMIE L. MORTON
SHELBY COUNTY BOARD OF
EDUCATION
OFFICE OF THE GENERAL COUNSEL
160 S. HOLLYWOOD ST., ROOM 218
MEMPHIS, TN 38112
901.416.3612
MORTONJ2@SCSK12.ORG

*Counsel for Defendant/Appellee*
*Shelby County Board of Education*

# **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES…………………………......……...…………iii

STATEMENT REGARDING ORAL ARGUMENT………………..…………vii

STATEMENT OF THE CASE……………………………………………...…..1

    I.    STIPULATED AND ESTABLISHED FACTS………..……………………1

    II.    PROCEDURAL HISTORY…………………………………….…..4

    III.    RULINGS FOR REVIEW………………….…………………….……6

SUMMARY OF THE ARGUMENT…………………….………………...…7

ARGUMENT………………………………………………………..…………10

I.    STANDARDS OF REVIEW……………….…..…………………………..10

    A.    Summary Judgment……………………….………………..…10

    B.    Statutory Compliance……………….……………………11

    C.    Adverse Ruling Following a Bench Trial…………….………….12

II.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE SCHOOL BOARD ON DR. WILLIAMS'S TITLE VII CLAIM FOR RETALIATORY DISCHARGE…………………………………………..12

    A.    The School Board Articulated a Legitimate Non-Discriminatory Reason for Dismissing Dr. Williams…………………………..…12

    B.    Dr. Williams Did Not Meet Her Burden to Establish Pretext….…....13

        1.    Dr. Williams has not shown that the School Board's reason did not occur…………………………………………..…14

        2.    Dr. Williams has not established that the School Board's reason for dismissal was more likely than not pretext…………........16

III.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT AS TO DR. WILLIAMS'S TPPA CLAIM…………..……………………………...20

IV.    THE DISTRICT COURT CORRECTLY HELD THAT NO CAUSE OF ACTION EXISTS UNDER THE TEACHER TENURE ACT FOR FAILURE TO MAINTAIN A REEMPLOYMENT LIST………………………………………………….22

V.    THE DISTRICT COURT CORRECTLY HELD THAT DR. WILLIAMS FAILED TO ESTABLISH THE ESSENTIAL ELEMENTS OF HER SECTION 1983 CLAIM...………27

    A.    Dr. Williams Did Not Establish a Legal Basis for Liability of the School Board……………….…………………………………………..28

    B.    Dr. Williams Failed to Establish That She Suffered an Injury as a Result of the School Board's Delay in Adding her Name to the Reemployment List…………………………………………...…32

CONCLUSION……………………………………………………………...34

CERTIFICATE OF COMPLIANCE…………………………………………...36

CERTIFICATE OF SERVICE…………………………………………..…37

ADDENDUM…………………………………………………………..38

# TABLE OF AUTHORITIES

Cases

*Abbott v. Crown Motor Company, Inc.*,
348 F.3d 537 (6th Cir. 2003)……………………………………………………13

*Ackerman v. Washington*, 16 F.4th
170 (6th Cir. 2021)………………………………………………………………...12

*Alberty v. Columbus Twp*.,
730 F. App'x 352 (6th Cir. 2018)…………………………………………………13

*Anderson v. Liberty Lobby, Inc*.,
477 U.S. 242 (1986)…………………………………………………………......11

*Andrews v. Wayne Cnty*.,
957 F.3d 714 (6th Cir. 2020)……………………………………………………28

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)………………………………………………………......11

*Chattman v. Toho Tenax America, Inc*.,
686 F.3d 350 (6th Cir. 2012)………………..…………………………......… 18, 19

*City of Canton v. Harris*,
489 U.S. 378, 389 (1989)………………………………………………………... 32

*Commodity Futures Trading Comm'n v. Miklovich*,
687 Fed. Appx. 449 (6th Cir. 2017)…………………………………….....…16-17

*Doe v. Claibourne Cnty*.,
103 F.3d 495 (6th Cir. 1996)…………...……………………………….…28

*Doe v. Salvation Army in U.S*.,
531 F.3d 355 (6th Cir. 2008)……………………………………………........10

*Doe v. Sullivan County, Tenn.,*
956 F.2d 545 (6th Cir. 1991)……………………………………...…….32

*Ellis v. Washington Cnty.*, 1
98 F.3d 225 (6th Cir. 1999)…………………………………………………..33

*Emory v. Memphis City Schools Board of Education*,
514 S.W.3d 129 (Tenn. 2017)……………………………………………….9, 25-26

*Estate of Sowards v. City of Trenton*,
125 F. App'x 31 (6th Cir. 2005)…………………………………………..32, 33

*Graham ex rel. Estate of Graham v. County of Washtenaw*,
358 F.3d 377 (6th Cir. 2004)……………………………………….....…28-29

*Graham Hotel Sys.*,
566 F.3d 634 (6th Cir. 2009)……………………………………………………10

*Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Mich. Dep't of Natural Res.*,
141 F.3d 635 (6th Cir. 1998)……………………………………………………10

*Gross v. FBL Financial Servs., Inc.*,
557 U.S. 167 (2009)……………………………………………………….....13

*Haynes v. Formac Stables, Inc.*,
463 S.W.3d 34 (Tenn. 2015)…………………………………………..…..20

*Horn by Parks v. Madison County Fiscal Court*,
22 F.3d 653 (6th Cir. 1994)……………………………………………32, 33

*Howard v. City of Beavercreek*,
276 F.3d 802 (6th Cir. 2002)……………………………………………….....10

*In re Vause*,
886 F.2d 794 (6th Cir. 1989)……………………………………………….....11

*Johnson v. Kroger Co.*,
319 F.3d 858 (6th Cir. 2003)……………………………………………….....13

*Jorg v. City of Cincinnati*,
145 F. App'x 143 (6th Cir. 2005)……………………………………….....30

*Lee v. Franklin Special School District Board of Education*,
237 S.W.3d 322 (Tenn. Ct. App. 2007)…………………………………...8-9, 24-26

*Manzer v. Diamond Shamrock Chems. Co*.,
29 F.3d 1078 (6th Cir. 1994)…………………………………………………...16, 19

*McComas v. Bd. of Educ*.,
422 F. App'x 462 (6th Cir. 2011)……………………………………………….28

*Memphis Cmt. Sch. Dist. v. Stachura*,
477 U.S. 299 (1986)……………………………………………………………33

*Moldowan v. City of Warren*,
578 F.3d 351 (6th Cir. 2009)…………………………………………………....11

*Monell v. Department of Social Services of City of New York*,
436 U.S. 658 (1978)…………………………………………………………...28, 29

*Pembaur v. City of Cincinnati,*
475 U.S. 469………………………………………………………….....30, 32

*Randall v. Hankins*,
773 S.W.2d 871 (Tenn. 1987)………………………………………………..8-9, 22-26

*Roberts v. Coffee Cnty*.,
826 F. App'x 549, 554 (6th Cir. 2020)……………………………………...32, 33

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015)………………………………………….…..12

*Scarbrough v. Morgan Cnty. Bd. Of Educ*.,
470 F.3d 250 (2006)……………………………………………………………28

*Seoane-Vazquez v. Ohio State Univ*.,
577 F. App'x 418 (6th Cir. 2014)………………………………………….....17-19

