Case No. 22-5591

# United States Court Of Appeals
## FOR THE SIXTH CIRCUIT

**SONYA WILLIAMS,**

Plaintiff-Appellant,

v.

**SHELBY COUNTY, TN, BOARD OF EDUCATION,**

Defendant-Appellee.

**On Appeal from the United States District Court
for the Western District of Tennessee, 2:17-cv-02050**

### REPLY BRIEF OF PLAINTIFF-APPELLANT SONYA WILLIAMS

Colter L. Paulson
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 361-1200
colter.paulson@squirepb.com

Nathan L. Colvin
THE SIXTH CIRCUIT CLINIC
Univ. of Cincinnati College of Law
2925 Campus Green Dr.
Cincinnati, Ohio 45221
Tel: (513) 313-7344
nathan.colvin@gmail.com

*Attorneys for Dr. Sonya Williams*

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ...............................................................................................1

I.   Because SCS Failed To Place Dr. Williams On A Reemployment List As
     Mandated By The Teacher Tenure Act, She Is Entitled To Damages. ...............1

     A. The Tenure Act, § 49-5-511(b)(3), Plainly Authorizes Damages. ...............3

     B. The Tennessee Supreme Court Has Not Overturned Randall. ....................6

     C. Damages Extend From October 2018 Until Dr. Williams Is Added To A
        Formal Reemployment List, Which Has Yet To Occur. ............................8

II.  SCS Is Liable Under § 1983 For Disregarding The Tenure Act.......................14

     A. Superintendent Hopson Acted Under Color of State Law.........................14

     B. Dr. Williams Suffered a Compensable Injury as a Result of SCS's Failure
        to Place her Name on the List. ...................................................................18

III. Dr. Williams Raised Disputed Issues Of Material Fact On Her Retaliation
     Claims. ...........................................................................................................19

     A. Dr. Williams Raised a Material Issue of Fact Regarding Superintendent
        Hopson's Reasons for Termination. ............................................................21

     B. In the Alternative, Dr. Williams can Recover under the TPPA..................24

CONCLUSION....................................................................................................26

CERTIFICATE OF COMPLIANCE....................................................................27

CERTIFICATE OF SERVICE ............................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Burgess v. Fischer*,
735 F.3d 462 (6th Cir. 2013) ...............................................................16

*Chattman v. Toho Tenax America, Inc.*,
686 F.3d 350 (6th Cir. 2012) ...............................................................24

*City of Canton v. Harris*,
489 U.S. 378 (1989)...............................................................................17

*Emory v. Memphis City Sch. Bd. Of Educ.*,
514 S.W.3d 129 (Tenn. 2017) ........................................................... 6, 7

*Harman v. Univ. of Tenn.*,
353 S.W.3d 734 (Tenn. 2011) ...............................................................24

*Jorg v. Cincinnati*,
145 F. App'x 143 (6th Cir. 2005).....................................................14, 15

*King v. Zamiara*,
788 F. 3d 207 (6th Cir. 2015) ...............................................................19

*Lee v. Franklin*,
237 S.W.3d 322 (Tenn. App. 2007)........................................................8

*Pembaur v. Cincinnati*,
475 U.S. 469 (1986)...............................................................................16

*Randall v. Hankins*,
733 S.W.2d 871 (Tenn. 1987) ......................................................*passim*

*State Bd. of Exam'rs for Architects & Eng'rs v. Weinstein*,
638 S.W.2d 406 (Tenn. Ct. App. 1982).................................................5

*Susselman v. Washtenaw Cty. Sheriff's Office*,
109 F.4th 864 (6th Cir. 2024) ...............................................................15

*Thompson v. Memphis City Sch. Bd. Of Educ.*,
   395 S.W.3d 616 (Tenn. 2012) ..................................................................4,7

*Walker v. Wexford Health Sources, Inc.*,
   940 F.3d 954 (7th Cir. 2019) ...................................................................16

*Whitson v. Knox Cnty. Bd. of Educ.*,
   468 F. App'x 532 (6th Cir. 2012) ............................................................14

*Williams v. Smyrna Residential*,
   685 S.W.3d 718 (Tenn. 2024) ...................................................................7

*Yazdian v. ConMed Endoscopic Techs., Inc.*,
   793 F.3d 634 (6th Cir. 2015) ...................................................................24

## Statutes

Tenn. Code § 49-5-409(c) .............................................................................23

Tenn. Code § 49-5-511 ..........................................................................*passim*

## Other Authorities

2011 Tenn. Laws Pub. Ch. 70, § 9, eff. July 1, 2011 ....................................3

Teacher Placement Guiding Principles & Model Practices
   https://tsba.net/wp-content/uploads/2018/01/Joint-
   Memorandum.pdf. ......................................................................................4

## INTRODUCTION

SCS attempts to cover its persistent failure to comply with federal and state law by taking overly legalistic positions and ignoring key facts. The evidence showed that Superintendent Hopson, over many years, failed his statutory duty to ensure a reemployment list existed at all. And the list that was eventually created looked nothing like the formal reemployment list contemplated by the statute. Save for Dr. Williams, the list was populated by employees that already had positions with SCS, and – to add insult to injury – the list suggested that Dr. Williams was also among those not in need of a new position with SCS.