*Shamaeizadeh v. Cunigan*,
338 F.3d 535, 556 (6th Cir. 2003)……………………………………………….28

v

*Stramaglia v. United States*,
377 Fed. App'x 472 (6th Cir. 2010)………………………………………....10-11

*Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*,
No. 3:10 C 00400, 2016 WL 9116026, at *2 (M.D. Tenn. Apr. 8, 2016)…………33

*Sykes v. Chattanooga Hous. Auth.*,
343 S.W.3d 18 (Tenn. 2011)……………………………………………...…20

*Thorpe v. Breathitt Cnty. Bd of Educ.*,
8 F. Supp. 3d 932 (E.D. Ky. 2014)……………………………………………28

*United States v. Cassidy*,
899 F.2d 543 (6th Cir. 1990)……………………………………………..…..11

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013)……………………………………………………………18

*White v. Baxter Healthcare Corp.*,
533 F.3d 381 (6th Cir. 2008)……………………………………………...10-11

*Williams v. Mehra*,
186 F.3d 685 (6th Cir. 1999)………………………………….………..11-12

Statutes

42 U.S.C. § 1983……………………………………………………...27, 28, 32

Tenn. Code Ann. § 49-5-511…………………………………….8-9, 23, 25-26, 30, 34

Tenn. Code Ann. § 49-5-512…………………………………………...25-26

Tenn. Code Ann. § 50-1-304……………………………………………………20

Other Authorities

2011 Tenn. Laws Pub. Ch. 70, § 9, eff. July 1, 2011………………….……8, 23, 33

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

While the School Board disagrees with Plaintiff Sonya Williams's ("Dr. Williams") assertion that this appeal raises complex arguments, it agrees that oral argument could be helpful in this case. While the law and arguments are straightforward, the procedural history of this case is lengthy, and oral argument may assist the court and the parties in focusing upon the narrow issues under review on appeal.

## STATEMENT OF THE CASE

### I.   STIPULATED AND ESTABLISHED FACTS.

Dr. Williams began working for Memphis City Schools as a family and consumer sciences teacher in 2002. [Pre-Trial Order, R. 277, PageID# 7727]. She became a tenured teacher in 2006. [*Id*.] In 2013, Memphis City Schools and another school system merged to create Shelby County Schools (the "SCS"). [*Id*.] Dr. Williams applied for—and did not receive—two positions with the SCS that year. [*Id*.]

Dr. Williams then filed an EEOC charge against the SCS. [*Id*]. As part of a settlement of that claim, the SCS placed Dr. Williams in its Adult Education Program ("AEP") as an Adult Education Advisor at the Messick Adult Center ("Messick") in August 2015.[1] [*Id*.] At the beginning of the school year in 2015, Dr. Williams began her role as an advisor at Messick. [P's Resp. to D's Statement of Undisputed Fact, DE 46-1, PageID 301]. An Adult Education Grant provided by the State of Tennessee funded both the AEP and Dr. Williams's position. [*Id*. at PageID 303, 313]. When Dr. Williams learned that her position was grant-funded, she allegedly sent an email voicing concern about the funding but otherwise she did not dispute her placement. [*Id*. at PageID 303].

---

[1] In 2013, Dr. Williams had applied for the same position and was not selected. [Letter to EEOC, DE 186-3, PageID# 5025].

Dr. Williams claims she was harassed on September 9, 2015, when Rochelle Griffin, principal at Messick ("Ms. Griffin") and Tawn King, Assistant Principal at Messick, met with Dr. Williams to discuss, among other things, her tone and communication style. [*Id.* at PageID 305.] At this meeting, Dr. Williams acknowledges she got "loud," although she alleges that she was not excessively loud. [*Id.* at PageID 306.] Dr. Williams believes that those at the meeting intended to intimidate her and question her credentials. [*Id.* at PageID 307.] Plaintiff emailed Ms. Griffin the next day alleging harassment. [*Id.*]

Around this time, Dr. Williams also began reporting alleged testing fraud occurring at the AEP, among other misconduct, to visiting state officials. [*Id.*] The very next day, Plaintiff met with the Office of Labor Relations to discuss the ongoing issues. [*Id.* at PageID 310]. It was decided that Dr. Williams should meet with Ms. Griffin to discuss the concerns, but that meeting was ultimately unsuccessful. [*Id.* at PageID 310-311].

Dr. Williams then filed many complaints. First, she filed a whistleblower complaint claiming the SCS had provided false data to the state and was engaging in testing fraud. [*Id.* at PageID 311]. Second, she filed an EEOC claim alleging retaliation. [*Id.*] The whistleblower complaint prompted a visit from state officials to interview Dr. Williams about her allegations of fraud and other misconduct. [P's Resp. to D's MSJ, DE 46 at PageID 273]. Dr. Williams took this opportunity to

2

inform state officials that Ms. Griffin "had a problem with change" and was an "interference" and "impediment" to progress. (P's Resp. to D's Statement of Undisputed Fact, DE 46-1 at PageID 312.)

Ms. Griffin then issued Dr. William a written reprimand; this time for "unethical conduct" related to her behavior during the meeting with state officials investigating her complaint. [*Id*. at PageID 312]. The reprimand stated that "[Plaintiff's] behavior throughout both meetings seemed as though [Dr. Williams] was attempting to sabotage the adult education program within Shelby County Schools." [*Id*.] Ms. Griffin then referred Dr. Williams to Labor Relations—her second referral in less than five months. [*Id*.] The referral stated that Plaintiff was "an ill-fit for the Adult Education Advisor position and [her] continued employment at Messick Adult Center [was] adverse to the entire Adult Education Program . . . ." [*Id*. at PageID 313].

About one month later, the State of Tennessee terminated the Adult Education Grant that funded the AEP. [DE 46-1 at PageID 313]. This precipitated the closing of the entire AEP program, including the Messick Adult Center, and the termination of positions of the AEP program whose salaries depended on grant funding. [*Id*.] As a result, at least five full-time and forty part-time employees lost positions in the SCS. [*Id*. at PageID 314.] Dorsey Hopson, then Superintendent of SCS, ("Dr. Hopson") made the final decision to terminate Dr. Williams's employment and

notified her of such termination.  [*See* Hopson Dep., DE 60 at PageID 1780]. Dr. Williams did not acquire another position with the SCS.

## II.    PROCEDURAL HISTORY

Dr. Sonya P. Williams ("Dr. Williams") filed her Complaint against Shelby County Board of Education ("School Board") on January 1, 2017. [Compl., DE 1]. The School Board filed its first Motion for Summary Judgment on June 15, 2018. [MSJ, DE 42].  On October 30, 2018, the School Board passed a Resolution ratifying the dismissal of certain employees whose positions had been eliminated, including Dr. Williams. [2018 Resolution, DE 122-3, Page ID 3325-3328].

On December 18, 2018, the District Court entered its Order Granting in Part and Denying in Part the School Board's Motion for Summary Judgment. [First SJ Order, DE 88].  Specifically, the Court granted summary judgment to the School Board as to Dr. Williams' claims for (1) alleged violation of the First Amendment under 42 U.S.C. § 1983; (2) alleged violation of the Fourteenth Amendment under 42 U.S.C. § 1983; (3) alleged violation of the Tennessee Public Protection Act; and (4) alleged retaliation in violation of Title VII based upon Dr. Williams's termination.