These failures also create liability under § 1983. SCS tries to deflect blame away from Superintendent Hopson, but the fundamental problem was his policy choice not to require the district to have a reemployment list, and then to implement a reemployment list that was more akin to a "I don't need a job" list than the constitutionally-protected right to assistance in the reemployment process contemplated by the Tenure Act. SCS cannot blame lower-level employees for failing to place Dr. Williams' name on a proper reemployment list, when it was the fault of SCS's own longtime custom and policy of noncompliance.

Finally, Dr. Williams raised an issue of fact for retaliation because she was shunted to Messick, a program about to be closed down for fraud, where she was immediately belittled and discriminated against. And then, after she assisted the

1

State in unravelling that fraud, she was the only tenured employee that was permanently terminated from SCS.

## I.    Because SCS Failed to Place Dr. Williams on a Reemployment List as Mandated by the Teacher Tenure Act, She is Entitled to Damages.

The Tennessee Teacher Tenure Act ("Tenure Act") protects highly-rated tenured teachers like Dr. Williams that are terminated by requiring a school district to place them on a preferred list for reemployment.  Tenn. Code § 49-5-511(b)(3). SCS does not dispute that, for at least several years, it was required to and failed to include Dr. Williams on the reemployment list.  Nonetheless, according to the District Court, Dr. Williams gets nothing to remedy this violation because, technically, SCS had no obligation to re-hire her.  Tenure Act Order, R. 237, PageID 6943.  But, as Dr. Williams explained in her opening brief, that was contrary to the Tennessee Supreme Court's decision in *Randall v. Hankins*, which affirmed an award of backpay to a teacher who was not placed on the reemployment list.  *See* 733 S.W.2d 871, 875-76 (Tenn. 1987).  So, on appeal, SCS presents alternative arguments for affirmance, arguing that *Randall* was abrogated nearly 25 years later by a slight tweak to the statute or, alternatively, overruled by a Tennessee Supreme Court decision that did not even concern the reemployment list.  Neither argument is availing, so the Court should remand for a determination of damages for SCS's admitted violation of the Tenure Act that continues to this day.

2

**A.    The Tenure Act, § 49-5-511(b)(3), Plainly Authorizes Damages.**

SCS mostly acknowledges (SCS Br. 8) that the Tennessee Supreme Court's decision in *Randall v. Hankins* would require backpay for failing to place a qualified teacher on the reemployment list. 733 S.W.2d 871, 875-76 (Tenn. 1987).  Indeed, contrary to the district court's decision, *Randall* found that backpay was the appropriate remedy, even though placement on the reemployment list "does not automatically require reinstatement in the first position for which former personnel have the necessary professional qualifications."  *Id*. at 874 ("[T]he Tennessee statute).  As a result, SCS attempts to distinguish *Randall* in a few ways, none of which compel a different result.

First, SCS argues that *Randall* was abrogated by the Tennessee General Assembly's deletion of the word "preferred" from § 49-5-511(b)(3) nearly 25 years later. *See* 2011 Tenn. Laws Pub. Ch. 70, § 9, eff. July 1, 2011. SCS overreads this minor linguistic change to the statute.

 The 2011 Amendment changed the language of § 49-5-511(b)(3) as follows:

(3) A tenured teacher who has been dismissed because of abolition of a position shall be placed on a ~~preferred~~ list for reemployment in the first vacancy the teacher is qualified by training and experience to fill. Nothing in this subsection (b) shall be construed to deprive the director of the power to determine the ~~fitness~~ filling of ~~the teacher for reemployment in~~ such vacancy on the if the director of the school's evaluation of the teacher's competence, compatibility and suitability to properly discharge the duties required ~~in the vacancy~~ for the vacant position considered in the light of the best interest of the students in the school where the vacancy exists~~; provided, however, that the action~~

3

~~shall~~. The teacher's most recent evaluations may be a factor in ~~accordance with board policy~~ such determination.

*Compare* Tenn. Code § 49-5-511(b)(3) (June 1, 2011) *with* Tenn. Code § 49-5-511(b)(3) (July 1, 2011). These changes, including the deletion of "preferred," is best understood as improving readability and eliminating redundancy. Only highly-rated teachers are placed on the list (a requirement added in 2014), and placement on the list implies a preference. If not, why would the legislature mandate the creation of the list in the first place? And why does the current version of the statute include only teachers "rated in the three (3) highest categories based on evaluations"? Tenn. Code § 49-5-511(b)(3). SCS provides no explanation.

SCS also ignores the very next subsection, which continues to call it "the preferred list for reemployment." Tenn. Code § 49-5-511(b)(4). Likewise, SCS does not point to any legislative history that would suggest that the deletion of the word "preferred" was meaningful, much less that it was intended to abrogate the *Randall* decision. If abrogation was the intent, the legislature would have deleted the word from both subsections and been explicit about the purpose. *See Thompson v. Memphis City Sch. Bd. Of Educ.*, 395 S.W.3d 616, 629 (Tenn. 2012) ("The legislature's failure to express disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction.") (cleaned up). Further, if the legislature had concerns about the rights given to tenured teachers via reemployment lists, it would not have waited until 2011—nearly 25 years after

*Randall*—to overturn the decision. *State Bd. of Exam'rs for Architects & Eng'rs v. Weinstein*, 638 S.W.2d 406, 409 (Tenn. Ct. App. 1982) (an amendment substantively alters a statute when preceded by the "intervention of judicial decisions").