In March 2019, Dr. Williams dismissed her counsel, and the district court granted her attorneys' Motion to Withdraw. [Motion to Withdraw, DE 171; Order Granting Motion to Withdraw, DE 172].  Dr. Williams and the School Board filed

cross motions for summary judgment as to Dr. Williams' claim under Title VII for alleged retaliatory failure to hire. [MSJ, DE 185; 186]. The district court denied Dr. Williams' motion and granted summary judgment in favor of the School Board as to that claim. [Second SJ Order, DE 207]. The district court later reversed its prior dismissal of Dr. William's Section 1983 claim for alleged violation of the Fourteenth Amendment. [Order Reinstating Section 1983 Claim, DE 220].

On August 13, 2020, the district court entered an order holding that the School Board's termination of Dr. Williams' employment violated the Tennessee Teacher Tenure Act, and that Dr. Williams was entitled only to backpay from March 7, 2016 through October 30, 2018. [Tenure Act Order, DE 237]. On February 23, 2021 Following briefing by the parties, the district court entered an order on Dr. Williams's Tennessee Teacher Tenure Act claim, requiring the School Board to pay Dr. Williams backpay in the amount of $211,019.73 plus $24,515.68 in prejudgment interest through June 15, 2021. [Revised Damages Order, DE 254]. On June 1, 2021, the district court entered an order granting the School Board's motion to deposit with the Court $238,773.33 in backpay and prejudgment interest, and the School Board paid such funds into court. [Deposit Order, DE 261]. Consequently, prejudgment interest did not accrue after June 15, 2021. [*Id.*].

The district court held a pretrial conference on January 28, 2022. [Minute Entry, DE 302]. Dr. Williams voluntarily waived her Title VII retaliation claims

and decided to proceed to trial only on her Section 1983 claim for violation of the Fourteenth Amendment. [*Id.*]

## III.    RULINGS FOR REVIEW

In her Supplemental Brief, Dr. Williams does not clearly identify the District Court rulings she claims are erroneous. Based upon Dr. Williams's Statement of the Issues, the School Board identifies the following rulings as those under review:

1.    District Court's December 18, 2018 Order granting summary judgment in favor of the School Board as to (a) Plaintiff's retaliation claim under the Tennessee Public Participation Act; and (b) Plaintiff's Title VII claim for retaliatory discharge.[2] [First SJ Order, DE 88].

2.    District Court's August 13, 2020 Order on Plaintiff's Teacher Tenure Act Claim holding finding that there exists no cause of action under the Teacher Tenure Act for alleged failure to place Dr. Williams's name on a reemployment list.[3] [Tenure Act Order, DE 237].

3.    District Court's Order on Plaintiff's Claim under 42 U.S.C. § 1983 holding, following a bench trial on that claim, that Plaintiff did not prove the

---

[2] Dr. Williams's Issue No. 3 [22-5591, Doc. 41, p. 11] and Argument Sections II & III below.

[3] Dr. Williams's Issue No. 1 [22-5591, Doc. 41, p. 11] and Argument Section IV below.

essential elements of her claim and entering judgment in favor of the School Board.[4] [Trial Order, DE 309].

## SUMMARY OF THE ARGUMENT

Dr. Williams argues that the district court made a variety of errors in ruling on her claims yet points to no evidence establishing such errors. With regard her retaliatory discharge claims dismissed at summary judgment, Dr. Williams relies upon mischaracterized testimony to argue that her dismissal was not motivated by the undisputed elimination of AEP grant that funded Dr. Williams's position and the rest of the AEP program.  Of the more than forty people who were employed in the AEP program, Dr. Williams does not point to a single employee who was not dismissed from their AEP position.  Instead, she relies on her allegation that Dr. Williams was the only tenured teacher who did not continue full time employment with the School Board after the AEP program was eliminated. Even if Dr. Williams was the only full-time tenured teacher who did not remain employed by the School Board, the non-discriminatory reason for that is clear — most of the affected employees worked part-time in the AEP program but held full-time teacher positions elsewhere in the school system.  Contrary to Dr. Williams's argument, those employees were not offered new placements with SCS; they simply continued in the

---

[4] Dr. Williams's Issue No. 2 [Appellant's Supp. Brief, Doc. 41, p. 11] and Argument Section V below.

full-time teaching positions they already held. The district court was correct in dismissing Dr. Williams' retaliatory discharge claims under Title VII of the Civil Rights Act and the Tennessee Public Protection Act, and those rulings should be affirmed.

Despite having already been awarded almost $200,000.00 in backpay under the Teacher Tenure Act, Dr. Williams seeks additional backpay as a result of the School Board's failure to place her name on a reemployment list prior to 2019. In relying on case law from 1987 and 2007, Dr. Williams ignores the Tennessee General Assembly's revision to the statute in 2011. *See Randall v. Hankins*, 773 S.W.2d 871, 874 (Tenn. 1987); *Lee v. Franklin Special School District Board of Education*, 237 S.W.3d 322 (Tenn. Ct. App. 2007); Tenn. Code Ann. § 49-5-511(b)(3); 2011 Tenn. Laws Pub. Ch. 70, § 9, eff. July 1, 2011. Contrary to Dr. Williams's argument, the *Randall* and *Lee* courts did not award backpay based upon the school districts' failure to place a teacher on a reemployment list; rather, those courts awarded backpay as compensation for the districts' failure to award the statutory preference afforded to teachers on the reemployment list prior to 2011. While versions of the statute at issue in *Randall* and *Lee* required that teachers whose positions were eliminated be placed on a "preferred reemployment list," the legislature removed the requirement that the list be "preferred" in 2011. Thus, *Randall* and *Lee* are inapposite and do not support Dr. Williams's argument.

8

Additionally, the Tennessee Supreme Court has cast doubt upon earlier cases such as *Randall* and *Lee* that created statutory penalties that did not exist in the Teacher Tenure Act. *See Emory v. Memphis City Schools Board of Education*, 514 S.W.3d 129 (Tenn. 2017) (reversing a backpay award because "[t]he remedy crafted by the Court of Appeals is not contained in the Tenure Act, and we are not at liberty to judicially modify the Act."). Indeed, Tenn. Code Ann. § 49-5-511(b)(3) carries no specific penalty for a school district's failure to timely add an employee's name to the reemployment list, and the court is therefore not at liberty to craft a remedy for backpay for a violation of that section. The district court's ruling should be affirmed.

Finally, Dr. Williams asserts that the district court erred in finding that she had not met her burden to establish the essential elements of a Section 1983 claim. Those arguments also fail. As the district court found, Dr. Williams failed to establish that a final decision-maker made a deliberate choice to omit her name from the reemployment list. She also did not present any evidence that she suffered any lost wages or other injury as a result of the School Board's delay in placing her name on the reemployment list. Indeed, the Teacher Tenure Act did not require the School Board to reemploy Dr. Williams or even to afford her any preference or priority over other candidates. The district court correctly found that Dr. Williams failed to

establish the essential elements of her Section 1983 claim, and that ruling should be affirmed.

## ARGUMENT

**I.    STANDARDS OF REVIEW**

### A.    Summary Judgment[5]

This Court reviews a district court's order granting summary judgment *de novo* and its findings of fact for clear error. *Stramaglia v. United States*, 377 Fed. App'x 472, 474 (6th Cir. 2010); *Keck v. Graham Hotel Sys.*, 566 F.3d 634, 636 (6th Cir. 2009); *Howard v. City of Beavercreek*, 276 F.3d 802, 805 (6th Cir. 2002); *Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Mich. Dep't of Natural Res.*, 141 F.3d 635, 638 (6th Cir. 1998). This Court reviews a district court's legal conclusions supporting its grant of summary judgment *de novo*. *Doe v. Salvation Army in U.S.*, 531 F.3d 355, 357 (6th Cir. 2008).