Notably, Dr. Williams' interpretation of the Tenure Act is consistent with SCS's post-2011 policy, which uses the word "preferred" to describe the list three times. Appendix A-4, Trial Exhibit 7, p. 3. It is also consistent with joint guidance issued by the Tennessee Department of Education and others, which describe the list as a "preferred list for reemployment" and suggests schools fill a vacancy outside the reemployment list only if "the director has considered teachers on the preferred list pursuant to state law and found the employment of such teachers to be contrary to the best interests of the students in the school."[1]

SCS further ignores the deposition of its own corporate representative who testified that if Dr. Williams had been included on a reemployment list, SCS would have given her preference by, for example, asking principals at schools she applied "to give some special attention making sure that you grant her an interview." Jones Dep., R. 153, PageID 4185-87. Thus, the legislature's minor change to the wording of the statute in one subsection (but not the next) does not show an intent to change the substance of the provision. *See Abadeer v. Tyson Foods, Inc.*, 975 F. Supp. 2d

---

[1] Teacher Placement Guiding Principles & Model Practices, available at https://tsba.net/wp-content/uploads/2018/01/Joint-Memorandum.pdf.

5

890, 918 (M.D. Tenn. 2013) (concluding that a 2013 amendment merely clarified the pre-existing statute because it, in part, "made relatively minor changes to the statute, removing one sentence and inserting another").

### B.    The Tennessee Supreme Court Has Not Overturned *Randall.*

Next, SCS argues that *Randall* was overturned by the Tennessee Supreme Court in *Emory v. Memphis City Sch. Bd. Of Educ.*, 514 S.W.3d 129 (Tenn. 2017). This argument is misplaced. In *Emory*, a tenured teacher did not receive a hearing within 30 after termination for cause, as required by the statute. *Id*. at 145-46. The teacher was still terminated after the hearing. *Id*. at 135. But the court of appeals nonetheless awarded backpay as a sanction for the period between the 30-day period and the actual hearing. *Id*. at 145. The Tennessee Supreme Court reversed, holding that the award was inappropriate because "section 49-5-512(a)(2) carries no specific *penalty* for noncompliance." *Id*. at 145 (emphasis added).

In so holding, the Court cited to decisions finding that courts cannot create penalties for statutory noncompliance, particularly where there was no prejudice. *See id*. (citing *Marks v. New Orleans Police Dep't*, 943 So.2d 1028, 1035-36 (La. 2006) ("in the absence of prejudice we cannot supply a penalty")). This holding makes sense given the lack of prejudice in *Emory*. Indeed, had the hearing instead resulted in reinstatement, the teacher would have received backpay. *See* Tenn. Code § 49-5-511(a)(3) ("If vindicated or reinstated, the teacher shall be paid the full salary

for the period during which the teacher was suspended.").

SCS's reading of *Emory* as prohibiting backpay for various Tenure Act violations is also contrary to *Thompson*. There, the Tennessee Supreme Court awarded backpay under § 49-5-511(a)(3) to a teacher who was terminated in violation of the Tenure Act even though that section did not specifically apply to the teacher's "circumstances." 395 S.W.3d at 628 ("No statute addresses the appropriate remedy for a tenured teacher in Ms. Thompson's circumstances..."); *see also* Tenure Act Order, R.237, PageID 6941 (collecting cases noting that courts have awarded backpay under § 49-5-511(a)(3) for violations of the reduction in force provisions outlined in § 49-5-511(b)). And, of course, had the Tennessee Supreme Court intended to overrule *Randall* and *Thomspon*, it would have said so. *Williams v. Smyrna Residential*, 685 S.W.3d 718, 730 (Tenn. 2024) (the court generally does not overrule precedents unless the request is squarely presented and after consideration of various factors, including *stare decisis*).

Here, in contrast to *Emory*, Dr. Williams was prejudiced. To even merit a spot on the reemployment list, a teacher cannot simply have been dismissed "because of abolition of a position." Tenn. Code § 49-5-511(b)(3). Tenure requires years of experience and many glowing evaluations. A teacher must also receive a rating in the "three highest categories" on her last evaluation. *Id.*; § 1983 Revision Order, R.220, PageID 6320 (explaining that Dr. Williams received a five out of five

7

on her relevant evaluations).  As a highly-rated tenured teacher, Dr. Williams should have received the protections of the Tenure Act including, according to SCS's witness, interview preference.  Jones Dep., R.153, PageID 4185 ("[I]f this were a reemployment list…they would be sent out for interviews with principals.").  Contrary to SCS's claims, Dr. Williams applied for dozens of jobs without receiving an interview.  R.46-1, PageID 314; R.59-2, PageID 1698-1711 (listing jobs she applied for).[2]  And as SCS's corporate representative testified, it was not until 2019 that Dr. Williams was "brought to my attention" as someone who deserved special attention for open positions.  Jones Dep., R. 153, PageID 4186-97, 4190.  Consistent with *Randall*, this lost opportunity cost is sufficient to justify an award of backpay.  *See also Lee v. Franklin*, 237 S.W.3d 322, 337 (Tenn. App. 2007) (applying § 49-5-511(a)(3)'s remedial measures to a violation of § 49-5-511(b)(3)).