The Sixth Circuit has stated the SJ standard as follows:

> Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir.

---

[5] Dr. Williams's Issue No. 3 [Appellant's Supp. Brief, Doc. 41, p. 11] and Argument Sections II & III below.

2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has satisfied its burden, the nonmoving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). The "mere existence of a scintilla of evidence" will not prevent summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986), and if the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S. Ct. 2505 (citations omitted).

*Stramaglia*, 377 Fed. App'x at 474.

"[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### B.    Statutory Compliance[6]

"Statutory interpretation is a question of law . . . ." *United States v. Cassidy*, 899 F.2d 543, 545 (6th Cir. 1990) (quoting *In re Vause*, 886 F.2d 794, 798 (6th Cir. 1989)). Statutory compliance, on the other hand, is a mixed question of law and fact. *See Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (holding that determining whether the defendants were deliberately indifferent was a mixed question of law and fact). Courts consider issues over the acts performed by the parties "subsidiary

---

[6] Dr. Williams's Issue No. 1 [Appellant's Supp. Brief, Doc. 41, p. 11] and Argument Section IV below.

11

or basic fact[s]." *Id.* Whether these alleged facts show a violation of a statute is then a question of law. *See id.*, 186 F.3d at 690.

### C.    Adverse Ruling Following a Bench Trial[7]

After a bench trial, this Court reviews the district court's factual findings for clear error and its conclusions of law *de novo. Ackerman v. Washington*, 16 F.4th 170, 180 (6th Cir. 2021); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015).

## II.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE SCHOOL BOARD ON DR. WILLIAMS' TITLE VII CLAIM FOR RETALIATORY DISCHARGE.

### A.    The School Board Articulated a Legitimate Non-Discriminatory Reason for Dismissing Dr. Williams.

While the district court found that Dr. Williams had established a *prima facie* case for retaliatory discharge under Title VII, it also found that the School Board articulated a legitimate non-discriminatory reason for dismissing Dr. Williams, which Dr. Williams did not offer evidence sufficient to rebut. [First SJ Order, DE 88, PageID 2573-2575]. Specifically, the district court found that "Plaintiff's termination was prompted by the loss of grant funding, which caused the entire AEP program to be closed and the SCS to terminate employees whose salaries depended on grant funding." [*Id.* at PageID 2575].  Additionally, the court found that Plaintiff

---

[7] Dr. Williams's Issue No. 2 [Appellant's Supp. Brief, Doc. 41, p. 11] and Argument Section V below.

was among the over forty employees, including at least five full-time employees, who were terminated from their positions because their salaries depended on AEP grant funding. [*Id*.] Contrary to Dr. Williams's assertion, these conclusions are fully supported by the undisputed material facts before the court. [First SJ Order, DE 88, PageID 2575 (citing DE 46-1, PageID 313-314)].

### B.      Dr. Williams Did Not Meet Her Burden to Establish Pretext.

The district court found that Dr. Williams did not present evidence sufficient to establish a genuine issue of material fact as to whether the School Board's proffered reason for terminating Dr. Williams's employment was pretextual. To meet her burden, a plaintiff must "demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination by establishing that the proffered reason: 1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." *Abbott v. Crown Motor Company, Inc*., 348 F.3d 537 542 (6th Cir. 2003). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendant intentionally discriminated against him." *Alberty v. Columbus Twp*., 730 F. App'x 352, 361 (6th Cir. 2018) (quoting *Johnson v. Kroger Co*., 319 F.3d 858, 866 (6th Cir. 2003)) (alteration in original).

13

1.    ***Dr. Williams has not shown that the School Board's reason did not occur.***

To show that a proffered reason is baseless, a plaintiff must offer evidence establishing that it did not occur. *Id*. at 544. Dr. Williams does not dispute that the state's elimination of grant funding for AEP required the School Board to discontinue the AEP program. [P's Resp. to D's Stmt of Undisputed Facts, DE 46-1, PageID 313.] However, Dr. Williams argues that termination of the AEP grant had to be pretext for retaliatory termination because Dr. Williams was the only tenured teacher whose employment was terminated due to elimination of grant funding for the program.[8]  Dr. Williams' argument misconstrues the facts.

Dr. Williams was one of very few full-time employees working in the AEP program when it was discontinued. [Branch Dep., DE 51, PageID 927-928]. Most of the certificated employees were also full-time teachers, so, even though their part-time employment under the AEP program was terminated, they were still employed by the School Board in the full-time teaching positions that they held prior to elimination of the program.  [*Id*. at PageID 928]. Nonetheless, those teachers were

---

[8] It is worth noting that, in arguing that the School Board's termination of Dr. Williams's employment was retaliatory, Dr. Williams relies upon several documents that were added to the record after Dr. Williams's Title VII retaliatory discharge claim was dismissed and are therefore not properly considered in this Court's review of the district court's entry of summary judgment. [*See* Appellant's Supp. Brief, Doc. 41, p. 46-47]. In other words, Dr. Williams cannot create a disputed issue of fact to preclude summary judgment by pointing to facts that were not before the district court at the time the district court entered judgment on that claim.

dismissed from their positions with the AEP program, just like Dr. Williams.    That the School Board did not go beyond those teachers' part-time work with the AEP program and terminate their full-time teaching positions that were unaffected by the lost grant funding cannot possibly establish pretext.  It is the elimination of their AEP positions – and the termination of their employment in those positions – that is significant.  Indeed, Dr. Williams points to no evidence that Dr. Williams was treated any differently than other tenured teachers employed full time with the AEP program at Messick.  To the extent she was the only full-time tenured teacher from the AEP program who was dismissed, that is because she was the only full-time tenured teacher working in the AEP program when it was eliminated. [*See* Branch Dep., DE 51, PageID 927-928]. Essentially, Dr. Williams seeks to compare Dr. Williams to teachers working full-time as teachers elsewhere in the school system whose jobs were not affected by the elimination of AEP grant funding.  Such argument is non-sensical and cannot establish pretext.

Thus, Dr. Williams did not meet her burden to establish that the School Board's reason for terminating her employment "had no basis in fact."  The relevant undisputed material facts established that Dr. Williams's employment was terminated because her AEP position was eliminated along with the entire AEP program due to discontinued grant funding and, unlike many of her colleagues, she

was not already employed with the School Board as a full-time teacher outside of the AEP program.