### C.  Damages Extend From October 2018 Until Dr. Williams Is Added to a Formal Reemployment List, Which Has Yet to Occur.

Regardless of any changes made in the past, there is no dispute that the Tenure Act contains a mandatory requirement to place a qualified teacher on the reemployment list.  Tenn. Code. § 49-5-511(b)(3); *Lee*, 237 S.W.3d at 334 (a qualified teacher has "the right *to be placed on* and *to remain on* the preferred list

---

[2] That she stopped applying for jobs at some point (as SCS points out) is unsurprising, especially after February 2019 when Dr. Williams was placed on a list full of people *that did not need to be reemployed*.  *See* I.C.

for reemployment" and "such rights, once vested, cannot be impaired") (emphasis in original). There is also no dispute that, at a minimum, SCS violated the Tenure Act by failing to place Dr. Williams on the reemployment list until at least February 2019. § 1983 Order, R.309 PageID 8125 (finding Dr. Williams was placed on a reemployment list "at some point" in 2019). Under *Randall*, Dr. Williams is at least entitled to damages for the period between October 2018, when the board affirmed her termination, and the February 2019 placement on the reemployment list.

However, that period should continue to this day because SCS has never placed Dr. Williams on a valid reemployment list. On appeal, SCS points to the bench trial decision from the § 1983 claim, arguing that the trial court found Mr. Jones' testimony to be credible. SCS Br. at 27. SCS further argues that the list Mr. Jones created and added Dr. Williams to qualified as a reemployment list in 2019. *Id*. at 30 & n. 11.

But the district court's § 1983 decision did not analyze whether Mr. Jones' list qualified as a reemployment list under the Tenure Act. A "reemployment list" must, at the very least, be a "formal" one. 733 S.W.2d at 874. Therefore, *Randall* concluded that a school board's existing "mental" list did not qualify, and that the school board only came into compliance with the Tenure Act when "the Superintendent caused such a *formal written list* to be prepared" and that list was "continuously maintained." *Id*. (emphasis added). Furthermore, to qualify as a

9

"reemployment list" under § 49-5-511(b)(3), the list should function in a way that supports the goals of the Tenure Act – to further a tenured teacher's interest in reemployment.  This requires creation of a formal reemployment list that is routinely updated, made readily accessible to hiring schools, and can be distributed for consideration of "the teacher's competence, compatibility, and suitability to properly discharge the duties required for the vacant position considered in the light of the best interest of the students in the school where the vacancy exists."  *Id*.

The creator of the 2019 list was Eddie Jones and he testified about the list as SCS's Rule 30(b)(6) representative.  Dr. Williams lost her job in 2016, but Mr. Jones testified that he first created the list in September or October 2018 as a method for tracking "folks who were resigning, people who were deployed."  Jones Dep., R. 153, Page ID4172-73.  And Mr. Jones only added her three weeks before his 2019 deposition at the instruction of SCS.  *Id*. at 4174; *id*. at 4183 (describing how he had not previously put Dr. Williams "on a preferred reemployment list that I have").  According to Dr. Jones, "since we didn't have a reemployment list and I had this [list], I just added her name there so I could keep up with it."  *Id*. at 4174-75.  But Mr. Jones also stated that the remaining individuals on his list were not eligible to be included on a reemployment list because SCS redeployed them to other schools after their position was eliminated and many were not even teachers.  *Id*. at 4176.  For that reason, Mr. Jones said it was not a reemployment list, but simply a list of

people that were excessed: "Our office does keep a list of individuals that would be on the reemployment list; but, again, I don't have a current reemployment list. I have a list of names of people who have been excessed." *Id*. at 4194.

SCS suggests that Dr. Williams mischaracterized Mr. Jones' testimony and that this list operated as a reemployment list. But even under SCS counsel's questions, Mr. Jones explained that the 2019 list was not a reemployment list:

- SCS Counsel: "So I want to make sure it's clear that Dr. Williams—is Dr. Williams on a—reemployment list as you stated earlier in your testimony." Dr. Jones: "**No**, she ---and I may have reiterated, but I have an Excel file that tracks all parties that have been excessed and have not secured a permanent position or who were excessed and resigned. I wanted to keep track of all those individuals. So I placed her on that list, because that's my one central list of keeping up with everyone. **It's not a reemployment list per se**….So **that's just my personal list** within our department…" *Id*. at 4197-98 (emphases added).

- Dr. Jones: "[The General Counsel] stated—she just wanted to know do you have a list of the reemployment; **and I stated to her that I don't have the reemployment list. That's not the reemployment list (indicating). I don't have a reemployment list**." *Id*. at 4198-99 (emphasis added).

- Dr. Jones: "**That's why this is not a reemployment list** that I –Exhibit 6, because it has on there people who are nonteachers. That's just my list of names; but if I were to have a traditional reemployment list, it would have only teachers and teacher types…. So to clarify, it would be a list of classroom teachers and their endorsement areas so that we could try to get them into positions of classroom teaching positions." *Id*. at 4205-06 (emphasis added).