2. **_Dr. Williams has not established that the School Board's reason for dismissal was more likely than not pretext._**

As for the second approach to establishing pretext, a plaintiff admits that the proffered reason for the adverse action "could motivate dismissal," but that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext or coverup." *Manzer v. Diamond Shamrock Chems. Co*., 29 F.3d 1078, 1084 (6th Cir. 1994), overruled on other grounds by *Gross v. FBL Financial Servs., Inc*., 557 U.S. 167 (2009). Dr. Williams argues that the true reason for her dismissal was "the retaliatory animus harbored by Principal Griffin and Director Branch." [Appellant's Supp. Brief, Doc. 41, pp. 41-46]. Though Dr. Williams now attempts to rely on the alleged retaliatory animus of Principal Griffin as well as Director Branch, Dr. Williams did not make that argument to the district court at the summary judgment stage; rather, Dr. Williams only argued that, in analyzing her retaliation claims, the district court "should consider the intent of the Labor Relations Department, led by Branch, instead of that of the ultimate decision-maker, Dr. Dorsey Hopson." [P's Resp. to D's MSJ, DE 46, PageID 276]. Dr. Williams therefore waived this argument, and it should not be considered on appeal. *See Commodity Futures Trading Comm'n v. Miklovich*, 687 Fed. Appx. 449, 451 (6th Cir. 2017) ("[T]his court generally will not

16

review an argument that is raised for the first time on appeal.") .Even if this argument had not been waived, it is clearly without merit. Indeed, Dr. Williams misrepresents Dr. Hopson's deposition testimony.  Dr. Williams claims that Dr. Hopson "relied on 'the people in charge of [relevant] departments,' such as Principal Griffin and Director Branch, in terminating Dr. Williams." [Appellant's Supp. Brief, Doc. 41, p. 48].  But this is not what Dr. Hopson said. Dr. Hopson's actual testimony was as follows:

> Q.    As far as Dr. Williams is concerned and her not being placed on the preferred list and not getting any of the jobs that she's applied for, were you relying on the people who were in charge of those departments and in charge of doing that to do their jobs?
>
> A.    Yeah.

[Hopson Dep., DE 60, PageID 1756].

Thus, Dr. Hopson did not say that he relied upon the recommendation of, or information provided by, either Principal Griffin or Director Branch in making the decision to terminate Dr. Williams' employment.  Dr. Williams points to no other testimony or evidence supporting her assertion that Dr. Hopson relied upon Principal Griffin in dismissing Dr. Williams, or that Principal Griffin had any involvement whatsoever in Dr. Williams's dismissal.

With regard to Director Branch, the district court correctly found that Dr. Williams did not establish liability under the "cat's paw" theory.  To succeed on this

theory, a plaintiff must establish that (a) a non-decision maker performed an act motivated by discriminatory animus that was intended to cause an adverse employment action; and (b) that that act was the proximate cause of the ultimate employment action. *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 427 (6th Cir. 2014). Thus, a plaintiff must establish a causal nexus between the employment decision and the non-decisionmaker's discriminatory animus. *Chattman v. Toho Tenax America, Inc.*, 686 F.3d 3at 350 (6th Cir. 2012). An adequate causal nexus exists if Plaintiff shows: (1) non-decisionmakers acted with intent to result in Plaintiff's termination in retaliation for her protected conduct; and (2) those retaliatory actions were the but-for cause of Plaintiff's termination. *See Seoane-Vazquez*, 577 F. App'x at 428. Under this standard, the retaliatory actions must be more than a motivating factor. *Id*. Cat's paw liability is not established where Plaintiff's termination was "prompted by both legitimate and illegitimate factors." *Id*. (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 383 (2013) (Ginsburg, J., dissenting)). As the district court observed, "[s]o long as the untainted factors were sufficient to justify [Hopson's] ultimate decision, the [Defendant] will be entitled to summary judgment." [First SJ Order, DE 88, PageID 2578 (quoting *Seoane-Vazquez*, 577 F. App'x at 428–29)].

The district court correctly found that Dr. Williams did not present evidence that Director Branch retaliated against her or harbored any animus towards her.

Rather, Dr. Williams only claimed that Director Branch knew of Dr. Williams' protected activities and participated in disciplinary meetings. [*Id.* at PageID 2578]. Tellingly, Dr. Williams does not point to any testimony or evidence in her Brief that could establish that Director Branch took any action intended to result in Dr. Williams's dismissal or that even suggests that Director Branch had any discriminatory animus toward Dr. Williams to begin with. [*See generally* Appellant's Supp. Brief, Doc. 41, p. 48].

Even if there was some evidence of discriminatory intent, Dr. Williams still cannot succeed on her theory of cat's paw liability because she cannot show that any discriminatory conduct or intent was the but-for cause of her dismissal.  As the district court stated, "[i]t is undeniable that [Dr. Williams's] termination was prompted by a cut in funding." [First SJ Order, DE 88, PageID 2578]. Thus, even if some discriminatory action of a non-decisionmaker had been a motivating factor, retaliation was not the "but-for" cause of her dismissal.  *Seoane-Vazquez*, 577 F. App'x at 428.

To establish the third category of pretext, a plaintiff must show that the employer did not terminate other employees who engaged in similar conduct. *Chattman,* 686 F.3d at 349 (citing *Manzer*, 29 F.3d at 1084). Because Dr. Williams did not allege that other AEP employees were retained even though they engaged in similar conduct, the district court found that this third category of rebuttal evidence

did not apply.  Indeed, Dr. Williams does not rely upon this argument on appeal. [*See generally* Appellant's Supp. Brief, Doc. 41].

The district court correctly granted summary judgment in favor of the School Board on Dr. Williams' Title VII retaliatory discharge claim, and that ruling should be affirmed.

### III.   THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT AS TO DR. WILLIAM'S TPPA CLAIM.

Dr. Williams's claim under the Tennessee Public Protection Act ("TPPA") fails for a similar reason – Dr. Williams did not establish that her report of illegal activities was the sole reason for her dismissal.  The TPPA states that "no employee shall be discharged or terminated **solely** for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b) (emphasis added). To prevail on a claim under the TPPA, an employee must establish that: (1) "she reported the employer's illegal activity"; (2) the "reporting of the illegal activity furthered a clear public policy;" and (3) "her refusal to remain silent was the sole reason for the discharge." *Haynes v. Formac Stables, Inc*., 463 S.W.3d 34, 37 (Tenn. 2015) (citations omitted). The Supreme Court of Tennessee has found that the legislature chose to "set the bar high for recovery under a retaliatory discharge claim pursuant to the [TPPA]" by requiring the employee to prove that her refusal to remain silent was the sole reason for the discharge. *Sykes v. Chattanooga Hous. Auth*., 343 S.W.3d 18, 28 (Tenn. 2011).

As explained above, it cannot be disputed that the state discontinued grant funding that resulted in the School Board's elimination of the entire AEP program, including all of the employment positions funded by the grant. [P's Resp. to D's Stmt of Undisputed Facts, DE 46-1, PageID 313.] Again, Dr. Williams misstates the facts. While she asserts on appeal that the other AEP employees "were excessed and moved to other jobs, not terminated[,]" [Appellant's Supp. Brief, Doc. 41, p. 56], the evidence establishes that those employees simply maintained the full-time teaching positions they already had – they were not moved to other jobs.  [Branch, Dep., DE 51, PageID 927-928].

In arguing that Dr. Williams's report was the sole reason for her dismissal, Dr. Williams relies upon actions by Principal Griffin (who had no involvement in the dismissal decision) and a single unanswered email to human resources and general counsel.  Such assertions fall far short of meeting her "high bar to recovery" by establishing that her report of illegal conduct was the sole reason for her dismissal.

The district court correctly granted summary judgment in favor of the School Board on Dr. Williams TPPA claim, and that ruling should be affirmed.