- Dr. Jones: "**So its not a reemployment list**. It's just a list of names of people that I need to keep up with." *Id*. at 4207 (emphasis added).

Therefore, Dr. Jones' list of names cannot be considered a formal

reemployment list either in name or in function such that SCS's failure to place Dr. Williams's name on a reemployment list as required under § 49-5-511(b)(3) began in 2018 and continues to this day. The Court should remand for a determination of Dr. Williams' damages until SCS complies with the law.

Ignoring Mr. Jones' Rule 30(b)(6) testimony, SCS also claims that Mr. Jones testified otherwise at trial. That testimony occurred *after* the district court's decision on the Tenure Act claim. In any event, at trial Mr. Jones confirmed that once SCS moved away from their old software system ("ZOHO"), it did not have a reemployment list that would qualify under the statute:

> [B]ecause we phased out ZOHO … we didn't have the traditional reemployment list. ***What we did was, we kept a list of individuals but not as a preferred reemployment list.*** We kept that list of individuals that needed to go out, that needed to be reemployed, but we didn't keep it in ZOHO.

Trial Tr., R.314, PageID 8255 (emphasis added). When the trial judge asked Mr. Jones where the list was, he said each school had its own list until 2019, when he asked for "an updated list of everyone so that we could keep it in … one central place." *Id*. at PageID 8256-57. So he collected those names into one list.[3] *Id*. at 8257 ("we didn't have this one document per se to everybody, until I … said, listen, I need your names … and let's pull it all together").

This Court should look carefully at the resulting list, which was discussed at

---

[3] The SCS emails confirm Mr. Jones did not begin the process of putting together this new "list of names" until 2019. See Williams Appx at A-9 to A-10.

trial, and which Dr. Williams attached to her opening brief.  *See* Williams Appx at A-9 to A-10.  It will find that, setting side Dr. Williams, 17 of the 18 names on the list discussed at the deposition (Exhibit 6) also appear in the trial exhibit list.  Jones Dep., R.158, PageID 4286-87 (Exhibit 6).  Indeed, Mr. Jones stated that Exhibit 6 could not be a reemployment list because, other than Dr. Williams, *the other employees were not eligible to be on a reemployment list* because they were not RIF'd or not teachers.  *Id*., PageID 4176, 4198-99, 4205-06.  Dr. Williams is the only employee from Messick on the trial exhibit list, the list includes other people excessed as far back as 2016, and, notably, ***every single person*** on the reemployment list received another position (i.e., was "deployed") at SCS or resigned, which demonstrates it is not a reemployment list as contemplated under § 49-5-511(b)(3). *Id*.  In other words, Dr. Williams was place on a list of people *that did not need to be reemployed*—the very opposite of a reemployment list.  Adding insult to injury, the note for Dr. Williams' entry only states "Settlement awarded"—which makes it appear that she (like the others on the list) does not need a new job.

The trial court found that Mr. Jones' testimony was "murky" and "unclear" on this subject, yet still found that Dr. Williams had been placed on a reemployment list. §1983 Order, R.309, PageID 8121, 8123, 8125. To the extent that the district court found that this list functioned as a reemployment list pursuant to the benefit promised in § 49-5-511(b)(3), it erred as a matter of law.  The Court should therefore

13

remand for a determination of damages.

## II.   SCS Is Liable Under § 1983 For Disregarding the Tenure Act.

Dr. Williams is entitled to damages under § 1983 because SCS had a policy of noncompliance with the Tenure Act.   All agree that Dr. Williams has a constitutionally protected interest in her Tenure Act rights.   R.220, PageID 6318, 6320.   The only questions, then, are (1) whether SCS acted through an "official policymaker" or through an official policy or custom, and (2) whether Dr. Williams suffered damages as a result.   The Court should answer both questions in the affirmative and reverse.

### A.   Superintendent Hopson Acted Under Color of State Law.

SCS is liable under § 1983 where the constitutional violation arises from the acts of an "official policymaker" or where the actions are the school's "policy" or "custom." *Jorg v. Cincinnati*, 145 F. App'x 143, 146 (6th Cir. 2005); *see also Whitson v. Knox Cnty. Bd. of Educ.*, 468 F. App'x 532, 541 (6th Cir. 2012) (explaining that tolerating conduct that deprives a plaintiff of a constitutional right can be considered a "custom" for relief under *Monell*).   Dr. William's opening brief explained that SCS's failures to comply with the Tenure Act arise from an official policymaker and are SCS's policy and custom, Williams Br. at 27-32, and this Court should reject SCS's arguments otherwise.

Superintendent Hopson had policymaking authority in his capacity as

14

superintendent, both because the SCS board specifically delegated that power to him and because he exercised such power.  *Susselman v. Washtenaw Cty. Sheriff's Office*, 109 F.4th 864 (6th Cir. 2024) (an employee's actions are "under color of state law" if she is an official policymaker); *Jorg*, 145 F. App'x at 146 (an act of official policy occurs when an official has authority to choose from various alternatives).  According to the SCS official policy, "the Superintendent shall be responsible for developing administrative rules and regulations to implement [the preferred employment list] policy … and for ensuring compliance."  Williams Br., Appx., at A-6; *accord.* TCA §49-5-511(b)(3).  Superintendent Hopson admitted he exercised that authority to keep the list "at [his] direction." Hopson Dep., R.60, PageID 1764.