**IV.  THE DISTRICT COURT CORRECTLY HELD THAT NO CAUSE OF ACTION EXISTS UNDER THE TEACHER TENURE ACT FOR FAILURE TO MAINTAIN A REEMPLOYMENT LIST.**

On appeal, Dr. Williams argues that the Court should have awarded her additional damages as a result of the School Board's failure to place Dr. Williams's name on a "reemployment list."[9]  Though Dr. Williams boldly states her conclusion that "[f]ailure to be placed on a reemployment list is, by itself, cause for damages under Tennessee law." [Appellant's Supp. Brief, Doc. 41, Page 26], she offers no legal authority supporting that theory.  Indeed, Dr. Williams's argument is based on a fundamentally flawed premise – that every statutory violation necessarily results in a private right of action for damages.

Though Dr. Williams relies heavily on the *Randall v. Hankins* case, *Randall* is easily distinguishable, and its ruling does not apply here. Most significantly, *Randall* involves a prior version of the relevant statute that is no longer in effect. *Randall v. Hankins*, 773 S.W.2d 871, 874 (Tenn. 1987). The *Randall* plaintiffs' employment was terminated in 1981.  At that time, the Teacher Tenure Act required that a tenured teacher who had been dismissed because of abolition of position "shall be placed on a **preferred** list for reemployment in the first vacancy he is qualified

---

[9] The district court found that the School Board had violated the Teacher Tenure Act and granted Dr. Williams back pay damages from her dismissal on March 7, 2016 through the October 30, 2018 Board ratification of her dismissal in the amount of $192,988.02 plus prejudgment interest  [Tenure Act Order, DE 267, PageID 6940, 6948; Tenure Act Damages Order, DE 246; Revised Damages Order, DE 254].

by training and experience to fill." *Randall v. Hankins*, *Id*. (Tenn. 1987) (quoting Tenn. Code Ann. § 49-5-511(b)(3) (emphasis added)). The *Randall* court found that, under that version of the Teacher Tenure Act, the plaintiffs were "entitled to be retained on th[e] list indefinitely and to be accorded **priority of consideration** by the Board of Education for any vacancy falling within the areas of their professional certifications and experience." *Id*. at 874 (emphasis added). The court further found that "[o]nce a tenured person establishes by certification his or her professional qualifications for the open position and shows any other training or experience he or she may have, than that person is entitled to **preferential consideration**." *Id*. at 875 (emphasis added). Contrary to Dr. Williams's argument, the *Randall* court did not award damages based upon the school district's failure to put the plaintiffs on a reemployment list; rather, the court found the plaintiffs should be compensated for the school district's failure "to accord them their statutory priority." *Id*.

By contrast, the Teacher Tenure Act no longer affords tenured teachers any preference or priority following abolition of their positions. The Tennessee General Assembly amended the Teacher Tenure Act in 2011 to remove the requirement that discharged teachers must be placed on a preferred list for reemployment. *See* 2011 Tenn. Laws Pub. Ch. 70, § 9, eff. July 1, 2011. The statute now simply requires that a teacher whose position is abolished be placed on a reemployment list. Tenn. Code Ann. § 49-5-511(b)(3). Because a tenured teacher's placement on a reemployment

list no longer grants her any preference or priority in obtaining reemployment, the *Randall* court's analysis regarding a school district's failure to afford a dismissed teacher preference in reemployment is no longer good law and has no bearing on this matter.

*Lee v. Franklin Special School District Board of Education* also does not support Dr. Williams's argument. Like the court in *Randall*, the *Lee* court did not award damages based upon the school district's failure to place the plaintiff on a reemployment list, but as a result the district's failure to give afford her a preference for reemployment as the Teacher Tenure Act required at that time. *Lee v. Franklin Special School District Board of Education*, 237 S.W.3d 322 (Tenn. Ct. App. 2007). In that case, the plaintiff presented evidence that the school district had filled vacant positions with applicants who were not on the preferred reemployment list. *Id*. at 335. The court found that the Teacher Tenure Act permitted only the school board to determine whether a teacher on the preferred reemployment list was unqualified, incompatible or unsuitable to be employed for a particular position. *Id.* at 336. Because the decision not to offer the plaintiff reemployment was made by principals and not by the school board, the court found that the plaintiff "was statutorily entitled to be offered reemployment for that position over another applicant that was not on a preferred list for employment." *Id.* Thus, the *Lee* court awarded damages not because the school district did not put her on a reemployment list but because it

24

failed to afford her the reemployment priority to which she was statutorily entitled under the old version of the Teacher Tenure Act. Dr. Williams was entitled to no such priority.

The legislature's removal of the preference language from the statute is particularly significant with respect to the issue of damages. Notably, Tenn. Code Ann. § 49-5-511(b)(3) does not provide for any remedies for violation of that section. In awarding backpay under Tenn. Code Ann. § 49-5-411(a)(3) (providing a remedy only a teacher suspended without pay), the *Lee* court observed that its "finding that Ms. Lee was wrongfully denied reemployment for the school year 2002-3 is equivalent to finding that a teacher, who was suspended without pay, has been vindicated and should be reinstated." *Lee*, 237 S.W.3d at 337. Thus, the court created a remedy for a violation of Tenn. Code Ann. § 511(b)(b) by declaring the violation to be "equivalent" to a violation of Tenn. Code Ann. § 511(a)(3).

Moreover, the Supreme Court of Tennessee has cast doubt on the validity of cases such as *Lee* and *Randall* that have applied remedies set forth under Tenn. Code Ann. § 49-5-511(a)(3) to violation of Tenn. Code Ann. § 49-5-511(b)(3). In *Emory v. Memphis City Schools Board of Education*, the plaintiff did not receive her hearing within the 30-day time period set forth in Tenn. Code Ann. § 49-5-512(a)(2). *Emory v. Memphis City Schools Board of Education*, 514 S.W.3d 129 (Tenn. 2017). The Court of Appeals awarded her backpay for the additional days she was suspended

without pay prior to her hearing. *Id.* at 144. The Supreme Court reversed, finding that the time provision in Tenn. Code Ann. § 49-5-512(a)(2) carries no specific penalty for noncompliance and "the Courts are not at liberty to rewrite statutes." *Id*. The Court held that "[t]he remedy crafted by the Court of Appeals is not contained in the Tenure Act, and we are not at liberty to judicially modify the Act." *Id*.

The Supreme Court of Tennessee's rationale in *Emory* makes clear that the District Court was not at liberty to craft a remedy of backpay or reinstatement for a violation of Tenn. Code Ann. § 49-5-511(b)(3), which, like the statute at issue in *Emory*, contains no specific penalty for noncompliance. The district court was correct in declining to modify the Tennessee Tenure Act to create a remedy for violation of the requirement that a teacher whose position is eliminated be placed on a reemployment list. Even if the *Lee* and *Randall* courts' creation of a new remedy by analogy would remain permissible under the old versions of the Act, *Emory* makes clear that those holdings cannot be applied to the current version of the Teacher Tenure Act, which does not afford teachers a statutory right to any preference or priority in reemployment or any right to reemployment. While Tenn. Code Ann. 49-5-511(b)(3) requires certain teachers to be placed on a reemployment list, the statute does not carry a specific penalty for noncompliance. Thus, the district court was not at liberty to craft a remedy for violation of that provision, and correctly declined to do so.

26

The district court's ruling that no cause of action existed under the Tenure Act for the School Board's alleged failure to place Dr. Williams on a reemployment list should be affirmed.