SCS argues that Dr. Hopson was not a final decision-maker because the policy did not state that the "Superintendent is responsible for deciding whether or not to place an individual employee's name on the list."  SCS Br. at 29.  This argument mischaracterizes Dr. Williams' argument and the legal standard by conflating a "policymaker" with a "factfinder."  The policy violation is the decision not to create a valid reemployment list.  In *Jorg*, the Court explained that a "factfinder" is someone that merely assesses "the fixed realities of a situation." 145 F. App'x at 146-47.  But where the employee can choose among various alternatives, here whether to compile a reemployment list *at all*, the employee is exercising

15

"policymaking" authority. *Id.* Dr. Williams does not argue that Superintendent Hopson decided that she did not fit the criteria for the existing list, but rather, that no list was needed as the district "didn't have the vacancies that [it] needed" to offer new positions to employees. Trial Tr., R.314, PageID 8253. This exercise of authority constitutes a policy decision.

Even if Superintendent Hopson were not the final policymaker, SCS persistently failed to follow the Tenure Act, such that SCS had a custom or policy of disregarding it. As the district court recognized, an official policy may be a "custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); R.309, PageID 8131. Under this theory, this Court asks if Dr. Hopson's "acts or edicts may fairly be said to represent official policy." *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986). Official policies need not be "committed to writing," *id.*, and may also consist of inaction. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019) (where "procedures, rules or regulations" are needed, the failure to create policy can give rise to liability).

SCS argues that an official policy of noncompliance is insufficient to create liability. SCS Br. at 39. But that does not apply here, as the Tenure Act specifically mandates the director of schools place excessed teachers on the reemployment list. TCA § 49-5-511(b)(3). This is a statutory mandate SCS failed to follow, which the

16

district court found was part of a broader pattern of violating the Tenure Act:

> SCS's approach to excising teachers when it becomes necessary to reduce the number of positions within the system has led to many lawsuits. This case, like those, evidence the Board's failure to adhere to its statutory duty to ensure that each teacher excised as part of a reduction in force policy receives the protections afforded under the [Tenure] Act."

Tenure Act Order, R. 237, PageID 6936 (citations omitted). SCS also misunderstands *City of Canton v. Harris*, 489 U.S. 378, 389 (1989), under which liability attaches when SCS makes a deliberate choice to follow one "course of action" from various alternatives. Again, here, the deliberate choice was SCS's failure to have a reemployment list.

SCS asserts that "there was never a time the school board did not maintain a reemployment list." SCS Br. 29. But, as described above, Mr. Jones' consistently testified that for many years there was no reemployment list, and that the current list is not a reemployment list. SCS responds there was no need to add any names to any reemployment list in the two years before February 2019 because no positions were eliminated. SCS Br. at 38. But what about the dozens of tenured teachers who were officially terminated on October 30, 2018? R. 161-5, PageID 4742-4745. And what of teachers who were part of earlier reductions-in-force like the plaintiffs in the *Kelley* litigation, who were informed they would be placed on a reemployment list? Branch Dep., R. 151, PageID 3864. Recall, Tennessee law gives the "right to remain on the preferred list for employment" until the teacher either accepts a comparable

17

position or rejects four comparable positions. Tenn. Code 49-5-511(b)(4). SCS does not contend that Dr. Williams is the only teacher eligible for placement on a reemployment list, yet it never produced a true reemployment list with other names. Moreover, even if Dr. Williams was truly the only teacher eligible for the list, SCS was still obligated to create a list and ensure that Dr. Williams name was on it. R.309, PageID 8128. Its failure to do so demonstrates that SCS did not maintain an effective and accurate reemployment list for many years.

### B.   Dr. Williams Suffered a Compensable Injury as a Result Of SCS's Failure to Place Her Name on The List.

The district court erred by holding that Dr. Williams cannot establish proximate cause because the reemployment list does not guarantee employment. But according to SCS testimony, the list would have provided increased chance of hiring success for Dr. Williams by directing principals "to give [her] some special attention making sure that you grant her an interview." Jones Dep., R. 153, PageID 4185-87; *see also* Ervin Dep., R. 156, PageID 4359 (agreeing Dr. Williams "didn't get the other things that other tenured employees got, which was the preferred rehiring list"). As explained above, Dr. Williams applied for dozens of positions, but was denied that advantage for each one. R.59-2, PageID 1698-711 (listing jobs she applied for).

SCS had a statutory obligation to place Dr. Williams on a reemployment list upon the moment of her dismissal. Tenn. Code. § 49-5-511(b)(3). SCS's failure to properly dismiss her via a board resolution as required by subsection (b)(2) is a

separate issue from failing to place her on the list under subsection (b)(3). Had SCS ensured that Dr. Williams was on a reemployment list in 2016, 2017, and 2018, there is good reason to believe she would be employed at SCS today. Indeed, SCS has produced no list of other teachers on a reemployment list who did not obtain reemployment. Even looking at Mr. Jones's 2019 "list", it is notable every person on that list (whether or not tenured or a teacher) who desired employment received jobs elsewhere within SCS. Jones Dep., R.153 PageID 4199-4200. Thus, the violation directly and substantially diminished her ability to be considered for reemployment.