## V.    THE DISTRICT COURT CORRECTLY HELD THAT DR. WILLIAMS FAILED TO ESTABLISH THE ESSENTIAL ELEMENTS OF HER SECTION 1983 CLAIM.

Dr. Williams's claim under 42 U.S.C. § 1983 ("Section 1983") for violation of the Fourteenth Amendment was the sole claim at issue in the bench trial before Judge Parker. [Trial Order, DE 309, PageID 8109].  The issues before the court were narrow: (1) whether – and if so, when – the School Board placed Dr. Williams's name on a reemployment list under the Teacher Tenure Act, and (2) whether Dr. Williams established the essential elements of a Section 1983 claim, including damages attributable to the School Board. [*Id*. at PageID 8124].

With regard to the first question, the district court found that the School Board placed Dr. Williams's name on the reemployment list at some point in January or February 2019 but failed to place her name on the list prior to that time. [*Id*. at PageID 8125].  Judge Parker found testimony by the School Board's witness credible as to the addition of her name to the reemployment list. [*Id*.] As to the second question, the district court correctly found that Dr. Williams did not establish the essential elements of her Section 1983 claim.

**A.   Dr. Williams Did Not Establish a Legal Basis for Liability of the School Board.**

42 U.S.C. § 1983 ("Section 1983") provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  Though a governmental entity can be liable for a violation of Section 1983 under certain circumstances, it "cannot be held liable simply because one of its employees has committed a constitutional violation." *Andrews v. Wayne Cnty.*, 957 F.3d 714, 721 (6th Cir. 2020). In other words, a governmental entity "cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978); Rather, a governmental entity like the School Board is liable under § 1983 "only if a plaintiff establishes 'an unconstitutional action that implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . .'" *Scarbrough v. Morgan Cnty. Bd. Of Educ.*, 470 F.3d 250, 261 (2006) (quoting *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003)); *see also McComas v. Bd. of Educ.*, 422 F. App'x 462, 470 (6th Cir. 2011); *Doe v. Claibourne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996); *Thorpe v. Breathitt Cnty. Bd of Educ.*, 8 F. Supp. 3d 932, 938 (E.D. Ky. 2014). A plaintiff

28

"must show 'a direct causal link' between the policy and the alleged constitutional violation such that the municipal policy can be deemed the 'moving force' behind the violation." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004)); *see also Monell*, 436 U.S. at 690 (The "touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution.").

In attempting to establish the School Board's liability, Dr. Williams relies upon her argument that Dr. Hopson was the final decisionmaker with regard to whether Dr. Williams was placed on the reemployment list.[10]  She relies heavily on a policy stating the "Superintendent (or designee) is responsible for maintaining a roster of displaced employees and for ensuring compliance with this policy." [Appellant's Appx, Trial Ex. 10]. The policy does not state that the Superintendent is responsible for deciding whether or not to place an individual employee's name on the list.  [*Id.*] Indeed, testimony at trial established that there was never a time that the School Board did not maintain a reemployment list. [Trial Transcript, DE 314, PageID 8251 (Dr. Jones testifying that "I don't recall us not having a reemployment list" and "I just don't recall there ever being a time that we didn't have a list of names of people who were to be reemployed.")].  Dr. Williams

---

[10] On appeal, Dr. Williams relies in part upon evidence that was not presented at trial. [*See* Appellant's Supp. Brief, Doc. 41, pp. 35-38].

mischaracterizes Dr. Jones's testimony, suggesting that he said that the superintendent decided not to maintain a reemployment list until 2019, but that is not what Dr. Jones said. Dr. Jones testified that the Superintendent had not recommended any **reductions-in-force** in the last two years prior to Dr. Jones' February 2019 deposition. [Id. at PageID 8253]. Consequently, there was no need to add names to the list during those two years because no teaching positions were eliminated. [*Id.*][11]

The district court correctly found that Dr. Williams did not present evidence at trial establishing that Dr. Hopson was a final decision-maker for purposes of Section 1983 liability. [Trial Order, DE 309, PageID 8131]. "Whether a municipal official is a policymaker depends on the conduct in question; the same official may be a policymaker in some situations but not in others." *Jorg v. City of Cincinnati*, 145 F. App'x 143, 147 (6th Cir. 2005) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483)). As the district court found, Dr. Williams has pointed to no evidence

---

[11] Dr. Williams also mischaracterizes Dr. Jones's testimony each time she alleges that the School Board did not maintain a reemployment list. [Appellant's Supp. Brief, Doc. 41, pp. 38-39]. While Dr. Jones said that "because [the ZOHO system] was phased out, we didn't have the traditional reemployment list[,]" he also explained that "we kept a list of individuals that needed to go out, that needed to be reemployed, but we didn't keep it in ZOHO." [Trial Transcript, DE 314, PageID 8255]. Dr. Jones clarified that "We didn't keep it in that particular tracking system until we got into another management tracking system." [*Id.*] Indeed, the Teacher Tenure Act does not require that the reemployment list be kept in any particular form or in any particular database. Tenn. Code Ann. § 49-5-511(b)(3).

suggesting that Dr. Hopson was a final decision-maker with respect to determination of which names would be placed on the reemployment list.

The district court also correctly found that Dr. Williams failed to establish a pattern of misconduct that would subject the School Board to liability on her Section 1983 claim. Dr. Williams argued at trial that her termination resulted from a custom or common practice of allowing the superintendent to terminate tenured teachers. [Trial Order, DE 309, PageID 8131]. As the district court pointed out, Dr. Williams's argument missed the mark because the alleged constitutional deprivation is not termination, but failure to place Dr. Williams' name on the reemployment list. Dr. Williams did not argue or present any evidence at trial that there was "a clear and persistent pattern" of the School Board failing to place excessed tenured teachers on a list for reemployment." [*Id*. at PageID 8131-8132].

Faced with these obvious evidentiary deficiencies, Dr. Williams now argues on appeal that the circumstances of this case alone illustrate that "apathy and noncompliance were effectively the official policy" with regard to the reemployment list. [Appellant's Supp. Brief, Doc. 41, p. 37]. Even if Dr. Williams had not waived such an argument by failing to raise it at trial, her argument is without merit. Indeed, Dr. Williams points to no legal authority suggesting that a plaintiff can rely on her very own allegations to establish the requisite pattern or practice for Section 1983 liability. Moreover, the case law Dr. Williams cites offers no support for her

31

position.  In *City of Canton v. Harris*, the Supreme Court observed that "'[m]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483-484 (1986)). Contrary to Dr. Williams's argument, *Canton* actually supports the School Board's position – a general duty of oversight is not sufficient to impute an allegedly unconstitutional action to a policymaker such as a school superintendent. There is absolutely no evidence that Dr. Hopson or any other policymaker made a deliberate choice to omit Dr. Williams' name from the reemployment list.

### B.    Dr. Williams Failed to Establish That She Suffered an Injury as a Result of the School Board's Delay in Adding Her Name to the Reemployment List.