SCS argues that Dr. Williams did not suffer damages because she did not prove she was more qualified than other candidates. SCS Br. at 42. Again, this misunderstands the purpose of the list, which includes increased visibility and consideration. Damages are available under section 1983 not just for a "sure thing" but also "when a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish." *King v. Zamiara*, 788 F. 3d 207, 213 (6th Cir. 2015) (cleaned up). The inability of SCS to point to any other terminated teacher like Dr. Williams who did not secure a new position demonstrates her injury. *Id.* For these reasons, the court below therefore erred in finding that Dr. Williams could not prove damages.

## III.    Dr. Williams Raised Disputed Issues of Material Fact On Her Retaliation Claims.

This Court should also reverse the district court's grant of summary judgment on Dr. William's retaliation claims under Title VIII and the Tennessee Public Participation Act ("TPPA").  SCS convinced the court below that it terminated Dr. Williams as part of a broader "lay off" of more than forty employees when Messick closed—thus suggesting she was one of ***forty*** similarly-situated people that were laid off.  SCS filings, R.42-2, PageID 153; R. 42-1, PageID 128 (stating that "funding for 40 part-time and nine full-time employees was terminated" and "the entire Messick Adult Center … was closed."), PageID 141 ("it is undisputed that she was laid off along with 48 other employees").  But Dr. Williams' claim is for wrongful *termination*.  SCS's phrasing "lay off its employees," convinced the court below that SCS had *terminated* many employees as part of a reduction in force.  *See* MSJ Order, R.88, PageID 2629-30 & 2641 ("Over forty employees, including at least five full-time employees, were terminated from their positions.").  This was not true.

Reversing course on appeal, SCS now admits Dr. Williams was the ***only*** full-time, tenured employee at Messick that was terminated.  SCS Br. at 14-15.  SCS Director of Human Relations Brach admitted that "[t]here were several tenured teachers that worked for Adult Ed" but that Dr. Williams was the only one terminated.  Branch Dep., R.151, PageID 3829-30, 3871-72.  At least four full-time employees, including Principal Griffin and Assistant Principal King, who worked in Messick's administration with Dr. Williams, were also not terminated.

As such, the reason SCS gave to the district court – that Dr. Williams was one of over 40 people that were laid off together – turns out to be entirely pretextual. The massive "reduction in force" that the district court repeatedly relied on as the reason for Dr. Williams' termination, R.88, PageID 2629-30 & 2641, *was really just a "reduction" of Dr. Williams*. The district court's misunderstanding, which was invited by SCS, requires reversal.

Further, as explained in Dr. Williams' opening brief, summary judgment should be reversed because the record was replete with evidence of Title IIV and TPPA retaliation. Williams Br. at 6-10. Principal Griffin and Director Branch made sure that Dr. Williams was miserable and ineffective, eliminating her duties, using racial epithets, and attacking her at every step. Williams Br. at 6-10. And Dr. Williams was punished for protesting that Messick was violating the terms of its grant. *Id*. This evidence, combined with the fact that she as the only person terminated, is more than enough to create a material issue of fact for trial.

## A.    Dr. Williams Raised a Material Issue of Fact Regarding Superintendent Hopson's Reasons for Termination.

This Court should hold that Dr. Williams presented sufficient evidence of retaliation to survive summary judgment. She presented significant evidence that Principal Griffin and Director Branch discriminated against her because of her various EEOC complaints. Dr. Hopson then relied on the recommendations of Principal Griffin and Director Branch to decide to terminate her, which the SCS

board ratified years later to comply with state law.    Hopson Dep., R.60, Ex. 1, PageID 1780; Tenure Act Order, R. 237, PageID 6935-40.

Superintendent Hopson testified that he had no personal knowledge about Dr. Williams, but instead relied upon "the people who were in charge of those departments and in charge of doing that to do their jobs."  Hopson Dep., R.60, PageID 1756.  SCS agrees that this is the key statement from the record, but claims that Dr. Hopson was not referring to Principal Griffin or Director Branch.  SCS Br. at 17.  But who else could he be referring to?  SCS has no answer.  Dr. Williams reported directly to Principal Griffin, who was the person "in charge" of the Messick program, and Human Resources Director Branch was the intermediary with the Superintendent's office.  Williams Br. at 6-10.  Griffin complained to Branch, and then Branch spoke to the Superintendent's office—and then both Griffin and Branch would exercise control and discipline over Dr. Williams.  *Id*.  With no evidence Superintendent Hopson referred to someone else when he testified that he relied on "the people who were in charge of those departments," summary judgment was inappropriate.