Also fatal to Dr. Williams's Section 1983 claim is her failure to present evidence establishing that she suffered an injury as a result of the School Board's delay in putting her on the reemployment list.   "Proximate causation is an essential element of a § 1983 claim for damages." *Roberts v. Coffee Cnty*., 826 F. App'x 549, 554 (6th Cir. 2020) (citing *Doe v. Sullivan County, Tenn.,* 956 F.2d 545, 550 (6th Cir. 1991); *see also Estate of Sowards v. City of Trenton*, 125 F. App'x 31, 41 (6th Cir. 2005) (same) (quoting *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 659, 6th Cir. 1994)). A Section 1983 plaintiff is entitled to damages "for injuries

caused by the deprivation of constitutional rights," but not damages "too remote" from the alleged constitutional violation. *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10 C 00400, 2016 WL 9116026, at *2 (M.D. Tenn. Apr. 8, 2016) (citing *Memphis Cmt. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)). Put another way, "[a] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Sowards*, 125 F. App'x at 41 (quoting *Horn*, 22 F.3d at 659; citing *Ellis v. Washington Cnty.*, 198 F.3d 225, 226 (6th Cir. 1999) (affirming summary judgment in a § 1983 action where the plaintiff failed to show proximate causation)).

Thus, to succeed on a Section 1983 claim for damages, a plaintiff must link the alleged misconduct to her injury. *See Roberts*, 826 F. App'x at 554. Dr. Williams claims she is entitled to damages for lost wages as a result of the School Board's failure to re-hire her. But, as the district court found, Plaintiff has offered no evidence linking lost wages to the School Board's delay in placing her name on the reemployment list. While the Teacher Tenure Act requires that teachers dismissed due to a reduction in force be placed on a reemployment list, they are not guaranteed reemployment or placement in another position. As explained above, the General Assembly removed the requirement that teachers on the reemployment list be given preference or priority when it revised the statute in 2011. *See* 2011 Tenn. Laws Pub. § 9, eff. July 1, 2011. Additionally, the plain language of the statute makes clear

that principals retain the right to reject a teacher based on the teacher's performance. *See* Tenn. Code Ann. § 49-5-511(b)(3). Simply put, the Teacher Tenure Act does not require a school district to rehire a teacher on the reemployment list or to provide such a teacher with any preference or priority in employment.

Moreover, Dr. Williams offered no evidence that she applied for any teacher position for which she was not hired. In fact, Dr. Williams testified that, after her dismissal, she only applied for one teaching job – a virtual school instructor position. [Trial Transcript, DE 314, PageID 8207]. Dr. Williams did not present any evidence that she was more qualified than any applicant selected for a position she applied for, and she acknowledged that she had no personal knowledge of the criteria used in selecting any other candidates. [*Id*. at PageID 8200]. Because Dr. Williams did not put on proof that the School Board's delay caused her to suffer lost wages or any other injury, her Section 1983 claim fails as a matter of law.

The district court correctly found that Dr. Williams did not establish the essential elements of her Section 1983 claim, and that ruling should be affirmed.

## **CONCLUSION**

For the reasons stated herein and in the district court's orders referenced herein, the district court's rulings in favor of the School Board should be affirmed.

34

Respectfully submitted,

/s/ Jamie L. Morton
JAMIE L. MORTON (#031243)
Shelby County Board of Education
Office of the General Counsel
160 S. Hollywood St., Room 218
Memphis, Tennessee 38112
901.416.3612
mortonj2@scsk12.org

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief is written in a proportionately spaced, 14-point Times New Roman font, and contains 8,452 words, exclusive of the material not counted under Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

/s/ Jamie L. Morton
Jamie L. Morton

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing Appellee's

Supplemental Brief was served via the Court's CM/ECF system on August 11, 2024

upon:

> Colter L. Paulson
> Squire Patton Boggs (US) LLP
> 201 E. Fourth Street, Suite 1900
> Cincinnati, Ohio 45202
> colter.paulson@squirepb.com
>
> Nathan L. Colvin
> The Sixth Circuit Clinic
> University of Cincinnati College of Law 2925 Campus Green Dr.
> Cincinnati, Ohio 45221
> Nathan.colvin@gmail.com
> *Counsel for Plaintiff/Appellant Sonya Williams*

> /s/ Jamie L. Morton
> Jamie L. Morton

# ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b)(1)(A)(i), the School Board designates the

following documents:

| Record No. | Date Filed | Document | PageID |
|---|---|---|---|
| 1 | January 4, 2017 | Complaint ("Compl.") | 1-10 |
| 42 | June 15, 2018 | Defendant's Motion for Summary Judgment ("MSJ") | 120-121 |
| 42-1 | June 15, 2018 | Defendant's Memorandum of Law in Support of its Motion for Summary Judgment | 122-143 |
| 46 | July 13, 2018 | Plaintiff's Response to Defendant's Motion for Summary Judgment ("P's Resp. to D's MSJ") | 272-298 |
| 46-1 | July 13, 2018 | Plaintiff's Response to Defendant's Statement of Undisputed Material Fact ("P's Resp. to D's Stmt of Undisputed Facts") | 299-316 |
| 51 | July 13, 2018 | Deposition of Chantay Branch, Part 1 ("Branch Dep.") | 870-944 |
| 60 | July 13, 2018 | Deposition of Dorsey Hopson ("Hopson Dep." | 1728-1805 |
| 88 | December 18, 2018 | Order Granting in Part and Denying in Part Defendant's Motion for | 2549-2581 |

| | | Summary Judgment ("First SJ Order") | |
|---|---|---|---|
| 122-3 | January 22, 2019 | October 2018 Board Resolution ("2018 Resolution") | 3325-3328 |
| 171 | March 14, 2019 | Plaintiff's Counsel's Motion to Withdraw ("Motion to Withdraw") | 4911-4912 |
| 172 | March 18, 2019 | Order Granting Plaintiff's Counsel's Motion to Withdraw | 4918 |
| 185 | May 15, 2019 | Defendant's Motion for Summary Judgment on Plaintiff's Failure to Hire Claim | 4971-4972 |
| 185-1 | May 15, 2019 | Defendant's Memorandum of Law in Support of its Motion for Summary Judgment on Plaintiff's Failure to Hire Claim | 4973-4982 |
| 186 | June 3, 2019 | Plaintiff's Motion for Summary Judgment on Title VII Failure to Rehire Claim | 4992-4993 |
| 186-3 | June 3, 2019 | Letter to EEOC | 5025-5035 |
| 207 | April 10, 2020 | Order Granting Defendant's Partial Motion for Summary Judgment and Denying as Moot Plaintiff's Motion for Summary Judgment ("Second SJ Order") | 2958-5970 |
| 220 | July 7, 2020 | Order Reversing Summary Judgment on Section 1983 Claim | 6308-6330 |
| 237 | August 13, 2020 | Order on Plaintiff's Teacher Tenure Act Claim ("Tenure Act Order") | 6935-6948 |
| 246 | December 2, 2020 | First Order on Plaintiff's Tenure Act Damages | 6999-7007 |

| 254 | February 23, 2021 | Order Granting in Part Plaintiff's Motion to Reconsider Tenure Act Judgment and Calculating Prejudgment Interest ("Revised Damages Order") | 7064-7073 |
| 261 | June 1, 2021 | Order Granting Defendant's Motion to Deposit Judgment Payment into Court ("Deposit Order") | 7092-7093 |
| 277 | October 22, 2021 | Pre Trial Order | 7721-7732 |
| 302 | January 28, 2022 | Minute Entry for Pretrial Conference | N/A |
| 309 | June 14, 2022 | Trial Order | 8109-8134 |
| 313 | August 17, 2022 | Trial Transcript, Day 1 | 8142-8359 |
| 314 | August 17, 2022 | Trial Transcript, Day 2 | 8360-8406 |