SCS also argues that Dr. Williams waived her argument because she focused on Director Branch's animus before the district court.  But Principal Griffin had involved Director Branch in every steps of discipline and management of Dr. Williams.  *See* SCS Disciplinary File, R. 58, PageID 1576-1577, 1592-94, 1682-85;

Coll. Exhibit E.; R.55, Ex. 9, PageID 1383; R.52, Ex. 7, PageID 997. The two administrators worked together to discriminate and retaliate against Dr. Williams. *Id*. She was the target of a multitude of negative comments from Principal Griffin such as "a lot of times someone they send over because it was a problem and they were trying to quiet the problem," "you didn't interview for the job and probably didn't know about the job you got placed into," "it's not a secret to those out there there wasn't an interview, everybody knows that."" Williams Dep., R.48, PageID 563-64, 588-90 & R.49, PageID 834-35; R.57, Ex. 20, PageID 1524; Williams Dep., R.48, PageID 559-64 & R.49, Ex. 8, PageID 834. Director Branch similarly stated that Dr. Williams was uncooperative, combative, and unprepared. R.52, PageID 949-950, 961-962. Director Branch brought the complaints of both administrators to the Superintendent's office. R.51, PageID 944; SCS Disciplinary File, R.58, PageID 1576-1577, 1592-94, 1682-85; R.51, PageID 944; R.65, PageID 2280.

Dr. Hopson, of course, had no personal or independent knowledge or motivation to terminate Dr. Williams, when the normal course – as required by statute -- was to redeploy employees to other positions. Branch Dep., R.151, PageID 3793-3796, 3814-15; Tenn Code 49-5-409(c) ("the person is entitled to the next position that the person is qualified to hold and that opens within the school system during the remainder of the school year"). And since he relied on those "in charge" of Dr. Williams, the causal nexus of retaliation runs straight from Branch and Griffin

23

to the Superintendent's office.  Dr. Hopson unblinkingly adopted their animus-driven recommendation.  *See generally Chattman v. Toho Tenax America*, 686 F.3d 339, 350-52 (6th Cir. 2012) (summary judgment inappropriate where supervisors had input to personnel decision).  Dr. Williams provided more than enough evidence to raise a genuine issue of fact to overcome SCS's pretext for her termination.  *See Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 648 (6th Cir. 2015) (reversing summary judgment where the jury had to decide which account to believe on an "inherently subjective," reason given for termination).

### B.    In the Alternative, Dr. Williams can Recover Ender the TPPA.

If this Court finds that Dr. Williams cannot raise a material issue of fact for Title VII retaliation, it should remand for trial on Dr. Williams's TPPA claim.  To prevail on a TPPA claim, an employee must establish her "refusal to participate in or remain silent about illegal activities" and an "exclusive causal relationship" between that refusal "and the defendant employer's discharge."  *Harman v. Univ. of Tenn.*, 353 S.W.3d 734, 737 (Tenn. 2011).  As explained above, the court below granted summary judgment because it accepted SCS's claim that Dr. Williams's termination was merely part of a much larger reduction in force.  Dr. Williams has more than shown that SCS's claim was pretextual.

SCS's only argument on appeal regarding Dr. Williams's TPPA claim is that she was not fired "solely" for her whistleblowing about Messick's illegal activities.

Importantly, SCS does not contest that Dr. Williams reported the illegal activities at Messick Adult Center or even that the activities were illegal.  Nor does it contest that her whistleblowing served an important public purpose.  The only issue, then, is whether Dr. Williams raised a question of material fact about whether SCS fired her solely because of her whistleblowing.

Dr. Williams easily meets that standard.  She informed state investigators that Messick administrators pushed teachers to help students cheat on tests through "test security" fraud; that SCS employees were paid as State-funded teachers "when they are not teaching classes;" that teachers were paid for "planning time" when they were not on campus planning; that SCS employees were paid from the State's adult education funds when "they are not working" on adult education; and that  State-funded laptops were provided to "individuals who do not work with the program."  Williams Dep., R.49, Ex. 9, PageID 715-16, 836-38.  Director Branch then told Dr. Williams that her reporting on Messick was "putting the district in jeopardy."  Williams Dep., R.49, PageID 780; Branch Dep., R.51, PageID 921-23.  Principal Griffin agreed, writing that her "continued employment … is adverse to the entire Adult Education program."  R.57, Ex. 17, PageID 1518-19.  And sure enough, SCS terminated Messick's funding and only Dr. Williams was permanently terminated.  This is more than sufficient to survive summary judgment on a TPPA claim.

## **CONCLUSION**

This Court should remand for a damages calculation under the Tenure Act and Section 1983, and for trial on the retaliation claims under Title VII and the TPPA.

Respectfully submitted:

*/s/ Colter L. Paulson*
Colter L. Paulson
SQUIRE PATTON BOGGS (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201
colter.paulson@squirepb.com

Nathan L. Colvin
THE SIXTH CIRCUIT CLINIC
University of Cincinnati College of Law
2925 Campus Green Dr.
Cincinnati, Ohio 45221
Tel: (513) 313-7344
nathan.colvin@gmail.com

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief is written in a proportionately spaced, 14-point Times New Roman font, and contains 6,494 words, exclusive of the material not counted under Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

<u>/s/ Colter L. Paulson</u>
Colter L. Paulson

## CERTIFICATE OF SERVICE

It is hereby certified that on October 3, 2024, the foregoing was electronically filed with the Clerk of the Court via the Court's ECF system. Counsel for Appellee will be served by the ECF system.

*/s/ Colter L. Paulson*
Colter L. Paulson